TONY WEST
Assistant Attorney General
Civil Division
SANDRA M. SCHRAIBMAN
Assistant Branch Director
Federal Programs Branch
DIANE KELLEHER
diane.kelleher@usdoj.gov
AMY POWELL
amy.powell@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., #7318
Washington, D.C. 20001
Phone: (202) 514-4775
Fax:    (202) 616-8470
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| AYMAN LATIF, *et al.*, Plaintiffs, v. ERIC H. HOLDER, JR., *et al.*, Defendants. | Case 3:10-cv-00750-BR  DECLARATION OF MARK F. GIULIANO, FEDERAL BUREAU OF INVESTIGATION in support of Defendants Motion for Summary Judgment |

## DECLARATION OF MARK F. GIULIANO

I, MARK F. GIULIANO, hereby declare the following:

1. (U) I am the Assistant Director for the Counterterrorism Division (CTD) of the Federal Bureau of Investigation (FBI), United States Department of Justice, a component of an Executive Department of the United States Government. In my capacity as Assistant Director of the FBI's Counterterrorism Division, I have been delegated original

1

classification authority by the Attorney General. *See* Executive Order 13256 § 1.3(c).[1] I am responsible for the protection of national security information within CTD, including the sources, methods, and techniques used by the FBI in the collection of national security information. Thus, I have been authorized by the Director of the FBI to execute declarations and affidavits in order to protect such information. The matters stated in this declaration are based on my personal knowledge, information provided to me in my official capacity, and on my evaluation of that information.[2]

2. **(U)** In the course of my official duties, I have been informed of this lawsuit and am familiar with the issues presented therein. Specifically, I am aware that Plaintiffs seek notice of the grounds for their inclusion in any government "watch list."

3. **(U)** The FBI cannot confirm or deny whether an individual has ever been listed in a Federal terrorism watch list because this information is derived from classified and sensitive law enforcement and intelligence investigations. The nondisclosure of the contents of the watch list protects the operational counterterrorism and intelligence collection objectives of the federal government, as well as the personal safety of those involved in counterterrorism efforts in part because its contents are not disclosed.

4. **(U)** In light of this, and for the reasons discussed below, I have concluded that requiring the disclosure of any individual's inclusion or non-inclusion in Federal terrorism screening databases or "watch lists," as well as, where and/or if applicable, the disclosure

---

[1] **(U)** Executive Order 13526, which was issued on December 29, 2009, is the new executive order governing classified national security information which took effect in June 2010.

[2] **(U)** Each paragraph in this declaration is marked with letters indicating the level of classification and restrictions on dissemination applicable to that paragraph. Paragraphs marked with a "U" are unclassified. Paragraphs marked with "FOUO" indicate information from sources which restrict dissemination use For Official Use Only.

of information underlying such inclusion, reasonably could be expected to cause serious harm to the national security of the United States.

**Overview of the TSDB**

5. **(U)** On September 16, 2003, the President signed Homeland Security Presidential Directive-6 (HSPD-6), requiring the establishment of an organization to "consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes." As a result of this presidential directive, the Terrorist Screening Center (TSC) was created. The TSC is administered by the FBI, with support from the Department of Homeland Security, the Department of State, the Department of Justice, the Department of Defense, and other federal agencies.

6. **(U)** Pursuant to HSPD-6, the TSC maintains the United States Government's consolidated terrorist watch list, known as the Terrorist Screening Database (TSDB). Individuals who are known or are reasonably suspected to be or have been engaged in conduct constituting, in preparation for, in aid of, or related to terrorism and terrorist activities are included in the TSDB.

7. **(U)** The TSDB contains no derogatory intelligence information; rather it contains only terrorist identity information consisting of biographic identifying information such as name or date of birth. The TSBD also contains limited biometric information such as photographs and fingerprints.

8. **(U)** The TSC receives terrorist identity information for inclusion in the TSDB from two sources: (1) the National Counterterrorism Center (NCTC) provides information about known or suspected international terrorists; and, (2) the FBI provides information about known or suspected domestic terrorists directly to the TSC.

3

9. **(U)** The TSDB is a sensitive but unclassified system that is updated continuously. Information contained in the TSDB is deemed "For Official Use Only" (FOUO) or "Law Enforcement Sensitive" (LES) because it is derived from classified national security or sensitive law enforcement information. TSDB contents are unclassified so they can be shared with screening officers throughout the federal government who may lack an appropriate security clearance.

10. **(U//FOUO)** The TSC, through the TSDB, makes terrorist identity information accessible to various screening agencies and entities by the regular export of updated subsets of TSDB data. TSDB information is exported to the Transportation Security Administration (TSA) for inclusion on the No Fly and Selectee Lists. The No Fly and Selectee Lists are subset lists of TSDB information that are available to federal authorities and commercial air carriers flying into, out of, or within the United States for passenger and crew screening.

11. **(U//FOUO)** The No Fly and Selectee Lists are treated as Sensitive Security Information (SSI) as is the watch list status of an individual on either list. TSA defines the No Fly List as "a list of individuals who are prohibited from boarding an aircraft" and the Selectee List as "a list of individuals who must undergo additional security screening before being permitted to board an aircraft."

12. **(U)** A nominating agency, such as the FBI, can recommend that an individual be included on the terrorist watch list (including the subset No Fly List and Selectee List) if the agency believes that the individual meets the appropriate nominations criteria. The TSC reviews each nomination and determines if an individual meets the nominations criteria.

4

**Harm To National Security Resulting from Disclosing an Individual's Inclusion or Non-Inclusion in a Watch List**

13. **(U)** The FBI does not confirm or deny whether an individual has ever been listed in a Federal terrorism watch list (including the TSDB, and the subset No Fly and Selectee Lists. The TSDB lists individuals "known or appropriately suspected to be or to have engaged in conduct constituting, in preparation for, in aid of, or related to terrorism," *see* HSPD-6. [3] Thus, confirming or denying whether an individual is or was included in the TSDB tends to confirm or deny whether he is or ever was the subject of a counterterrorism investigation or an intelligence gathering effort. Accordingly, the nondisclosure of the contents of the watch list protects the operational counterterrorism and intelligence collection objectives of the federal government, as well as the personal safety of those involved in counterterrorism efforts in part because its contents are not disclosed.

14. **(U)** Allowing a watch listed individual to know that he is included in the TSDB, would allow him to take new precautions against surveillance (such altering his appearance or obtaining new identification) and change the level of any terrorism related activity in which he is engaged. That in turn could render law enforcement and intelligence officers unable to gather further intelligence on his activities or determine his whereabouts, making it easier for the subject to devise a new scheme and resurface to commit a terrorist act. In the past, ongoing FBI national security investigations have been harmed when a known or suspected terrorist has learned that he or she is included in the TSDB and/or is the subject of a national security investigation. Release of this information has compromised ongoing surveillance efforts to gather information about the individual and

---

[3] **(U)** The fact that an individual encounters travel delays does not mean that he is watch listed. Travel delays occur regardless of the existence or non-existence of an FBI national security investigation.

has also resulted in FBI agents, whose identities had become known to the suspect, being placed in personal danger. To the extent that an individual's watch list status is alleged to have been disclosed by FBI employees, that still does not justify displacing the FBI's policy, and in no way diminishes the risks of such a course.

15. **(U)** By the same token, the FBI does not confirm that someone is *not* included in the TSDB. Denying whether an individual is or was included in the TSDB tends to deny whether he is or ever was the subject of a counterterrorism investigation or an intelligence gathering effort. Such information would mean that the individual could move about without detection and even encourage the individual to commit a terrorist act before he comes to the attention of government authorities. By the same token, requiring disclosure that individuals are individuals are *not* included in the TSDB would pose the same risks because such a denial as to one person would imply that silence as to others should be taken as confirmation that they are included in the TSDB. Terrorist groups could also manipulate the system to discover which of their members are not included on any watch list and, thus, have escaped the attention of law enforcement and intelligence officers.

16. **(U)** Finally, any effort to draw distinctions between disclosures that would and those that would not cause harm to intelligence or law enforcement interests would itself reveal sensitive intelligence and/or law enforcement information. For this reason, the information at issue - whether someone is or is not in the TSDB - must be treated uniformly because to answer any query negatively or positively would set a dangerous precedent whereby future requesters could determine whether their names were included on a watch list simply by filing a civil lawsuit.

6

17. **(U)** For all these reasons, the FBI treats the question of whether someone is or is not in the TSDB uniformly; to answer any query negatively or positively, as Plaintiffs seek, would set a dangerous precedent whereby future requesters could determine whether their names were included on a watch list simply by filing a civil lawsuit.

## Harm To National Security Resulting from Disclosure of Information Underlying An Individual's Inclusion in the TSDB

18. **(U)** For reasons similar to those listed above, the government does not reveal the basis for an individual's inclusion in the TSDB. Nominations to the TSDB (and the No Fly and Selectee Lists) are typically based on classified information, including information obtained from confidential sources, various types of surveillance, and/or other extremely sensitive sources and methods. Moreover, the underlying information involves ongoing FBI investigations.

19. **(U)** I have read the Amended Complaint in this action which asks that the Court order Defendants to "provide Plaintiffs with meaningful notice of the grounds for their inclusion on a government watch list, and an opportunity to rebut the government's charges and to clear their names." Amend. Compl. at p. 94. Over and above the harms from overturning the FBI's policy regarding disclosure of watch list status, imposing an obligation to disclose information supporting nominations to the No Fly List would risk compromising e the functions of the FBI, for the reasons noted above. Such information is usually classified and extremely sensitive; it is shared on a "need-to-know" basis within the FBI and the government. It often reflects information gained from specific FBI sources and methods which are not generally known to the public and are not known to the individual who is being investigated.

20. **(U)** Moreover, overturning the FBI's policy would result in disclosure of this sensitive information to individuals on the No Fly List, individuals the FBI reasonably suspects to be a terrorist. Such disclosures could eliminate any secrecy or operational advantages that the government has in its investigations.

21. **(U)** The nondisclosure of the contents of the TSDB protects the operational counterterrorism and intelligence collection objectives of the federal government, as well as the personal safety of those involved in counterterrorism investigations. The TSDB remains an effective tool in the government's counterterrorism efforts in part because its contents are not disclosed.

22. **(U)** Even to link the name of the subject of a classified counterterrorism investigation to that investigation is to reveal information that is, itself, classified and/or law enforcement sensitive.

//

//

## CONCLUSION

23. **(U)** For all the above-discussed reasons, I have concluded that the disclosure of any individual's inclusion or non-inclusion in Federal terrorism screening databases or "watch lists," as well as, where and/or if applicable, the disclosure of information underlying such inclusion, reasonably could be expected to cause serious harm to the national security of the United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of November, 2010.

MARK F. GIULIANO
Assistant Director
Counterterrorism Division
Federal Bureau of Investigation
Washington, D.C.