TONY WEST
Assistant Attorney General
Civil Division
SANDRA M. SCHRAIBMAN
Assistant Branch Director
Federal Programs Branch
DIANE KELLEHER
diane.kelleher@usdoj.gov
AMY E. POWELL
amy.powell@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., #7318
Washington, D.C. 20001
Phone: (202) 514-4775
Fax:    (202) 616-8470
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AYMAN LATIF, *et al.*,<br>  Plaintiffs,<br><br>v.<br><br>ERIC H. HOLDER, JR., *et al.*,<br>  Defendants. | Case 3:10-cv-00750-BR<br><br>DECLARATION OF JAMES G. KENNEDY, JR. |

**DECLARATION OF JAMES G. KENNEDY, JR.**

I, JAMES G. KENNEDY, JR., hereby state and declare as follows:

1. I am the Director of the Office of Transportation Security Redress (OTSR), Transportation Security Administration (TSA), United States Department of Homeland Security (DHS). I have held this position since November 2005. Prior to that, I served as the Special Assistant to the TSA Chief of Staff. I also have served as the Director of the DHS Traveler Redress Inquiry Program (DHS TRIP) since February 2007. As part of my official duties, I am responsible for the

1 – Declaration of James G. Kennedy, Jr. in support of
Defendants' Motion to Dismiss and for Summary Judgment

oversight and management of traveler redress programs, the implementation of redress processes, facilitating integration with other organizations and stakeholders, driving strategic planning and management, and serving as the spokesperson and liaison for DHS TRIP and OTSR on redress issues.

2. The statements made within this Declaration are based upon my personal knowledge, information made available to me in my official capacity, and conclusions reached in accordance with such information. I make this Declaration in support of the Federal Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment.

3. DHS TRIP is the culmination of successive attempts to create a process to address travel-related complaints. First, Public Law 108-458, Title IV, § 4012(a)(1) (December 17, 2004) amended 49 U.S.C. § 44903 by requiring TSA to begin the process of assuming the performance of passenger prescreening and by further requiring that TSA establish a timely and fair process for travelers to appeal to TSA their placement on the No Fly and Selectee lists and to correct any erroneous information in their records. Second, on January 17, 2006, Secretary of State Condoleezza Rice and Secretary of Homeland Security Michael Chertoff announced the Rice-Chertoff Initiative. The initiative included the creation of a government-wide redress program that would enable all travelers to resolve security screening complaints through a single federal government office. Third, as part of the "Act to provide for the implementation of the recommendations of the National Commission on Terrorist Attacks Upon the United States," Pub. L. 110-53 (August 3, 2007), 49 U.S.C. § 44926, Congress directed the Secretary of Homeland Security to establish a timely and fair redress process for travelers who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by TSA, U.S. Customs and Border Protection (CBP), or any other office or component of DHS. The Act further directed the Secretary of DHS to establish the Office of Appeals and Redress to implement, coordinate, and execute the process established by the Secretary and required that the Office of Appeals and Redress (the Office) include representatives from TSA, CBP, and such offices and components of the Department as the Secretary determines appropriate.

4. In February 2007, DHS TRIP was officially launched as the central processing point for redress inquiries among the DHS components. On December 10, 2007, the Secretary of DHS designated TSA OTSR, which acts as DHS's lead agent managing DHS TRIP, as the Office of Appeals and Redress required under Pub. L. 110-53. DHS TRIP provides the central administrative process for individuals

who, for example, have been denied or delayed airline boarding; have been denied or delayed entry into or exit from the U.S. at a port of entry; or who have been repeatedly referred to additional (secondary) screening.

5. Travelers who believe that they have experienced such problems because they were wrongly identified as a threat may submit a Traveler Inquiry Form to DHS TRIP. *See* http://www.dhs.gov/files/programs/gc_1169676919316.shtm (DHS Traveler Redress Inquiry Program website, which includes online the Travel Inquiry Form).

6. The DHS TRIP Traveler Inquiry Form may be submitted either on-line, by electronic mail or via hard copy sent by mail. On the DHS TRIP Traveler Inquiry Form, travelers are prompted to describe their particular experience, produce documentation related to the subject inquiry (depending on the inquiry), provide at least one government-issued photo identification documentation, and provide contact information to which a response will be directed.

7. When a traveler files an inquiry with DHS TRIP on-line, the system automatically provides the traveler a Redress Control Number to help monitor the progress of the inquiry. When filing is done via electronic mail or hard-copy, the traveler receives the Redress Control Number at the conclusion of the DHS TRIP review with the determination letter. The Redress Control Number matches the individual to the results of his or her redress case within DHS TRIP. An additional feature of the Redress Control Number is that it may be used by the individual when making future air travel plans. In conjunction with TSA's Secure Flight Program, airlines have modified their reservation systems to allow individuals with Redress Control Numbers to enter them into the reservation system to potentially prevent unnecessary security screening.[1]

8. Upon receipt of a Traveler Inquiry Form, DHS TRIP reviews the information submitted by the traveler and evaluates each inquiry to determine which DHS component or other governmental agency they must coordinate with to resolve the complaint. If that person is experiencing problems because he or she is "misidentified," *i.e.*, the traveler has the same or similar name to an individual

---

[1] Secure Flight is TSA's watch list matching program. The 9/11 Commission Report recommended that TSA take over watch list matching from the airlines. The Intelligence Reform and Terrorism Prevention Act (IRTPA) of 2004 codified this recommendation and requires DHS and TSA to assume from airlines the function of conducting pre-flight comparisons of airline passenger information to federal government watch lists. TSA is implementing the Secure Flight program to meet this Congressional mandate. Secure Flight requires airlines to collect a passenger's full name (as it appears on government-issued ID), date of birth, gender and Redress Number (if applicable).

identified on a government watchlist, DHS TRIP (or the appropriate DHS component office) in coordination with other relevant agencies, as appropriate, attempts to address the misidentification by updating or correcting information in a traveler's record, or taking other appropriate action. When the review is completed, DHS TRIP then sends a determination letter to the traveler, notifying him/her that it has completed its review and provides additional information as appropriate. The determination letter provides as much information to the inquiring traveler as possible without disclosing whether the traveler is included on a watchlist.

9. If the traveler is an exact or near match to an identity in the TSDB (which is true in a very small number of DHS TRIP redress requests), DHS refers the matter to the Redress Unit at the Terrorist Screening Center (TSC). The TSC is an interagency entity administered by the FBI that was created by a Memorandum of Understanding entered into by the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of Central Intelligence to fulfill the requirements of Homeland Security Presidential Directive-6 (September 16, 2003). The TSC Redress Unit reviews the individual's record in consultation with other agencies, as appropriate. DHS TRIP has found that less than 1% of the DHS TRIP complainants actually have some connection to the Terrorist Watchlist.

10. Upon the conclusion of that review, TSC's Redress Unit notifies DHS TRIP as to the outcome of the review, and DHS TRIP then issues a determination letter. Throughout this administrative process, DHS TRIP maintains a record of the steps it has been taken in each individual's case. The determination letter provides as much information to the inquiring traveler as possible without disclosing whether the traveler is included on a watchlist. Current government policy dictates that watchlist status can neither be confirmed nor denied because there are concerns that revealing this information may have national security implications.

11. DHS TRIP determination letters that are sent to those who assert that they have been denied or delayed airline boarding explain that these individuals can seek judicial review in the U.S. Courts of Appeals, pursuant to 49 U.S.C. § 46110. In some cases, the letters inform these recipients that they can pursue administrative appeals with TSA. DHS TRIP determination letters do not provide specific assurances about future travel.

12. Thus, an individual who submits a Traveler Inquiry Form and participates in the DHS TRIP administrative redress process can obtain resolution of a range of

travel or security screening related difficulties, including the potential removal of his or her name from a government watchlist (including the No Fly and Selectee Lists), where appropriate. Although the final DHS TRIP determination letter does not state whether the individual ever was or still remains on a government watchlist, if the individual's name was removed from such a list through the DHS TRIP redress process, it will be less likely that the individual will continue to experience the same type of travel and security screening related difficulties as in the past.

13. As of November 17, 2010, DHS TRIP had received redress requests from all of the Plaintiffs in this case. DHS TRIP has provided final responses to all seventeen of the Plaintiffs. Copies of these letters are attached hereto. *See* Exhibit A. DHS TRIP initially sent incorrect letters to two of the plaintiffs, because it initially did not categorize their complaints as being related to denied or delayed airline boarding. DHS TRIP now has sent the correct letters to those two Plaintiffs and they are attached hereto. *See* Exhibit B. TSA has not received any administrative appeals from any of the Plaintiffs in this case, nor has TSA been named as a defendant in any Petitions for Review filed by any Plaintiffs in the U.S. Courts of Appeal.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

JAMES G. KENNEDY, JR.

Date: 11/17/2010