Steven M. Wilker, OSB No. 911882
Email: steven.wilker@tonkon.com
**Tonkon Torp LLP**
888 S.W. Fifth Avenue, Suite 1600
Portland, OR 97204
Tel.: (503) 802-2040; Fax: (503) 972-3740
Cooperating Attorney for the ACLU Foundation of Oregon

Ben Wizner (admitted *pro hac vice*)
Email: bwizner@aclu.org
Nusrat Choudhury (admitted *pro hac vice*)
Email: nchoudhury@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500; Fax: (212) 549-2654

Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6928

Ahilan T. Arulanantham (admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
**ACLU Foundation of Southern California**
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (admitted *pro hac vice*)
Email: jmass@aclunc.org
**ACLU Foundation of Northern California**
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Laura Schauer Ives (admitted *pro hac vice*)
Email: lives@aclu-nm.org
**ACLU Foundation of New Mexico**
PO Box 566

Albuquerque, NM 87103
Tel.: (505) 243-0046; Fax: (505) 266-5916

Reem Salahi (admitted *pro hac vice*)
Email: rsalahi@salahilaw.com
**Salahi Law**
429 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401
Tel.: (510) 225-8880
Cooperating Attorney for the ACLU Foundation of Southern California

Mitchell P. Hurley (to be admitted *pro hac vice*)
Email: mhurley@akingump.com
Christopher M. Egleson (to be admitted *pro hac vice*)
Email: cegleson@akingump.com
Justin H. Bell (to be admitted *pro hac vice*)
Email: jbell@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002
Cooperating Attorneys for the American Civil Liberties Union Foundation

Attorneys for the Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| **AYMAN LATIF**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**ERIC H. HOLDER, JR.**, *et al.*,<br><br>Defendants. | Case No.: 10-cv-750 (BR)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................iv

INTRODUCTION..............................................................................................1

FACTUAL BACKGROUND ...............................................................................2

ARGUMENT ....................................................................................................4

    I.    **This Court has Jurisdiction Over Plaintiffs' Constitutional and Statutory Claims.**..................................................................................4

        A.    It is Undisputed that the TSC, not TSA, Possesses the Authority to Provide the Relief Plaintiffs Seek....................................................4

        B.    DHS TRIP Letters are not TSA "Orders" Within the Meaning of Section 46610.....................................................................................8

    II.    **DHS and TSA are not Indispensable Parties, but if this Court Determines Otherwise, They can be Joined.**................................................12

CONCLUSION................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Air Cal. v. U.S. Dep't of Transp.*, 654 F.2d 616 (9th Cir. 1981)...........................................9

*City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181 (D.C. Cir. 2007).....................................8

*Foster v. Skinner*, 70 F.3d 1084 (9th Cir. 1995) ...................................................................8

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) .........................................................9

*Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008) ....................................................... 1, 4, 5, 6

*IT&T Corp., Commc'ns Equip. & Sys. Div. v. Local 134, Int'l Bhd. of Elec. Workers, AFL-CIO*, 419 U.S. 428 (1975)..............................................................................9

*Mace v. Skinner*, 34 F.3d 854, 857 (9th Cir. 1994).................................................... 8, 9, 10

*Scherfen v. DHS*, No. 08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010).................. 7, 11

*Sierra Club v. Skinner*, 885 F.2d 591 (9th Cir. 1989)..........................................................10

*Vill. of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52 (D.C. Cir. 2006) ........................9

**Statutes**

49 U.S.C. § 44903 ................................................................................................................12

49 U.S.C. § 46110 .......................................................................................................5, 8, 13

49 U.S.C. app. § 1486 (1988)................................................................................................8

5 U.S.C. § 551 .......................................................................................................................9

**Other Authorities**

Dept. of Homeland Sec. Office of the Inspector Gen., *Effectiveness of the Department of Homeland Security Traveler Redress Inquiry Program*, OIG-09-103 (Sept. 2009)......................................................................................................10

*Flight 253: Learning Lessons from an Averted Tragedy: Hearing before the H. Comm on Homeland Security*, 111th Cong. 6 (Jan. 27, 2010) (statement of Jane Holl Lute, Deputy Secretary of Homeland Security) .......................................6

Shaina N. Elias, *Challenges to Inclusion on the "No-Fly List" Should Fly in District Court*, 77 Geo. Wash. L. Rev. 1015, 1030 (2009)........................................11

**INTRODUCTION**

Defendants have moved to dismiss this suit, contending that the Department of Homeland Security ("DHS") and the Transportation Security Administration ("TSA") are "indispensable parties" to this litigation, but that TSA cannot be joined because this Court is divested of jurisdiction to review TSA's "orders." These arguments are incorrect, and the litigation should proceed.

Defendants' jurisdictional argument is foreclosed by circuit precedent: In *Ibrahim v. DHS*, 538 F.3d 1250, 1255-56 (9th Cir. 2008), in an opinion by Chief Judge Kozinski, the Ninth Circuit rejected a similar motion to dismiss, holding that suits challenging government conduct in connection with the No Fly List are properly filed in the district court. That is because, as Plaintiffs have alleged and Defendants have conceded, the No Fly List is administered not by TSA, but by an entity called the Terrorist Screening Center ("TSC"), which is in turn administered by the Federal Bureau of Investigation ("FBI"), and Defendants do not contend that the district courts are divested of jurisdiction over orders of the TSC. It is the TSC that determines whether an individual should be added to the list, and whether s/he should be removed from the list. In no sense are Plaintiffs challenging a TSA "order," because TSA does not engage in the challenged conduct and has no authority to effectuate the remedy Plaintiffs seek.

Defendants contend that this case is distinguishable from *Ibrahim* because the Plaintiffs in this action have received letters from TSA in response to their applications for administrative redress; those letters, the government contends, are "orders" that Plaintiffs can challenge only in the Court of Appeals. But Defendants misperceive the nature of this case. Plaintiffs challenge the government's decision to prevent them from

1 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

flying without providing a constitutionally adequate procedure. Plaintiffs' suit is not a challenge to TSA's letters—indeed, this case was filed before most of those letters were issued. The government cannot evade the Ninth Circuit's jurisdictional ruling simply by issuing letters from an entity that is unable to provide the redress sought.

Indeed, under the law of this Circuit, TSA's letters are not "orders" at all: they do not "order" anyone to do anything, fix any legal rights, or take a position regarding Plaintiffs' claims. But even if this Court were to conclude that the letters are "orders," they are orders of the TSC, not TSA; TSA simply functions as a messenger.

Because DHS and TSA are not responsible for Plaintiffs' deprivations and are not authorized to provide redress, they are not indispensable parties under Federal Rule of Civil Procedure 19. But if this Court were to determine, as Defendants suggest, that DHS and TSA are necessary to any effective remedy, there is no reason why they cannot be joined, and Plaintiffs do not object to their joinder.

## FACTUAL BACKGROUND

Plaintiffs are seventeen citizens and lawful residents of the United States who have been denied boarding on commercial flights to or from the United States or over U.S. airspace. First Am. Compl. ("FAC") ¶ 2. Plaintiffs believe they are on the government's "No Fly List"; indeed, most of them have been told that they are on the list by FBI agents or other government officials. FAC ¶ 3. Each Plaintiff applied for "redress" through the only available government mechanism, but no government official or agency has offered any explanation for Plaintiffs' apparent placement on the No Fly List or offered any of the Plaintiffs any meaningful opportunity to contest their placement on such a list. FAC ¶ 4. At the time this action was commenced, some Plaintiffs had

received responsive letters from TSA, but those responses did not confirm or deny whether the Plaintiffs were on a government watch list, did not provide any basis for their inclusion on such a list, and did not provide any assurances about future travel.[1]

The No Fly List is a subset of the Terrorist Screening Database ("TSDB"), the federal government's master repository for suspected terrorist records used for watch list-related screening. FAC ¶ 23, 30. The TSDB is developed and maintained by an entity called the Terrorist Screening Center ("TSC"), which is in turn administered by the FBI. *Id*. The TSC sends records from the TSDB to other government agencies, which then use those records to identify suspected terrorists. *Id*. ¶ 31.

For example, applicable TSC records are provided to TSA for use in pre-screening passengers and to U.S. Customs and Border Protection ("CBP") for use in screening travelers entering the United States. *Id*. Thus, while the front-line agencies like TSA carry out the screening function, TSC maintains and controls the database of suspected terrorists and determines whether individuals should be added to or removed from the watch list. *Id*.

An individual who has been barred from boarding an aircraft on account of apparent inclusion on the No Fly List has no clear avenue for redress, because no single

---

[1] At the time this lawsuit was commenced, only one of the ten Plaintiffs had received a Department of Homeland Security Traveler Redress Inquiry Program determination letter. Compl. ¶ 124. At the time the First Amended Complaint was filed, only four of the seventeen plaintiffs had received determination letters: Adama Bah, Nagib Ali Ghaleb, Amir Meshal, and Halime Sat. FAC ¶¶ 211, 319, 358, 374. Letters to Bah, Ghaleb and Sat stated: "Security procedures and legal concerns mandate that we can neither confirm nor deny any information about you which may be within federal watchlists or reveal any law enforcement sensitive information. However, we have made any corrections to records that our inquiries determined were necessary, including, as appropriate, notations that may assist in avoiding instances of misidentification." *See, e.g.,* Decl. of James G. Kennedy, Dir. of the Office of Transp. Sec. Redress ("OTSR") ("Kennedy Decl.") ¶ 13, Exh. A at 8, 10, 53.

3 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

government entity is responsible for removing an individual from the list. *Id.* ¶ 38. The TSC does not accept redress inquiries directly from the public, nor does it directly provide final disposition letters to individuals who have submitted redress queries. *Id.* Rather, individuals who seek redress after having been prevented from flying must complete a standard form and submit it to the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP"). *Id.* DHS TRIP provides each individual with a "Redress Control Number" associated with the individual's report. *Id*. Yet it is the TSC that has responsibility for consulting with relevant agencies to determine whether an individual has been appropriately listed and should remain on the list. *Id.* Once the TSC makes a determination regarding a particular individual's status on the watch lists, including the No Fly List, the front-line screening agency responds to the individual with a letter that neither confirms nor denies the existence of any terrorist watch list records relating to the individual. *Id*. ¶ 39. Although some of those letters indicate that an "appeal" is available, appeals from the letters do not permit due process challenges to the listing procedures, let alone the development of a record necessary to establish such a due process claim.

## ARGUMENT

### I. This Court has Jurisdiction Over Plaintiffs' Constitutional and Statutory Claims.

#### A. <u>It is Undisputed that the TSC, not TSA, Possesses the Authority to Provide the Relief Plaintiffs Seek.</u>

In *Ibrahim v. DHS*, plaintiff who had been detained and denied boarding on a commercial flight sued various defendants, seeking, among other relief, "an injunction directing the government to remove her name from the No-Fly List." 538 F.3d at 1254. The United States moved for dismissal of all claims related to the No Fly List, contending

4 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

(as Defendants contend here) that 49 U.S.C. § 46110(a) grants exclusive jurisdiction to the Court of Appeals to review the "orders" of TSA, and that "the No-Fly List is an 'order' [of TSA] under the ambit of section 46110." *Ibrahim*, 538 F.3d at 1254. The district court dismissed the claims. *Id*.

The Court of Appeals reversed. Writing for the majority, Chief Judge Kozinski observed that "an agency called the Terrorist Screening Center actually compiles the list of names ultimately placed on the No-Fly List. And the Terrorist Screening Center isn't part of the Transportation Security Administration or any other agency named in section 46110; it is part of the Federal Bureau of Investigation, as the government concedes." *Id.* at 1255 (internal quotation marks omitted). Indeed, the Court of Appeals noted that the government had asserted to a sister circuit that it "is not TSA but another agency within the government that makes the determination that an individual . . . should be placed on . . . the No-Fly List." *Id*. at 1254 n.6. Accordingly, "[b]ecause putting Ibrahim's name on the No-Fly List was an 'order' of an agency *not* named in section 46110, the district court retains jurisdiction to review that agency's order under the [Administrative Procedure Act]." *Id.* at 1255 (emphasis in original).

Chief Judge Kozinski explained that the court's holding was "consistent not merely with the statutory language but with common sense as well." *Id*. at 1256. He continued:

> Just how would an appellate court review the agency's decision to put a particular name on the list? There was no hearing before an administrative law judge; there was no notice-and-comment procedure. For all we know, there is no administrative record of any sort for us to review. So if any court is going to review the government's decision to put Ibrahim's name on the No-Fly List, it makes sense that it be a court with the ability to take evidence.

5 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Id.* (citation omitted). The Court of Appeals remanded Ibrahim's claims for further proceedings.

The underlying facts supporting the Circuit's decision in *Ibrahim* remain in place: the No Fly List is administered by the TSC, not by TSA; it is the former, rather than the latter, that retains the authority to place individuals on the list and to remove them at its discretion. The Defendants' declarations in support of their Motion for Summary Judgment are in accord. The Deputy Director of the TSC has confirmed that the TSC is administered by the FBI, not TSA, and that it is the TSC that has the authority to "accept or reject" nominations to the government's consolidated terrorism watch list, from which the No Fly List is drawn. Decl. of Christopher M. Piehota ("Piehota Decl.") ¶¶ 4, 22. Although individuals who have encountered travel difficulties must seek redress through DHS, those complaints are forwarded to the TSC, which is responsible for any changes to the watch list. *Id.* ¶¶ 33-35.[2] And "TSC remains the final arbiter of whether terrorist identifiers are removed from the TSDB." *Id.* ¶ 35.[3]

Relying on an unpublished district court opinion from Pennsylvania, Defendants seek to distinguish this case from *Ibrahim* on the ground that "redress was not an issue" in *Ibrahim*, and thus "*Ibrahim* did not present for consideration the issue of whether a

---

[2] *See also* Kennedy Decl. ¶ 10 (explaining that when passengers seek redress from DHS, DHS refers the complaints to TSC; thereafter, "TSC's Redress Unit notifies DHS TRIP as to the outcome of the review, and DHS TRIP then issues a determination letter.").

[3] Defendants complain that Plaintiffs "trivialize" the role of DHS in this process. Defs' Mem. of Law in Supp. of Mot. to Dismiss or for Summ. J. ("Defs.' Br.") 18. But it is DHS that has described itself as "an entity that is primarily a *consumer*" of watchlisting information. *Flight 253: Learning Lessons from an Averted Tragedy: Hearing before the H. Comm on Homeland Security*, 111th Cong. 6 (Jan. 27, 2010) (statement of Jane Holl Lute, Deputy Secretary of Homeland Security) (emphasis added), *available at* http://homeland.house.gov/SiteDocuments/20100127100900-30495.pdf.

DHS TRIP determination letter constitutes an order falling within § 46110." Defs' Mem. of Law in Supp. of Mot. to Dismiss or for Summ. J. ("Defs.' Br.") 19 (*quoting Scherfen v. DHS,* No. 08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010)). The court in *Scherfen* held that DHS TRIP determination letters were "orders" within the meaning of Section 46110, and that the district court was thus divested of jurisdiction over a pilot's claim that he had been placed on a terror watch list in error. 2010 WL 456784, at *11. Defendants likewise contend that DHS TRIP letters are "orders" that must be challenged in the court of appeals.

But in describing Plaintiffs' claims as "challenges to DHS TRIP determination letters," Defs.' Br. 2, or even to the DHS TRIP process itself, Defendants mischaracterize the nature of this suit.[4] Plaintiffs' suit challenges the government's actions in prohibiting them from flying without providing a constitutionally adequate means of redress. It is not a challenge to the letters that purport to implement the existing redress system. The First Amended Complaint alleges that "Plaintiffs are entitled to a legal mechanism that affords them notice and an opportunity to contest the deprivation of their liberty interests, including but not limited to their liberty interests in traveling, freedom from false stigmatization, and nonattainder due to their inclusion on terrorist watch lists that prevent them from flying on commercial airplanes." FAC ¶ 385. The Prayer for Relief seeks "an injunction that . . . requires Defendants to remedy the constitutional violations identified above, including the removal of Plaintiffs from any watch list or database that prevents them from flying" and "requires Defendants to provide Plaintiffs with meaningful notice

---

[4] Indeed, this suit was filed before most of the Plaintiffs had even received DHS TRIP letters, so it could not possibly be a "challenge" to those letters. FAC ¶¶ 211, 319, 358, 374 (indicating receipt of DHS TRIP letters by Bah, Ghaleb, Meshal, and Sat as of the filing of the Amended Complaint).

7 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

of the grounds for their inclusion on a government watch list, and an opportunity to rebut the government's charges and to clear their names." The government cannot transform Plaintiffs' broad constitutional challenge to the deprivation of their rights without due process into a challenge to a TSA "order" simply by issuing a letter that is wholly devoid of substantive content.

### B. DHS TRIP Letters are not TSA "Orders" Within the Meaning of Section 46610.

Under the law of this Circuit, TSA's TRIP determination letters are not "orders" at all: they do not "order" anyone to do anything, fix any legal rights, or take a position regarding Plaintiffs' claims. The letters do not inform the petitioners of the outcome of their redress complaints; there is no way to determine from the letters whether a petition for redress has been successful or not. And while some of the letters state that an "appeal" is available, the petitioners do not know *what* they are appealing, or even *whether* they should appeal.

An agency decision is an "order" under Section 46110 only if it "imposes an obligation, denies a right, or fixes some legal relationship." *Mace v. Skinner*, 34 F.3d 854, 857 (9th Cir. 1994) (discussing the predecessor provision, 49 U.S.C. app. § 1486 (1988));[5] *see also City of Dania Beach, Fla. v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007) (Section 46110 order "determines 'rights or obligations' or has 'legal consequences.'"). DHS TRIP letters do none of those things. They do not "ha[ve] a 'direct and immediate' effect on the day-to-day business of the party asserting wrongdoing" and do not "envision[] 'immediate compliance with [their] terms.'" *Mace*,

---

[5] 49 U.S.C. § 46110 was "formerly" 49 U.S.C. app. § 1486 and is interpreted consistently with that provision. *See Foster v. Skinner*, 70 F.3d 1084, 1087 (9th Cir. 1995).

34 F.3d at 857; *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980) (similar). The letters do not say whether an individual was on a watch list prior to receipt of a redress inquiry, they do not set forth the bases for any such inclusion, and, most critically, they do not say how the government has resolved the complaint at issue or specify whether an individual will be permitted to fly in the future. DHS "does not order anybody to do anything at the conclusion of" a DHS TRIP inquiry, so a DHS TRIP letter is a "'final disposition' of that proceeding" only in the "tautological sense" that DHS refuses to do anything more after issuing a letter: the letter is not an "order" because it "binds no one." *IT&T Corp., Commc'ns Equip. & Sys. Div. v. Local 134, Int'l Bhd. of Elec. Workers, AFL-CIO*, 419 U.S. 428, 443-4 (1975).[6]

Similarly, the letters do not meet the statutory definition of an "order" under the Administrative Procedure Act ("APA"), because they provide no "disposition" of a complaint.[7] An "order" is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). The letters that Plaintiffs received from the DHS TRIP program do not meet this definition, since they are neither "affirmative," "negative," "injunctive," nor "declaratory" in form.

---

[6] Defendants refer in their brief to TSA's "orders prohibiting boarding," Defs.' Br. 18, but DHS TRIP letters do no such thing: virtually identical letters are issued to travelers whether or not they are on the No Fly List. If Defendants are referring to the *decision* to deny boarding, as opposed to the letter, that decision is made by the TSC, not TSA.

[7] Section 46110 incorporates the APA's definition of "order" and adds a finality requirement. *See Air Cal. v. U.S. Dep't of Transp.*, 654 F.2d 616, 619-20 (9th Cir. 1981) (applying APA definition of order to Section 1486); *see also, e.g.*, *Vill. of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 68 (D.C. Cir. 2006) (looking to APA caselaw in applying Section 46110).

Moreover, to constitute an "order," a decision must "provide[] a 'definitive' statement of the agency's position." *Mace*, 34 F.3d at 857. Plaintiffs invoked the DHS TRIP process to restore their right to board commercial flights within the United States or over U.S. airspace, but the DHS TRIP letters take no position, let alone a "definitive" one, on that question. *See* Kennedy Decl. ¶ 11 ("DHS TRIP determination letters do not provide specific assurances about future travel."). Indeed, the Department of Homeland Security's own Office of the Inspector General ("OIG") has conceded as much, observing that TSA's responses to redress-seekers leave travelers "without a clear understanding of how their travel difficulty arose, whether they are likely to face future problems, and what course of action they might take next." Dept. of Homeland Sec. Office of the Inspector Gen., *Effectiveness of the Department of Homeland Security Traveler Redress Inquiry Program*, OIG-09-103 (Sept. 2009) at 89. The OIG noted that the DHS TRIP letters may not even accurately report that the government has investigated the individual's case and made any appropriate changes, because the Office of Transportation Security, which issues the letters, "has no authority over DHS components' or other agencies' redress personnel" who are "central to much of the case review and adjudication process," and is thus "in no position to ensure" the truth or accuracy of these representations. *Id*. at 30.

Finally, DHS TRIP letters are not "orders" because the agency that issues them does not create a record that would permit meaningful appellate review of any claims, let alone of the claims raised here. The "existence of a reviewable administrative record is the determinative element" in deciding whether a decision is an "order." *Sierra Club v. Skinner*, 885 F.2d 591, 593 (9th Cir. 1989). To the extent that any administrative record

is created, it is created by the TSC, not TSA; as the government's declarations make clear, TSA transmits traveler complaints to the TSC, which determines whether any action should be taken. Thereafter, "TSC's Redress Unit notifies DHS TRIP as to the outcome of the review, and DHS TRIP then issues a determination letter." Kennedy Decl. ¶ 10. Thus, the issuing agency does not even possess the substantive "derogatory information" that would be required for meaningful review; that information resides elsewhere.[8] If DHS TRIP letters can be described as "orders" of any agency, they are orders of the TSC; the TRIP process, according to its director, serves merely as a "central processing point." Kennedy Decl. ¶ 4.[9]

In short, DHS TRIP letters are issued by an office with no authority to resolve a dispute, do not purport to make factual findings or resolve any claims, have no legal effect, bind no one, and are not backed up by any administrative record that a reviewing

---

[8] The court in *Scherfen* posited that any deficiencies in the administrative record would work to the advantage of petitioners: "[i]f no records are produced [to the Court of Appeals], then Defendants would be hard pressed to defend their decision." *Scherfen*, 2010 WL 456784, at *10 n.8. But this reasoning is unpersuasive. Any "administrative record" created by the government would be entirely one-sided, comprised of untested allegations that the TSC Director has characterized as "fragments of information." Angela M. Hill & Brian Ross, *U.S. Government Sued by ACLU Over No Fly List*, ABC News, June 30, 2010, *available at* http://abcnews.go.com/Blotter/us-government-sued-aclu-fly-list/story?id=11054805&page=1. And the record would provide no basis for a reviewing court to adjudicate constitutional challenges to the redress procedures themselves.

[9] *Cf.* Shaina N. Elias, *Challenges to Inclusion on the "No-Fly List" Should Fly in District Court*, 77 Geo. Wash. L. Rev. 1015, 1030 (2009) ("While administrative agency structure can sometimes be a bureaucratic jungle, the assignment of responsibility for the No-Fly List is clear: TSC makes the list, and TSA enforces it. Thus the No-Fly List can only be considered an 'order' of TSA to the extent that criminal laws can be considered an 'order' of the police department or the country's decision to go to war can be considered an 'order' of the country's military troops.").

court could examine. They are therefore not "order[s] issued by . . . the Under Secretary of Transportation for Security" and do not fall under the jurisdictional provision of 49 U.S.C. § 46110(a).[10]

## II. DHS and TSA are not Indispensable Parties, but if this Court Determines Otherwise, They can be Joined.

Defendants contend that DHS and TSA are indispensable parties, but that TSA cannot be joined because its "orders" are not challengeable in the district court. DHS and TSA are indispensable, Defendants insist, because "[t]he Court cannot effectively order any changes to DHS TRIP without including the entities responsible for DHS TRIP." Defs.' Br. 18. But this argument fails for several reasons.

As explained above, the relief Plaintiffs seek is not a "change to DHS TRIP"—it is a constitutionally adequate process for adjudicating alleged violations of their constitutional and statutory rights. While that relief could come in the form of additional procedural protections within the DHS TRIP framework, assuming Defendants agreed to it, it would more logically come in the form of a new redress process operated by the governmental actors with actual authority to provide the relief sought. The mere fact that the government has chosen to make TSA a "processing point" and bureaucratic messenger for the decisions of the Defendants does not suffice to make TSA an indispensable party.

According to the government's own declarations, Plaintiffs have brought suit against the entities that possess the sole authority to place names on the No Fly List and

---

[10] That Congress has directed TSA to "establish a timely and fair process for individuals" to seek redress, 49 U.S.C. § 44903(j)(2)(G)(i), does not transform TSA letters into "orders" because, as Defendants concede, TSA is without authority to *provide* that redress.

12 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

to remove them from that list. This Court can therefore plainly "accord complete relief among existing parties," Fed. R. Civ. P. 19(a)(1)(A), and there is no need to join parties that do *not* possess the authority to provide the requested remedy.

However, even if this Court were to determine, as Defendants suggest, that the participation of DHS and TSA is necessary to the implementation of a remedy, there is no reason whatsoever why TSA cannot be joined, and Plaintiffs do not object to joinder of either party.[11] The putative barrier to TSA's joinder is 49 U.S.C. § 46110. As explained above, that statute has no bearing on the litigation or resolution of this case.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss should be denied, and the case should proceed in this Court.

        Steven M. Wilker, OSB No. 911882
        Email: steven.wilker@tonkon.com
        **Tonkon Torp LLP**
        888 S.W. Fifth Avenue, Suite 1600
        Portland, OR 97204
        Tel.: (503) 802-2040; Fax: (503) 972-3740
        Cooperating Attorney for the
        ACLU Foundation of Oregon

        s/ Ben Wizner
        ―――――――――――――――――――
        Ben Wizner (admitted *pro hac vice*)
        Email: bwizner@aclu.org
        Nusrat Choudhury (admitted *pro hac vice*)
        Email: nchoudhury@aclu.org
        **American Civil Liberties Union Foundation**
        125 Broad Street, 18th Floor
        New York, NY 10004

---

[11] Defendants' speculation that Plaintiffs did not sue TSA "because they knew they would face a jurisdictional bar to district court litigation," Defs.' Br. 18, is wrong. Plaintiffs did not sue TSA because TSA lacks the authority to remove them from the No Fly List and is thus powerless to provide them the remedy they seek. Plaintiffs have no objection to the joinder of DHS and TSA as defendants, and their joinder would not undermine this Court's jurisdiction, for the reasons stated *supra*.

13 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Tel.: (212) 549-2500; Fax: (212) 549-2654

Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6928

Ahilan T. Arulanantham (admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
**ACLU Foundation of Southern California**
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (admitted *pro hac vice*)
Email: jmass@aclunc.org
**ACLU Foundation of Northern California**
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Laura Schauer Ives (admitted *pro hac vice*)
Email: lives@aclu-nm.org
**ACLU Foundation of New Mexico**
PO Box 566
Albuquerque, NM 87103
Tel.: (505) 243-0046; Fax: (505) 266-5916

Reem Salahi (admitted *pro hac vice*)
Email: rsalahi@salahilaw.com
**Salahi Law**
429 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401
Tel.: (510) 225-8880
Cooperating Attorney for the
ACLU Foundation of Southern California

Mitchell P. Hurley (to be admitted *pro hac vice*)
Email: mhurley@akingump.com
Christopher M. Egleson (to be admitted *pro hac vice*)

Email: cegleson@akingump.com
Justin H. Bell (to be admitted *pro hac vice*)
Email: jbell@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002
Cooperating Attorneys for the
American Civil Liberties Union Foundation

Attorneys for Plaintiffs.