1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF OREGON

3   AYMAN LATIF, et al.,              )
                                      )   Case No. CV-10-750-BR
4              Plaintiffs,            )
                                      )
5   v.                                )   January 21, 2011
                                      )
6   UNITED STATES DEPARTMENT OF       )
    JUSTICE, Eric H. Holder, Jr.,     )
7   Attorney General, et al.,         )
                                      )
8              Defendants.            )
    ==================================)   Portland, Oregon

9

10              TRANSCRIPT OF PROCEEDINGS

11                  (Oral Argument)

12

13      BEFORE THE HONORABLE ANNA J. BROWN, DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23   COURT REPORTER:          AMANDA M. LeGORE, RDR, CRR, FCRR, CE
                              U.S. COURTHOUSE
24                            1000 SW Third Avenue Suite 301
                              Portland, OR  97204
25                            (503)326-8184

```
 1    APPEARANCES:

 2    FOR THE PLAINTIFFS:      BEN WIZNER
                               NUSRAT JAHAN CHOUDHURY
 3                             American Civil Liberties Union
                               Foundation
 4                             125 Broad Street, 18th Floor
                               New York, NY 10004
 5                             (212)519-7876

 6                             KEVIN DIAZ
                               ACLU
 7                             PO Box 40585
                               Portland, OR  97240
 8                             (503)227-6928

 9
                               STEVEN WILKER
10                             Tonkon, Torp, LLP
                               888 SW Fifth Avenue, Suite 1600
11                             Portland, OR  97204
                               (503)802-2050

12

13    FOR THE DEFENDANTS:      DIANE KELLEHER
                               Department of Justice
14                             Civil Division
                               Federal Programs
15                             PO Box 884
                               Washington, DC  20044
16                             (202)514-4775

17                             AMY ELIZABETH POWELL
                               U.S. Department of Justice
18                             Civil Division
                               20 Massachusetts Avenue NW
19                             Suite 7322
                               Washington, DC  20010
20                             (202)514-9836

21

22

23

24

25
```

1            (Friday, January 21, 2011; 1:30 p.m.)

2

3                    P R O C E E D I N G S

4

5          THE COURT:  I apologize in advance.  I have a cold,

6  and if I need to interrupt your presentations with coughs, it's

7  not intentional.

8          We are here for argument on the Motion to Dismiss the

9  Government defendants filed in the case of Latif versus Holder,

10  which is Civil No. 10-750.

11          Counsel, would you all please introduce yourselves,

12  since I'm not sure I've had the pleasure.

13          MR. WILKER:  Your Honor, Steven Wilker for the

14  plaintiffs.  With me are Kevin Diaz of the ACLU of Oregon,

15  Nusrat Choudhury, and Ben Wizner of the National ACLU, who will

16  be handling the argument today.

17          THE COURT:  Mr. Wizner will be?

18          MR. WIZNER:  I will.  And Ms. Choudhury -- if you hear

19  argument on the Motion to Strike, Ms. Choudhury will speak to

20  that.  And I will speak to the Motion to Dismiss, your Honor.

21          THE COURT:  All right.  Good afternoon.

22          MS. KELLEHER:  Your Honor, Diane Kelleher and Amy

23  Powell on behalf of the defendants.  We're both from the

24  Department of Justice.  And I will be addressing Motion to

25  Dismiss, and Ms. Powell will be addressing the Motion to

4

1    Strike.

2            THE COURT:  All right.  Before we get to those

3    arguments, I need help understanding the nature of the claim or

4    claims the plaintiffs seek to bring, and I think you can

5    understand why.

6            The Court has explicit precedent it must follow from

7    the Ninth Circuit decision in **Ibrahim**.  I am struggling to

8    parse the decision that does control my view of my ruling on

9    issues that are raised in this case.

10           And I'm trying to understand how that decision applies

11   to what it is the plaintiffs are purporting to include in their

12   complaint.

13           One of the problems is that the plaintiffs' complaint

14   does not comply with Rule 8.

15           It is not a plain and concise statement of the facts

16   or the elements of a claim.  And plaintiffs need to file an

17   amended complaint at some point, and I'll direct you when,

18   because there is not any way this complaint, in the form

19   presented, can be litigated according to the rules of

20   procedures.  It is an evidentiary recitation of a number of

21   experiences the plaintiffs have encountered.

22           That's not how one writes a complaint for relief in

23   federal court.

24           I can't even tell if you're suing under Section 1983

25   or some other gateway.  I don't know what the basis is for you

1    to be in court in the first instance, because I can't tell.

2    You're alleging a claim for attorney -- for attorney fees in

3    your prayer.  I can't tell where that arises.

4          I think it is necessary, before the Court is expected

5    to analyze whether the plaintiffs have stated a claim or

6    whether there's jurisdiction, for the plaintiffs to do the work

7    necessary to ensure that, as presented, the complaint or an

8    amended complaint actually alleges plainly and concisely the

9    elements of a claim.

10         There are 90-plus pages in the First Amended

11   Complaint.  86 of them go to reciting evidence.  And then we

12   get to a section called claims, but I'm not even told what they

13   are, and I'm not told what structure plaintiffs are invoking in

14   order for there to be an analysis in the first instance.  So I

15   would like, first, to start with giving the plaintiffs an

16   opportunity to explain to me what is the gateway you're using

17   to be in federal court.

18         Is this intended to be a Section 1983 claim?  A **Bivens**

19   claim against the federal actors?  What is it?

20         A breach of a constitutional right is ordinarily

21   presented in the form of a Section 1983 claim or in the section

22   of some statutory claim that's invoked:  Title VII, the ADA.

23         I don't see any orientation in this complaint.  Maybe

24   I'm missing it.  But I -- I really need foundation before we

25   can get to the loftier issues I know you're eager to discuss.

1          MR. WIZNER:  First and foremost, your Honor, the claim

2   seeks only -- the lawsuit seeks only injunctive and declaratory

3   relief.  So it's most certainly not a **Bivens** claim.  There is

4   no claim for damages included in this lawsuit.

5          And the basis for jurisdiction is the Administrative

6   Procedure Act, which is cited in the complaint as a basis for

7   jurisdiction.  And we allege that defendants' actions in

8   preventing our clients from boarding commercial aircraft and by

9   thereafter not providing a constitutionally adequate process

10  for them to remove themselves from Government watch lists

11  violates both the APA and the due process clause of the

12  Constitution --

13         THE COURT:  It's the due process clause part that

14  causes me concern because, when a person comes to federal court

15  to allege the violation of a constitutional right generically,

16  that is typically framed as a Section 1983 claim or a **Bivens**

17  claim.  A claim against a state or a federal actor that a

18  person's constitutional rights have been violated.

19         And so I'm -- I'm struggling, when you get to this

20  undefined due process right, to understand the context in which

21  I'm supposed to evaluate the sufficiency of the claim.

22         MR. WIZNER:  Your Honor --

23         THE COURT:  I get that an APA claim is an APA claim.

24  One has to have a procedure, and then one goes through an APA

25  analysis.

1          But when you go beyond that to say, And we have a

2    federal constitutional right to this or that or the other

3    thing, and the defendants are depriving us of that right, there

4    needs to be a procedural vehicle, doesn't there?

5          MR. WIZNER:  Well, your Honor, the APA can in fact be

6    a procedural vehicle for the litigation of our constitutional

7    claims, as well as of our statutory claims.  And I'm just

8    looking at what else we've invoked.

9          THE COURT:  Well, this is the problem with the

10   complaint.

11         As I say, at 90 pages, it is not a plain and concise

12   statement of the facts.  It is not an articulation that says,

13   plainly, plaintiffs are invoking the jurisdiction of this court

14   under the Administrative Procedures Act to redress the

15   following and, in so many words, state the claim.

16         MR. WIZNER:  And, your Honor, with respect to the

17   length of the complaint, perhaps the majority of those factual

18   allegations were relevant to claims that have since been

19   resolved in connection with our preliminary injunction.

20         So it's very likely --

21         THE COURT:  So imagine -- imagine a clean slate.

22         And imagine you were telling me what the allegations

23   of plaintiffs' complaints were, in a plain and concise way.

24         What would you tell me?

25         MR. WIZNER:  The allegations of this complaint are

 1    precisely what I just said, your Honor.  That -- that

 2    plaintiffs have a constitutionally protected liberty

 3    interest -- several liberty interests that have been

 4    identified:  In being free from unconstitutional stigma, in

 5    being able to travel without undue restrictions, in

 6    nonattainder.  And that the Government's having placed them

 7    into this federal terrorism watch list, without giving them any

 8    constitutionally adequate process for removing themselves,

 9    violates their rights under the Fifth Amendment and the

10    Administrative Procedure act.

11          THE COURT:  So at page 87 of the First Amended

12    Complaint, under something you call a count for procedural due

13    process, the use of the nomenclature "counts" is also quite

14    confusing in the way you've styled this.  But let's just get to

15    paragraph 384.

16          It is alleged plaintiffs are entitled to a legal

17    mechanism that affords them notice and an opportunity to

18    contest their inclusion on terrorist watch lists.

19          Plaintiffs are entitled to a legal mechanism that

20    affords them notice and an opportunity to contest the

21    deprivation of their liberty interests, including but not

22    limited to the interests you've just summarized.

23          Then it's alleged defendants have violated plaintiffs'

24    rights without affording them due process of law, and will

25    continue to do so in the future.

 1          Now, when one looks at those allegations in the

 2   context of the issue -- one of the issues raised by the

 3   defendants' Motion to Dismiss specifically, the jurisdictional

 4   limitation to have a judicial review of an order of the TSA in

 5   the Court of Appeals for the District of Columbia, it's

 6   important to me to know whether plaintiffs are alleging -- for

 7   example, in paragraph 384 -- that contesting their inclusion is

 8   an opportunity that should occur before they are placed on an

 9   alleged terrorist watch list.  Because it would be much more

10   clear what it is plaintiffs were focusing on.  And it would be

11   easier to apply **Ibrahim,** which focused -- and to distinguish

12   the other cases we've been talking about -- which focused upon

13   the end of the process, as opposed to the beginning of the

14   process.  So --

15          MR. WIZNER:  I can clarify that.

16          THE COURT:  I don't mean to be critical, but the

17   complaint is an essential tool in trying to analyze this moving

18   target.

19          I need you to tell me what is the process that you --

20          MR. WIZNER:  Right.

21          THE COURT:  -- what is the process?  Where in the

22   process does the court -- trial court's jurisdiction stop?  Are

23   you on the side of the process in terms of its continuity,

24   where the -- a trial court might have jurisdiction to consider

25   the issues?  Or are you on the part of the continuum where it

1   is absolutely clear that only the Court of Appeals in the

2   District of Columbia has jurisdiction?

3            Where in a continuum, then, does **Ibrahim** fall that

4   controls me?  And I can't even ask the defendants to make their

5   argument until I know more what it is you're asserting.  So --

6            MR. WIZNER:  Your Honor, can I --

7            THE COURT:  -- will you help me, please.

8            MR. WIZNER:  I would like to answer the question you

9   specifically raised there, which is what kind of process and at

10  what stage are we saying that our plaintiffs have due process

11  rights.

12           And I had thought we had been clear, and I apologize

13  if we weren't.  That we are not seeking pre-deprivation notice.

14  We have never claimed and do not claim that individuals have a

15  right to be notified that they are going to be placed on a

16  watch list before they're placed on a watch list.  This case is

17  about post-deprivation notice.

18           THE COURT:  So do you -- do you mean, then, in

19  paragraph 384, to use the word "inclusion"?  Or do you mean to

20  allege there to contest their continuation?

21           Because inclusion implies the decision to include them

22  in the first place, as opposed to -- and you've just told me

23  you're not contesting the notion that the Government might be

24  able to make a decision to include a plaintiff in the first

25  instance.

1          What you want is, somewhere else along the way, a

2     process --

3          MR. WIZNER:  Right, your Honor.  From the moment that

4     an individual attempts to board a plane and is turned back, is

5     not permitted to board the plane, when it -- essentially that

6     person, we believe, has been put on some kind of notice that

7     the Government has an interest in that person.  From that

8     moment we believe that due process requires a name-clearing

9     hearing.  An opportunity for that person -- preferably before

10    the agency, if the agency has a process that meets

11    constitutional minimums; if necessary, in the federal court, if

12    the agency refuses to do that -- that gives that person notice

13    of the charges and an opportunity to rebut any evidence or

14    innuendo.

15         THE COURT:  So I'm still back at paragraph 384.  And

16    I'm still confused by --

17         MR. WIZNER:  By the wording.

18         THE COURT:  -- what continuum do you contend --

19    Counsel, it won't be helpful if you keep pulling on his sleeve.

20    I've got to have his attention, please.

21         What is the continuum where the process ensues --

22    where in the process, critical to **Ibrahim** and the statutory

23    limitation of this Court's jurisdiction is it you contend there

24    is room for district court jurisdiction?

25         I thought you were going to tell me you did want a

1    process before inclusion, and that's why your case is different

2    from **Ibrahim**, and that's why this Court might have a basis not

3    to dismiss the complaint.

4            But you've just taken that off the table.

5            MR. WIZNER:  Well, we think our case is not different

6    from **Ibrahim** but covered by **Ibrahim**, for the reason that in

7    **Ibrahim**, the decision maker -- the person who was responsible

8    for what we believe is the constitutional injury and is capable

9    of providing relief -- is not the TSA.  And so that there can't

10   be an order of the TSA involved when --

11           THE COURT:  But you just told me that the process you

12   want is at the gate, is at the airport.  That's what TSA is all

13   about.

14           MR. WIZNER:  No.  I'm sorry, your Honor.  I didn't

15   mean that the process was at the gate.  I meant, that at that

16   point there needs to be a process, either before the agency or

17   in a court, that is available to someone in that situation.

18           I'm a little confused by your questions about **Ibrahim**,

19   because our belief that this case is covered by **Ibrahim** doesn't

20   depend on this continuum question but on the core fact that

21   here, as in **Ibrahim**, it's an entity called the Terrorist

22   Screening Center, and not the TSA, that is capable of

23   effectuating the relief that we seek.

24           The defendants -- sorry.  The -- there are

25   declarations submitted by the Government that concede that TSA

1    is not responsible for placing our clients on a No Fly List,

2    and it is without authority to remove them from a No Fly List.

3    That those decisions are controlled by the TSC, which is

4    controlled by the FBI.  That was the core holding of **Ibrahim.**

5    And that's why we believe this Court has jurisdiction.  Because

6    at whatever point in the process it occurs, it can't be an

7    order of the TSA.

8           But -- but --

9           THE COURT:  Why can't it be an order of the TSA if

10   what you're telling me is you want process after your clients

11   run into trouble at the airport?

12          That's what you just told me.

13          MR. WIZNER:  Right.  After our clients run into

14   trouble at the airport, they seek a place where they can turn

15   and get relief from that trouble.

16          The Government has created a kind of mechanism that

17   involves applying for redress to TSA and to DHS.  The problem

18   with that mechanism is that neither TSA nor DHS has any

19   authority to provide the relief that our plaintiffs and other

20   travelers are seeking.

21          And this is why -- again, as in **Ibrahim** -- it is

22   another --

23          THE COURT:  What do they have the authority to

24   provide?

25          MR. WIZNER:  Well, that's an excellent question.  And

1    that's really a question for opposing counsel.

2         According to TSA's declarations, they receive the

3    complaints from the travelers.  They then forward them to the

4    Terrorist Screening Center.  The Terrorist Screening Center

5    reviews the situation, consults with other Government agencies,

6    makes a decision about whether the -- the -- the complainant

7    should be on the No Fly List or not, reports that decision to

8    the TSA, and the TSA then writes a letter to the complainant.

9         Now, those letters say virtually the same thing every

10   time.  They say, If there was an action that we should have

11   taken, we took it.

12        And I don't think that there is any case cited by the

13   Government, or in existence, in which a so-called final order

14   of an agency, number one, was written by an agency that doesn't

15   have authority over the issue in question; and No. 2 --

16        THE COURT:  Your view of the TSA here is that it is

17   simply a bureaucratic arm of the defendant decision makers?

18        MR. WIZNER:  In this case, it is.  In fact they

19   describe themselves as a central processing point.  That's in

20   the TSA's declaration in this case.  They say they are a

21   central processing point.  They relay the decision of the

22   Terrorist Screening Center to the individuals.

23        And, again, I haven't seen any case cited by the

24   Government anywhere where, No. 1, the letter is issued by an

25   entity that is not the decision maker and doesn't have

 1    authority over this decision; and, No. 2, doesn't take a

 2    position on the relief requested.

 3            THE COURT:  What did Congress mean, then -- let me try

 4    it another way.

 5            MR. WIZNER:  Yeah.

 6            THE COURT:  What did Congress mean, then, when it

 7    limited appellate review or judicial review to the particular

 8    forum identified, the Court of Appeals of the District of

 9    Columbia?  What is it that Congress has authorized only that

10    court to consider?

11            MR. WIZNER:  Well, if you look at a case like **Gilmore**,

12    the Ninth Circuit's decision in **Gilmore**, there you had a

13    security directive of the TSA.

14            It was the TSA's own policy that the TSA promulgated

15    and enforced and had authority to enforce on the ID

16    requirements for boarding a plane.  There was no dispute

17    between the parties that this was a TSA security directive.

18            The No Fly List, according to **Ibrahim**, is a security

19    directive of the Terrorist Screening Center.

20            So if those letters are orders at all -- and for a

21    variety of reasons, we don't think that the letters that our

22    clients got are orders, because they don't meet the criteria

23    for being orders in the first place.  But if they are orders,

24    they're orders of the Terrorist Screening Center that are

25    simply relayed by TSA.

1          I -- I -- I want to go back to your question about

2    Congress.  It is true, as defendants point out, that Congress

3    did charge TSA and DHS with setting up a redress process.

4          This was the argument that the United States put

5    forward in the **Ibrahim** case, and it's the argument that the

6    **Ibrahim** dissent made in saying that for that reason these were

7    orders.

8          But, again, it was the dissent.  And the majority of

9    **Ibrahim** said that the determinative point was that it was a

10   separate Government agency that was at -- responsible for

11   creating and maintaining the No Fly List.

12         THE COURT:  What is the status of the holding in

13   **Ibrahim**?  That case is still pending?

14         MR. WIZNER:  The Government might be in a better

15   position to answer that.  It is a very confusing case.  Claims

16   against lots of different parties.  Some for damages, some for

17   injunctive relief.

18         It was being litigated simultaneously in two circuits:

19   In the Court of Appeals for the D.C. circuit and also in the

20   Ninth Circuit Court of Appeals.

21         Some of the claims have been dismissed, some have been

22   settled.  And I don't know if there's still a pending appeal in

23   **Ibrahim**.  I think there is still a pending appeal in **Ibrahim**.

24   But the --

25         THE COURT:  So, Mr. Wizner, back to the complaint,

1    what it is you're seeking to litigate on behalf of your

2    clients.  You've clearly, in 80-plus pages of evidentiary

3    allegations, asserted they've all encountered difficulties;

4    either trying to travel out of the United States or to return

5    to the United States using the airlines.  And that they believe

6    that they've been designated onto a list in some manner, by

7    some Government action.  I get that.

8            You're contending that each of your clients -- the

9    citizens and those who are otherwise lawfully here -- have a

10   Fifth Amendment due process right once they -- once they each

11   become aware that they have been flagged for secondary

12   screening or have been affirmatively designated not to fly,

13   even though they learn that through hearsay or some other

14   mechanism, because it seems the official vehicle is still -- if

15   you are on the list, we've done what we're supposed to do to

16   ensure that you're either there or not there appropriately.

17           But your contention is once they know, once they've

18   encountered a problem, it is at that stage they're entitled to

19   some process different from the redress process?

20           MR. WIZNER:  Yes, your Honor.  And I should clarify

21   just a little bit.

22           You've described the relief we're seeking.  It may

23   well be that our clients have Fifth Amendment rights that begin

24   at an earlier point.  We recognize that the Government has a

25   much stronger interest in not providing notice before our --

1    our people have had difficulty flying.  Because it may well be

2    that there are people on the No Fly List who are on criminal

3    wanted lists, who -- who really have warrants out there for

4    their arrests.  And to send them a letter saying, You're on the

5    No Fly List would be a tipoff.  And that's why our lawsuit

6    doesn't challenge that part of the No Fly List.

7         We say, once the travelers have been functionally

8    notified, that interest really disappears.  They disagree.  We

9    think it does.

10        And at that point the constitutional minimum would be

11   a process that gives them some meaningful notice of the reason

12   for the Government's decision that they can't board a plane,

13   and some fair opportunity for them to rebut that evidence.

14        THE COURT:  What is the APA claim, then, that you are

15   stating?

16        Let's say for those of your clients who are actual

17   citizens of the United States.  What is the claim for relief,

18   and what are its elements?  Because I can't find them in your

19   complaint.

20        MR. WIZNER:  The -- the gravamen of the APA claim,

21   your Honor, is that the Government's actions in preventing our

22   clients from flying commercially and implicating various

23   interests that we've identified, without at the same time

24   providing them any kind of a fair process for getting out of

25   that situation, is arbitrary and capricious.

1          And -- and that -- that is -- that's how our complaint

2     sounds in ADA language.  But it's --

3          THE COURT:  In APA --

4          MR. WIZNER:  Sorry.  APA not ADA.  That's exactly

5     right.

6          And, again, ideally, your Honor, the result of this

7     litigation, if the Court were to agree that the existing

8     redress process is constitutionally inadequate, a process in

9     which travelers are free to provide whatever information they

10    want to the Government but are never told whether they are or

11    are not on a list, are never given any reason whatsoever for

12    why they may be on a list, there's no hearing before an

13    administrative law judge -- which was one of the factors that

14    Chief Judge Kozinski mentioned in **Ibrahim** for why it needed to

15    be in district court.

16         But if the Court were to agree that the existing

17    redress process were unconstitutional, ideally the agency would

18    respond by creating a process that met those constitutional

19    minimums.

20         It may be that in this case, if the agency were slow

21    to do that, that kind of process would take place here, in the

22    district court.  Where if the Court agreed that our clients had

23    a right to notice and an opportunity to be heard on this

24    deprivation, that a procedure could be established for our

25    clients, in this court, to do that.

1          But we certainly don't disagree with the Government,

2     that the agency should have a chance, in the first instance, to

3     create a process that meets those constitutional safeguards, as

4     they do in many, many other circumstances.  If an alien is

5     going to be removed from the country, there is a hearing before

6     an administrative law judge.  Sometimes there's secret

7     evidence, sometimes there isn't.  But there -- there is a

8     process that exists.

9          Here, we believe that the deprivation that our clients

10    have suffered has constitutional significance.  That their due

11    process rights are being violated.  And in those circumstances,

12    the -- the redress process that the Government set up, that

13    affords no notice, that sends the same letter to a complainant,

14    whether that person is or is not on the No Fly List, they will

15    get the same kind of letter.  The only way they can find out if

16    they're still on the list is by risking this injury again:  The

17    monetary and reputational harm of buying another plane ticket,

18    going to an airport, being turned away.

19         We believe that's unconstitutional, and that under the

20    due process clause, the agency is required to provide more

21    process.

22         THE COURT:  I'm still troubled that the complaint

23    itself doesn't explicitly allege discrete claims for relief in

24    an elemental way.

25         So back to my invitation to you to imagine you were

1    starting over.  What would you allege?  Do you have one claim

2    for relief?  Do you have more than one claim for relief?  Do

3    your clients, who have different statuses, have different

4    claims?  Why have you denominated pages 88, and on, in counts

5    that are part of the same claim?  If your -- are you making an

6    APA claim on its own?  And these are different theories for the

7    same argument about an arbitrary and capricious governmental

8    agency action?  Or do you have a separate stand-alone

9    constitutional Fifth Amendment due process claim that you're

10   making?  In which case, I continue to think that's a claim that

11   needs a vehicle, like a Section 1983 claim, or something.

12        You don't just throw constitutional language into a

13   complaint.  You need a vehicle for relief, and you need a basis

14   to recover attorney fees, and so forth.

15        So tell me what -- what is the outline of your -- of

16   the elements of your claim or claims?  How many of them are

17   there?  How many of your plaintiffs fit under which one?  So

18   that I can try to understand what the Government's dismissal

19   arguments are against your theories, framed that way.

20        MR. WIZNER:  Your Honor, I think the case is

21   simplified at this point because of the resolution of our

22   claims under the Fourteenth Amendment and under the Immigration

23   and Nationality Acts, by virtue of the Government providing the

24   relief that we requested, which was the repatriation of those

25   clients, subject to suitable screening procedures.

1          And although the Government did, once again, press a

2     defense against those claims in its Motion to Dismiss, it may

3     very well be that those claims are moot.  And that if we were

4     to amend at this time with these plaintiffs, we would not be in

5     a position to raise those claims.  And that simplifies it

6     because the remaining plaintiffs in the case are all making

7     precisely the same claims.

8          THE COURT:  Claim or claims?

9          MR. WIZNER:  Claims.

10         THE COURT:  All right.  Delineate them, please.

11         MR. WIZNER:  Yes.  So they are making constitutional

12    claims, a right to procedural due process under the

13    Constitution.  And if your Honor is correct, that we did not

14    frame these through the appropriate jurisdictional vehicle --

15         THE COURT:  I don't know or not.

16         I just don't see -- I don't see how the door's been

17    opened.  I just see a lot of allegations, and -- and a

18    conclusion.

19         We all know, under **Iqbal** and otherwise, that the

20    complaint has to be plausible.  There have to be facts

21    concisely stated that point to a right to recover some kind of

22    relief.

23         And I can't start analyzing a Motion to Dismiss,

24    except maybe the jurisdictional arguments.  And I surely won't

25    be able to get to all of these summary judgment arguments that

1    have been forced so quickly until -- until there is a defining

2    of what is the precise claim, what are the precise claims, and

3    what are their elements, such that I can look at this from an

4    analytical perspective.

5            So I'm inviting you to tell me each claim that you

6    think is either there explicitly or implicitly, and what are

7    the elements of each such claim.

8            MR. WIZNER:  Okay.  So, your Honor, the -- the basis

9    for the procedural due process claim is that our clients have

10   identified various liberty interests, the deprivation of which

11   trigger -- trigger a right to notice and an opportunity to be

12   heard.  And I do think that we spelled out what those liberty

13   interests were --

14           THE COURT:  Yes.  Yes, you have.

15           MR. WIZNER:  -- properly in the complaint.

16           THE COURT:  Well, I don't know if it's properly.  But

17   you've alleged that your clients have the liberty interests,

18   including but not limited to the interests in traveling,

19   freedom from false stigmatization, and nonattainder due to

20   their inclusion.

21           MR. WIZNER:  Right.  And the relief that is requested

22   through that claim is a process that -- as I've said like a

23   broken record and I apologize -- affords them meaningful notice

24   and --

25           THE COURT:  Meaningful notice of what?

1              MR. WIZNER:  Meaningful notice of the basis for the

2    deprivation.

3              In short, they have a right to know why.  And as your

4    Honor is familiar, in other circumstances there may be

5    procedures that are necessary.  Maybe they'll get unclassified

6    summaries of the evidence that the Government is relying upon.

7              It may not be that they get to open up the

8    Government's files and see everything that's inside.

9              But, at a minimum, they need to know why the

10   Government is not allowing them to fly.  And they need to know

11   that well enough so that they have an opportunity to say

12   either, That's not me, That's not true, or I can explain that.

13             THE COURT:  All right.  That's one claim or more than

14   one claim?

15             MR. WIZNER:  No, it's one claim.  It's a procedural

16   due process claim.

17             THE COURT:  Are there other claims?

18             MR. WIZNER:  Yeah.  There's an independent claim under

19   the Administrative Procedure Act on the basis that the same

20   challenged conduct is arbitrary and capricious and contrary to

21   constitutional rights, which the APA permits.

22             THE COURT:  All right.  Are there any other claims

23   that should have been explicitly laid out or are implicitly

24   laid out here besides your procedural due process claim and the

25   APA claim you've just identified?

1          MR. WIZNER:  The only other claims that were laid out

2     are ones that probably are not live at this stage of the

3     litigation, for --

4          THE COURT:  So for purposes of our discussion today,

5     is it safe for me to assume we have two claims for relief on

6     the table?

7          MR. WIZNER:  Yes.

8          THE COURT:  Okay.  So let's talk about this procedural

9     due process claim.

10          You're indicating that at the time one of your clients

11     receives a red light at the airport, they've gone, they can't

12     get their boarding pass, or they're pulled aside in screening

13     or in some manner.  They're not allowed simply to step through,

14     to get to the gate, to get on an aircraft.  Somewhere in that

15     process, your clients are entitled to notice why they've been

16     held aside, and an opportunity to respond?

17          MR. WIZNER:  Correct.  Before some kind of neutral

18     decision maker.

19          And typically this would take place within the agency,

20     but the agency has not yet set up a process that permits that.

21          THE COURT:  And how does that contention of your

22     presumed right -- your client's right to a hearing there or in

23     some manner that allows them to -- to proceed with their

24     otherwise fundamental right to travel, how does that compare to

25     the specific process that the statute refers to as within the

1    exclusive jurisdiction of the District of Columbia Court of

2    Appeals?

3              MR. WIZNER:  Well --

4              THE COURT:  You're saying that when your client says,

5    Why, I'm entitled to know why, that whatever happens after that

6    is not in any way an order of the TSA that is subject to that

7    exclusive jurisdiction.

8              MR. WIZNER:  The question under that statute is

9    whether our clients have disclosed an interest in an order of

10   the TSA.

11             So the first question is what is that order.  The --

12             THE COURT:  Is there an order?

13             MR. WIZNER:  Yeah.  First of all, is there an order?

14   What is it that order might be?

15             The Government contends that that order is the letter

16   that is sent by an arm of TSA to our clients and others.

17             THE COURT:  After the fact?

18             MR. WIZNER:  After they have submitted applications

19   for administrative redress.

20             So the way that it occurs and the way that we

21   described in our complaint, is that someone who has been turned

22   away from a flight may then appeal to the Department of

23   Homeland Security for redress through a process that has been

24   set out.

25             Typically they'll go to a Government-run website.

1          And there they're invited to submit any information

2    they want.  The problem is they're not told what they should

3    submit that evidence in response to, and they don't know what

4    it's about.

5          All they know is that they weren't allowed to board a

6    plane.  They haven't been told whether or not they're on a

7    watch list.  They have to guess at that.  And the Government

8    says that the vast majority of people who in fact do turn to

9    this mechanism are not on Government watch lists.  But they

10   have no way of knowing that.  And they still don't know that

11   after they get a response, because the letter says, We've

12   reviewed this.  If we should have taken an action, we did.

13   And -- and that's really all it says.

14         And so we submit that someone who receives one of

15   those letters is in precisely the same position after he

16   received it than he was in before he received it.

17         He either is or is not on a Government watch list.  It

18   takes no definitive position, as the law requires.

19         So the Government's argument is this case belongs in

20   the Court of Appeals, because that letter is an order, and we

21   should appeal from that order to the Court of Appeals.

22         THE COURT:  I think there's a precursor to that logic.

23         That the process that your clients are entitled to is

24   the redress process.  And from the redress process comes a

25   decision in the form of this nondescript letter that itself can

1    then be appealed.

2            MR. WIZNER:  It could be, your Honor.

3            The Government surely could have set this up

4    differently; in a way that would make a letter like that an

5    order.

6            But what they would have to do is set up a process

7    where TSA was actually the decision maker.  Where TSA had

8    authority over the decision.

9            Where -- we believe, for it to be constitutional,

10   where our clients had a chance to present evidence.  Not just

11   randomly, but in response to allegations.  And then the letter

12   would have to deliver the outcome.  It would have to tell the

13   person, This is our definitive statement of the legal question.

14           Now, the -- the question is, Can I fly or not?  But as

15   the Government's affidavits make clear, DHS trip letters do not

16   take any position on whether the petitioner can or cannot fly.

17           And that's a categorical rule.  They don't sometimes

18   say you can fly and sometimes not.  They simply don't say

19   anything.

20           And so, again, someone at the end of this process, we

21   believe, is in precisely the same situation he was in before.

22           If you look at the other cases interpreting that

23   jurisdictional provision, it's -- it's -- it's a parachute club

24   that's complaining that new FAA rules say they can't jump from

25   where they want to jump.  And can you imagine a letter from the

1    FAA that said, We've reviewed your complaint, and either you

2    can jump or you can't.  But -- but really, for it to be

3    equivalent here, that letter would have to come from an entity

4    that really wasn't a decision maker.

5           So our belief is that **Ibrahim** is controlling precisely

6    for the reason that it is a separate government entity,

7    altogether, that is calling the shots.

8           THE COURT:  So as you've explained your two operative

9    claims to me this afternoon -- and I thank you for tolerating

10   my persistence there -- as you've explained them, your argument

11   is that the -- those claims cannot be dismissed for lack of

12   jurisdiction because none of them -- neither of them implicate

13   an order of the TSA that is being submitted for judicial

14   review?

15          MR. WIZNER:  That's correct, your Honor.

16          And we would go beyond that and say that the

17   jurisdictional statute doesn't contemplate the kind of

18   challenge that we're bringing to the validity of the existing

19   redress process itself.

20          That -- that if you look at the language of the

21   statute, what it contemplates is an appeal from that order; not

22   an attack on that system.

23          And, you know, we believe under **Mace v. Skinner** and

24   under **Ibrahim** that this case properly belongs in the district

25   court.

1          I mean, one of the other points that Judge Kozinski

2     made in **Ibrahim** is that shouldn't a case like this be in front

3     of a court that can take evidence?

4          And we don't see how we can litigate our due process

5     claims without evidence.  It may be we can litigate some of

6     them without discovery, but that's only because the parties are

7     able to jointly stipulate to facts.  The Court would still have

8     to do fact-finding.  And it may be that when we get to the

9     individual situations of our clients that there will be

10    discovery.  And it's hard to imagine what the Court of Appeals,

11    in the Ninth Circuit or the D.C. Circuit would do if presented

12    with these claims.  What kind of mechanisms it could set up.

13         I think that one way of looking at this is that, you

14    know, the cases that belong in the D.C. Circuit are there --

15    are those that involve, really, review of an administrative

16    record, that allows the court simply to look at what has been

17    produced and make its ruling.

18         And it's hard to see how if we filed this kind of

19    complaint or a streamlined version of it, your Honor, in the

20    Court of Appeals, that that court would be set up to resolve

21    the kinds of constitutional issues that we've raised here.

22         THE COURT:  All right.  Well, I appreciate those

23    orienting comments.

24         I think, now, I would like to hear the Government's

25    argument in support of the Motion to Dismiss for lack of

1    subject matter jurisdiction, in that context.  And then, of

2    course, you'll have a chance to speak again on that issue.

3              MR. WIZNER:  Thanks, your Honor.

4              THE COURT:  Thank you.

5              Counsel.

6              MS. KELLEHER:  Yes, your Honor.  In our view, this

7    case is different from **Ibrahim** because in that case essentially

8    Ms. Ibrahim's claim was backward looking.  It was looking

9    backwards at the initial decision to place her on the No Fly

10   List.  And she explicitly disclaimed any challenge to the

11   redress procedures that were available at that time.

12             In this case -- in this case, as Mr. Wizner's just

13   explained the claims, they're forward looking.  It's you've

14   encountered this travel difficulty.  And your next question is,

15   I think this happened to me because I'm on a Government watch

16   list.  How do I get off?

17             And the answer to that question is there is a redress

18   procedure currently available, administered by DHS and TSA, at

19   Congress's explicit command.  So that process, the DHA TRIP

20   process, is essentially the gravamen of the plaintiffs' claims

21   in this case.

22             In order for the Court to award the relief that they

23   are seeking, they need to persuade your Honor that the DHS TRIP

24   process is itself deficient and unlawful.  And TSA is the

25   entity that is charged with providing redress to persons who

1    allege that they were delayed or denied boarding.

2        And when they issue -- so Mr. Wizner's correct that

3    individuals who encounter travel difficulties of any kind --

4    and that's part of the reason DHS TRIP is described as a

5    central processing point.  So you may have been denied

6    boarding.  A T -- TSA employee may have been rude to you.  You

7    may have lost your bags.  Any of those situations, you're

8    directed to file a complaint with DHS TRIP, and it will

9    essentially investigate your complaint.

10       Now, the Government's never contended, your Honor,

11   that this process is entirely TSA, entirely DHS.  It does

12   involve other agencies, but it doesn't change the fact that

13   even though TSA's letter may be in part based on the work of

14   other agencies, the letter itself is still a final order.

15       The plaintiffs don't --

16       THE COURT:  How?  How is the letter a final order?

17       MS. KELLEHER:  I would say, your Honor, that it

18   expresses that the complaint has been finally resolved.  That

19   to the extent action can be taken, it was.  There's nothing

20   further left to do.

21       The letter is very different than those that are

22   involved in the cases cited in the plaintiffs' brief, such as

23   in **Air California**, or in the **Bensenville Village** case out of

24   the D.C. Circuit.  In those cases, in **Air California**, you had a

25   letter from the FAA to the Orange County board of supervisors

1    that says, If you do not open up the John Wayne airport to

2    other carriers, we may take the following types of disciplinary

3    action against you.  So there was an if.  It was contingent on

4    further action.

5              In the **Village of Bensenville** case, you had a letter

6    of intent from the FAA suggesting, hey, maybe we'll have some

7    additional federal funds as you expand the O'Hare airport for

8    an eight runway.  But we're not committing to those funds, and

9    basically this is just a way for you to get some private

10   development money to assist with your airport expansion.

11             So there was no commitment.  And the essentially the

12   real commitment would have come much later in the process, when

13   the city of Chicago would have actually applied for that

14   funding.

15             So in both of those cases, there was a clear sense

16   that there was still further action to be taken, and that the

17   agency's position was conditional, it was tentative, it was

18   nonfinal.  These letters -- the DHS letters, while I certainly

19   concede they do not contain as much information as Mr. Wizner

20   thinks they should, there is nothing tentative and there is

21   nothing conditional about them.  They tell the complainant that

22   their case has been reviewed.  That there is an administrative

23   record that says records have been reviewed.  So this DHS TRIP

24   process is very distinct from the concern that Judge Kozinski

25   articulated in **Ibrahim**, because there is an administrative

1    record.

2           And in fact, your Honor, the Government filed an

3    example of the certified index of record from the **Kataroff**

4    (phonetic) case, which is currently pending in the D.C.

5    Circuit.  Where Mr. Kataroff received a TRIP letter, waited for

6    the 60 days for it to become final, and filed a petition for

7    review in the D.C. Circuit.  And the Government has then come

8    forward with the record that will support its decision.

9           So in that sense we clearly have that record, which is

10   the basis for the agency's action.  And the letter itself says

11   that a final -- the complaint has been finally resolved.

12          So I think if you have a record and you have the

13   agency's expression of finality, of a finding, that is a final

14   order of TSA.

15          And the claims that Mr. Wizner and his clients wish to

16   bring about the TRIP process, generally, I think they would be

17   entirely appropriate in the Court of Appeals.

18          In the **Gilmore** case, Mr. **Gilmore** was very unhappy

19   about the requirement that he show identification in order to

20   travel from California to Washington.

21          And he also was unhappy about the -- the sort of plan

22   B in that situation, which was for him to go through secondary

23   screening.

24          He didn't like either of those options, and he sued

25   essentially saying that he thought they were unlawful.

1          The Ninth Circuit held that this was a challenge to

2   the final order of TSA, the directive that identification be

3   required, absent an agreement to secondary screening.  But it

4   also entertained his due process, his vagueness, and his

5   overbreadth challenges to those same security directives.

6          So I think in that --

7          THE COURT:  Just because the Court of Appeals

8   entertained them, didn't mean another court couldn't.

9          MS. KELLEHER:  Yes, your Honor.

10         THE COURT:  I'm not sure that helps me in sorting

11  through your jurisdictional argument, which is this Court does

12  not have subject matter jurisdiction at all.

13         MS. KELLEHER:  Yes, your Honor.  I should phrase it in

14  terms of its relationship to the final order.

15         That essentially if this case really boils down to a

16  claim, DHS TRIP is inadequate.  It's not good enough.  It

17  doesn't tell us what we want to know.  It doesn't give us

18  enough transparency.  We want a chance to be -- we want this

19  process brought forward, to be more transparent and open.

20         Essentially, they wrote -- the letter should say more,

21  and the process should be more open to them.  Those to me seem

22  they are -- they are tied to this letter that they get, which

23  is the consummation of the current redress process.

24         THE COURT:  And this differs from Chief Judge

25  Kozinski's analysis in **Ibrahim** how?

1          MS. KELLEHER:  Yes, your Honor.  I'll do my best to

2     distinguish it.

3          At first I'd say that in **Ibrahim**, what the Ninth

4     Circuit said was that the district court retained original

5     jurisdiction over **Ibrahim**'s claim regarding placement on the No

6     Fly List.  So I would say this is not really, as Mr. Wizner

7     just explained, a claim about incorrect placement.  It's a

8     claim about inadequate redress procedures.  So I would say

9     that's a first distinction.

10          Second, redress is specifically an obligation that

11     Congress has given to TSA and DHS.  And although --

12          THE COURT:  Is there something different between the

13     redress opportunity that is the subject of the statute and the

14     due process rights the plaintiffs are seeking to vindicate

15     here?

16          MS. KELLEHER:  No, your Honor.  I think essentially,

17     DHS TRIP is designed, at this point, to be the Government's

18     attempt to balance an individual's interests in traveling with

19     the Government's right to pre-screen passengers who wish to

20     board commercial aircrafts either in, to, or from the United

21     States.

22          So that -- the DHS TRIP process is designed to balance

23     those interests and it's administered by TSA.  And although it

24     involves other agencies, we certainly don't deny that.

25          We've never said it was a 100 percent TSA process, and

1    in fact I think that would actually be in contravention of how

2    Congress has asked for prescreening to occur.

3           We have set up the centralized watch lists to

4    encourage information sharing among our executive branch

5    agencies, and it would really make no sense for TSA to ignore

6    the conclusions or work of another agency simply to restart its

7    own work.

8           So essentially when --

9           THE COURT:  But if there is a part of process then, in

10   an agency other that TSA -- which is the subject of the limited

11   jurisdiction statute --

12          MS. KELLEHER:  Yes, your Honor.

13          THE COURT:  If there's a part of a process involving a

14   different agency, how could that jurisdictional limitation be

15   interpreted to preclude judicial review of that other agency's

16   activities?

17          MS. KELLEHER:  I wouldn't say that it would

18   essentially preclude it, your Honor.  It would simply --

19          THE COURT:  By a regular old district court?

20          MS. KELLEHER:  By a regular old district court; where

21   I am always, your Honor.  Unlike Mr. Wizner, we have a civil

22   appellate staff.  So I actually never get to go to the

23   appellate courts.

24          But I would say in that case, your Honor, the work --

25   the other -- the involvement of the other agencies, then, just

1    becomes part of that process.

2          Essentially, the TSA letter, at the end, is the

3    consummation of the person's attempt to get redress.  And it

4    involves TSA, TSC, and other agencies.

5          But the letter is sort of the ultimate outcome of that

6    process.

7          And I don't think TSA's just sort of the bureaucratic

8    messenger.  Because, first of all, they're part of the process

9    as well.  But, second, it's ultimately TSA that if you're on

10   the No Fly List -- and as your Honor knows, we don't confirm or

11   deny whether anyone is on the list.  But if someone is on the

12   list, they seek redress and they're successful, the decision is

13   made to remove them from the list.  They'll receive a letter

14   from TSA which won't actually tell them that, but behind the

15   scenes TSA will then remove them based on the TSA secure fly

16   database.  They will now be able to obtain a boarding pass.

17          THE COURT:  Whose decision is that?

18          MS. KELLEHER:  I think it's ultimately -- it's TSA's

19   decision, based on the work of other agencies and TSA.

20          I think it's sort of this entire process of

21   information sharing that goes on.  And TSA essentially includes

22   that decision when it communicates it to the individual.  And

23   it's also reflected, to the extent the person is successful --

24          THE COURT:  What was it Chief Judge Kozinski was

25   saying, then, in reversing the district judge on the

1 jurisdictional question in **Ibrahim**?  What was it he was saying

2 the district court had jurisdiction to determine?

3    MS. KELLEHER:  He said that -- I believe I had -- the

4 precise quote is, Her APA claim regarding placement of her name

5 on the No Fly List.

6    So in this case we would say we're distinct.  The

7 continuum that your Honor referred to earlier, this is

8 essentially a forward-looking claim as, this has happened to

9 me.  I've had this travel difficulty.  I would like to have

10 this not happen again.  I would like to get off this list that

11 I think I'm on.

12    Ms. Ibrahim's essentially was a backward-looking claim

13 which is nobody should have put me there in the first place.

14    THE COURT:  What is the status of the **Ibrahim** case?

15    MS. KELLEHER:  I believe, your Honor, it is as

16 Mr. Wizner has suggested.  It is a somewhat protracted case.

17 But I believe Ms. Ibrahim is still currently appealing the

18 district court's decision to dismiss the federal defendants on

19 standing.  So I think that is the live issue in the Ninth

20 Circuit.

21    I don't precisely know what's going on in the --

22    THE COURT REPORTER:  I need you to speak slower,

23 please.

24    THE COURT:  Way slower.

25    MS. KELLEHER:  I apologize.  It's a bad habit.

1      I believe the orders on discovery were vacated.  So

2  they're no longer live.  And then the other defendants settled

3  out.

4      THE COURT:  But we don't know, yet, whether there will

5  be review of Chief Judge Kozinski's authored panel decision?

6      MS. KELLEHER:  I think that decision is final, your

7  Honor.  I believe the Government sought en banc but was not

8  successful.

9      So essentially --

10     THE COURT:  But when the case is back before the

11 appellate court after a final decision, are you saying the

12 Government has foreclosed the opportunity to appeal that

13 decision?

14     MS. KELLEHER:  You know, I am uncertain, your Honor.

15 Perhaps --

16     THE COURT:  Probably you don't want to say that one

17 way or the other.

18     I'm trying to understand how final that decision is.

19 Clearly it is a published decision, and I am bound by it.  I'm

20 also trying to understand what it means, to apply it here.

21 But --

22     MS. KELLEHER:  I think when --

23     THE COURT:  Your view is that it's -- it is not in

24 play anymore?

25     MS. KELLEHER:  That's my understanding.  And I believe

1  when the Ninth Circuit takes up the issue that was remaining,

2  it had to do with her standing, essentially.  And so it was

3  limited to whether or not she had sufficiently discussed future

4  plans, and that sort of thing.

5        But I don't -- I don't think this part of the **Ibrahim**

6  case -- at least as we understand it -- is still in play.

7        So we would argue essentially, your Honor, that

8  we're -- since we're on the redress side and there's a specific

9  obligation for TSA, and we know from the records -- from the

10  DHS TRIP letters and the declarations we've submitted to your

11  Honor, there is an administrative record.

12        So Chief Judge Kozinski's concern that the appellate

13  court would be sort of at sea in trying to address the merits

14  of -- review the merits of a decision is unfounded here, not

15  only because the DHS TRIP letters say there's a record but

16  because we've even submitted to your Honor an index of such a

17  record in a case involving a petition for review of a DHS TRIP

18  letter.  The **Kataroff** case in the D.C. Circuit.

19        So the plaintiffs have a number of suggestions.  That

20  because there may be multiple agencies involved, a petitioner

21  might be left with no grounds to really -- the appellate court

22  would be left with no grounds to review the decision.  But

23  ultimately the Government would come forward with a record to

24  justify its conduct and its decision in the matter, just --

25        THE COURT:  Or not.

1          MS. KELLEHER:  Or not.  And simply -- if not, take the

2     risk that the petition would be granted.

3          But in the **Kataroff** case, which -- where he

4     received -- Mr. Kataroff received a letter identical to some of

5     the letters that the plaintiff -- the Latif plaintiffs have

6     received, the certified index of record has been filed.  It

7     lists over 100 things.  And the parties will be free to -- to

8     get into the merits of -- of that petition before the D.C.

9     Circuit.

10          THE COURT:  All right.  So in summary, the Motion to

11     Dismiss the complaint on the grounds of the lack of subject

12     matter jurisdiction should be granted because?

13          MS. KELLEHER:  DHS TRIP is a redress process that is

14     specifically within TSA's statutory obligations.

15          It -- the DHS TRIP letters that are sent out are final

16     orders of the TSA, because they definitively resolve the DHS

17     TRIP complaint, and they are based on an administrative record

18     related to review of that complaint.

19          THE COURT:  Is there a time limit for a traveler to

20     challenge a DHS TRIP letter?

21          MS. KELLEHER:  I believe it's 60 days, your Honor.

22          THE COURT:  And is there a time issue in this case,

23     relative to the filing of the complaint and those -- such

24     issues?

25          For example, if theoretically this action was

1    dismissed on the subject matter jurisdiction grounds you were

2    asserting, would that in fact leave the plaintiffs without any

3    review?

4         MS. KELLEHER:  You know, I don't know, your Honor.  I

5    haven't compared the filing of the initial complaint of June

6    30th of 2010 with the dates that the plaintiffs all received

7    their TRIP letters.

8         I know that when the complaint was filed, some but not

9    all of the plaintiffs had received their TRIP letters.  Some

10   received them after --

11        THE COURT:  After the --

12        MS. KELLEHER:  After the filing.  So I would think

13   there would probably be a tolling argument, which might be

14   available while this action was pending, but I don't know, your

15   Honor.  I haven't compared the dates.

16        THE COURT:  All right.  Then on that Motion to Dismiss

17   single ground -- are you finished?  I'm sorry, Counsel.

18        MS. KELLEHER:  Yes, your Honor.

19        THE COURT:  Okay.  Go ahead, Counsel.

20        MR. WIZNER:  Thanks, your Honor.  Just a few points.

21        Your Honor asked an extremely important question:

22   Whose decision is it?

23        And the answer to that is found in the Government's

24   own declarations, in the Piehota declaration.  Mr. Piehota is

25   with the Terrorist Screening Center.

1          He says --

2          THE COURT:  Would you spell that name, please.

3          MR. WIZNER:  P I E H O T A.

4          THE COURT:  Thank you.

5          MR. WIZNER:  There are two declarations from

6    Mr. Piehota.  I'm referring to the first one.

7          He said that the Terrorist Screening Center, the

8    defendant in this case, is the final arbiter of an individual's

9    watch list status.

10          It may well be that there are other agencies that

11   participate in this process.  But it's the Terrorist Screening

12   Center that is the final arbiter.  It decides if you're put on

13   the list.  It decides if you can be taken off the list.  It

14   transmits that information to other agencies that enforce it.

15   But it's the Terrorist Screening Center that is the ultimate

16   decision maker in this case.  And that's not me saying that.

17   That's the Government saying that in a sworn declaration.

18          Ms. Kelleher distinguished this case from **Ibrahim** by

19   saying that **Ibrahim** was backward-looking and this case is

20   forward-looking.  But in fact, as the Court of Appeals

21   described Ms. Ibrahim's complaint, she sought -- and I'm

22   quoting -- an injunction to remove her name from the No Fly

23   List.  So there certainly was some prospective injunctive

24   relief that was sought in that case.

25          And I -- although I do think it is possible to

1  distinguish this case from **Ibrahim**, if one is determined to do

2  so, I don't think that Judge Kozinski would expect this case to

3  be filed in the Court of Appeals after his decision.

4       In describing the DHS TRIP letters, Ms. Kelleher

5  stated why she believes that those letters are a definitive

6  statement of the agency's position, even if they don't

7  communicate that result to the complainant herself.

8       But I would say again that -- that in no case that the

9  defendant cited, or that I have located anywhere, has a letter

10  been determined to be an order.  If it was written by an entity

11  that didn't have the --

12       THE COURT:  The judge in the Eastern District of

13  Pennsylvania did, didn't he?

14       MR. WIZNER:  Except for the **Scherfen** case.

15       THE COURT:  Well, don't say no case.

16       MR. WIZNER:  I shouldn't say no case.  In the **Scherfen**

17  case, the judge in that case was persuaded by the dissent in

18  **Ibrahim**.  You are right.

19       THE COURT:  I am simply trying to be sure I had

20  correctly read that case.  Because when a lawyer tells me no

21  case, and I remember one that might be within the no-case

22  universe, I wanted to be sure I didn't remember it wrong.

23       MR. WIZNER:  It's one of my New Year's resolutions to

24  be more precise in my language, your Honor, so thank you.

25       THE COURT:  So other than that case.

1          MR. WIZNER:  Other than that.  And moreover, again,

2  DHS has described itself as primarily a consumer of watch lists

3  information.  That that's not the language of an entity that is

4  the decision maker here.

5          THE COURT:  Now, I'm sorry.  Which entity is the

6  consumer?

7          MR. WIZNER:  The Department of Homeland Security, of

8  which TSA is a part.

9          That really is the TSC, which is operated by the

10  F.B.I., that is the decision maker.  And it's the Department of

11  Homeland Security and the TSA -- and we cite to this in our

12  brief -- where they've described themselves as a consumer of

13  this.

14          If the Court were to determine that a DHS TRIP letter

15  actually is an order -- although we believe that it doesn't

16  meet the test for an order under the case law construing 46110.

17  But if the Court determines that it is an order, we would

18  submit that under **Ibrahim**, it's an order of the TSC and not an

19  order of the TSA, for the reasons I stated.

20          Ms. Kelleher again rightly pointed to the -- to the

21  fact that Congress has attempted to assign responsibility for

22  redress to DHS and to the TSA.

23          But I would just point out that the Government made

24  precisely that observation and argument to the Court of Appeals

25  in **Ibrahim**.

1          And, in fact, I looked at the Government's brief in

2     that case.  It's at 2007 Westlaw 1511928, at pages 13 and 14.

3          The Government made that argument, that although TSC

4     may be mostly responsible, TSA is involved, other agencies are

5     involved as well.  And Congress said that TSA had

6     responsibility.

7          The majority of the Court of Appeals rejected the

8     argument in that case.  Judge Smith, in dissent, essentially

9     formed his dissent around that very argument.

10         So I don't think that it's open to the Government to

11    press that argument or for the Court to rule on that basis.

12         THE COURT:  May I interrupt you there and ask for

13    Ms. Kelleher's thoughts on that particular point.

14         MS. KELLEHER:  Yes, your Honor.

15         In that, I would say that in **Ibrahim** the Government

16    was relying on the TSA's general responsibilities for aviation

17    security, whereas here we have a specific statute that Congress

18    has told TSA to establish a procedure to enable airline

19    passengers who are delayed or prohibited from boarding a flight

20    because the advanced passenger prescreening system determined

21    that they might pose a security threat, to appeal such

22    determination and correct information --

23         THE COURT:  What are you quoting from?

24         MS. KELLEHER:  That is 49 USC --

25         THE COURT:  49 USC.

1              MS. KELLEHER:  44903.

2         And so I would say here we have an incredibly specific

3    statute that is essentially right on point with the claims as

4    alleged by the plaintiffs in their complaint.

5         And in **Ibrahim** there was a -- the argument was more

6    about the general responsibilities of TSA for aviation

7    security, and the fact that they, at that point, transmitted

8    the No Fly List to the airlines.

9         THE COURT:  And while you're on your feet,

10   Mr. Wizner's point that **Ibrahim** also involved a request that

11   she be removed from the No Fly List, and he was distinguishing

12   your argument about backward-looking/forward-looking based on

13   that additional remedy she was seeking.

14             MS. KELLEHER:  Yes, your Honor.  She -- she did seek

15   injunctive relief.  I think had she only sought damages, she

16   would have needed to go to the Court of Claims.  So her

17   requested relief was removal from the list.  But her requested

18   relief was not a reevaluation of the existing redress process.

19        And -- and more to the point in **Ibrahim**, there were no

20   DHS TRIP letters sent to Ms. **Ibrahim.**

21        Essentially the argument about TSA's responsibility

22   stemmed from their general obligation to ensure the safety and

23   security of our nation's aircrafts.

24        Here we not only have 49 USC 44903, a specific

25   statute, but we have specific DHS TRIP letters that were sent

1  to all of the plaintiffs.

2          So that's where I would make -- see --

3          THE COURT:  So the Government's position is, in short,

4  the process the plaintiffs are due is encapsulated in the DHS

5  TRIP process?

6          MS. KELLEHER:  Yes, your Honor.

7          THE COURT:  And, by statute, the only redress from

8  that, if they're not satisfied with the process, is to go to

9  the Court of Appeals in the District of Columbia?

10         MS. KELLEHER:  Exactly, your Honor.  To take their DHS

11 TRIP letter.  And to the extent they would like to argue that

12 not only was whatever outcome from the redress either justified

13 or not justified, but that the entire process itself, as

14 Mr. **Gilmore** argued in his case to the identification

15 requirements, that the process is not sufficiently transparent

16 and does not comport with due process.  They're free to make

17 those arguments --

18         THE COURT:  Did the Ninth Circuit send Mr. **Gilmore**

19 there to do that?

20         MS. KELLEHER:  They did, your Honor.  I don't think he

21 met with success on those claims, but they did entertain them,

22 as -- that they were inextricably intertwined with his

23 challenge to --

24         THE COURT:  Well, we know what Judge Kozinski thinks

25 about that language, so we're not going to use that as an

1    argument.

2         MS. KELLEHER:  Yes.  And he did, I think, try to sort

3    of save the **Gilmore** case by saying that the issue was that

4    inextricably intertwined is acceptable when you're talking

5    about the claims that are being put forth by the plaintiff.

6         THE COURT:  As opposed to something that might be

7    intertwined with an order, whatever that is?

8         MS. KELLEHER:  Exactly.  Yes, your Honor.

9         THE COURT:  All right.  Okay.  Mr. Wizner, I

10   interrupted you, and I appreciate the indulgence.

11        MR. WIZNER:  I'm almost finished, your Honor.

12        But just to respond to the point about Congress.  You

13   know, this case challenges the redress system that exists, not

14   the one that Congress said should exist.

15        And it may be that Congress contemplated TSA having a

16   larger role, where TSA could -- in the words Ms. Kelleher

17   used -- correct any errors.

18        But the only correction that TSA is doing is at the

19   instruction of the entity that actually has decision making

20   authority.

21        It wasn't Congress that dictated that the Terrorist

22   Screening Center should be responsible.  That was a decision of

23   the executive branch, to -- to assign responsibility among the

24   various agencies and entities that are responsible for this.

25        Congress may very well have wished for a different

1    arrangement, but we are challenging the process as set forth in

2    the declarations of the defendants.  That's process that

3    exists, and the statutory language doesn't change that.

4            And finally, your Honor, about petitioning the Court

5    of Appeals, what --

6            THE COURT:  For the District of Columbia.

7            MR. WIZNER:  Well, I -- is it only the District of

8    Columbia, or could it be any court of appeals now?

9            MS. KELLEHER:  I think, your Honor, the plaintiff must

10   be present, which is why Mr. **Gilmore** was in the Ninth Circuit,

11   the San Diego helicopter --

12           THE COURT:  I must have misread that.  I thought it

13   was one of those limited courts of appeal.

14           MS. KELLEHER:  I believe it's essentially where the

15   petitioner resides.

16           MR. WIZNER:  So it would be --

17           THE COURT:  You're going to endear me to those

18   colleagues yet one more time.

19           MR. WIZNER:  Well, better than sending me to their

20   colleagues in the D.C. Circuit.

21           THE COURT:  Thank you for correcting me.

22           MR. WIZNER:  But, again, about -- about that petition

23   to the Court of Appeals, who exactly should invoke the Court of

24   Appeals' jurisdiction?

25           Under the current system, the answer would have to be

1    everyone who has gone through DHS TRIP.  Because even if, as

2    they say, more than 90 percent of the people who submit those

3    petitions were never on watch lists in the first place and even

4    if some other percentage of those people were successful in

5    their petition for redress, they would have no way of knowing

6    that, because they're going to get the same or substantially

7    the same letter from TSA that says we either did or didn't take

8    any action in this case.

9            You would then have thousands of petitions to the

10   Court of Appeals saying, I either am or I'm not on the No Fly

11   List.  I haven't been given any evidence.  I haven't seen any

12   record.

13           And I -- again, in none of the cases that are

14   construing this jurisdictional statute or its predecessor did

15   you have a situation where the putative order in question did

16   not state the agency's position in a way that would allow the

17   petitioner to know even whether to appeal, leaving aside what

18   to appeal.

19           So at a minimum -- at a bare, bare minimum -- the

20   petitioner should know whether their administrative redress has

21   been successful.

22           We contend that the Constitution requires considerably

23   more than that.  They would need to have some basis for knowing

24   what it is that they're challenging.

25           And this record, that goes to the Court of Appeals,

1    are a bunch of documents assembled by the Government alone.

2    And I suppose anything that the petitioner wants to submit --

3    but, again, in response to nothing; not knowing why the

4    Government has placed him in that position.

5         So I do think that certainly there's no case other

6    than **Scherfen**, that has been cited to this Court, in which this

7    kind of scheme has constituted a final order that is appealable

8    exclusively to the Court of Appeals.

9         Thank you.

10        THE COURT:  Okay.  Let's take about a ten-minute

11   break.  And then we'll focus on this motion to -- Motion to

12   Strike and next steps.

13        I want the parties to know that, as I indicated in our

14   earlier telephone conferences, I have not reviewed, looked at,

15   or considered in any way any of the ex parte materials that

16   have been submitted.

17        They went into a safe place, a SKIF.  And they're

18   sitting there, and they remain there.  So to the extent I've

19   been arguing with you today or considering your arguments, it's

20   based only on the -- the legal assertions.  And if there comes

21   a time when, in the processing of this Motion to Strike, you

22   come to a place where you expect me to be looking at those

23   things, then we'll change that status.

24        But right now, I'm still in the "I haven't looked at

25   them yet" part.  So I want to be sure you're all aware of that.

1              Okay.  Ten minutes, please.

2              (Recess taken.)

3              THE COURT:  Mr. Wizner, I would like to go back to

4    **Ibrahim**, if you don't mind.

5              MR. WIZNER:  I don't mind, your Honor.

6              THE COURT:  And if you have a copy of the case, the

7    actual case?

8              MR. WIZNER:  I do, your Honor (indicating).

9              THE COURT:  All right.  I can orient you best by

10   referring to headnote numbers.

11             In -- under headnote 1, before you get to headnote 2,

12   before -- before footnote 9.  In fact the sentence that's

13   immediately preceding the flag for footnote 9.

14             The -- that reads, quote:  The No Fly List is

15             maintained by the Terrorist Screening Center, and

16             Section 46110 doesn't apply to that agency's

17             actions.  The district court therefore retains

18             original jurisdiction over Ibrahim's APA claim,

19             regarding placement of her name on the No Fly List,

20             pursuant to 28 USC Section 1331.

21             All right.  See that statement?

22             And then in several lines, under headnote 2, is the

23   concluding sentence of that paragraph B, which is captioned,

24   "Policies and Procedures Implementing the No Fly List."

25             That concluding sentence reads, Therefore, Section

1          46110 stripped the district court of jurisdiction

2          it would otherwise have had over Ibrahim's APA

3          claim regarding the Government's policies and

4          procedures implementing the No Fly List.

5          MR. WIZNER:  I think that's a typo, your Honor.  And I

6   think that the Court meant to -- meant **Gilmore**'s, in context.

7          (Pause, referring.)

8          MR. WIZNER:  Or maybe not.  No.

9          THE COURT:  I don't think it's a typo.

10         MR. WIZNER:  No, maybe not.

11         THE COURT:  Here's what I'm thinking.

12         MR. WIZNER:  Let me read this.

13         (Pause, referring.)

14         THE COURT:  I think those are two distillations of the

15  spectrum of jurisdiction, at least in the Ninth Circuit and as

16  to which I'm beholden.

17         I propose -- what -- what I'm having difficulty with

18  is what I began the afternoon with, and that is trying to sort

19  out precisely from the record that has been superseded by

20  events, specifically the plaintiffs' complaint, what part of

21  plaintiffs' -- now -- two claims that are really of concern may

22  involve placement of their names on the No Fly List.  In which

23  case, Judge Kozinski says clearly Section 46110 doesn't apply.

24         And which parts of plaintiffs' claims involve the

25  Government's policies and procedures implementing the No Fly

1    List, in which case I don't have jurisdiction.

2            And what I'm suggesting --

3            MR. WIZNER:  (Nods head.)

4            THE COURT:  -- is this.  I think the plaintiffs should

5    file an amended complaint, especially with these two

6    standards -- opposing standards in mind.  So that I can tell

7    exactly what the claims are that plaintiffs are asserting, and

8    I can seek to apply binding Ninth Circuit precedent under also

9    the Rule 12 standards of **Iqbal** and the Rule of Procedure 8, and

10   come to a decision about whether plaintiffs' claims do or do

11   not fall at one end or the other of this jurisdictional

12   continuum.

13           And in that process I think I will be better able to

14   determine if I am dealing with an order of the TSA or something

15   else.

16           These -- these standards, from Judge Kozinski's

17   analysis, have to be squared with the plaintiffs' allegations.

18   They're two declaratory sentences about whether the district

19   court does or doesn't have jurisdiction.

20           And I'm not suggesting you plead them, but I'm saying

21   that they are real articulations the Court will have to take

22   into account in evaluating whether I have jurisdiction or I do

23   not have jurisdiction.  Whether your arguments about due

24   process, in other words, are in fact arguments about policies

25   and procedures implementing the fly list, such that I don't

1    have jurisdiction to consider your complaints on your client's

2    behalf; or whether your arguments about due process are more in

3    the nature of placing or removing names from the No Fly List,

4    such that a -- aligned with Judge Kozinski's decision there,

5    the matter was to be developed by the trial court.

6         Do you see what I'm saying?

7         MR. WIZNER:  I do, your Honor.  And I would just say

8    that I think -- I read this to mean something slightly

9    different.

10         That Judge Kozinski is not necessarily being as

11    precise as you are about the distinction between placement and

12    removal.  I think that he's referring to a watch list status.

13         THE COURT:  Well, what I'm seeing very precisely,

14    however, is that he explicitly said the district court would

15    not have jurisdiction over claims regarding the Government's

16    policies and procedures implementing the No Fly List.  And the

17    way you've been arguing about process and the redress system

18    seems driftingly close to that.

19         MR. WIZNER:  I don't think so, your Honor.

20    Respectfully, I think that the policies and practices

21    implementing --

22         THE COURT:  This is why I'm giving you a chance to

23    file an amended complaint, to be explicit about what claim

24    actually is being advanced, and pleaded in a way that can be

25    clear from the face of the complaint in a concise way.

1          I can then make a determination as a matter of law,

2     from the face of the complaint, as to whether Section 46110

3     closes the door for your clients in this court or not.  I think

4     that needs to happen, in lieu of my ruling on the Motion to

5     Dismiss.

6          MR. WIZNER:  We're very willing to file an amended

7     complete.

8          THE COURT:  I wouldn't snatch defeat from the jaws of

9     victory, if I were you.

10         You're trying hard to articulate a place where your

11    claims survive in the district court.  And I'm having an

12    ongoing problem holding onto that, because it is an illusive

13    kind of argument, when I go back to the complaint and I try to

14    evaluate what you're telling me in the face of the allegations

15    of the complaint.  It is the complaint that is the operative

16    document.  It is a Motion to Dismiss that complaint on

17    jurisdictional grounds.  And the very first obstacle that has

18    to be addressed in a principled way is the **Ibrahim** decision,

19    and the Court's declarations about what the district court did

20    have power to do and didn't have power to do.

21         And I think the plaintiffs need to face up to that and

22    plead concisely what it is that they contend brings them within

23    the district court's jurisdiction and pleads away from a claim

24    that involves policies and procedures implementing the No Fly

25    List.  Because that's what I think Judge Kozinski clearly said

1  was one basis for the court not to have power to proceed.

2          So willingness isn't really an option.  You may not

3  want me to rule on this motion on this record.

4          MR. WIZNER:  Right.  I am not actually trying to

5  snatch defeat from the jaws of anything.  I just want to be

6  clear about what it is that we need to plead when we --

7          THE COURT:  Well, I don't know what you need to plead,

8  because I don't know what you're pleading.

9          I continue --

10          MR. WIZNER:  Right.

11          THE COURT:  -- to be challenged, as I know all of us

12  are, by where the line is.

13          But jurisdiction comes first, and I have to be able to

14  articulate that there is a claim.  I have the authority to

15  require the defendants to answer in this Court.  At least to

16  the next step.

17          And I can't principally -- I can't do that in a

18  principled way, based on the complaint that I have and based on

19  these particular references to **Ibrahim**, which I'm bound to

20  follow.

21          MR. WIZNER:  Right.

22          THE COURT:  And so I think what plaintiffs need to do

23  is to file a new complaint.

24          You could, for example, withdraw without prejudice

25  those claims you think aren't any longer necessary or not.

1          But whatever it is you do, it needs to be not 90 pages

2     worth of evidence but an articulation of the specific two

3     claims, or more, that you want to parse out within -- among

4     other things -- these two standards.

5          MR. WIZNER:  I -- I understand, your Honor.  What we

6     have difficulty with is that we don't know what the Court is

7     referring to when it uses the term "policies and procedures."

8          And the reason why we don't know that is that if you

9     look at footnote 10, Judge Kozinski writes:

10              The precise policies and procedures are not known

11              to **Ibrahim** or to us, because the security

12              directive -- directive is sensitive security

13              information.

14          So --

15          THE COURT:  Well, it doesn't matter that you don't

16     know.

17          MR. WIZNER:  No, it does, though.

18          THE COURT:  All we know for sure is that if the claim

19     involves policies and procedures implementing the No Fly List,

20     it's a no-go here.  That's what we know from this case.

21          I do not have the power to let you go forward if your

22     claim comes within that ambit.  That's what this says.

23          MR. WIZNER:  Right.  And what I think is significant

24     about this footnote is that it gives us a frame for what is

25     meant by the term "policies and procedures," that distinguishes

1    it.

2         THE COURT:  And I'm inviting you to articulate your

3    claim in a way that excludes the proximity of your argument

4    from that -- that line, which you cannot cross.

5         Because if we are in a claim about policies and

6    procedures implementing the No Fly List, if in fact the redress

7    process is a policy and procedure implementing the No Fly List,

8    then the district court doesn't have jurisdiction, and that's

9    the end of your case here.

10         If you have a claim that's different than a claim

11    regarding policies and procedures implementing the No Fly List,

12    you need to articulate it in a way that makes clear I have

13    jurisdiction.

14         And I think part of the process is simply to boil it

15    down to your contention that it is the TSC.  You simply make

16    the allegation of the ultimate fact.  The TSC is the decision

17    maker that includes your clients on the list, if they're on the

18    list.  They do that without notice, without process, and

19    without an opportunity.  I don't know what your claim is.

20         MR. WIZNER:  Well, that is actually in our complaint,

21    what you just recited.

22         THE COURT:  Well, in 90 pages, I say again with

23    respect -- now, I'm not going to argue with you, Counsel.  If

24    you don't want an opportunity to amend, fine.  I'll rule on the

25    record.  But I can tell you you are not making it any easier

1    for this claim to go beyond a dismissal.

2          It is extraordinarily difficult to take what you're

3    arguing in theory and apply it to the standard from this

4    document.

5          Now, do you want an opportunity or not?

6          MR. WIZNER:  We do, and we will.

7          Again, I do think that we're going to have a

8    difficulty, only insofar as because the policies and procedures

9    are sensitive security information.  We don't know what they

10   are.

11         THE COURT:  Look, if you want to litigate in the

12   district court, you have to articulate a claim that is outside

13   the ambit of Section 46110, in a concise way, consistent with

14   Rule 8, and in a manner that allows me to process the claim

15   despite **Ibrahim.**

16         Your current complaint does not affirmatively make

17   that clear.

18         It is your obligation, as the pleading party, to show

19   I have jurisdiction.  You haven't.

20         Now, if you want an opportunity to do it, you may have

21   it, and I won't formally rule on the motion.  That's really

22   where we are.

23         A party needs to make clear the jurisdictional basis

24   of his, her, or their claim.

25         You have a very difficult problem, given the nature of

1   this serious dispute, but you have to articulate it.  And

2   throwing 90 pages of evidence, with conclusions, doesn't do it

3   in this circuit.

4           So take your pick.  I'll take the Motion to Dismiss

5   under advisement.  Or, instead of that, I'll give you an

6   opportunity to replead and give the Government a brief

7   opportunity to file a supplemental memorandum in support of a

8   Motion to Dismiss, against a repled complaint, with a reply

9   opportunity by you.

10          Those are our routes on the Motion to Dismiss part of

11  that big omnibus motion you filed.

12          How do you want to proceed?

13          MR. WIZNER:  We accept your invitation, your Honor, to

14  file an amended complaint.

15          THE COURT:  How much time do you want to do that?

16          Today is the 21st of January.

17          MR. WIZNER:  Two weeks will be sufficient, your Honor.

18          THE COURT:  And how much time would the Government

19  want to file a supplemental memorandum in further support of

20  the jurisdictional aspect of the motion?

21          MS. KELLEHER:  Could your Honor remind me?  I don't

22  have my calendar in front of me.  Where that -- the two weeks

23  from --

24          THE COURT:  Two weeks from today is February 4.

25          MS. KELLEHER:  I think two weeks would be fine, your

1    Honor.

2          THE COURT:  February 18th.

3          And then a reply.  Do you want one week, two weeks?

4          MR. WIZNER:  Two weeks, please, your Honor.

5          THE COURT:  March 4.

6          So with respect -- excuse me just a moment.

7          (Pause, referring.)

8          THE COURT:  To that part of Motion No. 43, which is a

9    Motion to Dismiss for lack of subject matter jurisdiction, the

10   Court defers ruling on the motion pending the filing of a

11   Second Amended Complaint by the plaintiffs, no later than

12   February 4; which complies with Rule 8 and which sets forth

13   the -- clearly, the nature of the claims proposed and a

14   jurisdictional basis for the claims in light of the

15   jurisdictional challenge under Section 46110.

16          I want -- I want you to do what you can to articulate

17   how a claim or claims -- your APA claim, your due process

18   claim, whatever claims you're going to proceed with, fit a

19   district court jurisdictional analysis in light of Section

20   46110 as interpreted by the Ninth Circuit, because that's where

21   you chose to sue.  Okay?  February 4.

22          Supplemental memorandum, in further support of that

23   part of Document 43, that is a jurisdictional motion to

24   dismiss, is due February 18; a reply, March 4.  And I will take

25   that part of the motion under advisement on March 4, without

1    any additional oral argument.

2            Now, was there something else on that you wanted to

3    talk about?

4            MR. WIZNER:  No, your Honor.

5            THE COURT:  Okay.  Let's talk about this Motion to

6    Strike, and whether it has status now or not.

7            I was a bit confused by the correspondence you sent.

8    I'm not sure it really resolves anything.

9            Who wants to talk to me about that?

10           MS. CHOUDHURY:  Your Honor, I'm happy to address that

11   issue.  Apologies if there was anything confusing in the

12   parties' joint letter.

13           THE COURT:  Well, what it sounded like to me was we

14   don't really need to you rule on the Motion to Strike, so long

15   as you can rule on the Motion for Summary Judgment without

16   looking at any of those materials.

17           But if you want to look at those materials, you could,

18   because we think we win the Motion for Summary Judgment anyway,

19   regardless of what's in those materials.

20           Which sounded to me like a pretty circular argument.

21           And if -- if people really don't care about those

22   materials, either withdraw them -- withdraw them.  If you care

23   about them, then they need to be dealt with appropriately in

24   the record.

25           So I'm -- I am confused about what it is the status is

1    of the Motion to Strike.

2          MS. CHOUDHURY:  Your Honor, the defendants' opposition

3    to that motion provided some of the first characterizations of

4    what's in the ex parte material.  So it changed the plaintiffs'

5    position with respect to our understanding of what's in them

6    and their potential impact on the -- what will be, if the Court

7    proceeds past a Motion to Dismiss stage, cross-motions for

8    summary judgment in this case.

9          Plaintiffs believe that even if the Court looks at the

10   ex parte materials, that there is a chance that we will -- and

11   we are confident that we will prevail on those cross-motions

12   for summary judgment.

13         And in speaking and conferring with the defendants, it

14   appeared clear from their opposition, as well as during our

15   conversations, that they're -- they're confident as well, that

16   if the Court does not review the submissions, that they may

17   prevail as well.

18         THE COURT:  So are you withdrawing the Motion to

19   Strike?

20         MS. CHOUDHURY:  At this point, your Honor, no, we are

21   not withdrawing.

22         What we would like the Court to do is to proceed --

23   you know, assuming, of course, that the Court proceeds past the

24   Motion to Dismiss, with the cross-motions for summary judgment

25   and to review those motions, to look at them.  And if the Court

1    deems that something in the ex parte materials is material and

2    dispositive of those motions, to then schedule a status

3    conference, so that we may address whether or not there are

4    issues, due process concerns that we raise in our motion and

5    would then address at that time.

6         Your Honor, in conferring with our clients, we, you

7    know, consulted with them and are very concerned that orders

8    issued in response to the motion to resolve some of the issues

9    that may not in fact be material, when the Court looks at the

10   Motions for Summary Judgment, may be the subject of

11   interlocutory appeals.

12        THE COURT:  Here's what I think we need to do.

13        The summary judgment record either needs to be

14   considered by the Court on the same playing field for everyone

15   to its logical conclusion, or not.

16        If the Government is satisfied that the summary

17   judgment record it's made, without reference to ex parte

18   materials, is sufficient to allow it to obtain summary

19   judgment, that's the record we should use.  Then the plaintiffs

20   are not at any disadvantage.  Plaintiffs have exactly the same

21   information as do defendants and the Court.  And the Court

22   isn't colored in any way, even inferentially, by reference to

23   material that the plaintiffs haven't been able to consider.

24        It's only if, going through that process, the

25   defendants would contend more information might change the

1    analysis, that it would seem to be warranted to go into the

2    process of dealing with protected information.

3            I've been frustrated, because I think you all have

4    complicated the procedures in this case significantly by

5    rushing into a combined Motion to Dismiss and for summary

6    judgment before we've even settled on, as noted, the

7    sufficiency of the plaintiffs' complaint.

8            So I think we're a bit of a cart before the horse

9    here, since I still don't even know if I have jurisdiction.

10           But with respect to the summary judgment part of

11   Motion 43, I don't know if the Government thinks that's still a

12   viable motion on the record it presented, because you all

13   haven't yet responded, or not.

14           This is the problem with charging forward on multiple

15   fronts before things settle.

16           So I don't think it is at all appropriate to leave it

17   to the Court to decide unilaterally whether something's

18   important or not, because there are very significant interests

19   at stake here for everyone.

20           And if -- it ought to be the party who wants the Court

21   to consider the material, who makes the case that it's

22   necessary to do that.

23           So my strong preference is for the moving party to

24   decide whether that material's necessary or not.  If it's not,

25   then we shouldn't have a problem.  We should all be able to

1    deal with the same record.

2            If it is, then we need yet another process to get in

3    the middle of the merits here, and that's a process to deal

4    with the process.

5            Counsel.

6            MS. POWELL:  To be very clear about the Government's

7    position, we do think we can prevail on the public record as it

8    is, recognizing that the plaintiffs disagree and that the Court

9    could -- we think it makes the most sense for the Court to have

10   the benefit of those materials --

11           THE COURT:  I disagree, and I'm not going to do it.

12           I am not going to go through a -- a process where I

13   have to anticipate objections, when the other side hasn't even

14   figured it out yet.

15           If you contend you're entitled to summary judgment on

16   a record that they may see, then we're going to go through that

17   process first.

18           MS. POWELL:  One last bit, then.  It could put the

19   Court in the awkward, perhaps impossible position of having to

20   make an advisory position -- opinion of what its --

21           THE COURT:  No.  No, no, no.

22           Motion for Summary Judgment puts the burden on the

23   moving party to show that the facts are undisputed, and you're

24   entitled to judgment as a matter of law.

25           If you have undisputed facts that are disclosed to the

1    plaintiff and there isn't an issue of material fact, we go

2    right to the legal arguments, and the record is plain and easy

3    for an appellate court to review.

4         MS. POWELL:  Right.

5         THE COURT:  If you contend there are facts that are

6    material, that can't be disclosed to the plaintiff, that's a

7    different motion.

8         You can't have it both ways, and I'm not going to take

9    on the responsibility of trying to infer whose interests are

10   being gored based on the evaluation of one piece of evidence or

11   another.

12        MS. POWELL:  Your Honor -- I'm sorry.

13        THE COURT:  So if the Government -- I think the

14   Government, first of all, needs to reevaluate its summary

15   judgment record after this amended complaint gets filed and

16   after we determine, first of all, is there jurisdiction.

17        If I conclude there's jurisdiction and we then have a

18   complaint that -- that clearly -- because a complaint

19   articulates a jurisdictional ground, then the Government needs

20   to figure out whether its existing summary judgment motion can

21   stand or it needs to reformat or refocus it, depending on where

22   the plaintiffs have gone.  Because you moved for summary

23   judgment before the plaintiffs were even out of the gate.  The

24   record is narrowing and narrowing and narrowing.

25        I am not going to take on a responsibility to try to

1    segregate information in my mind between what the plaintiffs

2    have seen and what they haven't seen, and then try to

3    anticipate their responsive argument to material they haven't

4    seen, if that's not necessary.

5              So I think the appropriate way to go is for -- first

6    of all, for us to finish this jurisdictional process.

7              Secondly, for the Government then to -- the Government

8    defendants to decide whether it wants to live with the summary

9    judgment motion it filed.  And, if so, it's going to need to

10   make clear the bases for the motion, without reference to

11   material that's not available to the plaintiff.

12             MS. POWELL:  I'm sorry --

13             THE COURT:  And then --

14             MS. POWELL:  Go ahead.

15             THE COURT:  -- and only then -- if the only basis on

16   which the Government contends it can prevail is for the Court

17   to take on the Classified Informations Procedures Act

18   processes, and all of those other issues that have to do with

19   protected or ex parte information, then we'll do that.

20             MS. POWELL:  Your Honor, we're certainly happy to go

21   forward as you suggest, in terms of dealing with the

22   jurisdictional issues first.  And --

23             THE COURT:  Well, you know what?  You don't get a

24   choice.  Jurisdiction is first.  I can't -- I can't rule on --

25             MS. POWELL:  I know -- I know, your Honor.  I was -- I

 1    was merely attempting to make clear what our position's likely

 2    to be.  I don't want to surprise the Court later.

 3            THE COURT:  Let's start over.

 4            What is it you want?

 5            MS. POWELL:  Your Honor, we can proceed as you suggest

 6    and deal with jurisdictional issues first, without objection

 7    from the Government.

 8            THE COURT:  We have to deal with the jurisdictional

 9    issue first.

10            MS. POWELL:  I understand.

11            THE COURT:  There isn't any one of us who has the

12    power to avoid it.  Jurisdiction first.

13            Once jurisdiction is decided, then what?

14            MS. POWELL:  The Government will move for summary

15    judgment --

16            THE COURT:  You have moved for summary judgment.

17            MS. POWELL:  I understand, your Honor.

18            THE COURT:  I'm asking --

19            MS. POWELL:  On the current -- sorry.  Go ahead.

20            THE COURT:  You see the problem is the record is hard

21    to manage because of the Government's initial decision of this

22    conjoined motion, very early, before the plaintiffs' theories

23    had even been clearly identified, before these other -- this

24    other relief was resolved, as to the people who were waiting

25    outside of the U.S. to come in, and so forth.

1          Here -- you have to decide whether the Motion for

2    Summary Judgment you originally filed is fine in its form.  And

3    if there's a way I can review it, without having to look at ex

4    parte material.  You have to decide whether that's possible.

5          If it is, and your existing record is okay, then

6    they'll respond to it, and we will go through a regular

7    process, and I'll determine, are there issues of disputed fact

8    or not?

9          If not, are you entitled to judgment as a matter of

10   law?

11         MS. POWELL:  It is possible, your Honor --

12         THE COURT:  Pardon me?

13         MS. POWELL:  I have a question for the Court, to make

14   sure I understand the Court's position.  Which is how would you

15   like us to proceed if we believe, as we have put forward thus

16   far, that the information is unnecessary but material?

17         In other words, relevant to the issues before the

18   Court, such that the Court disagreed with us, it would need to

19   look at those materials before ruling against --

20         THE COURT:  I don't know, since I haven't tried to

21   analyze your motion.  So I -- I --

22         MS. POWELL:  I could put forward to you our basis for

23   filing the ex parte materials, if that would be helpful.

24         THE COURT:  No, it wouldn't, because I haven't tried

25   to evaluate why you're moving for summary judgment or how you

1    best can do that.  I'm not an advocate here.

2             I'm trying to deal, first, with the most important

3    issue, and that is, do we have jurisdiction in this court?

4             I'm very frustrated by the fact that that was

5    intertwined with substantive motions that combined the

6    additional problem of filing ex parte material, all of which

7    drew all of the objections that are now on the table.

8             What I'm suggesting is we need to unpack some of this,

9    so that we have a logical process going forward.

10            One option is for the Government to withdraw all of

11   its motion, other than its motion -- other than its Motion to

12   Dismiss for lack of jurisdiction, and let me rule on it.  And

13   once that's ruled on, to take a look at what remains.

14            If there is jurisdiction, then to evaluate the

15   plaintiffs' real complaint, this Second Amended Complaint

16   that's going to be a concise statement that makes clear what

17   the jurisdictional basis is and makes clear what the APA and

18   due process claims are they're pursuing.

19            MS. POWELL:  Understood.

20            THE COURT:  And then decide, does it want to move for

21   summary judgment, or not?

22            And if it does, does it need -- does -- do you, as a

23   moving party, need to rely on material they're not going to get

24   to look at?

25            If you do, then we first ought to evaluate the

1    fairness of that process before you launch off on another round

2    of motions.

3            MS. POWELL:  I get -- I believe I understand your

4    Honor.  And we're happy to withdraw the Motion for Summary

5    Judgment until such time as the Court decides the

6    jurisdictional issue.

7            THE COURT:  That's only -- I'm only suggesting that --

8    you know, in a perfect world, what would have happened is you

9    all would have come in after the first complaint -- after the

10   first complaint was filed.  And we would have talked about a

11   series of motions that would have been logical in a

12   progression.  It wouldn't have caused people to file motions

13   and oppositions that couldn't have been addressed.

14           There has -- there's just been a lot of diversion

15   because of this process you launched into.

16           I appreciate the Government feels very strongly that

17   the plaintiffs' claims need to be shut down.  But there is a

18   process for that too, and we can only do one step at a time.

19           MS. POWELL:  Understood, your Honor.

20           THE COURT:  I'm not saying the Government's motions

21   have to be withdrawn.  I'm simply saying I'm not going to

22   address them prematurely.  I'm also not going to address them

23   in the first instance, based on information that the plaintiffs

24   don't have, unless the moving party contends the only way

25   they're entitled to summary judgment is by using information

1    not available to the plaintiff.  In which case, before we get

2    to summary judgment, we have to litigate the fairness of that

3    process.

4           MS. POWELL:  Understood, your Honor.

5           I suspect that what makes sense, should we get past

6    these jurisdictional issues, that when the Government moves for

7    summary judgment, it will -- would it make sense for the

8    Government to also say that if the Court cannot decide this on

9    the basis of the public record, we can offer additional ex

10   parte submissions, and provide a basis for doing so?

11          Does that make sense, as a logical way to proceed?

12          THE COURT:  No.  It does not make sense to me that you

13   put the Court in the position of assisting a party -- one party

14   or the other in obtaining a result, and that's -- that's how

15   I'm hearing you.  Because you're suggesting I read the record

16   in a way that says you don't win process A.  But if you do

17   process B, you will.  You're the moving party.

18          You have to decide what information you contend you

19   need for -- to prevail, if and when the record is ripe for

20   summary judgment.

21          The other issue is a summary judgment that comes on

22   the heels of a complaint being filed also precludes any

23   opportunity for discovery, if there's going to be discovery; an

24   evaluation of what other facts are out there.

25          I mean, if you all --

1          MS. POWELL:  I think the parties -- I apologize.  I

2     thought you were done.

3          THE COURT:  This really isn't advancing anything.

4          I'm simply explaining that right now the

5     jurisdictional motion remains pending.

6          MS. POWELL:  Understood, your Honor.  We'll consult

7     with our clients and reevaluate after the amended complaint is

8     filed.

9          THE COURT:  Okay.  The motion, which is Docket No. 43,

10    to the extent it concludes the alternative Motion for Summary

11    Judgment, it's still out there.

12         What about this Motion to Strike, then, for the

13    plaintiff?

14         MS. CHOUDHURY:  Your Honor, the Motion to Strike, you

15    know, will be withdrawn when the defendants withdraw the

16    summary judgment portion of that motion.

17         THE COURT:  All right.  Well, then I'm not making any

18    rulings on any of that, other than having set the schedule that

19    I've set.  And so I look forward to receiving an amended

20    complaint.  A hopefully concise supplemental memorandum that

21    simply points out where the jurisdictional line is not met, and

22    then a concise reply.  And then we'll get through the

23    jurisdictional piece.  And if, in the meantime, the Government

24    decides it wants to do something with those motions -- I

25    shouldn't say "something."

1          The only thing I would like to hear about is if you
2    decide to withdraw them, the remaining motions, in which case
3    you'll withdraw your Motion to Strike.
4          If you don't want to withdraw them, that's okay.
5    We'll work with what you've got.  But we have to take it one
6    step at a time.
7          MS. KELLEHER:  Your Honor, if we were to withdraw
8    them, would we simply file a notice informing the Court of the
9    docket entries?
10          THE COURT:  Right.  Right.
11          MS. KELLEHER:  Okay.  And just, your Honor, in terms
12    of -- I wanted to give some background, in terms of our
13    including both the Rule 19 jurisdictional issue and the merits.
14          When we spoke with your Honor on the phone in August,
15    we had understood that the -- generally the Court doesn't -- is
16    not in favor of sort of motions that don't necessarily advance
17    the case if they're denied.
18          And so we sort of have included both in the sense that
19    if your Honor is unpersuaded by our jurisdictional argument,
20    essentially, then the Court could proceed with the merits.
21          THE COURT:  Well, you're probably used to dealing with
22    way smarter judges than I.
23          MS. KELLEHER:  No, your Honor --
24          THE COURT:  There is only so much we can process.
25          Jurisdiction is clearly a very big deal here.  And

1   it's not a very clear issue, given the case law and given the

2   nature of what it is the plaintiffs are arguing and the

3   defendants are arguing.

4           This has sort of overtaken everything, and we need to

5   get this straightened out in a legitimate and careful way.

6           If the case continues, then we need to figure out

7   what's next.  Which is, are the plaintiffs entitled to

8   discovery before they're put to the burden of having to answer

9   a summary judgment motion, or not?

10          Or have you all decided that enough of the material

11  facts are already well known and undisputed that you got that

12  record, and now we're just going to go to do they have a claim?

13          MS. KELLEHER:  We did have some of that back and forth

14  with counsel.

15          THE COURT:  I know you did.  I know you did.  It's

16  just that you're trying to do too much simultaneously, and

17  maybe you can do that with a smarter judge.  This one can't.

18  We're going to do it one step at a time.

19          I need to be confident that we have the authority to

20  act, if we're going to get into any of that.  And I also think,

21  just as a matter of fairness, if we're going to have a process

22  in which either party asks the Court to consider information

23  not available to the other, that we have a process to ensure

24  that's the only way we can go forward.

25          There are occasions when that happens.  In the

1    criminal setting, it happens a lot.  And it's a very

2    uncomfortable place for the Court to be, because it does put

3    the Court in the position of having to anticipate the

4    counterarguments that an advocate would be making, when that

5    advocate doesn't even know what it is that's being proffered.

6         So I far prefer the usual open and spirited process of

7    the type we've been engaged in.  And if we can process the case

8    that way, great.  If we can't, and I must engage in the review

9    of ex parte material, I will.  But only if we have to.

10        MS. KELLEHER:  Well, we'll certainly take that back.

11   And we apologize, to the extent the -- it seemed as if we were

12   rushing the issues for the Court.

13        THE COURT:  Everybody's anxious to get a decision.

14   Unfortunately, it's a tough process that we have to take very

15   carefully.  These are important issues for everybody.

16        And I appreciate, Counsel, all of your work.  Please

17   don't take my earnest questions the wrong way.  I want to be

18   sure we get this right.  I want to be sure we're in the right

19   court when you litigate.

20        So let's -- let's take it -- this -- the next steps,

21   and we'll do just that.

22        So all I -- the only order I'm entering today is

23   plaintiff has leave to file a Second Amended Complaint,

24   compliant with Rule 8, and that lays out a jurisdictional

25   basis, so that I can continue to evaluate the jurisdictional

81

1    challenge on the Motion to Dismiss.

2             We'll do those two briefs, and then we'll go from

3    there.  Okay?

4             Anything else for this afternoon?

5             All right.  Thank you.  Safe travels for those of you

6    who have come a distance.

7             We're in recess on this matter.

8             (Conclusion of proceedings.)

9

10

11

12

13                            --oOo--

14

15   I certify, by signing below, that the foregoing is a correct

16   transcript of the oral proceedings had in the above-entitled

17   matter this 31st day of January, 2011.  A transcript without an

18   original signature or conformed signature is not certified.  I

19   further certify that the transcript fees and format comply with

20   those prescribed by the Court and the Judicial Conference of

21   the United States.

22

            /S/ Amanda M. LeGore

23          _____

24            AMANDA M. LeGORE, RDR, CRR, FCRR, CE

25