TONY WEST
Assistant Attorney General
Civil Division

SANDRA M. SCHRAIBMAN
Assistant Branch Director
Federal Programs Branch

DIANE KELLEHER
diane.kelleher@usdoj.gov
AMY POWELL
amy.powell@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C.  20001
Phone: (202) 514-4775
Fax:    (202) 616-8470
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| AYMAN LATIF, et al.,<br><br>       *Plaintiffs*,<br>v.<br><br>ERIC H. HOLDER, JR., *et al.*,<br><br>       *Defendants*. | Case 3:10-cv-00750-BR<br><br>**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 19(B)** |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 19(B)**

Plaintiffs' recently-filed Second Amended Complaint provides further support that this Court lacks jurisdiction over their claims.[1] Now that Plaintiffs' moot claims of "banishment" are no longer included in the Complaint, it is clear that their remaining claims are a challenge to the redress procedures in place for persons who have been delayed or prohibited from boarding a commercial aircraft as a result of their alleged inclusion on the No Fly list. As Plaintiffs' counsel stated at the January 21, 2011 oral argument "this case challenges the redress system that exists." Transcript, January 21, 2011 Oral Argument, at page 50 ("Transcript").[2]

These procedures, which are the statutory responsibility of the Transportation Security Administration ("TSA"), plainly fall within the category of "policies and procedures" implementing the No Fly List and are thus subject to the exclusive jurisdiction of the federal courts of appeal, pursuant to 49 U.S.C. § 46110 ("Section 46110"). Plaintiffs have not specifically addressed, in their Second Amended Complaint, why this Court has jurisdiction over their claims in light of 49 U.S.C. § 46110. Instead, their jurisdictional allegations make reference to general provisions governing lawsuits raising issues of federal law and requesting injunctive relief. *See* Second Amend. Compl., ¶¶ 24-28 (citing 28 U.S.C. § 1331 and 5 U.S.C. § 702). No one disputes that this case belongs in federal court, but the question is in *which* federal court, and Plaintiffs cannot show that this Court has jurisdiction over their claims.

## I.    THE *IBRAHIM* COURT AND CONGRESS HAVE BOTH TREATED REDRESS AS A "POLICY OR PROCEDURE" IMPLEMENTING THE NO FLY LIST

---

[1] The Court's Minute Order of January 21, 2011 (Docket No. 62) required the Plaintiffs to file "a Second Amended Complaint that is a plain and concise statement of their intended claims pursuant to Fed. R. Civ. P. 8(a) and that sets forth the jurisdictional and elemental bases for such claims," and allowed Defendants to file "a final memorandum in support of the jurisdictional challenges raised in their Motion (#43)." *Id.* Defendants hereby incorporate their prior filings on this issue, specifically, the arguments contained in their memorandum in support of their motion to dismiss (Docket No. 44), and their reply memorandum in further support of their motion to dismiss (Docket No. 53).

[2] These redress procedures are known as the Department of Homeland Security Traveler Redress Inquiry Program ("DHS TRIP").

At oral argument, this Court inquired where the redress process falls on the "continuum" that lies between district court and appellate court jurisdiction, as set forth in *Ibrahim v. DHS*, 538 F.3d 1250, 1256-57 (9th Cir. 2005). Transcript, at page 9-10. The answer is that redress falls on the appellate court side of that line, and to see this is the case, the Court need look no further than the *Ibrahim* decision itself. As the Court noted during oral argument, the *Ibrahim* decision provides that Government policies and procedures implementing the No Fly List are TSA orders, the review of which lies exclusively in the courts of appeal. Transcript at pages 54-57. Like the TSA procedures at issue in *Ibrahim*, the redress procedures at issue here constitute policies and procedures implementing the No Fly List. Further, unlike *Ibrahim*, Plaintiffs are not challenging their purported original placement on the No Fly List. Rather, as Plaintiffs' counsel articulated to the Court, they are challenging "the validity of the existing redress process itself." Transcript at 29. Specifically, they contend that this process, the DHS TRIP process, is not a "constitutionally adequate legal mechanism" through which to seek redress. Second Amend. Compl., ¶ 151.

Although Plaintiffs have brought this Complaint against officials at the Department of Justice, the Federal Bureau of Investigation ("FBI"), and the Terrorist Screening Center ("TSC"), the redress process Plaintiffs have sued over is a process that Congress specifically required *TSA* to establish for passengers who have been delayed or prohibited from boarding a commercial aircraft due to wrongful placement on the No Fly List. *See* 49 U.S.C. § 44903(j)(2)(C)(iii); 49 U.S.C. § 44903(j)(2)(G)(i); 49 U.S.C. § 44909(c)(6). After requiring TSA to set up its own redress procedure, Congress then required DHS to set up a similar procedure for persons delayed or denied boarding on a commercial aircraft who had been "misidentified" as someone on a watchlist. *See* 49 U.S.C. § 44926. DHS TRIP, which is administered by TSA's Office of

Transportation Security Redress, is the program that provides redress under these statutory obligations. Accordingly, when a passenger contends that he or she was denied boarding on a commercial aircraft due to alleged placement on the No Fly List, and then seeks redress, the redress process culminates in a DHS TRIP letter issued by TSA.

Furthermore, although the TSC considers whether changes are warranted to an individual's status on the No Fly List, it is TSA that implements the list by effectuating whether or not individuals may board an airline and by determining who may or may not obtain a boarding pass through the administration of passenger prescreening programs. Like the security directive at issue in *Ibrahim*, the redress process at issue here is a TSA responsibility that falls within the category of policies and procedures implementing the No Fly List. Additionally, as the only other district court to consider the issue has held, the DHS TRIP determination letters that Plaintiffs received are TSA orders within the meaning of Section 46110 that must be reviewed in the courts of appeal. *See Scherfen v. DHS*, No. 08-154, 2010 WL 456784, at *10 (M.D. Pa. Feb. 2, 2010) (finding DHS TRIP determination letters were "orders" within the meaning of Section 46110 and distinguishing *Ibrahim* on the grounds that it "focused solely on the question of whether placement on the No Fly List fell within § 46110.").

At oral argument, Plaintiffs characterized the government's jurisdictional arguments as a mere recitation of the logic of Judge Smith's dissenting opinion in *Ibrahim*. Unlike Judge Smith's dissent in Ibrahim, which relied on the diffuse and generalized responsibility of TSA for aviation security, here, the links between Plaintiffs' claims and a TSA "final order" are more precise and direct. The specific statutory grant of authority by Congress to TSA to provide redress in circumstances exactly like those alleged by Plaintiffs, as well as the actual letters Plaintiffs have received from TSA, demonstrate that this case involves a TSA "final order."

*See id*, at *10-11 (finding DHS TRIP determination letters were "orders" within the meaning of Section 46110).[3]

Indeed, in making TSA responsible for providing redress in this context, Congress implicitly recognized that TSA's decisions on redress would constitute TSA final orders pursuant to 49 U.S.C. § 46110 subject to challenge only in federal appellate courts. To the extent Congress wanted to make these kinds of decisions subject to challenge in district court, it has been free to act at any time since 2004, when it charged TSA with administering redress for travelers experiencing the same difficulties flying alleged by Plaintiffs. Congress has not done so.

In this action, Plaintiffs seek a new redress process. Yet, to fashion a new redress system without TSA would be inconsistent with how Congress has structured the redress process available to passengers who allege that they have been unable to fly because they have been placed on the No Fly List. TSA and DHS are thus necessary parties to this action. *See* Fed. R. Civ. P. 19(b) ("""If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."); *see, e.g., Republic of Phil. v. Pimentel*, 553 U.S. 851,

---

[3] Any challenge to a DHS TRIP letter like the ones received by Plaintiffs triggers an obligation on the part of the government to defend its actions, just as it has done in *Kadirov v. TSA*, No. 10-1185 (D.C. Cir. May 13, 2010), a case involving a challenge to a DHS TRIP letter similar to those received by Plaintiffs. In *Kadirov*, the government has submitted a Certified Index of Record to support its actions (Defendants submitted a copy of this index with their reply memorandum, s*ee* Docket No. 53-1). This demonstrates that the concern that there will be no administrative record for a court to review is unfounded; the declarations submitted by Defendants in support of their motion to dismiss conclusively establish that redress complaints are filed, investigated, and resolved based on relevant records, if any. *See* Declaration of James Kennedy, Docket No. 44-3, ¶¶ 8-13; Declaration of Christopher Piehota, Docket No. 44-1, at ¶¶ 30-36. Indeed, the DHS TRIP determination letters sent to Plaintiffs state that "applicable records" have been reviewed and that the letters constituted final agency action. *See* Kennedy Dec., ¶ 13, Exhibits A and B. While Plaintiffs contend that these records are selected entirely by the government (Transcript at 52-53), that is the case with many administrative records, and if the record is insufficient, the government faces reversal and remand by the court of appeal. *See generally Florida Power & Light v. Lorion*, 470 U.S. 729, 744 (1985).

5 -- DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 19(B)
Latif v. Holder, No. 3:10-cv-00750-BR

870-71 (2008) (recognizing that pursuant to Rule 19(b) an action should not proceed when the relief sought cannot be effectuated without additional entities that are not parties to the action). Because the claims at issue in this action concern TSA orders that are subject to review only in the courts of appeal, however, TSA cannot be joined here, and the Second Amended Complaint must therefore be dismissed.

## II.  NOTHING IN SECTION 46110 MEANS THAT FINAL ORDERS OF TSA CANNOT INVOLVE OTHER AGENCIES

While Plaintiffs repeatedly emphasize the fact that agencies other than TSA play a role in the redress process, they cite no authority for the proposition that TSA cannot incorporate the work of these other agencies in its final orders.  Nor would such a rigidly-drawn line make any sense.  Inter-agency collaboration is precisely the point of centralizing and sharing the contents of the Terrorist Screening Database and the No Fly and Selectee Lists.  Indeed, the lack of this kind of centralized information was specifically cited as a government failing by the 9/11 Commission.  *See* 9/11 Comm'n Report, Exec. Summary, at http://govinfo.library.unt.edu/911/report/911Report_Exec.htm ("The missed opportunities to thwart the 9/11 plot were also symptoms of a broader inability to adapt the way government manages problems to the new challenges of the twenty-first century. Action officers should have been able to draw on all available knowledge about al Qaeda in the government. Management should have ensured that information was shared and duties were clearly assigned across agencies, and across the foreign-domestic divide.").  In *Jifry v. FAA*, 370 F.3d 1174, 1177 (D.C. Cir. 2004), the D.C. Circuit considered a case in which the Federal Aviation Administration ("FAA") had revoked two airman certificates after "TSA sent letters to the FAA requesting that Captain Jifry and Captain Zarie have their airman certificates revoked, stating that '[b]ased upon

information available to us,' they presented 'a security risk to civil aviation or national security.'" The FAA then revoked the certificates, and the Petitioners filed suit in the D.C. Circuit against TSA and FAA. The FAA's order was still final, even though it was based on information it received from a sister agency. Plaintiffs' contentions about the scope of Section 46110 are overly narrow; in this case, where TSA has a statutory role to fulfill, and where TSA communications that are marked and treated as "final orders," are involved, Section 46110 applies and deprives this Court of jurisdiction over Plaintiffs' claims.

**CONCLUSION**

For the reasons stated above, and in the government's prior filings on this issue, Plaintiffs' Second Amended complaint must be dismissed, and judgment entered in Defendants' favor, because this Court lacks jurisdiction over Plaintiffs' claims pursuant to 49 U.S.C. § 46110.

Dated: February 18, 2011

TONY WEST
Assistant Attorney General

SANDRA SCHRAIBMAN
Assistant Branch Director
Federal Programs Branch

\s\ *Diane Kelleher*
_____

DIANE KELLEHER
AMY POWELL
U.S. Department of Justice
Civil Division, Federal Programs Branch
Tel:   (202) 514-4775
Fax:   (202) 616-8470
E-Mail: diane.kelleher@usdoj.gov

*Counsel for Defendants*