Steven M. Wilker, OSB No. 911882
Email: steven.wilker@tonkon.com
**Tonkon Torp LLP**
888 S.W. Fifth Avenue, Suite 1600
Portland, OR 97204
Tel.: (503) 802-2040; Fax: (503) 972-3740
Cooperating Attorney for the ACLU Foundation of Oregon

Ben Wizner (admitted *pro hac vice*)
Email: bwizner@aclu.org
Nusrat Choudhury (admitted *pro hac vice*)
Email: nchoudhury@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500; Fax: (212) 549-2654

Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6928

Ahilan T. Arulanantham (admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
**ACLU Foundation of Southern California**
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (admitted *pro hac vice*)
Email: jmass@aclunc.org
**ACLU Foundation of Northern California**
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Laura Schauer Ives (admitted *pro hac vice*)
Email: lives@aclu-nm.org
**ACLU Foundation of New Mexico**
PO Box 566
Albuquerque, NM 87103
Tel.: (505) 243-0046; Fax: (505) 266-5916

Reem Salahi (admitted *pro hac vice*)
Email: rsalahi@salahilaw.com
**Salahi Law**
429 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401
Tel.: (510) 225-8880
Cooperating Attorney for the ACLU Foundation of Southern California

Mitchell P. Hurley (admitted *pro hac vice*)
Email: mhurley@akingump.com
Christopher M. Egleson (admitted *pro hac vice*)
Email: cegleson@akingump.com
Justin H. Bell (admitted *pro hac vice*)
Email: jbell@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002
Cooperating Attorneys for the American Civil Liberties Union Foundation

Attorneys for the Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **AYMAN LATIF**, *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>**ERIC H. HOLDER, JR.**, *et al.*,<br><br>     Defendants. | Case No.: 10-cv-750 (BR)<br><br>**SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTORY STATEMENT**

Plaintiffs have brought this action to compel the Defendants, who administer the federal government's "No Fly List," either to remove their names from any watch list that has prevented them from flying or to provide a constitutionally adequate process for them to clear their names. Plaintiffs invoke this Court's jurisdiction under 5 U.S.C. § 702, which waives the United States' sovereign immunity with respect to any action for injunctive relief under 28 U.S.C. § 1331. *See, e.g.*, *Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992) ("[T]his Court has repeatedly found that § 702 waives the sovereign immunity of the United States with respect to *any* action for injunctive relief under 28 U.S.C. § 1331.") (emphasis in original). Section 1331, in turn, expressly confers upon the "*district* courts . . . original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (emphasis added).

Thus, constitutional claims seeking injunctive relief presumptively reside in the district courts unless Congress has expressly provided that those claims are within the exclusive jurisdiction of the courts of appeals. The Defendants insist that Congress has so provided, and that 49 U.S.C. § 46110 divests this court of jurisdiction over Plaintiffs' claims. Plaintiffs contend that Section 46110 is inapplicable to the claims at issue in this case. The parties are in agreement that this Court's resolution of the jurisdictional dispute turns on the text of Section 46110 and the cases construing it, and on the Ninth Circuit's decision in *Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008).

Those authorities make clear that Plaintiffs' challenge was properly filed in the district court. That is because Plaintiffs have neither "disclos[ed] a substantial interest in" nor challenged any "order" of the Transportation Security Administration ("TSA") or

any other agency named in Section 46110. 49 U.S.C. § 46110(a). As Plaintiffs set forth

in their prior Opposition to Defendants' Motion to Dismiss, the TSA is neither

responsible for Plaintiffs' injuries nor empowered to redress them. *See* Mem. of P. & A.

in Supp. of Pls.' Opp. to Defs.' Mot. to Dismiss (dkt no. 50) ("Pls.' Br.") 4-6.[1] While the

TSA has devised "policies and procedures" to "implement[] the No-Fly List"—such as

"requir[ing] airlines to check passengers' identification against the No-Fly List," *Ibrahim,*

538 F.3d at 1257—it is the Defendants who retain the exclusive authority over who is

added to the list and who is removed from it, and who are thus uniquely capable of

effectuating the relief that Plaintiffs seek. Accordingly, the Defendants' motion to

dismiss should be denied.

I.      ***IBRAHIM*'S HOLDING THAT THE DISTRICT COURTS HAVE JURISDICTION OVER A CHALLENGE TO THE "PLACEMENT OF [A PLAINTIFF'S] NAME ON THE NO-FLY LIST" CONTROLS HERE**

        In *Ibrahim*, the Ninth Circuit considered the interplay between 49 U.S.C. § 46110

and a series of claims related to the plaintiff's alleged placement on the No Fly List and

her treatment by various governmental and non-governmental actors. The Court held that

the district court retained jurisdiction over the plaintiff's claims "regarding placement of

her name on the No-Fly List" because "the No-Fly List is maintained by the Terrorist

Screening Center, and [49 U.S.C. §] 46110 doesn't apply to that agency's actions."

---

[1] *See also* Pls.' Br. 5 (noting the Ninth Circuit's conclusion that "an agency called the Terrorist Screening Center actually compiles the list of names ultimately placed on the No Fly List. And the Terrorist Screening Center isn't part of the Transportation Security Administration or any other agency named in section 46110; it is part of the Federal Bureau of Investigation, as the government concedes") (citing *Ibrahim*, 538 F.3d at 1255). Plaintiffs hereby incorporate the arguments contained in their Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss. *See* Pls.' Br.

*Ibrahim*, 538 F.3d at 1256. That holding is controlling here. Like the plaintiff in

*Ibrahim*, Plaintiffs contend that their names were improperly placed on the No Fly List

and seek an injunction ordering the Terrorist Screening Center ("TSC") to remove their

names from that list. Second Am. Compl. ("SAC") ¶¶ 5, 143; *see also id*. at 29 (Prayer

for Relief). *Ibrahim* holds that these challenges are to "'order[s]' of an agency *not* named

in section 46110," 538 F.3d at 1255, and that the district court therefore has jurisdiction

over such claims.

Indeed, even if *Ibrahim* had left room for doubt as to who has authority over the

No Fly List and thus whose orders are at issue, Defendants themselves have submitted

sworn declarations conceding that the Terrorist Screening Center, not the TSA, is "the

final arbiter" of whether an individual is placed on or removed from the No Fly List. *See*

Decl. of Christopher M. Piehota ("Piehota Decl.") ¶ 35.[2] That fact alone—that the TSA

is neither responsible for the challenged conduct nor authorized to provide the relief

sought—is sufficient to vest jurisdiction in this Court.

The Defendants incorrectly assert that unlike the plaintiff in *Ibrahim,* these

Plaintiffs have not challenged their "placement" on the No Fly List. The Defendants are

---

[2] The Deputy Director of the Terrorist Screening Center confirmed that the Center possesses the authority to "accept or reject" nominations to the government's consolidated terrorism watch list, from which the No Fly List is drawn, and that the Terrorist Screening Center is administered by the FBI. Piehota Decl. ¶¶ 2, 22. He further confirmed that although individuals who have encountered travel difficulties must seek redress through DHS, those complaints are forwarded to the Terrorist Screening Center, which is responsible for any resulting changes to the watch list. *Id*. ¶¶ 33-35. The Director of the Office Transportation Security Redress similarly explained that when passengers seek redress from DHS, DHS refers the complaints to the Terrorist Screening Center and that the "TSC's Redress Unit notifies DHS TRIP as to the outcome of the review, and DHS TRIP then issues a determination letter." Decl. of James G. Kennedy ("Kennedy Decl.") ¶ 10.

splitting hairs. Plaintiffs have sought an injunction ordering their "removal" from the No Fly List. SAC 29 (Prayer for Relief). "Placement" and "removal" are two sides of the same coin, and the Terrorist Screening Center, not the TSA, is exclusively responsible for both.

It is true that the alternative remedy that Plaintiffs seek—a constitutionally adequate name-clearing hearing—would be triggered not at the moment of "placement" on the No Fly List, but at the time that Plaintiffs are denied boarding and thereby *learn* that they are on the No Fly List. But as with the Plaintiffs' primary request for an injunction seeking their removal from the list, the *purpose* of that process would be to provide the Plaintiffs with a mechanism to challenge the Terrorist Screening Center's decision to place their names on the No Fly List in the first place.

In short, Plaintiffs' claims contest the validity of the Terrorist Screening Center's decisions and seek their reversal, and are properly filed in the district court under *Ibrahim*.

## II.  THE DEFENDANTS MISCHARACTERIZE THE "ORDERS" AT ISSUE HERE

### A.  Plaintiffs Do Not Challenge TSA "Policies and Procedures"

Defendants rely on *Ibrahim*'s other jurisdictional holding. In addition to challenging the Terrorist Screening Center's placement of her name on the No Fly list, the *Ibrahim* plaintiff asserted claims against the TSA itself for "instruct[ing] airline personnel to detain and interrogate any person whose name is on the No-Fly List." *Ibrahim*, 538 F.3d at 1256-57. The court held that those claims belonged in the court of appeals pursuant to Section 46110 because they were challenges to a TSA order—

specifically, a TSA-issued "Security Directive *implementing* the No-Fly List" pursuant to TSA's authority under 49 U.S.C. § 114(h)(3) to order airline personnel to take certain actions based on the No Fly List. *Ibrahim*, 538 F.3d at 1256-57 (emphasis added).

Defendants insist for the first time in their supplemental brief that the DHS TRIP "redress" program is a TSA "policy or procedure" within the meaning of *Ibrahim*, that Plaintiffs challenge that program, and thus that any challenge to a TSC decision to place an individual on the No Fly List falls into *Ibrahim*'s second jurisdictional category.

But Defendants' argument is foreclosed by *Ibrahim* and undermined by their own affidavits. As those affidavits attest, the TSA's role in the DHS TRIP process is purely ministerial: it accepts complaints from the public, relays them to the actual decision-makers, and then transmits *pro forma* letters to the complainants. *See* Piehota Decl. ¶¶ 33-35 (confirming that DHS forwards redress requests to Terrorist Screening Center, which determines whether changes to the watch list are warranted); Kennedy Decl. ¶ 10 (recognizing that after Terrorist Screening Center reviews a redress request, it "notifies DHS TRIP as to the outcome of the review," and that thereafter, DHS TRIP "issues a determination letter"). The DHS TRIP program is a means for travelers to challenge their placement on the No Fly List, a process squarely within the purview of the Terrorist Screening Center and therefore subject to *Ibrahim*'s first jurisdictional holding.

Defendants' final argument in support of their contention that Plaintiffs have challenged a TSA "order" is that Congress directed the TSA to establish a redress process for individuals who believed they were improperly denied boarding. Defs.' Supplemental Mem. in Supp. of their Mot. to Dismiss Pls.' Compl. ("Defs.' Supp. Br.") 3-4. The problem with that argument is that the Executive Branch, according to its own

affidavits in this lawsuit, has not complied with that congressional mandate. Instead, it has structured an inter-agency redress process in which the TSA is entirely powerless to provide redress to travelers. The fact that Congress may have contemplated a more robust role for TSA is irrelevant: the question before this Court is whether the *existing* scheme satisfies due process. Under that scheme, it is the Terrorist Screening Center that decides who is on the No Fly List. This suit therefore properly names that entity as the Defendant and is properly in this court.

**B.      Plaintiffs Do Not Seek Review of DHS TRIP Letters, Which In Any Event are Not Orders**

The Defendants continue to assert that Plaintiffs are seeking review of the letters they received in response to their DHS TRIP inquiries. This argument is incorrect for the reasons Plaintiffs set forth in their prior opposition. *See* Pls.' Br. 8-12.

Plaintiffs further note that in their supplemental memorandum, Defendants continue to rely exclusively on the decision in *Scherfen v. DHS*, No. 08-cv-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010), for the proposition that DHS TRIP letters are "final orders" that shift jurisdiction to the court of appeals. *See* Defs.' Supp. Br. 4-5. Beyond *Scherfen* they have cited no cases in which a putative "final order" was issued by an entity with no authority over the challenged action; in which the administrative process and "final order" afforded no notice whatsoever to the petitioner; and in which the process and "order" left the petitioner precisely where he began.

Nor, so far as Plaintiffs are aware, could the Defendants cite such a case. The cases addressing Section 46110 arise out of situations in which the agency at issue had actual authority to make the determination underlying the order. A review of the Ninth

Circuit's recent cases is illustrative. In *Las Vegas v. FAA*, 570 F.3d 1109 (9th Cir. 2009), the court of appeals exercised jurisdiction under Section 46110 to review an FAA order granting approval to a proposed air traffic regulation. *Id*. at 1113. In *Andrzejewski v. FAA*, 563 F.3d 796 (9th Cir. 2009), the order at issue was an FAA order revoking a commercial pilot's license for dangerous flying. *Id*. at 798. In *MacLean v. DHS*, 543 F.3d 1145 (9th Cir. 2008), the order was a TSA order firing a federal air marshal for disclosing sensitive security information via text message. *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144 (9th Cir. 2002) involved a challenge to an FAA rule "which establishe[d] procedural, operational, and equipment safety requirements for air tour operators in Hawaii." *Id*. at 1147. Other cases are similar. Flight routes, safety rules, pilot licensing, and hiring and firing decisions are all "orders" over which the FAA or TSA—the agencies named in Section 46110—have authority and responsibility. Thus it makes perfect sense that Section 46110 has been applied to confer jurisdiction on the courts of appeals in those cases. *See Ibrahim*, 538 F.3d at 1256 (recognizing that Section 46110 bars district court jurisdiction when "an agency named in section 46110 issued the order complained of").

This case, by contrast, tangentially involves TSA letters that do not meet the definition of an "order" at all: they do not "order" anyone to do anything, fix any legal rights, or take any position whatsoever regarding Plaintiffs' claims. *See* Pls.' Br. 8-9. And even if the letters did announce the government's decision with respect to the petitioners' grievances—which they emphatically do not—that decision has been made by the Terrorist Screening Center, not by the TSA. Defendants' construction of Section 46110 would accordingly be unreasonable even in the absence of the circuit's decision in

7 – SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Ibrahim*.  Given that decision's plain holding that the district courts have jurisdiction over challenges to the Terrorist Screening Center's placement of a name on the No Fly List, Defendants' construction is simply precluded.  This Court has jurisdiction.

<u>CONCLUSION</u>

For the reasons set forth above and in Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss, Defendants' Motion to Dismiss should be denied, and the case should proceed in this Court.

Steven M. Wilker, OSB No. 911882
Email:  steven.wilker@tonkon.com
**Tonkon Torp LLP**
888 S.W. Fifth Avenue, Suite 1600
Portland, OR 97204
Tel.:  (503) 802-2040; Fax:  (503) 972-3740
Cooperating Attorney for the
ACLU Foundation of Oregon

 s/ Ben Wizner
Ben Wizner (admitted *pro hac vice*)
Email:  bwizner@aclu.org
Nusrat Choudhury (admitted *pro hac vice*)
Email:  nchoudhury@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.:  (212) 549-2500; Fax:  (212) 549-2654

Kevin Díaz, OSB No. 970480
Email:  kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
PO Box 40585
Portland, OR 97240
Tel.:  (503) 227-6928; Fax:  (503) 227-6928

Ahilan T. Arulanantham (admitted *pro hac vice*)
Email:  aarulanantham@aclu-sc.org
Jennifer Pasquarella (admitted *pro hac vice*)

Email: jpasquarella@aclu-sc.org
**ACLU Foundation of Southern California**
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (admitted *pro hac vice*)
Email: jmass@aclunc.org
**ACLU Foundation of Northern California**
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Laura Schauer Ives (admitted *pro hac vice*)
Email: lives@aclu-nm.org
**ACLU Foundation of New Mexico**
PO Box 566
Albuquerque, NM 87103
Tel.: (505) 243-0046; Fax: (505) 266-5916

Reem Salahi (admitted *pro hac vice*)
Email: rsalahi@salahilaw.com
**Salahi Law**
429 Santa Monica Blvd., Suite 550
Santa Monica, CA 90401
Tel.: (510) 225-8880
Cooperating Attorney for the
ACLU Foundation of Southern California

Mitchell P. Hurley (admitted *pro hac vice*)
Email: mhurley@akingump.com
Christopher M. Egleson (admitted *pro hac vice*)
Email: cegleson@akingump.com
Justin H. Bell (admitted *pro hac vice*)
Email: jbell@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002
Cooperating Attorneys for the
American Civil Liberties Union Foundation

Attorneys for Plaintiffs.