IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


AYMAN LATIF, MOHAMED SHEIKH ABDIRAHM       3:10-CV-00750-BR
KARIYE, RAYMOND EARL KNAEBLE IV,
FAISAL NABIN KASHEM, ELIAS MUSTAFA
MOHAMED, STEPHEN WILLIAM WASHBURN,
ABDULLATIF MUTHANNA, NAGIB ALI GHALEB,    OPINION AND ORDER
MASHAAL RANA, IBRAHEIM Y. MASHAL,
SALAH ALI AHMED, AMIR MESHAL, and
STEPHEN DURGA PERSAUD,

          Plaintiffs,

v.

ERIC H. HOLDER, JR., in his official
capacity as Attorney General of the
UNITED STATES; ROBERT S. MUELLER III,
in his official capacity as Director
of the Federal Bureau of Investigation;
and TIMOTHY J. HEALY, in his official
capacity as Director of the Terrorist
Screening Center,

          Defendants.


STEPHEN M. WILKER
Tonkon Torp LLP
888 S.W. 5th Avenue, Ste. 1600
Portland, OR 97204
(503) 802-2040


1  - OPINION AND ORDER

**HINA SHAMSI**
**BEN WIZNER**
**NUSRAT JAHAN CHOUDHURY**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7876
(212) 549-2500

**KEVIN DIAZ**
ACLU Foundation of Oregon
P.O. Box 40585
Portland, OR 97240
(503) 227-6928

**AHILAN ARULANANTHAM**
**JENNIFER PASQUARELLA**
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5211

**ALAN L. SCHLOSSER**
**JULIA HARUMI MASS**
ACLU Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

**LAURA SCHAUER IVES**
ACLU Foundation of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(505) 243-0046

**REEM SALAHI**
Salahi Law
429 Santa Monica Blvd, Suite 550
Santa Monica, CA 90401
(510) 225-8880

**MITCHELL P. HURLEY**
**CHRISTOPHER M. EGLESON**
**JUSTIN H. BELL**
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1011

                Attorneys for Plaintiffs


**ERIC HOLDER**
United States Attorney General
**DIANE KELLEHER**
**LILY S. FAREL**
**AMY ELIZABETH POWELL**
**SCOTT A. RISNER**
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 514-4775

**S. AMANDA MARSHALL**
United States Attorney
**JAMES E. COX, JR.**
Assistant United States Attorney
District of Oregon
1000 S.W. Third Ave.
Suite 600
Portland, OR 97204
(503) 727-1026

                Attorneys for Defendants

**BROWN, Judge.**

     This matter comes before the Court on Defendants' Motion

(#85) for Partial Summary Judgment and Plaintiffs' Cross-Motion

(#91) for Partial Summary Judgment.  The parties seek summary

judgment on Plaintiffs' claims for procedural due process under

the Fifth Amendment of the United States Constitution[1] and the Administrative Procedures Act (APA), 5 U.S.C. § 706, in which Plaintiffs challenge the adequacy of Defendants' redress procedures for persons on the United States government's "No Fly List."  The Constitution Project (TCP) filed an Amicus Curiae Brief (#99) in Support of Plaintiffs' Cross-Motion.

The Court heard oral argument on June 21, 2013.  At the conclusion of oral argument the Court requested Defendants to submit additional briefing as to whether any appellate courts have issued opinions on the merits of a challenge brought by a plaintiff who sought review of a final agency decision received through the Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP).  Defendants filed their Notice of Response (#107) to the Court's Inquiry During Summary Judgment Hearing on July 3, 2013.  The Court took the Cross-Motions under advisement on July 3, 2013.

For the reasons that follow, the Court **GRANTS in part** Plaintiffs' Cross-Motion (#91) as to Plaintiffs' liberty interests in international air travel and reputation and **DENIES in part** Defendants' Motion (#85) as to the same issues.  The Court, however, **DEFERS** ruling on the remaining parts of the

---

[1]  Plaintiffs have also asserted a claim under the Fifth Amendment for violation of substantive due process, which is not at issue for purposes of these Cross-Motions.

pending Motions for the reasons set out herein and directs the parties to submit supplemental briefing in light of the Court's rulings.

**PLAINTIFFS' CLAIMS**

Plaintiffs are citizens and lawful permanent residents of the United States (including four veterans of the United States Armed Forces) who were not allowed to board flights to or from the United States or over United States air space.  Plaintiffs believe they were denied boarding because they are on a government watch list known as the "No Fly List."  Plaintiffs allege some of them have been told by federal and/or local government officials that they are on the No Fly List.  Each Plaintiff has submitted applications for redress through DHS TRIP.  Despite Plaintiffs' requests to officials and agencies for explanations as to why they were not permitted to board flights, none has been provided and Plaintiffs do not know whether they will be permitted to fly in the future.

In their Third Amended Complaint Plaintiffs allege Defendants have violated Plaintiffs' Fifth Amendment right to procedural due process because Defendants have not given Plaintiffs any post-deprivation notice nor any meaningful opportunity to contest their continued inclusion on the No Fly List.  Plaintiffs also assert Defendants' actions have been arbitrary and capricious and constitute "unlawful agency action"

5  - OPINION AND ORDER

in violation of the APA.  Plaintiffs seek a declaratory judgment
that Defendants' policies, practices, and customs violate the
Fifth Amendment of the United States Constitution and the APA and
an injunction requiring Defendants (1) to remedy such violations,
including removal of Plaintiffs' names from any watch list or
database that prevents them from flying; (2) to provide
Plaintiffs with notice of the reasons and bases for Plaintiffs'
inclusion on the No Fly List; and (3) to provide Plaintiffs with
the opportunity to contest such inclusion.

## PROCEDURAL BACKGROUND

Plaintiffs filed this action on June 30, 2010.  On May 3,
2011, this Court issued an Order (#69) granting Defendants'
Motion (#43) to Dismiss for failure to join the Transportation
Security Administration (TSA) as an indispensable party and for
lack of subject-matter jurisdiction on the ground that the relief
sought by Plaintiffs could only come from the appellate court in
accordance with 49 U.S.C. § 46110(a).  Plaintiffs appealed the
Court's order to the Ninth Circuit.  *Latif v. Holder*, 686 F.3d
1122 (9th Cir. 2012).

On July 26, 2012, the Ninth Circuit issued an opinion in
which it reversed this Court's decision, holding "the district
court . . . has original jurisdiction over Plaintiffs' claim that
the government failed to afford them an adequate opportunity to

contest their apparent inclusion on the List."  686 F.3d at 1130.
The Court also held "49 U.S.C. § 46110 presents no barrier to
adding TSA as an indispensable party."  *Id.*  The Ninth Circuit
issued its mandate on November 19, 2012, remanding the matter to
this Court.

As noted, the parties filed Cross-Motions for Partial
Summary Judgment, and the Court heard oral argument on June 21,
2013.

<u>**BACKGROUND**</u>

The following facts are undisputed unless otherwise noted:

**I.   The No Fly List**

The Terrorist Screening Center (TSC), which is administered
by the Federal Bureau of Investigation (FBI), develops and
maintains the federal government's consolidated Terrorist
Screening Database (TSDB or sometimes referred to as the watch
list).  The No Fly List is a subset of the TSDB.

TSC provides the No Fly List to TSA, a component of the
Department of Homeland Security (DHS), for use in pre-screening
airline passengers.  TSC accepts nominations for inclusion in the
TSDB, which are generally accepted by TSC because of a
"reasonable suspicion" that the individuals are known or
suspected terrorists based on the totality of the information
reviewed.  The federal government does not release its minimum,

7  - OPINION AND ORDER

substantive, derogatory criteria for placement on the No Fly List nor the "Watchlisting Guidance" created for internal use by intelligence and law-enforcement communities.

## II. DHS TRIP Redress Process

DHS TRIP is the mechanism available for individuals to seek redress for any travel-related screening issues experienced at airports or while crossing United States borders; *i.e.*, denial of or delayed airline boarding, denial of or delayed entry into or exit from the United States, or continuous referral for additional (secondary) screening. DHS TRIP allows travelers who have faced such difficulties to submit a "Traveler Inquiry Form" online, by email, or by regular mail. The form prompts travelers to describe their complaint, to produce documentation relating to the issue, and to provide identification and their contact information.

If the traveler is an exact or near match to an identity within the TDSB, DHS TRIP deems the complaint to be TSDB-related and the traveler's complaint is forwarded to TSC Redress for further review. Upon receipt of the complaint, TSC Redress reviews the available information, including the information and documentation provided by the traveler, and determines (1) whether the traveler is an exact match to an identity in the TSDB and (2) if an exact match, whether the traveler should continue to be in the TSDB. In making this determination, TSC

8  - OPINION AND ORDER

coordinates with the agency that originally nominated the individual to be included in the TSDB.  If the traveler is not an exact match to an identity in the TSDB but has been misidentified as someone who is, TSC Redress informs DHS of the misidentification.  DHS, in conjunction with any other relevant agency, then addresses the misidentification by correcting information in the traveler's records or taking other appropriate action.

When the review is completed DHS TRIP then sends a determination letter to the traveler advising that DHS TRIP has completed its review.  A DHS TRIP determination letter neither confirms nor denies that the complainant is in the TSDB or on the No Fly List and does not provide any further details about why the complainant may or may not be in the TSDB or on the No Fly List.  In some cases a DHS TRIP determination provides that the recipient can pursue an administrative appeal of the determination letter with TSA or can seek judicial review in a United States court of appeals pursuant to 49 U.S.C. § 46110.[2]

Determination letters, however, do not provide assurances

---

[2] 49 U.S.C. § 46110(a) provides in part:  "[A] person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . in whole or in part under this part . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."

about the complainant's ability to undertake future travel.  In fact, at no point in the available administrative process is a complainant told whether he or she is in the TSDB or a subset of the TSDB or given any explanation for his or her inclusion on such a list.  Accordingly, there is also not any opportunity for a complainant to contest or to offer corrections to the record on which any such determination may be based.

**III. Plaintiffs**

Solely for purposes of the parties' Cross-Motions (#85, #91) presently before the Court, Defendants do not contest[3] the following facts as asserted by Plaintiffs:

Plaintiffs are thirteen United States citizens who were denied boarding on flights over United States air space after January 1, 2009, and who believe they are on the United States government's No Fly List.  Some Plaintiffs were actually told by airline representatives, FBI agents, or other government officials that they are on the No Fly List.

Each Plaintiff filed DHS TRIP complaints after being denied boarding and received a determination letter.  None of the

---

[3]  As a matter of policy, the United States government does not confirm or deny whether an individual is on the No Fly List nor does it provide any other details as to that issue. Defendants have accordingly chosen not to refute Plaintiffs' allegations that they are on the No Fly List for purposes of these Motions only.  The Court, therefore, assumes as true Plaintiffs' assertions that they are on the No Fly List only for purposes of these Cross-Motions.

determination letters that Plaintiffs received confirm or deny the existence of any terrorist watch list that includes them nor do any of the letters provide a reason for including the individual in the TDSB or on the No Fly List.

Many of these Plaintiffs cannot travel overseas by any way other than air because such journeys by boat or by land would be cost-prohibitive, would be time-consuming to a degree that Plaintiffs could not take the necessary time off from work, or would put Plaintiffs at risk of interrogation and detention by foreign authorities.  In addition, some Plaintiffs are not physically well enough to endure such infeasible modes of travel.

While Plaintiffs' circumstances are similar in many ways, each of their experiences and difficulties relating to and arising from their alleged inclusion on the No Fly List is unique as set forth in their Declarations filed in support of their Cross-Motion and summarized briefly below.

**Amayan Latif**:  Latif is a United States Marine Corps veteran and lives in Stone Mountain, Georgia, with his wife and children. Between November 2008 and April 2010 Latif and his family were living in Egypt.  In April 2010 Latif and his family attempted to return to the United States.  Latif was not allowed to board the first leg of their flight from Cairo to Madrid.  One month later Latif was questioned by FBI agents and told he was on the No Fly List.  Because he was unable to board a flight to the United

11 - OPINION AND ORDER

States, Latif's United States veteran disability benefits were
reduced from $899.00 per month to zero because he could not
attend the scheduled evaluations required to continue his
benefits.  In August 2010 Latif returned home after the United
States government granted him a "one-time waiver" to fly to the
United States.  Because he cannot fly, Latif is unable to travel
from the United States to Egypt to resume studies or to Saudi
Arabia to perform a *hajj*, a religious pilgrimage and Islamic
obligation.

**Mohamed Sheikh Abdirahman Kariye**:  Kariye lives in Portland,
Oregon with his wife and children.  In March 2010 Kariye was not
allowed to board a flight from Portland to Amsterdam, surrounded
in public by government officials at the airport, and told by an
airline employee that he was on a government watch list.  Because
Kariye is prohibited from boarding flights out of the United
States, he could not fly to visit his daughter who was studying
in Dubai and cannot travel to Saudi Arabia to accompany his
mother on the *hajj* pilgrimage.

**Raymond Earl Knaeble IV**:  Knable is a United States Army
veteran and lives in Chicago, Illinois.  In 2006 Knable was
working in Kuwait.  In March 2010 Knaeble flew from Kuwait to
Bogota, Columbia, to marry his wife, a Columbian citizen, and to
spend time with her family.  On March 14, 2010, Knaeble was not
allowed to board his flight from Bogota to Miami.  Knaeble was

12 - OPINION AND ORDER

subsequently questioned numerous times by FBI agents in Columbia. Because Knaeble was unable to fly home for a required medical examination, his employer rescinded its job offer for a position in Quatar.  Knaeble attempted to return to the United States through Mexico, where he was detained for over 15 hours, questioned, and forced to return to Bogota.  Knaeble eventually returned to the United States in August 2010 by traveling for 12 days from Santa Marta to Panama City and then to Mexicali, California.  He was detained, interrogated, and searched by foreign authorities on numerous occasions during that journey.

**Faisal Nabin Kashem**:  In January 2010 Kashem traveled from the United States to Saudi Arabia to attend a two-year Arabic language-certification program.  In June 2010 Kashem attempted to fly from Jeddah, Saudi Arabia, to New York; was denied boarding; and was told by an airline employee that he was on the No Fly List.  Kashem was later questioned by FBI agents who also told him he was on the No Fly List.  After joining this lawsuit, the United States government offered Kashem a "one-time waiver" to return to the United States, which he has so far declined because United States officials have refused to confirm that he will be able to return to Saudi Arabia to complete his studies.

**Elias Mustafa Mohamed**:  In January 2010 Mohamed traveled from the United States to Saudi Arabia to attend a two-year Arabic language-certification program.  In June 2010 Mohamed

13 - OPINION AND ORDER

attempted to fly from Jeddah, Saudi Arabia, to Washington, D.C., but he was not allowed to board his flight and was told by an airline employee that he was on the No Fly List.  He was later questioned by FBI agents who also told him he was on the No Fly List.  After joining this lawsuit, the United States government offered Mohamed a "one-time waiver" to return to the United States, which he has so far declined because United States officials have refused to confirm that he will be able to return to Saudi Arabia to complete his studies.

**Steven William Washburn**:  Washburn is a United States Air Force veteran and lives in New Mexico.  In February 2010 Washburn was not allowed to board a flight from Ireland to Boston.  He later attempted to fly from Dublin to London to Mexico City.  Although he was allowed to board the flight from Dublin to London, the aircraft turned around 3 ½ hours after takeoff and returned to London where Washburn was detained.  Washburn was subsequently interrogated by FBI agents on numerous occasions.  In May 2010 Washburn returned to New Mexico by taking a series of five flights that eventually landed in Juarez, Mexico, where he crossed the United States border on foot.  Washburn was subsequently detained and interrogated by Mexican officials.  In June 2012 an FBI agent told Washburn that the agent would help remove Washburn's name from the No Fly List if he agreed to speak to the FBI.  Since May 2010 Washburn has been separated from his

14 - OPINION AND ORDER

wife who is in Ireland because she has been unable to obtain a visa to come to the United States and Washburn is unable to fly to Ireland.

**Nagib Ali Ghaleb**:  Ghaleb lives in Oakland, California.  In February 2010 Ghaleb was traveling from Yemen where his wife and children were living to San Francisco via Frankfurt.  Ghaleb was not allowed to board his flight from Frankfurt to San Francisco.  Ghaleb was later interrogated by FBI agents who offered to arrange to fly Ghaleb back to the United States if he agreed to tell them who the "bad guys" were in Yemen and San Francisco and to provide names of people from his mosque and community.  The agents threatened to have Ghaleb imprisoned.  In May 2010 Ghaleb again attempted to return to the United States.  He was able to fly from Sana'a, Yemen, to Dubai, but he was not allowed to board his flight from Dubai to San Francisco.  In July 2010 Ghaleb accepted a "one-time wavier" offered by the United States government to return to the United States.  Because Ghaleb cannot fly, he cannot go to Yemen to be with his ill mother or to see his brothers or sisters.

**Abdullatif Muthanna**:  Muthanna lives in Rochester, New York. In June 2009 Muthanna left Rochester to visit his wife and children, who live in Yemen.  In May 2010 Muthanna was to return to the United States on a flight from Aden, Yemen, to New York via Jeddah, Saudi Arabia, but he was not allowed to board his

flight from Jeddah to New York.  In September 2010 Muthanna
accepted a "one-time waiver" offered by the United States
government to return home.  In June 2012 Muthanna wanted to be
with his family and attempted to fly to Yemen, but he was not
allowed to board a flight departing from New York.  In August
2012 Muthanna attempted a thirty-six-day journey over land and by
ship from Rochester to Yemen, but a ship captain refused to let
Muthanna sail on a cargo freighter departing from Philadelphia on
recommendation of United States Customs and Boarder Protection.
Muthanna was not allowed to board fights on four separate
occasions before finally being able to board a flight from New
York to Dubai in February 2013.

**Mashaal Rana**:  Rana moved to Pakistan for school in 2009.
In February 2010 Rana was not allowed to board a flight from
Lahore, Pakistan, to New York.  Rana's brother, who lives in the
United States, was subsequently interrogated by an FBI agent.  In
October 2012 Rana was six-months pregnant and again attempted to
return to New York to receive needed medical care and to deliver
her child.  Rana's brother worked with United States officials to
clear Rana to fly.  Rana received such clearance, but five hours
before her flight was to depart she received notice that she
would not be allowed to board.  Rana was not able to find a safe
alternative to travel to the United States prior to the birth of
her child.  In November 2010 the United States government offered

Rana a "one-time waiver," which she has not used because she fears she would not be able to return to Pakistan to be with her husband.

**Ibraheim (Abe) Mashal**: Mashal is a United States Marine Corps veteran.  Mashal was not allowed to board a flight from Chicago, Illinois, to Spokane, Washington, and was told by an airline representative that he was on the No Fly List.  Mashal was subsequently questioned by FBI agents and told his name would be removed from the No Fly List and he would receive compensation if he helped the FBI by serving as an informant.  When Mashal asked to have his attorney present before answering the FBI's questions, the agents ended the meeting.  Mashal owns a dog-training business.  Because he is unable to fly, he has lost clients; had to turn down business; and has been prevented from attending his sister-in-law's graduation, the wedding of a close friend, the funeral of a close friend, and fundraising events for the nonprofit organization that he founded.

**Salah Ali Ahmed**: Ahmed lives in Norcross, Georgia.  In July 2010 Ahmed was traveling from Atlanta to Yemen via Frankfurt and was not allowed to board the flight in Atlanta.  Ahmed was subsequently questioned by FBI agents.  Because he is unable to fly, Ahmed was unable to travel to Yemen in 2012 when his brother died and is unable to travel to Yemen to visit his extended family and to manage property he owns there.

17 - OPINION AND ORDER

**Amir Meshal**:  Meshal lives in Minnesota.  In June 2009
Meshal was not allowed to board a flight from Irvine, California,
to Newark, New Jersey.  Meshal was told by an FBI agent that he
was on a government list that prohibits him from flying.  In
October 2010 FBI agents offered Meshal the opportunity to serve
as a government informant in exchange for assistance in removing
his name from the No Fly List.  Because Meshal is unable to fly,
he cannot visit his mother and extended family in Egypt.

**Stephen Durga Persaud**:  Persaud lives in Irvine, California.
In May 2010 Persaud was not allowed to board a flight from
St. Thomas to Miami.  An FBI agent told Persaud that he was on
the No Fly List, interrogated him, and told him the only way to
get off the No Fly List was to "talk to us."  In June 2010
Persaud took a five-day boat trip from St. Thomas to Miami and a
four-day train ride from Miami to Los Angeles so he could be home
for the birth of his second child.  Because he cannot fly,
Persaud cannot travel to Saudi Arabia to perform the *hajj*
pilgrimage.


## STANDARDS

Summary judgment is appropriate when there is not a "genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  *Washington Mut. Ins. v. United
States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  *See also* Fed. R.

18 - OPINION AND ORDER

Civ. P. 56(a).

The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).


## DISCUSSION

As noted, Plaintiffs allege Defendants have violated Plaintiffs' Fifth Amendment right to procedural due process because Defendants have not given Plaintiffs any post-deprivation notice nor any meaningful opportunity to contest their continued inclusion on the No Fly List.

## I.   Plaintiffs' Procedural Due-Process Claims

The fundamental requirement of due process is "the opportunity to be heard 'at a meaningful time in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1979). The Supreme Court has set forth a three-factor balancing test for courts to use when evaluating whether the government has provided due process:

> (1) the private interest that will be
> affected by the official action;
> (2) the risk of an erroneous deprivation of
> such interest through the procedures used,

        and the probable value, if any, of additional
        or substitute procedural safeguards;
        (3) the Government's interest, including the
        function involved and the fiscal and
        administrative burdens that the additional or
        substitute procedural requirement would
        entail.

*Mathews*, 424 U.S. at 335.

### A.    First Factor:  Private Interest

        Plaintiffs contend the first factor under *Mathews* has
been satisfied because Plaintiffs have a constitutionally-
protected liberty interest in travel and reputation.  Plaintiffs
assert they have been deprived of both by their inclusion on the
No Fly List.

### 1.    Right to Travel

        Plaintiffs contend the government has deprived
them of their protected liberty interest in travel.  In *Kent v.
Dulles,* 357 U.S. 116 (1958), the Supreme Court held "[t]he right
to travel is part of the 'liberty' of which the citizen cannot be
deprived without due process of law under the Fifth Amendment."
*Id.* at 125.

        As noted by the Ninth Circuit, "the [Supreme]
Court has consistently treated the right to *international* travel
as a liberty interest that is protected by the Due Process Clause
of the Fifth Amendment."  *DeNieva v. Reyes*, 966 F.2d 480, 485
(9th Cir. 1992)(emphasis added)(citing *Aptheker v. Sec'y of*

20 - OPINION AND ORDER

*State*, 378 U.S. 500, 505-08 (1964), and *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978)).  In DeNieva the plaintiff brought a claim under 42 U.S.C. § 1983 after her passport was seized by government officials.  The Ninth Circuit held the plaintiff had a right under the Fifth Amendment to travel internationally, and that right could not be deprived without a post-deprivation hearing.  966 F.2d. at 485.

Although Defendants do not dispute the United States Constitution affords procedural due-process protection to an individual's liberty interest in travel, Defendants rely heavily on *Gilmore v. Gonzales*, 435 F.3d 1125 (9th Cir. 2006), and *Green v. Transp. Sec. Admin.*, 351 F. Supp. 2d 1119 (W.D. Wash. 2005), to support their position that there is not a constitutional right to travel by airplane or to access the most convenient form of travel.  In *Gilmore* the plaintiff challenged the government's airline passenger identification policy as unconstitutional, alleging the policy violated his right to travel because he could not travel by commercial airline without presenting identification.  The Ninth Circuit rejected plaintiff's argument because "the Constitution does not guarantee the right to travel by any particular form of transportation."  435 F.3d at 1136.  The court also found the "burden" imposed by the challenged identification policy was not unreasonable.  *Id.* at 1137.  The plaintiffs in *Green* alleged they were innocent

passengers without links to terrorist activity, but they had
names similar or identical to names on the No Fly List and had
been mistakenly identified by airport personnel as the
individuals whose names appeared on that list.  As a result, the
plaintiffs were subjected to enhanced security screening.  None
of the plaintiffs ever missed a flight or were subjected to
heightened screening for more than an hour.  351 F. Supp. 2d at
1122.  The court denied the plaintiffs' procedural due-process
claim and held the plaintiffs did not have a right to travel
throughout the United States "without any impediments
whatsoever."  *Id.* at 1130.

        The Court finds *Green* and *Gilmore* are
distinguishable from this case for a number of reasons.  These
cases involve burdens on the right to *interstate* travel as
opposed to *international* travel.  Although there are perhaps
viable alternatives to flying for domestic travel within the
continental United States such as traveling by car or train, the
Court disagrees with Defendants' contention that international
air travel is a mere convenience in light of the realities of our
modern world.  Such an argument ignores the numerous reasons an
individual may have for wanting or needing to travel overseas
quickly such as for the birth of a child, the death of a loved
one, a business opportunity, or a religious obligation.  In
*Ibrahim v. Department of Homeland Security* the Northern District

22 - OPINION AND ORDER

of California recently rejected an argument similar to the one

made by Defendants here:

> While the Constitution does not ordinarily
> guarantee the right to travel by any
> particular form of transportation, given that
> other forms of travel usually remain
> possible, the fact remains that for
> international travel, air transport in these
> modern times is practically the only form of
> transportation, travel by ship being
> prohibitively expensive. . . . . Decisions
> involving domestic air travel, such as the
> *Gilmore* case, are not on point.

No. C 06-00545 WHA, 2012 WL 6652362, at *7 (N.D. Cal., Dec. 20,

2012).  Other cases cited by Defendants on this issue are

similarly distinguishable.  *See, e.g., Miller v. Reed*, 176 F.3d

1202 (9th Cir. 1999)(restrictions on interstate travel as it

relates to the right to drive); *Town of Southold v. Town of E.

Hampton*, 477 F.3d 38 (2d Cir. 2007)(restrictions on interstate

travel as it relates to riding ferries); *Cramer v. Skinner*, 931

F.2d 1020 (5th Cir. 1991)(restrictions on interstate air

service).

     In addition, the burdens imposed by the restrictions on the

plaintiffs in *Green* and *Gilmore* are far less than the alleged

burdens at issue here.  While the plaintiffs in *Green* and *Gilmore*

faced obstacles before being able to board their flights, they

were not completely banned from flying like Plaintiffs in this

case.  Having to show identification to board a commercial

aircraft and undergoing enhanced security screening for less than

23 - OPINION AND ORDER

an hour does not rise to the same level of deprivation as being denied boarding on any flight for the indefinite future. Although Plaintiffs concede the deprivation at issue in this matter may not be as great as that in cases such as *DeNieva* involving the seizure of one's passport, the Court, nevertheless, finds passport-revocation cases more analogous and helpful to the Court's analysis of Plaintiffs' specific circumstances than those cases cited by Defendants in support of their position.

Finally, the bases of the claims asserted in *Green* and *Gilmore* are different than the claims at issue here.  In *Green* and *Gilmore* the plaintiffs sought to invalidate the challenged government restriction as *per se* unconstitutional. Here Plaintiffs do not contend the restriction is unconstitutional, but merely assert the burden imposed by the challenged restriction requires a fairer process.

Thus, the Court concludes to the extent that Defendants argue all modes of transportation must be foreclosed before an individual's due-process rights are triggered, such an argument is unsupported.  For example, in *DeNieva* the Ninth Circuit found the plaintiff had a protected liberty interest in her right to travel not because she was completely banned from traveling, but rather because "retention of DeNieva's passport infringed upon her ability to travel internationally."  966 F.2d. at 485.  The court reasoned:  "Without her passport, she could

24 - OPINION AND ORDER

travel internationally *only with great difficulty*, if at all."
*Id.* (emphasis added). *See also Hernandez v. Cremer*, 913 F.2d
230, 234, 238 (5th Cir. 1990)(deprivation of a liberty interest
occurred when the United States government restricted the
plaintiff's ability to travel to and from Mexico).

Here it is undisputed that inclusion on the No Fly
List completely bans listed persons from boarding commercial
flights to or from the United States or over United States air
space.  Thus, Plaintiffs have shown their placement on the No Fly
List has in the past and will in the future severely restrict
Plaintiffs' ability to travel internationally.  Moreover, the
realistic implications of being on the No Fly List are
potentially far-reaching.  For example, TSC shares watchlist
information with 22 foreign governments and United States Customs
and Boarder Protection makes recommendations to ship captains as
to whether a passenger poses a risk to transportation security,
which can result in further interference with an individual's
ability to travel as evidenced by some Plaintiffs' experiences as
they attempted to travel abroad by boat and land and were either
turned away or completed their journey only after an
extraordinary amount of time, expense, and difficulty.

Accordingly, the Court concludes on this record that
Plaintiffs have a constitutionally-protected liberty interest in
traveling internationally by air, which is affected by being

25 - OPINION AND ORDER

placed on the No Fly List.

     **2.   Stigma-Plus - Reputation**

     Plaintiffs also assert the first factor under *Mathews* has been satisfied because Plaintiffs have been stigmatized "in conjunction with their right to travel on the same terms as other travelers." First Am. Compl. ¶ 141.

     Under the "stigma-plus" doctrine, the Supreme Court has recognized a constitutionally-protected interest in "a person's good name, reputation, honor, or integrity." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (U.S. 1971). "To prevail on a claim under the stigma-plus doctrine, Plaintiffs must show (1) public disclosure of a stigmatizing statement by the government, the accuracy of which is contested; *plus* (2) the denial of some more tangible interest such as employment, or the alteration of a right or status recognized by state law." *Green*, 351 F. Supp. 2d at 1129 (emphasis added)(citing *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002), and *Paul v. Davis*, 424 U.S. 693, 701, 711 (1976)). "The plus must be a deprivation of a liberty or property interest by the state . . . that directly affects the [Plaintiffs'] rights." *Id.* (quoting *Miller v. Cal.*, 355 F.3d 1172, 1178 (9th Cir. 2004)). Under the "plus" prong, a plaintiff can show he has suffered a change of legal status if he "legally [cannot] do something that [he] could otherwise do." *Miller,* 355 F.3d at 1179 (discussing

26 - OPINION AND ORDER

*Constantineau*, 400 U.S. 433 (1971)).

Plaintiffs contend, and Defendants do not dispute, placement on the No Fly List carries with it a stigma of being a suspected terrorist.  Defendants, however, argue Plaintiffs cannot meet the "plus" part of the test because (1) Plaintiffs do not have a right to travel by airplane and (2) there is no "connection" here between the stigma and the plus because Plaintiffs have alternative means of travel available.

As noted, the Court disagrees and has concluded Plaintiffs have a constitutionally-protected liberty interest in the right to travel internationally by air.  In addition, Plaintiffs have shown the "plus" because being on the No Fly List means Plaintiffs are legally banned from traveling by air at least to and from the United States and over United States air space, which they would be able to do but for their inclusion on the No Fly List.

Because the Court concludes Plaintiffs have constitutionally-protected liberty interests both in international air travel and reputation, the Court concludes the first factor under the *Mathews* test weighs in Plaintiffs' favor.

**B.    Second factor:  Risk of Erroneous Deprivation**

Because Plaintiffs have protected liberty interests under the first *Mathews* factor, the issue becomes whether the current process available to Plaintiffs to contest placement on

27 - OPINION AND ORDER

the No Fly List creates the risk of erroneous deprivation of those interests.

### 1.  Notice and Hearing

"For more than a century the central meaning of procedural due process has been clear:  Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.  It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)(internal citations and quotations omitted).

Notice is insufficient when an individual does not have adequate information and an opportunity to correct any errors that may have led to the deprivation. *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 982 (9th Cir. 2012)("Without knowledge of a charge, even simple factual errors may go uncorrected despite potentially easy, ready, and persuasive explanations."). *See also KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner,* 647 F. Supp. 2d 857, 905 (N.D. Ohio 2009)(risk of erroneous deprivation existed when government failed to provide information about the basis for blocking the plaintiff corporation's assets, which rendered the invitation to submit a letter challenging the action futile because the challenge could be neither comprehensive nor

successful); *Gete v. I.N.S.*, 121 F.3d 1285, 1298 (9th Cir. 1997)(INS procedures following vehicle seizures violated procedural due process when INS did not provide post-seizure its legal and factual basis for the seizure, "copies of [the] evidence to be used against [the plaintiffs]," and "statements of the reasons for its denials of relief.").

In some cases a post-deprivation hearing may be sufficient to satisfy the hearing requirement, but "under no circumstances has the Supreme Court permitted a state to deprive a person of a life, liberty, or property interest under the Due Process Clause without any hearing whatsoever." *DeNieva*, 966 F.2d at 485 (citations omitted).

Plaintiffs argue the redress process available here is insufficient and does not provide the basic process that is due. Plaintiffs contend they are entitled to (1) a post-deprivation notice setting forth the government's reasons for placing Plaintiffs on the No Fly List in sufficient detail to allow Plaintiffs to put forward a defense and (2) a post-deprivation hearing at which Plaintiffs can meaningfully contest their placement on the No Fly List.

It is undisputed that a DHS TRIP complainant is never informed of the specific reasons for inclusion on the No Fly List. In fact, Defendants acknowledge the government's policy is never to confirm or to deny an individual's placement

29 - OPINION AND ORDER

on the No Fly List.  It is also undisputed that the current

process does not provide a hearing at which an individual can

present evidence to contest his or her inclusion on the No Fly

List.  Plaintiffs assert this process is constitutionally

deficient and creates a high risk of "erroneous deprivation" of

their constitutional rights because they cannot provide the

evidence necessary to clear up any errors without knowing why

they are on the No Fly List.  Plaintiffs contend this risk is

compounded by the fact that they are not permitted to have a

hearing to confront and to rebut the bases for their inclusion on

the No Fly List.

As noted, Defendants do not dispute the notice

sought by Plaintiffs is neither given before an individual is

placed on the No Fly List nor after the individual seeks redress

through DHS TRIP.  Defendants instead contend the DHS TRIP

process is all that Plaintiffs are due in light of the

government's interest in national security.  Defendants argue

they are not required to provide Plaintiffs with information

about their alleged status on the No Fly List or an opportunity

to contest that placement because providing such information

would require Defendants to reveal classified information, which

they cannot do.  Defendants also assert they are not required to

provide an opportunity for Plaintiffs to confront or to rebut the

grounds for inclusion on the No Fly List because confrontation

30 - OPINION AND ORDER

and rebuttal are not absolute requirements for all government
proceedings, especially in cases where the information at issue
is highly sensitive to national security. *See Jifry v. F.A.A.*,
370 F.3d 1174, 1183 (D.C. Cir. 2004)("In light of the
governmental interests at stake and the sensitive security
information, substitute procedural safeguards may be
impracticable, and in any event, are unnecessary under our
precedent.").

       Defendants contend the current redress process is
a "suitable substitute" for an evidentiary hearing because DHS
TRIP allows a complaint to be filed, the complaint to be
reviewed, and judicial review by the court of appeals for those
who are dissatisfied with the results.  Defendants argue this
process achieves an appropriate balance by providing an
opportunity for review of any alleged delay or denial of boarding
on a flight without requiring the government to reveal sensitive
or classified information.

### 2.    Accuracy and Quality Assurances

       Defendants contend the current redress process is
adequate because there is little risk of erroneous deprivation of
an individual's constitutional rights as a result of the quality
controls in place to monitor the contents of the TSDB and the
names included on the No Fly List.  For example, (1) the TSDB is
updated daily, (2) the TSDB is reviewed and audited on a regular

31 - OPINION AND ORDER

basis to comply with quality-control measures, and

(3) nominations to the No Fly List are reviewed by TSC personnel

to ensure they meet the required criteria.

Plaintiffs and TCP counter Defendants' contentions

by arguing the adequacy of the DHS TRIP front-end procedures is

disputed by government reports and audits that document errors on

the watch list from which the No Fly List is compiled.  For

example, in a 2009 audit report, the Department of Justice Office

of Inspector General (DOJ OIG) concluded the "FBI did not update

or remove watch list records as required."  Choudhury Decl., Ex.

F at iv.  In that report DOJ OIG also found the FBI failed to

(1) timely remove records in 72 percent of cases where it was

necessary, (2) modify watch-list records in 67 percent of cases

where it was necessary, and (3) remove terrorism case

classifications in 35 percent of cases where it was necessary.

*Id*. at iv-vi.

In *Ibrahim v. Department of Homeland Security*, the

Ninth Circuit reviewed other governmental reports regarding the

TSDB and noted similarly troubling deficiencies:

> In theory, only individuals who pose a threat
> to civil aviation are put on the No-Fly and
> Selectee Lists, but the Justice Department
> has criticized TSC for its "weak quality
> assurance process." . . . Tens of thousands
> of travelers have been misidentified because
> of misspellings and transcription errors in
> the nomination process, and because of
> computer algorithms that imperfectly match
> travelers against the names on the list.  TSA

maintains a list of approximately 30,000
individuals who are commonly confused with
those on the No-Fly and Selectee Lists.  One
major air carrier reported that it
encountered 9,000 erroneous terrorist
watchlist matches every day during April
2008.

669 F.3d 983, 990 (9th Cir. 2012)(citations omitted).

Citing to government reports from 2007 and 2012,[4]
Defendants argue the reports relied on by Plaintiffs and TCP are
outdated and not an accurate portrayal of the current TSDB
process as recent improvements have helped reduce the amount of
errors associated with the process.  Plaintiffs and TCP contend,
however, even these more recent improvements have not addressed
or corrected the risk shown here; *i.e.*, being placed on the No
Fly List in error.

### 3.   Availability of Judicial Review

Defendants argue judicial review by a court of
appeals under 49 U.S.C. § 46110 is adequate due process for those
who are dissatisfied with the DHS TRIP redress process as it
sufficiently balances the government's interest in security and
an individual's constitutional rights.  Plaintiffs, however,
argue because of the lack of information contained in the DHS

---

[4] *See* United States Department of Justice, Office of the
Inspector General, Audit Division, Audit Report 07-41, *Follow-Up
Audit of the Terrorist Screening Center* (2007); United States
Government Accountability Office, GAO-12-476, *Terrorist
Watchlist:  Routinely Assessing Impacts of Agency Actions Since
the December 25, 2009, Attempted Attack Could Help Inform Future
Efforts* (2012).

TRIP determination letters, they "do not know what to appeal, whether to appeal, or how best to advocate for themselves on appeal." Pls.' Am. Memo. in Opp'n (#98-2) to Defs.' Mot. for Partial Summ. J. at n.37. Although this issue was raised by the parties in their briefing, it was not addressed in detail.

At oral argument Defendants explained the government files an administrative record and other materials *ex parte* and *in camera* with the appellate court as part of the judicial-review process. This Court does not have any other information about the review process such as what specifically would be in the administrative record submitted to the appellate court, what other materials might be submitted, or the nature of the record or materials that deems them sensitive and/or classified so they cannot be revealed to anyone other than the appellate court.

At oral argument the Court requested Defendants to submit additional briefing as to whether any appellate courts have issued opinions on the merits of a challenge brought by a plaintiff who sought review of a final agency decision reached through the DHS TRIP process. Defendants advise "no appellate court has issued a decision on the merits of such a challenge," but Defendants note there are currently three such cases pending in the Ninth Circuit and the District of Columbia Circuit: *Arjmand v. TSA*, No. 12-71748 (9th Cir.); *Ege v. DHS*, No. 13-1110

34 - OPINION AND ORDER

(D.C. Cir.); and *Kadirov v. TSA*, No. 10-1185 (D.C. Cir.).

As noted, the DHS TRIP process, at least through the determination-letter step, does not provide Plaintiffs with either post-deprivation notice nor a hearing.  Plaintiffs have not been officially provided with any information about why they are not allowed to board commercial flights; they have not been officially informed whether they are on the No Fly List; if they are on the No Fly List, they have not been provided with an opportunity to contest their placement on the list; and they have not been provided with an in-person hearing.  The question remains, however, whether, as Defendants contend, judicial review of the record on which the government acted as to each Plaintiff is sufficient to satisfy the requirements of due process and to avoid the risk of erroneous deprivation.  The Court concludes the current record in this case is not sufficiently developed as to the judicial-review process for the Court to resolve this question on the parties' Cross-Motions or on this record.

**C.    Third Factor:  Government's Interest**

The third and final *Mathews* factor requires the Court to weigh the government's interest**,** "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Defendants again argue the DHS TRIP process, including

35 - OPINION AND ORDER

the availability of judicial review, is adequate in light of the government's "paramount interest in ensuring that TDSB information can be broadly shared across the government to maximize the nation's security, without fear that such information will be disclosed whenever anyone cannot travel as he or she might choose."  Defs.' Reply Memo. (#102) in Supp. of Defs.' Mot. for Summ. J. at 19.

Because the record is not sufficiently developed for the Court to assess fully the second factor of the *Mathews* balancing test with respect to the judicial-review process, the Court is unable to evaluate the third factor as well.  In other words, the Court does not yet have a sufficiently developed record to weigh the government's interests against the current review process that is available to Plaintiffs in order to determine whether additional or alternative procedural requirements are necessary or possible.

## II.  Plaintiffs' APA Claims

Plaintiffs also challenge Defendants' actions under the APA on two separate theories:  (1) Defendants' failure to afford United States citizens on the No Fly List meaningful notice and a hearing violates due process and is "contrary to constitutional right, power, privilege, or immunity" under APA § 706(2)(B) and (2) Defendants' redress procedures are arbitrary and capricious under APA § 706(2)(A).

36 – OPINION AND ORDER

In light of the Court's ruling as to Plaintiffs' procedural due-process claims, the Court defers ruling on the parties' Cross-Motions as to Plaintiffs' APA claims at this time because the Court is not yet able to resolve on the current record whether the judicial-review process is a sufficient, post-deprivation process under the United States Constitution or the APA.

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS in part** Plaintiffs' Cross-Motion (#91) as to Plaintiff's liberty interests in international air travel and reputation, **DENIES in part** Defendants' Motion (#85) as to the same issue, and **DEFERS** ruling on the remaining parts of the pending Cross-Motions.

The Court also directs the parties to confer and to submit a joint status report no later than September 9, 2013, setting out their recommendation as to the most effective process to better develop the record so that the Court may complete its consideration of the still-pending Motions (#91, #85) and specifically setting out any additional issues that the parties believe need to be resolved on the existing Cross-Motions in

light of the Court's rulings herein.

IT IS SO ORDERED.

DATED this 28th day of August, 2013.


                                    /s/ Anna J. Brown

                                    _____
                                    ANNA J. BROWN
                                    United States District Judge


38 - OPINION AND ORDER