STUART F. DELERY
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

AMY POWELL
amy.powell@usdoj.gov
LILY FAREL
lily.farel@usdoj.gov
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C.  20001
Phone: (202) 514-9836
Fax:    (202) 616-8470
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| AYMAN LATIF, et al.,<br><br>          *Plaintiffs*, | Case 3:10-cv-00750-BR |
| v.<br><br>ERIC H. HOLDER, JR., et al.,<br><br>          *Defendants*. | **DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

Defendants have explained in their prior briefing how the processes and procedures available to individuals who have been denied boarding on commercial aircraft scheduled to fly to, from, or over the United States, and who believe that their denial is a direct result of being included on the No Fly List, comport with due process.  In their supplemental brief, Plaintiffs misplace the burden on their due process claim, and they ask the Court to do the unprecedented:

1 – DEFS.' SUPPL. REPLY BRIEF
Latif v. Holder, No. 3:10-cv-00750-BR

find that these processes, including the judicial review available under 49 U.S.C. § 46110, do not satisfy due process.  But Plaintiffs' argument continues to omit a discussion of the specific additional procedural measures they believe are necessary, and how instituting those measures would impact the compelling governmental interests at issue.  By choosing not to outline requested procedures, Plaintiffs offer insufficient information to consider the second and third factors under *Mathews*.  The reason for Plaintiffs' refusal to describe the procedures they seek is clear enough, as it is apparent that Plaintiffs seek what no other court has ever required: the government's disclosure of watchlisting status and the substantive reasons underlying that listing, which would necessarily include the release of classified information.  Plaintiffs have no interest in discussing how the governmental interests could be protected because their ultimate aim is the disclosure of this information.  But the reasons to protect such information from disclosure are compelling, and Plaintiffs fail to show that the deprivation of even a protected interest in international air travel can overcome these interests.

Contrary to Plaintiffs' arguments, the government has implemented a multi-layer set of processes and procedures that account for any interest an individual may have in international travel by air while implementing the type of effective and efficient watchlisting system required by Congress, ensuring the integrity of national security investigations, and protecting information that is classified, law enforcement sensitive, or Sensitive Security Information. Plaintiffs receive the process they are due, and their claim should be denied.

## ARGUMENT

Plaintiffs' argument reduces to a categorical contention that the government may not place an individual on the No Fly List without disclosing the evidence on which the listing is

based.  But due process is not measured by such blanket *per se* rules.  Instead, due process "is flexible and calls for such procedural protections as the particular situation demands." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1083 (9th Cir. 2010).  Due process does not require the government to provide any particular measures in all cases, but instead the necessary procedures may vary "depending upon the importance of the interests involved and the nature of the subsequent proceedings."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).  Yet Plaintiffs' argument is virtually devoid of the balancing required in the due process inquiry.

Throughout their briefing, including their recent supplemental brief, Plaintiffs have relied almost exclusively on the first and second *Mathews* factors – the private interests at issue, and the risk of erroneous deprivation.  But they continue to ignore almost entirely the third factor – the governmental interests, including the burdens that additional or substitute procedures would entail.  Their failure to meaningfully engage regarding the third factor should be dispositive of their due process claim.

Plaintiffs avoid a full discussion of the third *Mathews* factor by failing to describe the additional measures that they believe the government is constitutionally required to provide to them (and to all other individuals who believe they are on the No Fly List).  They ask the Court to hold that the existing procedures violate due process, and *then* to consider what additional procedures may be necessary to cure the violation.  *See* Pls.' Suppl. Br. 6-7.  But such an approach is inconsistent with the due process inquiry, because it effectively disregards the

governmental interests that would be threatened by additional procedural measures.[1]  Before a court can conclude that existing procedures are insufficient, *Matthews* directs that consideration must be given to the implications posed by the adoption of different procedures.  As a result, Plaintiffs' suggestion that the Court put this inquiry off until another day thus leads them to omit a key part of the due process analysis.

The Court has previously recognized the need to consider the consequences of specific alternative procedures.  As the Court recognized during oral argument, weighing Plaintiffs' interests in international air travel and their reputation against the government's interests in protecting national security "requires some suggestion at least by plaintiffs about what it is plaintiffs contend would be the relief that would follow in the event they establish liability."  *See* Tr. 6:21-7:6 (June 21, 2013).[2]  Moreover, the need to consider particular additional procedures is implicit in the *Mathews* test.  The second *Mathews* factor looks to "the risk of an erroneous deprivation of such interest through the procedures used, *and the probable value, if any, of additional or substitute procedural safeguards*," while the third factor considers "the

---

[1] In arguing that the Court may find a violation of due process before considering the proper remedy, Plaintiffs rely on the district court's opinion in *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857 (N.D. Ohio 2009).  The government disagrees with the ruling in *KindHearts*, but notes that, in finding a due process violation, the district court did purport to consider the potential value and effect on government interests of specific additional measures.  The district court erred in how it weighed those interests, but its consideration of additional procedures distinguishes that analysis from Plaintiffs' attempt to eschew any discussion of the consequences of imposing specific additional measures.

[2] Plaintiffs are incorrect in suggesting that the Court's opinion has already found "deficiencies" in the DHS TRIP process.  *See* Pls.' Suppl. Br. 5.  To the contrary, while the Court found that Plaintiffs had shown the deprivation of a protected liberty interest in traveling internationally by air, it expressly indicated that it did not yet have sufficient information to rule on the remaining *Mathews* factors.  Mem. Op., ECF No. 110, at 35-36.

4 – DEFS.' SUPPL. REPLY BRIEF
Latif v. Holder, No. 3:10-cv-00750-BR

Government's interest, including the function involved and the fiscal and administrative burdens *that the additional or substitute procedural requirement would entail*." *Mathews*, 424 U.S. at 335 (emphasis added). Due process thus requires weighing the value of the particular procedures sought against the adverse consequences that would be caused by the implementation of these procedures. *See also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012) (explaining that the due process inquiry "cannot be done in the abstract," but instead requires that a court "carefully assess the precise 'procedures used' by the government, 'the value of additional safeguards,' and 'the burdens of additional procedural requirements'") (quoting *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998)).

In order to satisfy their burden on their due process challenge, Plaintiffs must therefore show that due process requires particular additional procedures. It is not enough for them to say that the current processes are insufficient, without identifying additional measures that would both diminish any risk of erroneous deprivation *and* not cause unwarranted harm to the government's interests in aviation and national security and the protection of classified, law enforcement sensitive, and Sensitive Security Information. As a result, Plaintiffs' briefing does not meaningfully balance the relevant interests. Plaintiffs argue in their supplemental brief that there is a high risk of erroneous deprivation because individuals are not officially told that they are on the No Fly List, or provided the reasons for such inclusion. *See* Pls.' Suppl. Br. 7. But even if disclosing No Fly List status and the underlying substantive reasons for inclusion on the list would reduce the risk of erroneous deprivation, *Mathews* also requires consideration of the consequences that such additional measures would have for the governmental interests at issue.

*Mathews*, 424 U.S. at 335.  Therefore, a determination that disclosing No Fly List status and the underlying information would reduce the risk of error is not the end of the inquiry.

While Defendants' briefing has explained at length the harms that additional procedural measures would have for the significant governmental interests at issue, Plaintiffs spend just over two pages of their fifteen-page brief discussing the third *Mathews* factor.  *See* Pls.' Suppl. Br. 12-15.  In response to the government's explanation of the need to protect the secrecy of individuals' watchlisting status and the classified and other sensitive information that may support an individual's inclusion on the No Fly List, Plaintiffs contend conclusorily that such information may be protected through "calibrated means," *id.* at 13, but they fail to identify those protections or explain how they would work.  Plaintiffs contend that the governmental interests would not be harmed by the disclosure of this information to them because they are improperly on the No Fly List.  Yet even that argument fails to account for the fact that the measures called for by Plaintiffs would require the government to disclose classified information to individuals who are properly on the list, including individuals known to be terrorists.  Through three briefs and oral argument, Plaintiffs do not account for these consequences of their argument.  Plaintiffs have repeatedly failed to take their argument beyond the abstract and to offer concrete details – as required to make the necessary showing under the third step of *Mathews* – on how they could be provided the information they request without harming the substantial security interests identified by the government.

Contrary to Plaintiffs' argument, no court has required the government to provide such information in analogous circumstances.  Plaintiffs rely on the Ninth Circuit's ruling in *Al Haramain Islamic Foundation, Inc. v. U.S. Department of Treasury*, 686 F.3d 965 (9th Cir.

2012), in which the court considered a challenge to the Office of Foreign Assets Control's ("OFAC's") designation of Al-Haramain as an organization that supports Al-Qaeda based on a record that included classified information filed *ex parte* and *in camera*. While the Ninth Circuit found that OFAC had improperly failed "to mitigate the use of classified information by, for example, preparing and disclosing an unclassified summary," *id.* at 1001, Plaintiffs ignore a critical relevant distinction, namely that OFAC's designation of Al-Haramain was already publicly disclosed.[3] Indeed, such disclosure is necessary to the execution of economic sanctions under Executive Order 13224 because other persons are generally prohibited from conducting business with the designated individual or entity, and thus require notice of the designation for those prohibitions to take effect.

In the watchlisting context, however, the government does not disclose whether individuals are included on the No Fly List, for the operational and intelligence-based reasons explained at length in Defendants' prior briefing. *See* Defs.' Mot., ECF No. 85-1, at 25-27; Coppola Decl., ECF No. 85-2, ¶¶ 27-39; Defs.' Reply, ECF No. 102, at 20-24. The watchlisting context thus presents a fundamentally different set of considerations because of the strong governmental interest in not providing official confirmation of an individual's status on the No Fly List.[4] The fact that a designation is already publicly known is significant to the due process

---

[3] In addition, for purposes of a balancing of interests under *Mathews*, the private interests at issue in *Al-Haramain* were stronger than the liberty interests recognized by the Court here. Deprivation of interests in international travel by air and in an individual's personal reputation are more limited than the deprivation of an entity's "ability to use any funds whatsoever, for any purpose." *Al-Haramain*, 686 F.3d at 986.

[4] The strong interest in not providing official confirmation of inclusion or non-inclusion on the No Fly List is not undermined by informal and unofficial statements made to certain Plaintiffs by

analysis.  While the *Al-Haramain* court considered whether the government must disclose

additional information concerning the reasons for its action, that analysis was undertaken with a

predicate that the action itself (that was the subject of the lawsuit) was already publicly

disclosed.  Here, any disclosure whatsoever concerning the reasons for an individual's inclusion

on the No Fly List not only implicates the sensitivity of the derogatory information, but also

would necessarily result in the official disclosure of watchlist status.[5]

　　　　Plaintiffs also cannot meaningfully distinguish the D.C. Circuit's ruling in *Jifry v. FAA*,

370 F.3d 1174 (D.C. Cir. 2004), which upheld a redress process for the FAA's revocation of

pilots' airman certificates that included *ex parte* judicial review of classified information.  (This

too was a proceeding under 49 U.S.C. § 46110.)  Again, Plaintiffs focus only on part of the

*Mathews* test, and ignore the court's consideration of the third factor.  *See* Pls.' Suppl. Br. 11.  In

*Jifry*, the court assumed that the petitioners had constitutional protections, and found that a

---

individuals such as airline employees and law enforcement officers.  While Defendants do not
dispute the factual allegations in Plaintiffs' declarations, for purposes of their motion for
summary judgment, those allegations do not demonstrate official confirmation.  Indeed,
Plaintiffs recognize as much, as they contend that they have not received "notice" of their alleged
inclusion on the No Fly List.  *See, e.g.*, Pls.' Suppl. Br. 6, 12.  Allegations that an individual
Plaintiff was told by some unnamed official of his watchlist status, in contradiction to the
government's official policy to neither confirm nor deny status, do not diminish the risks of
official disclosure.  *See* Coppola Decl., ECF No. 85-2, ¶ 36.  The fact that Plaintiffs seek official
disclosure in this case demonstrates the important distinction between informal statements and
official confirmation.

[5] Moreover, while the court found that the *Mathews* factors supported Al-Haramain's due
process challenge, it required only that the government consider steps to mitigate any burden
from reviewing classified information *in camera* and *ex parte*, not to actually disclose the
classified information in full to the other side.  *Al Haramain*, 686 F.3d at 988-89.  The *Al-
Haramain* court specifically noted the possibility that there would be cases in which no
mitigation measures were possible.  Thus, the fact that no mitigation measures are specifically
provided in the § 46110 process does not mean the process is unconstitutional.

8 – DEFS.' SUPPL. REPLY BRIEF
Latif v. Holder, No. 3:10-cv-00750-BR

balancing of the *Mathews* factors decisively showed that the available process was sufficient. The court found that the pilots' interest "pales in significance to the government's security interests in preventing pilots from using civil aircraft as weapons of terror." *Jifry*, 370 F.3d at 1183. The court then held that the existing procedures – including "independent *de novo* review of the entire administrative record by the Deputy Administrator of the TSA, and *ex parte*, *in camera* judicial review of the record" by the court of appeals – were sufficient. *Id.* The D.C. Circuit expressly rejected the argument, made again by Plaintiffs here, that judicial review of the government's action was insufficient unless the petitioner had notice of the reasons for the action and could respond accordingly. *See id.* at 1184 (rejecting the petitioners' argument that, "without specific knowledge of the specific evidence on which TSA relied, they are unable to defend against the charge that they are security risks"). Even if Plaintiffs' personal interest in international travel by air is more significant than the pilots' professional interest in airman certificates, as Plaintiffs contend, the governmental interests at issue here are no less significant than those at issue in *Jifry*, and the *Jifry* court's approval of similar procedures underscores that it is Plaintiffs who ask this Court to break new ground in finding due process violations.

Finally, Plaintiffs are incorrect in their critique of the judicial review available in the courts of appeals under 49 U.S.C. § 46110. As the parties' stipulated facts indicated, after the government files an administrative record, the court of appeals will review the record "to determine if the government reasonably determined that the petitioner satisfied the minimum substantive derogatory criteria for inclusion on the" No Fly List. Stipulated Facts, ECF No. 114, ¶ 8. Defendants' brief explained that, if the court determines that the individual's placement is not supported by the administrative record, the court may remand the matter to the government

for appropriate action.  On remand, the government may, for instance, engage in further fact-finding and, if appropriate, remove the individual from the No Fly List.  Plaintiffs contend that such review is inadequate because the court of appeals lacks the power to order the government to remove someone from the No Fly List.

Plaintiffs' argument misunderstands settled principles of administrative law.  In the event the court of appeals determines that the existing record does not support the petitioner's inclusion on the No Fly List, remand would permit the government to determine if additional evidence supports inclusion or, alternatively, if removal from the List is appropriate.  A court should not, and need not, go beyond traditional methods of recourse in administrative cases, particularly given the deference owed to the government in this arena.  Allowing for such remand results in no prejudice to a petitioner, because the government could either identify new evidence supporting inclusion or remove the individual from the List.  In any event, the issue of remedy can be addressed by a court of appeals in the event it grants a particular petition.  Marginal questions about the remedy available at the end of the § 46110 process should thus have little impact on the questions before this Court.  Certainly, the fact that judicial review of final agency actions in other contexts may result in remand to the agency does not infringe on due process.  Here, the stipulated facts regarding the review that is available in the court of appeals show that the review is both comprehensive and effective.[6]

---

[6] Defendants previously filed with the Court a notice identifying three cases pending in the courts of appeals in which individuals have sought review of final agency decisions received through DHS TRIP.  *See* Defs.' Notice, ECF No. 107.  In two of those cases, the government has filed a certified index of record, including material filed *ex parte* and *in camera*.  In a third case, the government filed a certified index of record, and subsequently filed record excerpts, portions of which were filed *in camera* and *ex parte* for review by the court of appeals.  If the Court

Unlike Plaintiffs' presentation, Defendants' briefing analyzes the balance between the relevant interests.  While the government has argued that as a matter of law Plaintiffs have not shown a deprivation of liberty interests in international travel by air or reputation, the government has nevertheless established a series of processes and procedures that adequately accommodate any such interests of Plaintiffs.  The government has a compelling interest in preventing the harms to national security that would result from disclosing an individual's inclusion or non-inclusion on the No Fly List and the substantive reasons therefore.  Considered in its entirety – from initial placement on the No Fly List, through periodic reviews and other quality control measures, to the DHS TRIP process and review in the court of appeals – the robust multi-layer review process provides ample safeguards and protections to diminish the risks that an individual will erroneously be included on the No Fly List.

Dated: November 15, 2013.                    Respectfully submitted,

                                             STUART F. DELERY
                                             Assistant Attorney General

                                             DIANE KELLEHER
                                             Assistant Branch Director

                                              /s/ Amy E. Powell
                                             AMY POWELL
                                             amy.powell@usdoj.gov

---

believes that review of the record excerpts filed with the court of appeals would assist the Court in understanding the adequacy of the procedures followed in the court of appeals, then for this limited purpose, the government is willing to select record excerpts and make them available to the court as an illustrative sample only.   If the Court requests this submission, it would be made for this limited purpose – so that the Court may better understand the government's procedures – and not for the Court to evaluate the sufficiency of that record or the merits of the proceedings in which it was provided to the court of appeals.  Any such submission would be made *in camera* and *ex parte* (as it was to the court of appeals), and the materials could not be described or disclosed to Plaintiffs, their counsel, or the public.

11 – DEFS.' SUPPL. REPLY BRIEF
Latif v. Holder, No. 3:10-cv-00750-BR

LILY FAREL
lily.farel@usdoj.gov
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C.  20001
Phone: (202) 514-9836
Fax:    (202) 616-8470

*Counsel for Defendants*