Steven M. Wilker, OSB No. 911882
Email: steven.wilker@tonkon.com
**Tonkon Torp LLP**
1600 Pioneer Tower
888 SW 5th Avenue
Portland, OR 97204
Tel.: (503) 802-2040; Fax: (503) 972-3740
Cooperating Attorney for the ACLU Foundation of Oregon

Hina Shamsi (Admitted *pro hac vice*)
Email: hshamsi@aclu.org
Nusrat Jahan Choudhury (Admitted *pro hac vice*)
Email: nchoudhury@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 519-2500; Fax: (212) 549-2654

Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
P.O. Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6948

Ahilan T. Arulanantham (Admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (Admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
**ACLU Foundation of Southern California**
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (Admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (Admitted *pro hac vice*)
Email: jmass@aclunc.org
**ACLU Foundation of Northern California**
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Laura Schauer Ives (Admitted *pro hac vice*)
Email: lives@aclu-nm.org
**ACLU Foundation of New Mexico**

P.O. Box 566
Albuquerque, NM 87103
Tel.: (505) 243-0046; Fax: (505) 266-5916

Mitchell P. Hurley (Admitted *pro hac vice*)
Email: mhurley@akingump.com
Christopher M. Egleson (Admitted *pro hac vice*)
Email: cegleson@akingump.com
Justin H. Bell (Admitted *pro hac vice*)
Email: bellj@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

Ayman Latif, et al.,

Plaintiffs,

v.

Eric H. Holder, Jr., et al.,

Defendants.

No. 3:10-cv-750-BR

**PLAINTIFFS' SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ARGUMENT**

After extensive briefing on the government's deprivation of Plaintiffs' constitutionally-protected liberties, and the extent to which Defendants' failure to provide any notice, reasons, or a hearing violates procedural due process requirements, this Court asked for supplemental briefing on a single issue: whether judicial review under 49 U.S.C. § 46110 can satisfy constitutional requirements in light of the Court's August 28, 2013 ruling. As Plaintiffs have now shown based on governing law and uncontested, undisputed facts, the answer is: no.

Indeed, Defendants' supplemental reply brief cannot point to a single case in which a court has recognized liberty interests, as this Court has done, and yet upheld the kind of utterly deficient, one-sided procedures Defendants insist upon here. Instead, Defendants' reply mischaracterizes Plaintiffs' claims, misconstrues Ninth Circuit precedent, and re-hashes arguments Defendants already made and Plaintiffs already refuted. Defendants' factual, legal, and analytical errors can be summarized in four points.

**First**, at the end of their reply brief, Defendants address the only question this Court asked the parties to brief—the adequacy of judicial review under Section 46110. Defendants' response confirms that, in their view, if a court conducting judicial review under Section 46110 finds the administrative record is inadequate, it may not order a petitioner to be taken off the list, and may only order a remand to the government. Defs.' Suppl. Reply 9–10, ECF No. 123. Without conceding that Defendants are correct, it is hardly a "marginal" question, Defs.' Suppl. Reply 9, that Section 46110 review may be so limited, and only confirms Plaintiffs' argument that the procedure is not an adequate substitute for the process they ask this Court to order.

**Second**, contrary to Defendants' main argument in their reply brief, Plaintiffs have fully met "their burden on their due process challenge," both by showing that due process requires "particular additional procedures" under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and by addressing the "consequences that such additional measures would have" for the government. Defs.' Suppl. Reply 5. Plaintiffs have repeatedly described, with citations to controlling Supreme Court and Ninth Circuit precedent (including in the national security context), as well as persuasive authority from other courts, the procedures the government must provide them in order to satisfy due process. In this case, as in countless others, Defendants must provide:

- Meaningful notice, which means (1) a written statement of reasons for the inclusion of Plaintiffs on the No Fly List,[1] and (2) evidence supporting each of these reasons.[2]

---

[1] *See* Pls.' Cross-Mot., ECF No. 98-1; Pls.' Opp'n, ECF 98-2; Pls.' Reply, ECF No. 104; Pls.' Suppl., ECF No. 121, citing, *inter alia*, *Al Haramain Islamic Found. v. Dep't of Treasury* (*A.H.I.F.*), 686 F.3d 965, 983, 986–88 (9th Cir. 2012) (in national security case, requiring the government to provide a statement of reasons to a U.S. charity that the government sought to designate as a terrorist organization); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner* (*KindHearts II*), 710 F. Supp. 2d 637, 660 n.17 (N.D. Ohio 2010) (in national security case, holding that adequate notice requires disclosure of *each* legal basis for the government's block on a U.S. charity's assets); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner* (*KindHearts I*), 647 F. Supp. 2d 857, 904–06 (N.D. Ohio 2009) (requiring statement of reasons following government block on U.S. charity's assets); *Hamdi v. Rumsfeld*, 542 U.S. 507, 533

- A hearing before a neutral decisionmaker (in this case, the Court).[3]

---

(2004) (plurality opinion) (requiring notice to alleged enemy combatant captured in Afghanistan of factual and legal basis for charges); *In re Gault*, 387 U.S. 1, 33 (1967) (requiring that notice "set forth the alleged misconduct with particularity" (internal quotation marks omitted)); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Nat'l Council of Resistance of Iran v. U.S. Dep't of State*, 251 F.3d 192, 209 (D.C. Cir. 2001) (requiring pre-deprivation notice to organization concerning its impending designation as foreign terrorist organization); *Gete v. I.N.S.*, 121 F.3d 1285, 1297 (9th Cir. 1997) (without notice of the "exact reasons" for the government's decision, affected persons cannot "clear up simple misunderstandings or rebut erroneous inferences"); *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992) (requiring provision of reasons for denial of child support payments to parents on welfare); *Hernandez v. Cremer*, 913 F.2d 230, 240 (5th Cir. 1990) (upholding injunction requiring statement of reasons for denial of U.S. admission to U.S. citizen); *DeNieva v. Reyes*, Civ. A. No. 88-00017, 1989 WL 158912, at *7 (D.N. Mar. I. Oct. 19, 1989) (holding that due process requires written explanation of reasons for seizure and retention of passport), *aff'd* 966 F.2d 480 (9th Cir. 1992).

[2] *See* Pls.' Cross-Mot.; Pls.' Opp'n; Pls.' Reply; Pls.' Suppl., citing, *inter alia*, *A.H.I.F.*, 686 F.3d at 983, 986–87 (requiring reasonable notice of the record supporting the government's reasons, noting that "the opportunity to guess at the factual and legal bases for a government action does not substitute for actual notice"); *KindHearts I*, 647 F. Supp. 2d at 901 (affected party must have reasonable access to the evidence the government is using against them); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"); *American-Arab Anti-Discrimination Comm. v. Reno* (*A.D.C.*), 70 F.3d 1045, 1070–71 (9th Cir. 1995) (barring use of secret evidence in immigration proceedings for non-citizens seeking discretionary immigration benefit); *United States v. Abuhamra*, 389 F.3d 309, 329 (2d Cir. 2004) (same for pre-trial detention hearings concerning applications for release on bail, subject to limited exceptions); *see also Goss v. Lopez*, 419 U.S. 565, 581 (1975) (prior to temporary school suspension, due process requires that a student receive "an explanation of the evidence" possessed by authorities).

[3] *See* Pls.' Cross-Mot.; Pls.' Opp'n; Pls.' Reply; Pls.' Suppl., citing, *inter alia*, *Hamdi*, 542 U.S. at 509 (requiring that an alleged enemy combatant be given a "meaningful opportunity to contest the factual basis for [his] detention before a neutral decisionmaker"); *Memphis Light*, 436 U.S. at 16 (holding that due process requires the government to provide "some kind of hearing . . . at some time" when it deprives a person of a protected liberty); *DeNieva*, 966 F.2d at 485 ("[U]nder no circumstances has the Supreme Court permitted a state to deprive a person of a life, liberty, or property interest under the Due Process Clause *without any hearing whatsoever*." (emphasis added)); *see also Califano v. Yamasaki*, 442 U.S. 682, 696 (1979) (in-person hearing required for government's recoupment of excess Social Security payments); *Goss*, 419 U.S. at 581 (mandating hearing for students to present their "side of the story" before temporary school suspension). An in-person hearing is particularly necessary because No Fly List placement likely involves determinations concerning character and veracity. *See Califano*, 442 U.S. at 697 (assessing intelligence, physical and mental condition, and credibility requires "personal contact" between the affected party and "the person who decides his case").

- An opportunity to confront and rebut the government's evidence at the hearing.[4]

**Third**, as Plaintiffs have also already briefed in detail, providing these procedures to them would not harm government interests under the third *Mathews* factor, and any burdens the procedures entail are minimal. *See* Pls.' Cross-Mot. 26–30; Pls.' Opp'n 29–32; Pls.' Reply 13–22; Pls.' Suppl. 12–15; *see also A.H.I.F.*, 686 F.3d at 986 (concluding that the requirement of a statement of reasons "would not present a practical burden" for the government); *Barnes*, 980 F.2d at 579 (requiring an agency to provide a statement of reasons imposes "no significant administrative burden," as the agency already possesses the information).

Defendants ignore this prior briefing, and re-hash some of their claims of harm to government interests. These assertions continue to be overstated and are based on a mischaracterization of Plaintiffs' claims. Plaintiffs do not make a "categorical contention that the government may not place an individual on the No Fly List *without disclosing* the evidence on which the listing is based." Defs.' Suppl. Reply 2–3 (emphasis added). Rather, Plaintiffs make the far more modest claim that they are entitled to *post-deprivation* notice, reasons, and a hearing. Similarly, Plaintiffs do not seek the disclosure of the government's reasons or evidence for inclusion of persons "known to be terrorists" on the No Fly List. *Id.* at 6.[5] None of the

---

[4] *See* Pls.' Cross-Mot.; Pls.' Opp'n; Pls.' Reply; Pls.' Suppl., citing, *inter alia*, *A.D.C.*, 70 F.3d at 1069 (9th Cir. 1995) (due process hearing requirement has "ancient roots" in the rights to confrontation and cross-examination); *KindHearts I*, 647 F. Supp. 2d at 904, 907–08 (requiring "prompt" and "meaningful" hearing); *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003) (hearing must permit the plaintiff "to prove or disprove" the facts that are "relevant" to the deprivation); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (requiring in-person hearing permitting confrontation and cross-examination of adverse witnesses); *see also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring) (adversarial process reduces the risk of error because "[s]ecrecy is not congenial to truth-seeking").

[5] Even in the case of people who might properly be on the No Fly List, the government has alternatives to disclosure of classified information, including, as the Court has noted, permitting the person to fly, accompanied by U.S. marshals. Oral Arg. Tr. 87–88, ECF No. 108.

Plaintiffs are "known terrorists"—the government did not dispute that fact on summary judgment when it had an opportunity to do so, and it has not charged any Plaintiff with a terrorism-related crime.[6] As to other individuals not party to this lawsuit, as Plaintiffs have previously noted, if this Court finds Defendants' DHS TRIP procedures violate procedural due process, it can leave to Congress or Defendants to fashion a systemic remedy, including for others placed on the No Fly List based on the government's unilateral assertions. Plaintiffs ask this Court to adjudicate the issues only with respect to Plaintiffs' cases. Pls.' Reply 12–13.[7]

Defendants also re-argue their claims of harm from disclosure of what they characterize as "operational or intelligence information," but those claims are decisively undercut by two other undisputed facts: all the Plaintiffs know they are on the No Fly List,[8] and government agents disclosed to certain Plaintiffs their placement on the No Fly List in an attempt to force them to serve as confidential informants or to spy on their communities—in exchange for assistance with removal from the List.[9] When the government is willing to use the fact and

[6] *See* Coppola Decl. ¶ 8 & n.3; Ahmed Decl. ¶ 11; Ghaleb Decl. ¶ 15; Kariye Decl. ¶ 10; Kashem Decl. ¶ 14; Knaeble Decl. ¶ 22; Third Am Compl. ¶¶ 1, 3, ECF No. 83; Mashal Decl. ¶ 17; Meshal Decl. ¶ 9; Mohamed Decl. ¶ 14; Choudhury Decl. Ex. L ¶ 25 (Muthanna Decl.); Persaud Decl. ¶ 13; M. Rana Decl. ¶ 18; Washburn Decl. ¶ 23.

[7] That this Court is charged only with adjudicating Plaintiffs' cases is particularly relevant to the question of which neutral decision-maker must provide the hearing that due process requires for individuals on the No Fly List. In this case, which has been pending for 42 months, and in which the Ninth Circuit ruled that this Court has authority to determine the validity of Plaintiffs' placement on the No Fly List, *see Latif v. Holder*, 686 F.3d 1122, 1129–30 (9th Cir. 2012), it is this Court that should hold the hearings to which Plaintiffs are entitled. However, for purposes of other individuals who are not before it, this Court need not specify any particular agency to serve as the neutral decisionmaker.

[8] Ahmed Decl. ¶¶ 6, 8; Ghaleb Decl. ¶¶ 6, 8; Kariye Decl. ¶ 6; Kashem Decl. ¶¶ 6, 8; Knaeble Decl. ¶ 9; Latif Decl. ¶¶ 7, 9; Mashal Decl. ¶¶ 7, 10; Meshal Decl. ¶¶ 5–6; Mohamed Decl. ¶ 8; Choudhury Decl. Ex. L ¶ 5 (Muthanna Decl.); Persaud Decl. ¶ 7; A. Rana Decl. ¶¶ 4–5; M. Rana Decl. ¶ 6; Washburn Decl. ¶¶ 7, 18.

[9] *See* Mashal Decl. ¶ 10; Meshal Decl. ¶ 6; Persaud Decl. ¶ 10; Ghaleb Decl. ¶ 8.

consequences of inclusion on the No Fly List coercively against people who should not be on it, the need for meaningful procedures to challenge inclusion could not be clearer.

**Fourth**, as Plaintiffs have repeatedly emphasized previously, due process doctrine makes clear that at this stage, Defendants cannot categorically assert secrecy interests and on that basis categorically refuse to provide the basic rudiments of process to which Plaintiffs are entitled. Defendants may argue that the specific contours of those procedures could vary, giving rise to further issues for the parties to brief and the Court to adjudicate. But that is true of any context in which the government asserts national security and/or secrecy interests in depriving individuals of their liberty or property, including the terrorist organization designation process, Guantanamo habeas review, and criminal contexts. Once the Court orders constitutionally-required process for Plaintiffs, any specific disputes over the nature of that remedy can be addressed—and that is what Plaintiffs expect to brief at the next stage in this litigation.[10]

If Defendants seek to withhold information from the Plaintiffs prior to or in the context of hearings before this Court, Defendants would have to show to the Court—as they have failed to do so far—that disclosure of any *particular* information or piece of evidence would result in harm sufficient to justify withholding that piece of evidence; the parties would brief the matter, and the Court would decide it in the context of that particular case. Thus, for example, the Ninth Circuit held in *Al Haramain* that if the government attempts to withhold specific information as

---

[10] As Plaintiffs have previously noted, other courts have adopted a similar approach to remedies in the national security context, including in the recent *KindHearts* decision. *See* Pls.' Reply 12–13; Pls.' Supp. 7 n.2. Defendants respond that they disagree with the reasoning and outcome in *KindHearts*, Defs.' Suppl. Reply 4 n.1, but whatever disagreement Defendants might have does not mean that either the reasoning or the bifurcated decision and remedy process in that case (which the government did not appeal) is not persuasive authority; it is. Notably, Defendants do not address, let alone distinguish, *United States v. U.S. Dist. Court for E. Dist. of Mich., South. Div.*, 407 U.S. 297, 323–24 (1972), in which the Supreme Court held that the Fourth Amendment required prior judicial approval for domestic security surveillance, but declined "to detail the precise standards for domestic security warrants" so that Congress could devise a remedy.

classified or privileged, due process requires a court to scrutinize any such claim, including by determining whether alternatives, such as a summary of the evidence or disclosure under a protective order, would protect the private interests at stake. *See A.H.I.F.*, 686 F.3d at 982–84 (holding that government must provide charity it designated as terrorist with summaries of classified information or provide the charity's security-cleared counsel with access to the classified information because the value to the private interests is "undeniable" and the procedure "does not implicate national security"); *see also KindHearts II*, 710 F. Supp. 2d at 657–60 (requiring government to declassify and/or summarize classified information; if such measures were insufficient or impossible, requiring plaintiff's counsel to view the information under a protective order); *Al Odah v. United States*, 559 F.3d 539, 544–45 (D.C. Cir. 2009) (per curiam) (court may compel disclosure to counsel of classified information for habeas corpus review); *Bismullah v. Gates*, 501 F.3d 178, 187 (D.C. Cir. 2007) (granting counsel access to classified information supporting enemy combatant determination, subject to limited exceptions), *vacated*, 554 U.S. 913 (2008), *reinstated but dismissed on other grounds*, 551 F.3d 1068 (D.C. Cir. 2008) (per curiam); *In re Guantanamo Bay Detainee Litig.*, No. 08-0442 (TFH), 2009 WL 50155, at *6, *9 (D.D.C. Jan. 9, 2009) (protective order setting forth procedures for counsel to access classified information).

Defendants' attempt to distinguish *Al Haramain*—the controlling Ninth Circuit case in this area—is entirely unpersuasive. Their main argument is that in *Al Haramain*, the government had already made public its designation of the charity as terrorist. Defs.' Suppl. Reply 6–7. But that is little different from this case, in which the distinction between "official" and "unofficial" confirmation borders on fictitious when the government and its agents have told Plaintiffs of their inclusion on the No Fly List, subjected Plaintiffs to the public stigma of a "terrorist" label,

and publicly prevented them from flying. *See also* Pls.' Reply 15–17; Pls.' Suppl. 7, 13 (discussing *Al Haramain* further). Defendants' effort to distinguish the property interests at stake in *Al Haramain* from Plaintiffs' liberty interests, Defs.' Suppl. Reply 7 n.3, similarly fails. Serious though the property deprivation in *Al Haramain* was, Defendants' argument ignores the findings of this Court that Plaintiffs' inclusion on the No Fly List has severe detrimental impact on their private interests, including preventing these U.S. citizens from traveling to be with their families following the birth of children or the death of siblings, to be reunited with their spouses, or to secure jobs. *See* Opinion ("Op."), at 10–18, 22, 25, ECF No. 110.[11]

In sum, Defendants ask this Court to find that Defendants' categorically-asserted secrecy interest in refusing to provide any notice or meaningful process to people wrongly deprived of their liberty interests in travel, with devastating impact on their personal and professional lives, does not violate procedural due process. To accept that result, this Court would have to be the first ever to hold that the Due Process Clause permits the government to extinguish a liberty interest without any notice, reasons, or any hearing whatsoever. That would be an unprecedented and novel decision, and this Court should reject Defendants' invitation.

* * *

For the foregoing reasons and those set forth in their prior briefing, Plaintiffs respectfully ask this Court to find that Defendants' DHS TRIP process violates constitutionally-required due process, and order further briefing on the precise nature of the remedies to which Plaintiffs are entitled.

---

[11] For this reason, *Jifry v. F.A.A.*, 370 F.3d 1174 (D.C. Cir. 2004), on which Defendants primarily rely in their briefing, Defs.' Suppl. Reply 8–10, does not govern here. In this case, Defendants identify similar interests to the ones they asserted in *Jifry*, but the *Jifry* non-citizen plaintiffs' liberty interests in obtaining certification to fly aircraft outside the United States were far less serious than the burdens of Plaintiffs' placement on the No Fly List. *Cf.* Op. at 22–26.

Dated: December 2, 2013.

Respectfully submitted,

Steven M. Wilker, OSB No. 911882
Email: steven.wilker@tonkon.com
**Tonkon Torp LLP**
1600 Pioneer Tower
888 SW 5th Avenue
Portland, OR 97204
Tel.: (503) 802-2040; Fax: (503) 972-3740
Cooperating Attorney for the ACLU Foundation of Oregon

s/ Hina Shamsi
Hina Shamsi (Admitted *pro hac vice*)
Email: hshamsi@aclu.org
Nusrat Jahan Choudhury (Admitted *pro hac vice*)
Email: nchoudhury@aclu.org
**American Civil Liberties Union Foundation**
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 519-2500; Fax: (212) 549-2654

Kevin Díaz, OSB No. 970480
Email: kdiaz@aclu-or.org
**ACLU Foundation of Oregon**
P.O. Box 40585
Portland, OR 97240
Tel.: (503) 227-6928; Fax: (503) 227-6948

Ahilan T. Arulanantham (Admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (Admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
**ACLU Foundation of Southern California**
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (Admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (Admitted *pro hac vice*)
Email: jmass@aclunc.org
**ACLU Foundation of Northern**

**California**
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Laura Schauer Ives (Admitted *pro hac vice*)
Email: lives@aclu-nm.org
**ACLU Foundation of New Mexico**
P.O. Box 566
Albuquerque, NM 87103
Tel.: (505) 243-0046; Fax: (505) 266-5916

Mitchell P. Hurley (Admitted *pro hac vice*)
Email: mhurley@akingump.com
Christopher M. Egleson (Admitted *pro hac vice*)
Email: cegleson@akingump.com
Justin H. Bell (Admitted *pro hac vice*)
Email: bellj@akingump.com
**Akin Gump Strauss Hauer & Feld LLP**
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002

Attorneys for Plaintiffs