Steven M. Wilker, OSB No. 911882
Email: steven.wilker@tonkon.com
Tonkon Torp LLP
1600 Pioneer Tower
888 SW 5th Avenue
Portland, OR 97204
Tel.: (503) 802-2040; Fax: (503) 972-3740
Cooperating Attorney for the ACLU Foundation of Oregon

Hina Shamsi (Admitted *pro hac vice*)
Email: hshamsi@aclu.org
Hugh Handeyside (Admitted *pro hac vice*)
Email: hhandeyside@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500; Fax: (212) 549-2654

Ahilan T. Arulanantham (Admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (Admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
ACLU Foundation of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (Admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (Admitted *pro hac vice*)
Email: jmass@aclunc.org
ACLU Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Alexandra F. Smith (Admitted *pro hac vice*)
Email: asmith@aclu-nm.org
ACLU Foundation of New Mexico
P.O. Box 566
Albuquerque, NM 87103
Tel.: (505) 266-5915; Fax: (505) 266-5916

Mitchell P. Hurley (Admitted *pro hac vice*)
Email:  mhurley@akingump.com
Christopher M. Egleson (Admitted *pro hac vice*)
Email:  cegleson@akingump.com
Justin H. Bell (Admitted *pro hac vice*)
Email:  bellj@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel.: (212) 872-1011; Fax: (212) 872-1002

*Attorneys for Plaintiffs Salah Ali Ahmed, Nagib Ali Ghaleb, Mohamed Sheikh Abdirahman
Kariye, Faisal Kashem, Raymond Earl Knaeble, Ayman Latif, Ibraheim Mashal, Amir Mohamed
Meshal, Elias Mustafa Mohamed, Abdullatif Muthanna, Steven Washburn, and Mashaal Rana*


William Genego (Admitted *pro hac vice*)
E-mail: bill@genegolaw.com
Law Office of William Genego
2115 Main Street
Santa Monica, California 90405
Tel: (310) 399-3259

Justine Fischer, OSB No. 812241
Email: jfattyor@aol.com
710 SW Madison St., Suite 400
Portland, OR 97205
Tel: (503) 222-4326; Fax: (503) 222-6567

*Attorneys for Plaintiff Stephen Persaud*

BENJAMIN C. MIZER
Acting Assistant Attorney General
Civil Division

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

AMY POWELL
amy.powell@usdoj.gov
BRIGHAM J. BOWEN
brigham.bowen@usdoj.gov
ADAM KIRSCHNER
adam.kirschner@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Tel:      (202) 514-6289
Fax:      (202) 616-8470

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| AYMAN LATIF, et al., | Case 3:10-cv-00750-BR |
|---|---|
| *Plaintiffs*, | |
| v. | |
| ERIC H. HOLDER, JR.,  et al., | **SUPPLEMENTAL JOINT FILING REGARDING DISPOSITION OF CLAIMS FOR INDIVIDUALS NOT ON THE NO FLY LIST** |
| *Defendants*. | |

In accordance with the Court's Minute Order dated March 24, 2015 (Dkt. No. 191), the parties have conferred and hereby submit the following Supplemental Joint Filing regarding the disposition of claims brought by Plaintiffs who have received notice that they are not on the No Fly List.  The parties have been unable to reach agreement and submit their competing statements below.

**PLAINTIFFS' STATEMENT:**

Plaintiffs respectfully request that the Court enter its proposed judgment with two minor modifications, as explained below. The Court's proposed order rightly grants judgment in favor of Plaintiffs no longer on the No Fly List because they prevailed on Claims One and Three, as this Court already found.[1] Defendants resist this conclusion, but their position is meritless and should be rejected for two basic reasons.

**1.**     Plaintiffs are entitled to judgment because this Court *already decided* these claims in Plaintiffs' favor. As Defendants concede, this case unquestionably presented a live controversy in June 2014, when the Court issued its ruling requiring Defendants to notify Plaintiffs of their

---

[1] The Plaintiffs who remain on the list also prevailed on Claims One and Three, but because they are challenging the adequacy of the revised procedures, these Plaintiffs are not seeking judgment on those claims at this time.  Plaintiffs' statement here is made on behalf of Plaintiffs who are no longer on the No Fly List.

listing status and create a new redress process in compliance with the Court's order. Therefore, Plaintiffs are entitled to a judgment memorializing that conclusion.

Defendants offer no explanation for how to reconcile their contrary position with this Court's prior statements unambiguously establishing that Plaintiffs won on these claims. *See, e.g.*, Dkt. 136 at 5 n.2 ("Although the Court concludes Plaintiffs are entitled to summary judgment on the bases described herein, the issues concerning the substance of any declaratory judgment and/or injunction remain for further development); *see also id*. at 61 ("due process requires Defendants to provide Plaintiffs . . . with notice regarding their status on the No-Fly List and the reasons for placement on that List"); *id*. at 65 ("the Court . . . GRANTS Plaintiffs' Cross-Motion (#91) for Partial Summary Judgment as to Claims One and Three."). Given that this Court granted Plaintiffs' motion for summary judgment, Rule 58 requires it to enter a judgment—whether now or later—that memorializes that finding. *See United States v. Indrelunas*, 411 U.S. 216, 220 (1973) (a "judgment is effective only when so set forth and when entered as provided in Rule 79 (a)."). The only question is whether to do so now or at the conclusion of the entire case, and the Court has rightly recognized that for the clarity of the record, judgment should be entered now as to the de-listed Plaintiffs.

Defendants suggested in their first brief on this issue that Plaintiffs are not entitled to judgment because they have not shown that the Court's order *caused* Defendants' subsequent compliance, Dkt. 181 at 11 n.3, but they cite no authority for imposing such a causation requirement, and Plaintiffs are aware of none.

In their latest brief Defendants go even further, stating that Plaintiffs lost the opportunity to obtain a final judgment as soon as the Court issued its summary judgment order.[2] On

_____

[2] As Defendants put it, "While plaintiffs' dispute with Defendants was still alive when they received a favorable decision from this Court last June, subsequent events—specifically,

Defendants' novel jurisdictional understanding, their compliance with the Court's summary judgment order *immediately* mooted Plaintiffs' claims, thus rendering this Court powerless to enter a judgment memorializing its ruling. It would be an understatement to say this rule would produce absurd results; the only way a Court could ever issue a judgment for a Plaintiff would be by issuing its merits ruling simultaneously with the final judgment in every case. After all, Defendants are obligated to comply with all orders of the Court, not just judgments. But if compliance renders the case moot, no judgment against a defendant would ever be possible.

Unsurprisingly, even on their second attempt Defendants have cited no authority even suggesting that post-order compliance (or, as Defendants describe it, post-order conduct that happens to conform to what a court orders) can prevent a court from entering judgment consistent with a dispositive ruling. None of the cases Defendants cited previously establish that proposition, *see* Dkt. 181 at 6-7, and their new authority fares no better.

Defendants cite *Nevada ex rel. Nevada State Bd. of Agric. v. United States*, 699 F. 2d 486, 487 (9th Cir. 1983), but the recitation of the history of the case nowhere suggests that the district court had ruled in Nevada's favor before dismissing its action as moot. Rather, the case became moot because of a duly enacted federal regulation that ended the challenged practice before any ruling on the merits. *Id*. at 487. Similarly, the controversy in *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) became moot because the challenged statute expired (and was superseded by a new statute that did not present the same legal question) while the appeal was pending. With two exceptions (discussed below), all of the other cases they cite also involve either (1) *pre-judgment* statutory, regulatory, or policy changes that rendered the controversy moot in the district court, *see, e.g.*, *Outdoor Media v. City of Beaumont*, 506 F.3d

_____

notification of their No Fly status and the discontinuance of the procedures on which their claims are based—have rendered it moot." *See* Defts' Stmt., *infra*.

895, 899 (9th Cir. 2007) (ordinance repealed before Defendants filed motion to dismiss); or (2) changes that occurred while an appeal was pending, *see, e.g.*, *Princeton University v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (claim moot because "while the case was pending on appeal, the University substantially amended its regulations"); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324-25 (5th Cir. 2009) (mooted on appeal after court found that sworn affidavit describing termination of policy at issue constituted "absolutely clear" evidence that harm would not recur).

Remarkably, Defendants suggest that it does not matter whether mootness arises in the district court or instead on appeal, characterizing this as "a distinction in fact only." *See* Defts' Stmt., *infra*. But in doing so they appear ignorant of the well-established *Munsingwear* doctrine that relies on exactly that distinction. *See, e.g.*, *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1167 (9th Cir. 2011) (citing *United States v. Munsingwear*, 340 U.S. 36 (1950)). Under that rule, district court orders are subject to vacatur if they become moot after the losing party appeals because, absent that rule, the winning party could evade appellate review by taking steps to moot the case after they win. That rule might apply here if the Government had appealed and, for example, while the appeal was pending, all of the Plaintiffs had filed declarations stating that they no longer had any desire to fly. Such action could render this Court's prior orders immune from review absent the *Munsingwear* mootness rule. However, it has no relevance to this case in its present posture, where the *losing party* is arguing for mootness while the case is still *in district court*.

Defendants cite only two cases that involve post-judgment activity in the district court, but each only undermines their position. In *ProtectMarriage.com – Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014), the Court of Appeals found the particular controversy partially moot

because it involved a challenge to a statute mandating disclosure of plaintiffs' information (not, as here, a constitutional challenge to the government's policy of providing no notice to plaintiffs of their status on a watchlist after it has deprived them of a constitutionally-protected liberty interest), and appellants disclosed the contested information after they lost a preliminary injunction and chose not to appeal that ruling. The Ninth Circuit did find that a subsequent appeal from the summary judgment ruling was partially moot, but *ProtectMarriage* ordered the vacatur of a portion of the district court's summary judgment ruling, *not* the ruling with which appellants complied. *Compare id*. at 831 (noting that disclosure occurred pursuant to preliminary injunction order from which Appellants did not appeal) *with id*. at 841 (ordering vacatur of portion of summary judgment ruling).[3] Defendants' final case, *Hewitt v. Helms*, 482 U.S. 755 (1987), from which they quote at length, is not actually a mootness case at all, but instead held that a plaintiff did not prevail for fee purposes because he did not receive any legal ruling in his favor. The only reference in the case to mootness is a footnote finding a claim for mootness "flagrantly inaccurate" and the claim *not* moot. *Id*. at 766 n.1.

In short, because there was no jurisdictional defect at the time of the June 2014 order, Plaintiffs prevailed at that time and are entitled to a judgment memorializing their victory now.

Defendants also make a separate argument, for the first time asserting that Rule 54(b) provides the "only conceivable basis" for entering a partial judgment, *see* Defts' Stmt., and to this they object—again—only based on their misguided view that these Plaintiffs' claims are

---

[3] Defendants' deep confusion regarding mootness and compliance is perhaps most clearly manifested when they claim that preliminary injunctions would not be appealable if the enjoined party has complied. *See* Defts' Stmt., *infra* n. 4. But this is obviously wrong; an enjoined party *has* to comply unless it receives a stay. The reason preliminary injunction orders do not moot cases is because they are *preliminary*, and therefore subject to reversal by the district court after discovery and further litigation. On Defendants' flawed theory of mootness however, no case in which a preliminary injunction is granted for a plaintiff could ever be resolved on the merits, because compliance by the defendant would always moot the case, thereby rendering final judgment impossible.

moot. As a threshold matter, Defendants do not explain why Rule 58 cannot provide a basis for the Court to enter judgment. In any event, Defendants are wrong because the cases they cite on the issue again provide no support for their position—to the contrary, those cases counsel against granting partial judgment under Rule 54(b) when *other* events, besides compliance with the judgment, would render the controversy moot *on appeal*. *See, e.g.*, *Gerardi v. Pelullo*, 16 F.3d 1363, 1372 (3d Cir. 1994) (prospect of double recovery would render appeal as to one basis for recovery moot); *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 n.2 (9th Cir. 2005) (one issue for district court's consideration under Rule 54(b) is "whether *review* [on appeal] of the adjudicated claims would be mooted by any *future* developments in the case") (emphases added). The question under Rule 54(b) is not whether these de-listed Plaintiffs have an urgent need for judgment, but rather whether there is any just reason to withhold it. *Wood*, 422 F.3d at 878 ("whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved"). The Court must ask whether there is a just reason for delay. Because these Plaintiffs are no longer on the No Fly List and have litigated this case for nearly five years, there is no just reason—or indeed any reason—to delay granting judgment in their favor.

To be clear, Plaintiffs do not seek a judgment establishing that Defendants' *new* redress system is unlawful at this time—the parties are briefing that question now as it pertains to the Plaintiffs who remain on the list. However, the Court's prior orders resolved the important question whether the process Defendants applied at the time the complaint was filed (and for the four years after) was lawful, and Plaintiffs are entitled to a judgment memorializing this Court's resolution of that question in their favor.

**2**.      Even if this Court were inclined to ignore the fact that it already granted summary judgment to Plaintiffs, and instead to consider whether Defendants' post-order conduct

constitutes "voluntary" cessation that would render this case moot under the standards otherwise

applicable in mootness cases, Defendants have not shown that it is "absolutely clear the allegedly

wrongful behavior could not reasonably be expected to recur …." Dkt. 181 at 7.

As an initial matter, the fact that Defendants take the position that they chose to de-list

and notify Plaintiffs of their listing status as a matter of Defendants' discretion, rather than

because they were legally required to do so, confirms that the case is not moot. *Rodriguez v.*

*Hayes*, 591 F.3d 1105, 1117-18 (9th Cir. 2010) (rejecting government's argument that

discretionary decision to ameliorate harm mooted claim); *FTC v. Affordable Media, LLC*, 179

F.3d 1228, 1237 (9th Cir. 1999) (holding it "well-settled that an action for an injunction does not

become moot merely because the conduct complained of was terminated, if there is a possibility

of recurrence, since otherwise the defendant's [sic] would be free to return to [their] old ways.")

(internal quotation marks and citation omitted).

Defendants nonetheless claim the case is moot because they have established a new

policy governing the redress process, and that new policy is sufficient to make it absolutely clear

that the harms complained of will not recur in light of a presumption the government purportedly

enjoys when it announces a change of policy. However, Defendants cite no cases holding that a

mere representation by counsel suffices to satisfy the "stringent" burden the Government carries

to show voluntary cessation. The Government has not enacted any statute or regulation. *See*

*Clark*, 915 F.2d at 701(statute); *Outdoor Media*, 506 F.3d at 899 (municipal ordinance); *Nevada*,

699 F.2d at 487 (regulation); *Princeton*, 455 U.S. at 103 (regulation). Nor has it "announced" a

new policy, despite the suggestion in its brief. *Compare Sossamon*, 560 F.3d at 324 (sworn

affidavit presented on appeal describing certification by Director of Texas prisons that

challenged policy had ended).  Indeed, Defendants have presented no *evidence* of a new policy at

all; they rely here only on ambiguous statements from counsel describing how these particular Plaintiffs have been treated. *Compare Troiano v. Supervisor of Elections in Palm Beach*, 382 F.3d 1276, 1285 (11th Cir. 2004) (Defendant election official made factual showing in district court that she had "ceased the allegedly illegal practice . . . prior to receiving notice of the litigation," "in every [subsequent] election . . . has consistently followed this policy, and taken actions to implement it even prior to the beginning of the litigation," and had "professed" that the sought-after accommodation would be available going forward). Defendants have taken no comparable steps. Indeed, Defendants' letter notifying these Plaintiffs of their status merely stated that they "are not currently on the No Fly List as of the date of" the letter. Dkt. 153-1.

Even if the Court were inclined to accord the Government a presumption that its prior conduct will not recur, that presumption has been overcome by recent disturbing events. In the last few weeks, Defendants' treatment of de-listed Plaintiff Elias Mohamed has made clear that there is a serious prospect of such recurrence absent an unambiguous judgment from this Court. In late February 2015, U.S. consular officials abroad contacted Mr. Mohamed and asked him to schedule a meeting at the consulate for an "update" on his "travel status." Declaration of Hugh Handeyside in Support of Plaintiffs Portion of the Parties' Supplemental Joint Filing ("Handeyside Decl."), Ex. A. The government's communication to Mr. Mohamed justifiably increased his fear that he had been placed back on the No Fly List, because Defendants routinely used this kind of pressure tactic when this litigation commenced—directing people stranded abroad to U.S. embassies—where the FBI would interrogate them. *See, e.g.*, Dkt. 83 at ¶¶ 53-54; ¶¶ 92-93. Sure enough, after counsel inquired on Mr. Mohamed's behalf, the purported travel status update turned out to be a ruse.[4] *See* Handeyside Decl., Ex. C. As this example illustrates,

---

[4] Plaintiff Mohamed, who is currently a student in Saudi Arabia, received the email notification from the U.S. consulate in Jeddah, Saudi Arabia requesting that he schedule a time the following

the Government could well return to its old ways absent an unambiguous judgment establishing that Defendants must conform their conduct to the rules already set forth in the prior orders.

Finally, Defendants appear to suggest that the Court should not enter judgment because doing so would deprive them of the opportunity to appeal, presumably because they believe the cases of the de-listed Plaintiffs are moot and therefore unappealable. *See* Dkt. 181 at 11 n.4. That argument is wrong not only because Plaintiffs' claims are not moot, *see supra*, but also because Defendants could have sought certification and leave to appeal the Court's order last June. Indeed, the Court asked Defendants to state whether they wanted to appeal, and they explicitly disclaimed the intent to do so in September 2014. *See* Dkt. 148 at 1. Although Defendants then filed a notice of appeal three months later, they voluntarily withdrew it. *See* Dkt. 162 (Ninth Circuit Mandate returning matter to this Court).

**3**.    Plaintiffs respectfully request two minor alterations to the Court's proposed judgment. First, while Plaintiffs have no objection to the Court dismissing the de-listed Plaintiffs' substantive due process claim, it should do so *without* prejudice because the claim has not been litigated. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[d]ismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits") (internal quotations omitted). *See also* Fed. R. Civ. Pro. 41(a) (treating voluntary dismissals as presumptively without prejudice); 41(b) (dismissal for "lack of jurisdiction" does not "operate[] as an adjudication on the merits").

---

week for a meeting at the consulate. *See* Handeyside Decl., Ex. A. Counsel for Mr. Mohamed inquired about the notification with Defendants' counsel. *See* Handeyside Decl., Ex. B. Defendants' counsel later confirmed that the email to Mr. Mohamed was, in fact, an attempt to secure his presence at the consulate for a "voluntary" interview with FBI agents "on issues not connected to the No Fly litigation and not connected to Mr. Mohamed's status vis-à-vis the No Fly List." *See* Handeyside Decl., Ex. C.

Second, in light of Defendants' stated position that they are not legally required to do anything as a result of the Court's prior orders, the Court's judgment should make abundantly clear that "the process applied to Plaintiffs prior to October 10, 2014 denied them procedural due process in violation of the Fifth Amendment and was unlawful under [the Administrative Procedure Act,] 5 U.S.C. 706." Dkt. 181-1 at 2. It should already have been obvious that this Court's June order created a binding legal limitation on Defendants' conduct as to these Plaintiffs, but such language would put to rest Defendants' position that they are free, as a legal matter, to treat these Plaintiffs in the same way they were treated at the time the complaint was filed, rather than in accordance with the requirements set forth in the Court's prior orders.[5]

\*        \*        \*

During the meet and confer process prior to this filing, counsel for the de-listed Plaintiffs asked Defendants' counsel a simple question: does the government believe itself legally bound by this Court's rulings from October 2013 and June 2014 – i.e., do those rulings constrain its conduct toward these Plaintiffs in any way?  Defendants expressed substantial uncertainty on that question, but ultimately stated that the Court's orders have no on-going injunctive force, such that the government is not legally required to treat these Plaintiffs any differently than it treated them at the outset of this case. This is precisely why this Court must enter judgment for Plaintiffs.  The Court should reject the Government's attempt to evade a binding judgment

---

[5] Contrary to Defendants suggestion, Dkt. 181 at 10, these Plaintiffs do not seek final judgment to establish that they prevailed for purposes of fees. As Plaintiffs will argue at the appropriate time, they have all already prevailed for purposes of fee litigation because the Court's June 24, 2014 order constitutes a judicially-sanctioned "material alteration of the parties' legal relationship" insofar as it required Defendants to adopt new, more rigorous procedures for listing the Plaintiffs. *Higher Taste v. City of Tacoma*, 717 F.3d 712, 715-16 (9th Cir. 2013) (internal citations omitted). They do not seek entry of judgment pursuant to Rule 54 for their fees, but rather to ensure that Defendants do not argue, as they suggest here, that Plaintiffs are somehow not entitled to the relief that this Court has already ordered. *See* Dkt. 181 at 9 (refusing to acknowledge that Plaintiffs prevailed, and instead referring to "*any* relief plaintiffs *may* have obtained under prior proceedings") (emphases added).

memorializing the effects of this Court's prior orders and enter judgment on Counts One and Three, as it has proposed.

**DEFENDANTS' STATEMENT:**

"Article III denies federal courts the power to decide questions that cannot affect the rights of litigants in the case before them." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (internal citation and quotations omitted). The doctrine of mootness, which arises from this fundamental premise, is a constitutional limitation on the competence of courts to address issues before them. *Dufresne v. Veneman*, 114 F.3d 952, 954–55 (9th Cir. 1997); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 & n.22 (1997) ("Mootness has been described as 'the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973))).

As the Defendants have previously explained, *see* ECF No. 181 at 8–11, the plaintiffs who have been advised that they are not on the No Fly List no longer have a live controversy. While plaintiffs' dispute with Defendants was still alive when they received a favorable decision from this Court last June, subsequent events — specifically, notification of their No Fly status and the discontinuance of the procedures on which their claims are based — have rendered it moot. *See Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011) (where there is no deprivation of a protected interest, procedural due process claims are moot).

Plaintiffs' contention that the dispute is not established as moot is misplaced. The record in this case, which includes multiple representations by the Government concerning the obsolescence of the redress procedures Plaintiffs originally challenged, *see, e.g.*, Dkt. Nos. 144, 148, as well as a demonstrated record concerning how the new procedures differ from their

predecessors, *see* Dkt. Nos. 157, 165, 167, 175–79, 181, clearly establishes that the procedures

on which the Court previously passed judgment are no longer operative.[1]

The record also firmly shows that the plaintiffs who have been notified that they are not

on the No Fly List would not have standing to challenge the new procedures, since they cannot

allege a deprivation of a protected liberty interest. *Guatay Christian Fellowship*, 670 F.3d at

984; Mem. Op. [Dkt. 136] at 26–27 (discerning viable due process claim based on a deprivation

of protected interest in international travel). In light of this change in policy applied to these

plaintiffs, it cannot reasonably be disputed that these plaintiffs' claims are now moot. Numerous

cases support the proposition that where the Government undertakes a considered, good faith

change in policy, that change renders disputes over the outdated policy moot. *See Nevada ex*

*rel. Nevada State Bd. of Agric. v. United States*, 699 F. 2d 486, 487 (9th Cir. 1983) (dismissing a

challenge to a government moratorium as moot when the challenged action was rescinded

during the litigation, and citing several cases in support); *Clarke v. United States*, 915 F.2d 699,

705 (D.C. Cir. 1990) (en banc) (observing that the voluntary cessation doctrine was designed to

"prevent[] a private defendant from manipulating the judicial process by voluntarily ceasing the

complained of activity, and then seeking a dismissal of the case, thus securing freedom to 'return

to his old ways,'" and adding that it would be "inappropriate for the courts either to impute such

manipulative conduct to a coordinate branch of government, or to apply against that branch a

doctrine that appears to rest on the likelihood of a manipulative purpose"); *accord Princeton*

*University v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam) (dismissing as moot claim against

---

[1] As previously explained, *see* ECF No. 181 at 9 n.2, having been advised that they are not on the No Fly List, plaintiffs are also unable to point to an ongoing deprivation of a protected liberty interest, or to any other injury that could satisfy Article III standing. *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014). To the extent plaintiffs rely on their alleged standing at the commencement of the lawsuit, such reliance is misplaced when the question at issue is mootness. *Arizonans for Official English*, 520 U.S. at 68.

university when relevant regulations were amended while case was pending on appeal);

*Sossamon v. Lone Star State of Tex.,* 560 F. 3d 316, 324–25, (5th Cir. 2009) (dismissing case as

moot and stating that "government actors in their sovereign capacity and in the exercise of their

official duties are accorded a presumption of good faith because they are public servants, not

self-interested private parties.  Without evidence to the contrary, we assume that formally

announced changes to official governmental policy are not mere litigation posturing"); *Troiano*

*v. Supervisor of Elections in Palm Beach Cty, Florida*, 382 F.3d 1276, 1285 (11th Cir. 2004)

("In short, this Court has consistently held that a challenge to a government policy that has been

unambiguously terminated will be moot in the absence of some reasonable basis to believe that

the policy will be reinstated if the suit is terminated.").[2]

In light of the jurisdictional foundation of the mootness doctrine, where a case becomes

moot, the court lacks the ability to adjudicate the claims before it and the appropriate result, at a

minimum, is dismissal.  *Guatay Christian Fellowship*, 670 F.3d at 984; *Dufresne*, 114 F.3d at

954–55.  This result prevails regardless of whether prior orders in the litigation have granted

relief, for multiple reasons.  First, and most fundamentally, mootness deprives the court of

continuing jurisdiction to adjudicate matters between the parties.  As the Supreme Court has

cautioned:

> In all civil litigation, the judicial decree is not the end but the means.  At the end of the
> rainbow lies not a judgment, but some action (or cessation of action) by the defendant
> that the judgment produces—the payment of damages, or some specific performance, or
> the termination of some conduct. Redress is sought <u>through</u> the court, but *from* the
> defendant…. The real value of the judicial pronouncement—what makes it a proper

---

[2] *See also* Wright & Miller, Federal Practice & Procedure § 3533.8.1 (3d ed. 2014) ("Acts that
result from complex political choices afford rather different grounds for refusing to find a
prospect of repetition sufficient to defeat mootness. The more complex the process—such as a
legislative budgeting process—the greater the uncertainty whether the future will ever present
sufficiently similar constraints and sufficiently similar responses. And the more thoroughly
political the judgments, the greater the wisdom of leaving future quarrels for future decision.")

judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute <u>which affects the behavior of the defendant towards the plaintiff</u>.

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original).  Here, and unlike the Court's prior orders, an issuance of a new judgment sought by plaintiff would not affect the behavior of the parties because the policies assessed in the Court's prior orders are no longer utilized, plaintiffs have been advised they are not on the No Fly List, and there is no relief to award at this time.

Plaintiffs' notion that their claims are somehow not subject to mootness because Defendants cited to cases where mootness arose during appellate proceedings, rather than during original district court proceedings — or because a policy was amended after appeal, or by regulation, or by statute — points to a distinction in fact only.  The legal principles informing the mootness doctrine, and the rule requiring dismissal when cases are moot, arise from the lack of jurisdiction that mootness generates, rather than from the mechanism that generated the mootness.  Instead of attacking the facts of this case — which firmly demonstrate each aspect of the mootness doctrine — Plaintiffs instead marshal irrelevant procedural distinctions.  The mootness inquiry asks whether the controversy remains live, and that question turns on the ongoing grounds for the court's jurisdiction (and here, there is none, since there is no ongoing deprivation), including the likelihood of recurrence (and here, there is only Plaintiffs' speculation).  To the actual questions at hand, Plaintiffs' arguments are misdirected.[3]

---

[3] Plaintiffs raise the odd contention that the Government has not "announced" a new, generally applicable policy.  But the Government has already applied new procedures to the plaintiffs in these cases, in conjunction with its prior statements to the Court that it was undertaking revision of the procedures in general.  The fact that a formal pronouncement has not been made outside this litigation (and the Government will advise the Court when new procedures are finalized and applicable on a general basis) does nothing to undermine the demonstrated record that the revisions have been undertaken and are meaningful, and that the prior procedures are no longer utilized.

At bottom, the only basis on which plaintiffs assert they should receive a partial final judgment is that they have prevailed, *i.e.*, obtained an initial ruling, via the Court's prior orders. But to the extent that is the case, the prior orders speak for themselves, and contrary to Plaintiffs' suggestions, the Government does not dispute that prior orders were adjudicated in Plaintiffs' favor.  The question before the Court now is, in light of subsequent events, may judgment be entered?  And the answer is clear:  It should not be entered, as the claims at issue are now moot.

Plaintiffs' suggestion that claims cannot be mooted after preliminary adjudication but before the entry of judgment is wrong, for multiple reasons.  First, in this case, these claims became moot in part because the Court granted Defendants an opportunity to revise and apply new procedures for these plaintiffs prior to the entry of final judgment.  That this process took place prior to any entry of judgment renders plaintiffs' claims moot, and there is no longer anything to adjudicate.  Contrary to plaintiffs' suggestion, this is not a question of compliance or causation, but rather one of timing.  A case is moot when the plaintiff can no longer present a live controversy.  *See*, *e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. at 477.  The cause of the mootness is of no consequence to its result.

Plaintiffs are also misguided in suggesting that mootness cannot arise after the entry of a preliminary ruling "because compliance by the defendant would always moot the case, thereby rendering final judgment impossible."  Pls.' Stmt.  In fact, compliance with the injunctive aspects of a preliminary ruling may moot claims impacted by aspects of the preliminary ruling.[4]  Moreover, courts may issue injunctive orders that are complied with without "rendering final judgment impossible."  For example, courts commonly issue orders adverse to parties that are

---

[4] Relatedly, one reason why preliminary injunctive orders are appealable is that if the party aggrieved by such an order were to comply, that compliance would render the issue moot and therefore unreviewable.  Similarly, a preliminary order cannot be reissued as a final judgment where intervening events have rendered the pertinent claim moot.

not followed by changes in policy or behavior that would render the dispute moot before the

entry of judgment.  This, however, is a case where the relatively stringent threshold of mootness

has been satisfied:  The record clearly reflects that good-faith changes to Government policy,

undertaken after the issuance of preliminary, nonfinal rulings, have mooted out these plaintiffs'

claims.  Because that has taken place, dismissal is the appropriate outcome.

 The only conceivable basis for entering judgment on a partial basis here would be

pursuant to Rule 54(b), but no partial final judgment could issue under that rule or otherwise

because the pertinent claims for which final judgment is sought are moot.  Moreover, Rule

54(b)'s specific prerequisites for entering a partial final judgment are not met here.[5]  Under Rule

54(b), the entry of partial final judgment as to some claims and/or only for some plaintiffs may

be entered only when there is "no just reason for delay."  Fed. R. Civ. P. 54(b).  Plaintiffs have

made no showing of any need for the requested judgment; in fact, the opposite is true:  Plaintiffs

can no longer allege any deprivation of any protected interest, and they have no ongoing claim;

therefore, the correct result is dismissal, rather than a partial final judgment.  Indeed, mootness is

one of the key factors to be considered under Rule 54(b), *see Wood v. GCC Bend, LLC*, 422 F.3d

873, 878 (9th Cir. 2005) (discussing factors, including "whether review of the adjudicated claims

would be mooted by any future developments in the case"), and courts have found that the mere

<u>potential</u> for mootness is reason enough not to enter final judgment on a partial basis, *Gerardi v.*

*Pelullo*, 16 F.3d 1363, 1372 (3d Cir. 1994) (certification of partial judgment as final for appeal

under Rule 54(b) was an abuse of discretion where there was no reason why that portion of the

---

[5] In light of the express restrictions on the entry of partial, final judgments in Rule 54, Plaintiffs'
reliance on Rule 58 as some sort of alternative basis for the entry of such a judgment is plainly
misplaced.

case should be resolved on appeal immediately and there was potential for mootness); *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 592 (7th Cir. 1990) (same).

Plaintiffs also counter with an argument that they need a final judgment with respect to the Court's orders on the prior redress procedures because of concerns that the Government will somehow evade the effect of the Court's orders and impose infirm redress procedures akin to those previously employed sometime in the future.  But these contentions are no more than speculation and cannot sustain the entry of a final judgment as to the prior procedures.  It strains credulity to suggest that, after having undertaken substantial revisions to the DHS TRIP procedures, both for these plaintiffs and in general, the Government will rescind those changes and revert to the old process this Court deemed infirm.  *See Nevada ex rel. Nevada State Bd. of Agric.*, 699 F. 2d at 487; *Clarke*, 915 F.2d at 705; *accord Princeton University*, 455 U.S. at 103; *Sossamon,* 560 F. 3d at 324–25; *Troiano*, 382 F.3d at 1285.[6]  Moreover, in the event that these plaintiffs are placed on the No Fly List in the future, they will have the benefit of the new redress procedures.  Thus, by virtue of these new procedures (and contrary to plaintiffs' statement), the Government would treat these plaintiffs differently from how it treated them at the outset of this case.[7]

---

[6] The cases plaintiffs cite for the position that these policy changes do not moot their claims are inapplicable.  *Rodriguez v. Hayes*, 591 F.3d 1105, 1117–18 (9th Cir. 2010), did not involve a changed governmental policy but a confinement release of an individual, which release continued to impose terms and conditions giving rise to an ongoing controversy.  *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999), involved alleged voluntary cessation by a private actor, rather than a change in governmental policy.  The cases cited by defendants demonstrate (and articulate) the many distinctions between private actors and the Government in the context of the voluntary cessation doctrine.

[7] Quite obviously, the new procedures are not escaping judicial review, given their ongoing pendency before this Court.

To be clear, the Government does not intend to apply its obsolete procedures to these plaintiffs in the event they utilize DHS TRIP in the future.[8]  And the plaintiffs could not properly use any final judgment about those old procedures to suggest — in contempt proceedings or otherwise — that reliance on new procedures, which have not been adjudicated, violates due process or the Court's prior opinions.  *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) ("Because there is no longer any risk that Outdoor Media will be subject to the challenged ordinance, there exists no live issue upon which the court could issue prospective relief.").  Should these particular plaintiffs wish to challenge the new procedures, they may do so, assuming they can meet Article III standing and other jurisdictional requirements, through a new action, rather than by seeking to enforce this Court's prior orders concerning the old procedures.  Indeed, the notion that plaintiffs could use a final judgment as to the prior orders to attack new procedures that the Court has not adjudicated in these plaintiffs' favor demonstrates the wrongness of their position:  At bottom, plaintiffs seek judgment concerning obsolete procedures, potentially for the purpose of collaterally attacking new procedures they do not have standing to challenge.

Defendants interpret the Court's draft order as not attempting to adjudicate new matters, but rather only memorializing the fact that prior orders were entered favorable to Plaintiffs. Draft Order (entering judgment "consistent with" the Court's prior opinions and orders (ECF Nos. 110, 136, 152").  While Defendants concur with the animating principle — that the Court could not adjudicate new matters — entry of final judgment now with respect to those orders is

---

[8] Plaintiffs' suggestion that the Defendants take the position that "they are free, as a legal matter, to treat these Plaintiffs in the same way they were treated at the time the complaint was filed," both misrepresents the Government's prior statements and its position here: The prior procedures challenged by plaintiffs and assessed by the Court to be infirm are obsolete.  And the Government's revisions of those procedures demonstrate its commitment, in full consideration of the Court's prior opinion, not to utilize them going forward.

both unnecessary (because the prior orders act and speak for themselves) and improper (because the procedures the Court previously adjudged to be inadequate are no longer utilized). At this point in the litigation, any new judgment about the old procedures entered in favor of these plaintiffs would amount to an advisory opinion concerning procedures that no longer are being applied. *See Fed. Commc'ns Comm'n v. Pacifica Found.*, 438 U.S. 726, 735 (1978) ("[F]ederal courts have never been empowered to issue advisory opinions.").

To the extent the Court nonetheless does enter a judgment, Defendants submit that the scope of such a judgment should, at a minimum, properly be circumscribed by the scope of orders already issued and should not supplant those orders by any new determination. Defendants further request that, if the Court does enter a partial final judgment, that the following text be added, at the conclusion of the first paragraph, to clarify the scope and import of the judgment: "This judgment does not reflect a new adjudication of the rights of any parties before the Court."

Defendants do not object to the deferral of matters concerning attorney's fees, and request that the following statement be added to clarify that issues concerning fees are being deferred in their entirety: "This order does not adjudge prevailing party status or any other issue pertinent to attorney's fees."

Dated: April 6, 2015

Steven M. Wilker, OSB No. 911882
Email: steven.wilker@tonkon.com
Tonkon Torp LLP
1600 Pioneer Tower
888 SW 5th Avenue
Portland, OR 97204
Tel.: (503) 802-2040; Fax: (503) 972-3740
Cooperating Attorney for the ACLU
Foundation of Oregon

BENJAMIN C. MIZER
Acting Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director
Federal Programs Branch

s/  *Hina Shamsi*

Hina Shamsi (Admitted *pro hac vice*)
Email: hshamsi@aclu.org
Hugh Handeyside (Admitted *pro hac vice*)
Email: hhandeyside@aclu.org
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500; Fax: (212) 549-2654

Ahilan T. Arulanantham (Admitted *pro hac vice*)
Email: aarulanantham@aclu-sc.org
Jennifer Pasquarella (Admitted *pro hac vice*)
Email: jpasquarella@aclu-sc.org
ACLU Foundation of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Tel.: (213) 977-9500; Fax: (213) 977-5297

Alan L. Schlosser (Admitted *pro hac vice*)
Email: aschlosser@aclunc.org
Julia Harumi Mass (Admitted *pro hac vice*)
Email: jmass@aclunc.org
ACLU Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 621-2493; Fax: (415) 255-8437

Alexandra F. Smith (Admitted *pro hac vice*)
Email: asmith@aclu-nm.org
ACLU Foundation of New Mexico
P.O. Box 566
Albuquerque, NM 87103
Tel.: (505) 266-5915; Fax: (505) 266-5916

Mitchell P. Hurley (Admitted *pro hac vice*)
Email:  mhurley@akingump.com
Christopher M. Egleson (Admitted *pro hac vice*)
Email:  cegleson@akingump.com
Justin H. Bell (Admitted *pro hac vice*)
Email:  bellj@akingump.com
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel.:  (212) 872-1011; Fax: (212) 872-1002

s/  *Brigham Bowen*

AMY POWELL
amy.powell@usdoj.gov
BRIGHAM J. BOWEN
brigham.bowen@usdoj.gov
SAM SINGER
samuel.m.singer@usdoj.gov
ADAM KIRSCHNER
adam.kirschner@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20001
Tel:     (202) 514-6289
Fax:    (202) 616-8470

***Attorneys for Defendants***

***Attorneys for Plaintiffs Salah Ali Ahmed, Nagib
Ali Ghaleb, Mohamed  Sheikh Abdirahman
Kariye, Faisal Kashem, Raymond Earl Knaeble,
Ayman Latif, Ibraheim Mashal, Amir Mohamed
Meshal, Elias Mustafa Mohamed, Abdullatif
Muthanna, Steven Washburn, and Mashaal Rana***

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing supplemental joint filing was delivered to all counsel of record via the Court's ECF notification system.


_s/ Hina Shamsi_____
Hina Shamsi