BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

AMY POWELL
BRIGHAM J. BOWEN
SAMUEL M. SINGER
amy.powell@usdoj.gov
brigham.bowen@usdoj.gov
samuel.m.singer@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C.  20001
Phone: (202) 514-9836
          (202) 514-6289
Fax:     (202) 616-8470

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| AYMAN LATIF, et al.,<br><br>          *Plaintiffs*, | Case 3:10-cv-00750-BR |
| v.<br><br>LORETTA LYNCH,  et al.,<br><br>          *Defendants*. | **DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

<u>INTRODUCTION</u>

At the hearing on cross-motions for summary judgment, the Court directed the parties to file supplemental memoranda (1) specifying how the parties expect judicial review of the substantive decisions made by the TSA Administrator to occur, in what forum, and in what context, and (2) advising the Court of their proposals for next steps in this action in the event the Court grants any party's motion in whole or in part. *See* Dkt. No. 316 (Dec. 17, 2015). With respect to both questions, if the Court grants Defendants' motion for summary judgment with respect to the procedural due process and procedural APA claims, the remaining "substantive" claims should be heard only in an appropriate court of appeals pursuant to 49 U.S.C. § 46110. In further response to the Court's second question, if the Court grants Plaintiffs' motions in whole or in part, the Court should remand with instructions to remedy whatever procedural deficiencies the Court finds.

I.    PLAINTIFFS' CLAIMS SHOULD BE HEARD IN THE COURT OF APPEALS.

If the Court grants Defendants' motion for summary judgment on the procedural due process claims, only Plaintiffs' "substantive" claims would remain. *See* Third Am. Compl., Dkt. No. 83, Counts II (substantive due process), III (APA). The Court should dismiss those claims because review of TSA Orders with respect to Plaintiffs' DHS TRIP inquiries is proper only in the court of appeals. The Ninth Circuit's prior ruling to the contrary concerned the prior redress process, and subsequent revisions to that process address and resolve the jurisdictional issue previously identified by that court.

Section 46110 provides for "exclusive" jurisdiction in the courts of appeal to review orders issued "in whole or in part" by TSA, including claims "inescapably intertwined" with TSA orders. *See* 49 U.S.C. § 46110(a), (c); *Americopters, LLC* v. *FAA*, 441 F.3d 726, 736 (9th

Cir. 2006); *Gilmore* v. *Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006).  An "order" under Section 46110 includes any agency decision that "provides a definitive statement of the agency's position, has a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and envisions immediate compliance with its terms," because such an order "has sufficient finality to warrant the appeal offered by section 46110."  *Gilmore*, 435 F.3d at 1132 (internal citation omitted); *accord Safe Extensions, Inc.* v. *FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007).

At the conclusion of the revised DHS TRIP process, the TSA Administrator issues an order based on review of the DHS TRIP file, including a recommendation from the Terrorist Screening Center ("TSC").  Declaration of Deborah Moore ¶ 15, May 27, 2015, Dkt. No. 252; Declaration of G. Clayton Grigg ¶¶ 39-40, May 28, 2015, Dkt. No. 253.  The Administrator has final authority to issue an order maintaining or removing such an individual from the No Fly List.  *See id*.

In this case, at the conclusion of the revised redress process, the TSA Administrator issued final orders concerning  each of the Plaintiffs pursuant to TSA's statutory authority.  *See, e.g*., Dkt. Nos. 175-3,176-3,177-3.  Each Order is captioned "Decision and Order" and is signed by the Acting Administrator.  Because each Order retains an individual on the No Fly List, each Order is a "definitive statement" and has a "direct and immediate effect" on the individual's ability to board a commercial aircraft.  *See Gilmore*, 435 F.3d at 1132.  The Orders reflect the Acting Administrator's consideration of the basis for listing and the Plaintiffs' submissions.[1]

---

[1] Additionally, each Order reflects a considered decision that more information could not be made available to the Plaintiff because additional disclosure would risk harm to national security or jeopardize law enforcement activities.

Plaintiffs' challenges to the decisions to retain each of them on the No Fly List are therefore challenges to orders of TSA, namely, the decisions by the Acting TSA Administrator to retain them on the No Fly List at the conclusion of the DHS TRIP process. These orders are issued pursuant to TSA's plain statutory authority governing redress. *See* 49 U.S.C. § 44903(j)(2)(C)(iii)(I) (directing TSA to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system"); *id.* § 44903(j)(2)(G)(i) (directing TSA to "establish a timely and fair process for individuals identified [under TSA's passenger prescreening function] to appeal to the [TSA] the determination and correct any erroneous information"); 49 U.S.C. § 44926(b)(1) ("implement, coordinate, and execute the process" for correcting erroneous information related to the No Fly List). Thus, there is no longer any doubt that Plaintiffs' substantive claims are directed at final TSA orders under Section 46110.

The Ninth Circuit previously held that Plaintiffs' challenges could proceed in district court because "TSC actually compiles the list of names ultimately placed" on the List. *Latif v. Holder*, 686 F.3d 1122, 1127 (9th Cir. 2012); *see also Arjmand v. DHS*, 745 F.3d 1300 (9th Cir. 2014); *Ibrahim v. DHS*, 538 F.3d 1250, 1255 (9th Cir. 2008). With respect to the prior DHS TRIP process, the Ninth Circuit reasoned that "TSA simply passes grievances along to TSC and informs travelers when TSC has made a final determination" and that any "relief must come from TSC—the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List." *Latif*, 686 F.3d at 1128-29. The Court therefore held that the exclusive jurisdiction provisions of Section 46110 did not apply and that

jurisdiction was appropriate in district court.[2]  The Government respectfully continues to

disagree with the Ninth Circuit's conclusions regarding the prior DHS TRIP orders, but in any

event, those conclusions are not applicable to the TSA orders generated by the revised redress

process.  TSA now explicitly makes the final determination and does in fact have the information

and the authority to effectuate the relief Plaintiffs are seeking.  *See* Moore Decl. ¶ 15; Grigg

Decl. ¶¶ 39-40.  Under the new process, it is clear that TSA is the final decisionmaker, not a

mere pass-through for the decisions of TSC.[3]

Accordingly, the Government anticipates that a timely petition for review of a TSA order

under DHS TRIP would be reviewed in an appropriate court of appeals.  *See* 49 U.S.C. § 46110;

*Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004).  The Court of Appeals would have

jurisdiction "to affirm, amend, modify, or set aside any part of the order and may order the . . .

Administrator to conduct further proceedings."  49 U.S.C. § 46110(c).  Review under Section

46110 is based on review of an administrative record; the Government anticipates that, consistent

---

[2] This is the same basis for the holding in *Arjmand*, where the plaintiff had completed the prior version of DHS TRIP.  The court in *Arjmand* held that, like the *Latif* plaintiffs, the plaintiff there was seeking "confirmation of his watchlist status and, if present on the TSDB, removal from the list or a meaningful opportunity to contest his inclusion on the list," and that Section 46110 did not provide remedies against TSC.  745 F.3d at 1302.  In *Ibrahim*, the Ninth Circuit held that original placement on the No Fly List was not reviewable in the Court of Appeals because it did not involve an order of TSA.  538 F.3d at 1255.

[3] The revised redress process also addresses similar concerns raised by other Courts of Appeals. *See Ege v. DHS*, 784 F.3d 791, 795 (D.C. Cir. 2015) (challenge to alleged placement on the No Fly List was not proper in the Court of Appeals because TSC, not TSA, determines whether to remove a person from the No Fly List); *Mohamed v. Holder*, No. 11-1924, Dkt. No. 86 (4th Cir. May 28, 2013) (same); *Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015) (same); *but see also id*. (challenge to the adequacy of the TSA redress process must be brought in the Court of Appeals). The district court in *Mohamed* recently noted the existence of "substantial issues" regarding judicial review of the revised TRIP redress process and suggested that upon completion of the revised process, the Court of Appeals could consider its jurisdiction to hear a petition for review. *See Mohamed v. Holder*, No. 1:11-CV-50, 2015 WL 4394958, at *13 & n.16 (E.D. Va. July 16, 2015); *see also Mohamed v. Holder*, No. 1:11-CV-50, Order at 7-8 (denying Plaintiff's motion for reconsideration on this point) (E.D. Va. Dec. 18, 2015), Dkt. No. 204.

with past practice, classified and privileged portions of the records may be submitted *ex parte* and *in camera* for judicial review in the court of appeals.  *See, e.g., Jifry*, 370 F.3d at 1182.  This could include review of any appropriate aspect of the final Orders, including the substantive findings that individuals were properly retained on the No Fly List or the procedural findings that information was properly withheld.

At the hearing on cross motions for summary judgment, Plaintiffs maintained that this Court has ultimate jurisdiction to resolve their substantive claims regarding their placement on the No Fly List, notwithstanding the revised redress process culminating in a TSA order. Moreover, counsel for at least one of the Plaintiffs (Mr. Persaud) argued that, at the very least, this Court should review all underlying derogatory information *ex parte*, including any classified information.  But the law governing the substance of such review in district court is not clearly established.  Some courts have expressed reluctance to "dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions," except in limited circumstances, including where Congress has authorized such review by statute.  *See, e.g., Abourezk v. Reagan*, 785 F.2d 1043, 1060-61 (D.C. Cir. 1986) (Ginsburg, C.J.), *aff'd by an equally divided Court*, 484 U.S. 1 (1987); *see also Am. Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1067-70 (9th Cir. 1995) ("*ADC*") (final judgment vacated on jurisdictional grounds by *Reno v. Am. Arab Anti-Discrimination Comm.*, 119 S. Ct. 936 (1999)).[4]  Congress provided for judicial review of certain determinations through procedures that permit the introduction of classified information *ex parte* and *in camera.  See, e.g.*, 8 U.S.C. § 1189(b)(4) (classified information may be submitted *ex parte* and *in camera* in challenges to designations of foreign terrorist

---

[4] *See also Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) (reviewing FBI declarations *ex parte* to determine whether the defendant FBI agent acted within the scope of his employment but noting that such *ex parte* review should be rare and limiting its holding regarding the permissibility of such review to the facts of the case).

organizations); *accord* 50 U.S.C. § 1702(c) (challenges to designations under the International

Emergency Economic Powers Act (IEEPA)); 8 U.S.C. § 1534(e)(3)(A) (challenges by alien

terrorists to their removals); *see also Al Haramain Islamic Found. Inc. v. Dep't of Treasury*, 686

F.3d 965 (9th Cir. 2012) ("*AHIF*") (classified information may be submitted *ex parte* and *in*

*camera* in challenges to IEEPA designations); *Holy Land Found. for Relief & Dev. v. Ashcroft*,

333 F.3d 156, 164 (D.C. Cir. 2003) (same).[5]

      Courts have also found that Section 46110 provides a suitable method for cases to be

litigated in the appellate courts based on review of an administrative record, including where the

record may contain sensitive and classified information that the court can consider on an *ex parte*

and *in camera* basis.  *See, e.g., Jifry*, 370 F.3d at1182.  In *Jifry*, an appellate court, proceeding

under Section 46110's statutory framework, reviewed a challenge to the revocation of airmen's

certificates pursuant to a determination that the individuals posed a security risk based on

inherent authority to review an administrative record that included classified information.  *See*

*also Gilmore v. Gonzales*, 435 F.3d 1125, 1131 (9th Cir. 2006) (reviewing a TSA security

directive containing sensitive security information *ex parte* in order to confirm that it was a final

TSA order for purposes of 49 U.S.C. § 46110).

      Finally, courts have uniformly recognized that they may review classified information *ex*

*parte*, *in camera*, in deciding a claim of privilege, including the state secrets privilege.  *See, e.g.*,

*Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1905 (2011); *Mohamed v. Jeppesen*

*Dataplan, Inc.*, 614 F.3d 1070, 1077 (9th Cir. 2010) (*en banc*); *see also AHIF*, 686 F.3d at 982

---

[5] The Ninth Circuit in *AHIF* expressed some hesitation about the continuing vitality of *ADC*'s premise that "a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions[,]" but the Court ultimately distinguished *ADC* and joined other courts in holding that the Government may use classified information, without disclosure, when making terrorist designation determinations pursuant to IEEPA.  *See AHIF*, 686 F.3d at 982.

(recognizing that *ex parte* review undertaken to review state secrets privilege assertions).

Review of such privilege assertions does not entail a review of a claim on the merits, however.

Rather, the state secrets doctrine provides that when adjudication of the merits of a claim in

district court risks or requires the disclosure of state secrets, including to present a valid defense,

the effect of the privilege assertion is to exclude the privileged information from consideration

on the merits of the case, and the unavailability of that evidence may require dismissal.  *See*

*Jeppesen*, 614 F.3d at 1077.  The United States has asserted the state secrets privilege in

response to discovery demands for classified information in similar challenges to alleged

inclusion on the No Fly list.  *See, e.g.*, *Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR (D. Or.

Sept. 16, 2014), Dkt. No. 72; *Mohamed v. Holder*, *supra*, 2015 WL 4394958, at *10-*11

(discussing privilege assertion).

In sum, to the extent the Court were to proceed to Plaintiffs' substantive claims, there is

no express statutory authorization or framework under which judicial  review of any classified

information would proceed in district court.  For this additional reason, the Government

maintains that the appropriate forum for judicial review of the TSA Orders should be in the

Court of Appeals pursuant to Section 46110.[6]

---

[6] If briefing in connection with Plaintiffs' substantive claims commences in this Court, the
parties can again address how those claims should proceed.  However, in no event would the
Government agree to procedures that would entail providing classified information to Plaintiffs
or their counsel.  In addition, if the Court were to decide that Section 46110 does not apply to
permit review in the Court of Appeals and that it will undertake an *ex parte*, *in camera* review
of classified information to decide the merits of the Government's No Fly List determinations
concerning the Plaintiffs, any such review ordered by the Court must at least be limited to an
administrative record.  *See, e.g.*, *AHIF*, 686 F.3d at 979 (reviewing administrative record); *Holy
Land Found.*, 333 F.3d at 164 (same); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he
focal point for judicial review should be the administrative record already in existence, not some
new record made in the reviewing court.").

II.    IF PLAINTIFFS PREVAIL ON ANY ASPECT OF THEIR PROCEDURAL CLAIMS,
       THE APPROPRIATE REMEDY IS REMAND.

In the event that the Court finds a violation of procedural due process that is not harmless

and grants Plaintiffs' motions in whole or in part, the Court should remand to the agency with

instructions regarding the error.  Remand is the ordinary remedy for procedural violations in

agency proceedings.  *See, e.g.*, *Ching v. Mayorkas*, 725 F.3d 1149, 1159 (9th Cir. 2013)

(remanding "visa petition" denial to USCIS); *Dexter v. Colvin*, 731 F.3d 977, 982 (9th Cir. 2013)

(remanding to social security administration for reconsideration of request for hearing); *Lopez-*

*Umanzor v. Gonzales*, 405 F.3d 1049, 1050 (9th Cir. 2005) (remanding with instructions for new

hearing); *Cinapian v. Holder*, 567 F.3d 1067, 1074 (9th Cir. 2009) (explaining that remand is the

appropriate remedy in deportation proceedings when "an alien is prevented from reasonably

presenting her case or when an IJ's actions prevent the introduction of significant testimony.").

As the Ninth Circuit has explained, a "violation of procedural rights requires only a procedural

correction, not the reinstatement of a substantive right to which the claimant may not be entitled

on the merits."  *See Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991).[7]

An analogous situation has arisen in the context of targeted sanctions imposed on

specially designated global terrorists.  In *National Council of Resistance of Iran v. Dep't of State*,

the D.C. Circuit found that the Department of State had provided inadequate notice with respect

to the designation of foreign terrorist organizations and remanded the designations.  Recognizing

---

[7] If the Court found a due process violation, it would not be appropriate to grant any part of
Plaintiffs' motions, unless it also found that the error was not harmless.  As Defendants argued in
their motions for summary judgment, there is sufficient information in the record to determine
that any error was harmless, especially given the Plaintiffs' nearly total failure to refute the
allegations against them.  If the Court disagrees, however, the Plaintiffs would not be entitled to
summary judgment because harmless error analysis is required in every case in which a court
finds a due process violation.  *See, e.g.*, *Tennessee Secondary Sch. Athletic Ass'n v. Brentwood*
*Acad.*, 551 U.S. 291, 303 (2007); *ASSE Int'l. v. Kerry*, 803 F.3d 1059, 1079 (9th Cir. 2015).

"the realities of the foreign policy and national security concerns asserted by the Secretary in support of those designations," the circuit court refused to vacate the designations and remanded "the questions to the Secretary with instructions that the petitioners be afforded the opportunity to file responses to the nonclassified evidence against them, to file evidence in support of their allegations that they are not terrorist organizations, and that they be afforded an opportunity to be meaningfully heard by the Secretary upon the relevant findings." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 209 (D.C. Cir. 2001) ("*NCRI*"). Accordingly, if this Court finds due process errors that are not harmless, it should remand to the agency with instructions as to the specific violations found.[8]

At the hearing on cross motions for summary judgment, Plaintiffs argued that the appropriate remedy for procedural due process violations would be for *this* Court to address the purported procedural defects by inventing a new judicial process for holding evidentiary hearings on Plaintiffs' placement claims so that the Court may render substantive decisions regarding whether continued placement on the No Fly List is appropriate. Aside from the issues discussed above regarding review of Plaintiffs' substantive claims on the merits in this court, Plaintiffs' approach for resolving procedural due process concerns as to an administrative process is unsupported by any law, and it turns ordinary administrative law principles upside down. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach

---

[8] This Court inquired at the December 9 hearing how it may review the narrow question of whether the Government has, as a matter of process, provided as much unclassified information as possible and, in particular, whether it could review any classified information related to the No Fly List determination for that limited purpose. The Government has attested, and stands ready to further attest to the satisfaction of a reviewing court, that it provided all relevant unclassified, nonprivileged information. To the extent the Court determined that review of a classified record was needed to resolve this question, the Government's position as to where and how such review may occur is addressed in Part 1.

its own conclusions based on such an inquiry."). Plaintiffs ask the Court to reassess the security risks at issue in maintenance of the No Fly List and to establish new substantive and procedural rules in a process that Congress and the President have assigned to DHS and TSC. But this Court has no direction from Congress to design a redress process, and has neither the role nor sufficient expertise to make a de novo decision regarding placement on the No Fly List. The Supreme Court's reasoning in *Holder v. Humanitarian Law Project*, underscores the deference due to both the Legislative and Executive Branches in review of factual conclusions and legal matters that implicate national security, even when constitutional concerns are raised. *See* 561 U.S. 1, 34 (2010) ("But when it comes to collecting evidence and drawing factual inferences in [national security and foreign relations], the lack of competence on the part of the courts is marked, and respect for the Government's conclusions is appropriate.") (internal citation omitted); *see also Rahman v. Chertoff*, 530 F.3d 622, 627-28 (7th Cir. 2008) ("modesty is the best posture for the branch that knows the least about protecting the nation's security and that lacks the full kit of tools possessed by the legislative and executive branches."). Thus, the remedy for any perceived violation of procedural due process remains a remand for reconsideration of the agency's ruling.

<u>CONCLUSION</u>

For the foregoing reasons, the Government requests that the Court grant its motion for summary judgment.

10 – DEFS' SUPPL. MEM.
*Latif v. Lynch*, Civil Case No. CV 10-00750-BR

Dated:  January 8, 2016

Respectfully Submitted,


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Branch Director
Federal Programs Branch

*s/ Amy E. Powell*
AMY POWELL
BRIGHAM J. BOWEN
SAMUEL M. SINGER
amy.powell@usdoj.gov
brigham.bowen@usdoj.gov
samuel.m.singer@usdoj.gov
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C.  20001
Phone: (202) 514-9836
           (202) 514-6289
Fax:     (202) 616-8470

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion was delivered to all counsel of record

via the Court's ECF notification system.

<u>*s/ Amy E. Powell*</u>
AMY E. POWELL