IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AYMAN LATIF; MOHAMED SHEIKH        3:10-cv-00750-BR
ABDIRAHMAN KARIYE; RAYMOND
EARL KNAEBLE, IV; STEVEN        OPINION AND ORDER
WILLIAM WASHBURN; NAGIB ALI
GHALEB; ABDULLATIF MUTHANNA;
FAISAL NABIN KASHEM; ELIAS
MUSTAFA MOHAMED; IBRAHEIM Y.
MASHAL; SALAH ALI AHMED;
AMIR MESHAL; STEPHEN DURGA
PERSAUD; and MASHAAL RANA,

       Plaintiffs,

v.

LORETTA E. LYNCH,[1] in her
official capacity as Attorney
General of the United States;
JAMES B. COMEY, in his official
capacity as Director of the
Federal Bureau of Investigation;
and CHRISTOPHER M. PIEHOTA, in
his official capacity as Director
of the FBI Terrorist Screening
Center,

       Defendants.

---

[1] The Court substitutes Loretta E. Lynch as Attorney General
of the United States, who was sworn in on April 27, 2015.

1 - OPINION AND ORDER

**STEVEN M. WILKER**
Tonkon Torp LLP
888 S.W. 5th Avenue, Suite 1600
Portland, OR 97204-2099
(503) 802-2040

**HINA SHAMSI**
**HUGH HANDEYSIDE**
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

**ALEXANDRA F. SMITH**
ACLU Foundation of New Mexico
P.O. Box 566
Albuquerque, NM 87103-0566
(505) 266-5915

**AHILAN ARULANANTHAM**
**CATHERINE A. WAGNER**
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-9500

**ALAN L. SCHLOSSER**
**JULIA HARUMI MASS**
ACLU of Northern California
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

**MITCHELL P. HURLEY**
**JUSTIN H. BELL**
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036-6745
(212) 872-1011

> Attorneys for Plaintiffs Mohamed Sheikh Abdirahman
> Kariye, Faisal Kashem, Raymond Earl Knaeble, Amir
> Mohamed Meshal, and Steven Washburn

2 - OPINION AND ORDER

**WILLIAM GENEGO**
2115 Main Street
Santa Monica, CA 90405
(310) 399-3259

**JOEL P. LEONARD**
Elliot, Ostrander & Preston, P.C.
Union Bank of California Tower
707 S.W. Washington Street, Suite 1500
Portland, OR 97205-3532
(503) 224-7112

            Attorneys for Plaintiff Stephen Persaud

**LORETTA E. LYNCH**
United States Attorney General
**BENJAMIN C. MIZER**
Principal Deputy Assistant Attorney General
**ANTHONY J. COPPOLINO**
Deputy Branch Director
**ADAM D. KIRSCHNER**
**AMY ELIZABETH POWELL**
**BRIGHAM J. BOWEN**
**SAMUEL M. SINGER**
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W., Suite 5377
Washington, DC 20010
(202) 514-9836

**BILLY J. WILLIAMS**
United States Attorney
**JAMES E. COX, JR.**
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97204
(503) 727-1026

            Attorneys for Defendants

**BROWN, Judge.**

This "No-Fly List" case was filed nearly six years ago,[2] has been before this Court on remand from the Ninth Circuit for nearly three years, and now comes before the Court on various Motions for Partial Summary Judgment as enumerated below. Although other courts[3] have addressed issues related to the No-Fly List, the parties' current Motions raise difficult issues of first impression involving only Plaintiffs' claims for violation of procedural due-process and the Administrative Procedure Act (APA), 5 U.S.C. § 706. This Opinion and Order, therefore, does not address Plaintiffs' substantive due-process claims as to their placement on the No-Fly List or the statutory judicial review of the Transportation Security Administration's (TSA) administrative determination that Plaintiffs should remain on the No-Fly List, issues that are necessarily reserved for later proceedings.

The current Motions before the Court are:

1.   Plaintiffs' Renewed Combined Motion (#206) for Partial

---

[2] The six Plaintiffs still in this action (Mohamed Sheikh Abdirahman Kariye, Faisal Kashem, Raymond Earl Knaeble, Amir Meshal, Steven Washburn, and Stephen Persaud) have remained on the List at least since then.

[3] *See, e.g.*, *Ibrahim v. Dep't of Homeland Sec.*, No. C 06-00545 WHA (N.D. Cal.); *Mohamed v. Holder*, No. 1:11-CV-50 (AJT/TRJ) (E.D. Va.); *Tarhuni v. Holder*, No. 3:13-cv-00001-BR (D. Or.); *Fikre v. Fed. Bureau of Investigation*, No. 3:13-cv-00899-BR (D. Or.); *Mokdad v. Holder*, No. 13-12038 (E.D. Mich.).

Summary Judgment;

2.    Defendants' Combined Cross-Motion (#251) for Partial Summary Judgment;

3.    Plaintiffs' individual Renewed Motions (#210, #212, #214, #216, #218, #220) for Partial Summary Judgment; and

4.    Defendants' Cross-Motions (#241, #242, #247, #248, #249, #250) for Partial Summary Judgment regarding individual Plaintiffs.

In their Motions Plaintiffs seek a ruling that the revised Department of Homeland Security Traveler Redress Inquiry Program (DHS TRIP) procedures that Defendants implemented following this Court's Opinion and Order (#136) issued June 24, 2014, (June 2014 Opinion) violate procedural due process and the APA because:

1.    The reasonable-suspicion standard that Defendants employed when placing an individual on the No-Fly List is insufficiently rigorous, and Defendants should only be permitted to place an individual on the No-Fly List if there is clear and convincing evidence to support such listing.

2.    Defendants failed to provide Plaintiffs with a full statement of the reasons for each Plaintiff's placement on the No-Fly List;

3.    Defendants failed to provide Plaintiffs with all material evidence concerning their placement on the No-Fly List;

4.    Defendants failed to provide Plaintiffs with all

exculpatory evidence concerning their placement on the No-Fly List;

    5.   Defendants failed to provide Plaintiffs with a live hearing before a neutral decision-maker at which Plaintiffs could confront and cross-examine witnesses; and

    6.   Defendants failed to provide Plaintiffs with additional disclosures using procedures similar to those under the Classified Information Procedures Act (CIPA), which include making disclosures to counsel who have security clearances, issuing protective orders, and presenting unclassified summaries of classified information.

    Defendants, on the other hand, contend they applied revised DHS TRIP procedures that satisfy procedural due-process standards to each of the six remaining Plaintiffs, and, therefore, Plaintiffs' Motions should be denied and Defendants' Motions should be granted.

    The Court heard oral argument on the parties' Motions on December 9, 2015, and, after the parties filed supplemental memoranda, took the matter under advisement on January 8, 2016, to resolve the primary issue whether Defendants' revised DHS TRIP procedures provided the remaining six Plaintiffs with sufficient notice of the reasons for placing and retaining them on the No-Fly List and a meaningful opportunity to challenge those reasons consistent with procedural due process.

After thoroughly considering these Motions on the record as a whole, the Court concludes Defendants' revised DHS TRIP procedures satisfy in principle most of the procedural due-process requirements that the Court set out in its June 2014 Opinion. *See Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014). The Court, nevertheless, concludes the record is not sufficient to resolve whether such procedures were, in fact, constitutionally sufficient as to each Plaintiff because the record does not identify the information that Defendants withheld from Plaintiffs or the reasons for withholding that information.

In particular and for the reasons that follow, the Court concludes:

1.    Due process does not require Defendants to apply the clear and convincing evidence standard to the No-Fly List determinations that Defendants made as to these Plaintiffs nor to provide original evidence to support such determinations.  The reasonable-suspicion standard does not violate procedural due process when applied to a particular Plaintiff as long as Defendants provide such Plaintiff with (1) a statement of reasons that is sufficient to permit such Plaintiff to respond meaningfully and (2) any material exculpatory or inculpatory information in Defendants' possession that is necessary for such a meaningful response.

2.    In some instances, however, Defendants may limit

or withhold disclosures altogether in the event that such disclosures would create an undue risk to national security.  In such instances Defendants must implement procedures to minimize the amount of material information withheld.  In particular, Defendants must determine whether the information can be summarized in an unclassified summary and/or whether additional disclosures can be made to Plaintiffs' counsel who have the appropriate security clearances.  When possible, Defendants must do so.  When it is not possible, Defendants must so certify through a competent witness with personal knowledge of the reasons for Defendants' conclusion that they cannot make such additional disclosures.

3.    Procedural due process in this context does not require Defendants to provide Plaintiffs with a live hearing before a neutral decision-maker at which Plaintiffs could confront and cross-examine witnesses.

4.    Defendants' revised DHS TRIP procedures satisfy in principle most of the procedural due-process requirements that the Court set out in its June 2014 Opinion, but the Court cannot determine on this record whether Defendants provided to each Plaintiff notice that was actually sufficient to permit each Plaintiff to respond meaningfully.  In particular, the record does not contain information that is essential to adjudicate Plaintiffs' individual procedural due-process claims; *i.e.*, what

information, including material exculpatory or inculpatory information, that Defendants did not disclose to Plaintiffs or the reasons for withholding that information; which mitigating measures Defendants considered as to such nondisclosures; and whether any Plaintiff is represented by counsel who have the appropriate security clearance to review any such withheld information.

Accordingly, and for the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendants' Combined Cross-Motion (#251) for Partial Summary Judgment; **DENIES** Plaintiffs' Renewed Combined Motion (#206) for Partial Summary Judgment; and **DEFERS RULING** on Defendants' Cross-Motions (#241, #242, #247, #248, #249, #250) for Partial Summary Judgment regarding individual Plaintiffs and Plaintiffs' individual Renewed Motions (#210, #212, #214, #216, #218, #220) for Partial Summary Judgment until Defendants supplement the record as directed herein with sufficient information for the Court to rule on those Motions.

## BACKGROUND[4]

Plaintiffs, all of whom are United States citizens, challenge their placement on the No-Fly List and the procedures

---

[4] The Court incorporates herein the complete statement of the factual background of each Plaintiff and the administrative procedures at issue as stated in its June 2014 Opinion. *See Latif*, 28 F. Supp. 3d 1134, 1140-46.

9 - OPINION AND ORDER

afforded to them to contest that placement.

I.    **The No-Fly List**

The Terrorist Screening Center (TSC) develops and maintains the federal government's consolidated Terrorist Screening Database (TSDB), which is administered by the Federal Bureau of Investigation (FBI) and staffed by multiple agencies.  The TSC provides identity information concerning known or suspected terrorists from the TSDB to other government agencies that use the information for screening purposes.

TSC accepts nominations to the TSDB as long as two requirements are met:  (1) the biographical information associated with the nomination contains sufficient identifying data so that a person being screened can be matched to or disassociated from a watchlisted person in the TSDB and (2) the nomination is supported by information that amounts to a reasonable suspicion that the individual is a known or suspected terrorist.  This reasonable-suspicion standard "requires articulable intelligence or information which, taken together with rational inferences from those facts, reasonably warrant the determination that an individual is known or suspected to be, or has been engaged in conduct constituting, in preparation for, in aid of or related to, terrorism or terrorist activities."  Joint Combined Statement of Agreed Facts Relevant to All Plaintiffs (#173) at 4.

10- OPINION AND ORDER

The TSDB contains multiple sublists, each of which has its own additional substantive criteria. The No-Fly List is one of the sublists within the TSDB. Any nomination to the No-Fly List must meet at least one of the following additional substantive derogatory criteria:

1) A threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of air piracy, or threat to an airline, passenger, or civil aviation security); or

2) A threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; or

3) A threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. § 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; or

4) A threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

Joint Combined Statement of Agreed Facts Relevant to All Plaintiffs (#173) at 5. Individuals who are placed on the No-Fly List are prohibited from boarding any commercial flight that will pass through or over United States airspace.

## II. Original Redress Procedures

A traveler who is denied boarding on a commercial airline may submit an application for redress through DHS TRIP. The traveler submits to DHS TRIP an inquiry that provides the

11- OPINION AND ORDER

traveler's identification and their contact information.  DHS TRIP then determines whether that traveler is an exact or near match to an individual in the Terrorist Screening Database (TSDB).

If DHS TRIP determines the traveler is an exact or near match for an individual within the TSDB, DHS TRIP forwards the inquiry to the TSC.  On receipt of the inquiry the TSC again determines whether the traveler is an exact match to an identity in the TSDB and, if so, whether the traveler should continue to be in the TSDB.

Pursuant to procedures in place at the time this action was filed (original procedures), DHS TRIP would send a determination letter after TSC finished its review advising the traveler that DHS TRIP had completed its review.  That DHS TRIP determination letter neither confirmed nor denied whether the traveler was in the TSDB or on the No-Fly List and did not provide any further details about why the traveler may or may not have been in the TSDB or on the No-Fly List.  Moreover, pursuant to such original procedures, the DHS TRIP determination letters did not provide assurances about the traveler's ability to undertake future travel nor any meaningful opportunity to contest or to correct the record on which any such determination was based.  In some cases a DHS TRIP determination letter would advise the traveler that he or she could pursue an administrative appeal of the

12- OPINION AND ORDER

determination with TSA or could seek judicial review in a United States court of appeals pursuant to 49 U.S.C. § 46110.

In the event that the traveler sought judicial review, the government then provided to the reviewing court (but not to the traveler) the administrative record that contained all of the information the agency relied on to maintain the listing as well as any information submitted by the petitioner during the administrative process.  If the court determined after review that the administrative record supported the petitioner's inclusion on the No-Fly List, the court would deny the petition for review.

**III.  Plaintiffs' Lawsuit and the Court's June 2014 Opinion**

Plaintiffs filed their Complaint in this action on June 30, 2010, and alleged the DHS TRIP procedures available to them violated their rights to procedural and substantive due-process under the Fifth Amendment to the United States Constitution and violated the APA.  After this matter was remanded from the Ninth Circuit on jurisdictional grounds, the parties filed cross-motions (#85, #91) for partial summary judgment as to Plaintiffs' procedural due-process and APA claims.

On June 24, 2014, the Court issued the June 2014 Opinion in which it held the DHS TRIP procedures in effect at the time violated Plaintiffs' rights to procedural due process.  As a result the Court directed Defendants to fashion new procedures to

13- OPINION AND ORDER

reconsider Plaintiffs' DHS TRIP inquiries.  The Court required
Defendants to provide each Plaintiff with notice regarding their
status on the No-Fly List and the reasons for any Plaintiff's
placement on the List that was reasonably calculated to permit
each such Plaintiff to submit evidence relevant to the reasons
for their respective inclusions on the No-Fly List.  *See Latif*,
28 F. Supp. 3d at 1161-62.  Recognizing there could be instances
in which Defendants could not provide a full statement of reasons
because doing so would create an undue risk of disclosing
sensitive, national security information, the Court directed
Defendants in such circumstances to use procedures to minimize
the withholding that "could include, but are not limited to, the
procedures identified by the Ninth Circuit in *Al Haramain*
[*Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965,
984 (9th Cir. 2012)]; that is, Defendants may choose to provide
Plaintiffs with unclassified summaries of the reasons for their
respective placement on the No-Fly List or disclose the
classified reasons to properly-cleared counsel."  *Latif*, 28 F.
Supp. 3d at 1162.  The Court did not foreclose the possibility
that in some cases the disclosures made to an individual
Plaintiff "may be limited or withheld altogether because any such
disclosure would create an undue risk to national security."  The
Court indicated any such determination must be made on a case-by-
case basis, however, and must be subject to judicial review.  *Id.*

IV.  **Revised Procedures and Reconsideration of Plaintiffs' DHS Trip Inquiries**

As a result of the Court's June 2014 Opinion and pursuant to the Court's Case-Management Order (#152) issued October 3, 2014, Defendants disclosed on October 10, 2014, that seven of the Plaintiffs were not then on the No-Fly List.  In addition, Defendants reported they had reconsidered each of the DHS TRIP inquiries of the remaining six Plaintiffs (Mohamed Sheikh Abdirahman Kariye, Faisal Kashem, Raymond Earl Knaeble, Amir Meshal, Steven Washburn, and Stephen Persaud) pursuant to newly-formulated procedures.

On November 24 and 26, 2014, DHS TRIP sent to each of the remaining six Plaintiffs a notification letter that identified the applicable substantive criteria and provided an unclassified summary that included some reasons for placement of each individual on the No-Fly List.  Although the unclassified summaries varied in length and detail, the letters did not disclose all of the reasons or information on which Defendants relied to maintain each Plaintiff's placement on the No-Fly List.  Defendants stated they were "unable to provide additional disclosures."  Joint Combined Statement of Agreed Facts Relevant to All Plaintiffs (#173) at 6.  The November 2014 DHS TRIP notification letters invited each Plaintiff to submit a written response by December 15, 2014.

By letter dated December 5, 2014, counsel for Plaintiffs

15- OPINION AND ORDER

wrote to counsel for Defendants seeking additional information
and procedures.  Defendants declined to provide any additional
disclosures or procedures.

Plaintiffs Faisal Kashem, Raymond Knaeble, and Steven
Washburn responded to their DHS TRIP notification letters on
December 15, 2014; Plaintiff Sheikh Abdirahman Kariye responded
on December 16, 2014; Plaintiff Amir Meshal responded on
December 18, 2014; and Plaintiff Stephen Persaud responded on
January 8, 2015.

Pursuant to a procedural change instituted after the Court's
June 2014 Opinion, the Acting Administrator of the TSA conducted
his own review of the information available regarding each
Plaintiff's placement on the No-Fly List, including the
information submitted by Plaintiffs.  The Acting Administrator
issued final determinations as to Plaintiffs Kashem, Kariye,
Knaeble, Meshal, and Washburn on January 21, 2015, and issued a
final determination as to Plaintiff Persaud on January 28, 2015.
The TSA Acting Administrator concluded each of the six Plaintiffs
should remain on the No-Fly List.


## STANDARDS

Summary judgment is appropriate when there is not a
"'genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law.'"  *Washington Mut., Inc.*

16- OPINION AND ORDER

*v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011)(quoting
Fed. R. Civ. P. 56(a)).  The moving party must show the absence
of a dispute as to a material fact.  *Rivera v. Philip Morris,
Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  *See also Emeldi v.
Univ. of Or.,* 673 F.3d 1218, 1223 (9th Cir. 2012).  In response
to a properly supported motion for summary judgment, the
nonmoving party must go beyond the pleadings and point to
"specific facts demonstrating the existence of general issues for
trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th
Cir. 2010) "This burden is not a light one. . . .  The non-moving
party must do more than show there is some 'metaphysical doubt'
as to the material facts at issue."  *Id.* (citation omitted).

    A dispute as to a material fact is genuine "'if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*, 281
F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all
reasonable inferences in favor of the nonmoving party.  *Sluimer
v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary
judgment cannot be granted where contrary inferences may be drawn
from the evidence as to material issues." *Easter v. Am. W. Fin.*,
381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts
Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598
(9th Cir. 1982)).

17- OPINION AND ORDER

A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1987)). *See also Moore v. Potter*, 701 F. Supp. 2d 1171 (D. Or. 2010). When the nonmoving party's claims are factually implausible, that party must "'come forward with more persuasive evidence than otherwise would be necessary.'" *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(quoting *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

Plaintiffs move for summary judgment both collectively and individually on their procedural due-process and APA claims on the basis that the new DHS TRIP procedures do not provide Plaintiffs with a sufficient opportunity to contest their placement on the No-Fly List. Plaintiffs' collective Motion addresses those issues that are common to all Plaintiffs. In

their individual Motions each Plaintiff contends the DHS TRIP procedures were constitutionally deficient as applied to them.

Defendants, on the other hand, move for summary judgment on the basis that there is not any genuine dispute of material fact as to the constitutionality of the revised DHS TRIP procedures. Defendants filed a collective Motion regarding the issues common to all Plaintiffs and separate Cross-Motions as to each individual Plaintiff.

## I.  **Procedural Due-Process Claims**

### A.  **Procedural Due-Process Standards**

"The Due Process Clause of the Fourteenth Amendment imposes procedural constraints on governmental decisions that deprive individuals of liberty or property interests." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1190 (9th Cir. 2015). "Due process protections extend only to deprivations of protected interests." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015). "Thus, the first question in any case in which a violation of procedural due process is alleged is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest." *Nozzi*, 806 F.3d at 1190-91.

After the plaintiffs have established they have been deprived of a protected property or liberty interest, the question becomes "'what process is due to protect [the]

19- OPINION AND ORDER

plaintiffs' . . . interest.'"  *Id.* at 1192 (quoting *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539, 542 (9th Cir. 2011)).  "Which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake." *Nozzi*, 806 F.3d at 1192.

"[I]n *Mathews v. Eldridge*, the Supreme Court set forth a three-part inquiry to determine whether the procedures provided to protect a liberty or property interest are constitutionally sufficient." *Id.* at 1192 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).  "First, courts must look at the nature of the interest that will be affected by the official action, and in particular, to the 'degree of potential deprivation that may be created.'" *Nozzi*, 806 F.3d at 1192-93 (quoting *Mathews*, 424 U.S. at 341).  "Second, courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.'" *Nozzi*, 806 F.3d at 1193 (quoting *Mathews*, 424 U.S. at 343).  Third, courts must consider "the Government's interest, including the function involved" (*Mathews*, 424 U.S. at 335) as well as "the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures." *Nozzi*, 806 F.3d at 1193 (quoting *Mathews*, 424 U.S. at 347).

"In 'balancing' the *Mathews* factors, [the court is] mindful

that 'the requirements of due process are flexible and call for such procedural protections as the particular situation demands.'" *Vasquez v. Rackauckas*, 734 F.3d 1025, 1044 (9th Cir. 2013)(quoting *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005)). It is fundamental, however, that "[d]ue process requires notice and an opportunity to be heard." *Carpenter v. Mineta*, 432 F.3d 1029, 1036 (9th Cir. 2005).

### B.   Analysis Regarding the Parties' Collective Cross-Motions (#206, #251) for Partial Summary Judgment

As noted, the parties make largely mirror-image arguments in their cross-motions related to all Plaintiffs.  Plaintiffs contend under the *Mathews* analysis that the revised DHS TRIP procedures do not satisfy the requirements of procedural due process.  Defendants, on the other hand, contend the revised procedures are constitutionally sufficient.  Accordingly, the Court addresses the issues raised in the parties' collective cross-motions through the *Mathews* analysis.

#### 1.   Protected Liberty Interest

In its June 2014 Opinion the Court held "Plaintiffs have constitutionally-protected liberty interests in traveling internationally by air, which are significantly affected by being placed on the No-Fly List." *Latif*, 28 F. Supp. 3d at 1149.  In addition, the Court held the record on summary judgment sufficiently implicated Plaintiffs' "constitutionally-protected liberty interests in their reputations." *Id*. at 1150.

21- OPINION AND ORDER

The current record as to the implication of Plaintiffs'
constitutionally-protected liberty interests is materially the
same as it was at the time of the June 2014 Opinion.
Accordingly, on this record the Court adheres to its conclusion
in the June 2014 Opinion as to Plaintiffs' constitutionally-
protected liberty interests.

2.    The *Mathews* Three-Part Balancing Test

Because the Court has determined placement on the No-
Fly List implicates Plaintiffs' constitutionally-protected
liberty interests in international travel and reputation, the
Court must determine "'what process is due to protect [the]
plaintiffs' . . . interest'" under the *Mathews* factors.  *See*
*Nozzi*, 806 F.3d at 1192.  The Court first considers the nature of
the private interests involved, and then the Court considers the
governmental and public interests at stake before turning to the
risk of erroneous deprivation and the probative value of
additional procedural safeguards.

a.    Nature of the Private Interests

As they have throughout the course of these
proceedings, Plaintiffs contend placement on the No-Fly List
implicates their protected liberty interests in (1) international
travel and (2) freedom from false governmental stigmatization
under the "stigma-plus" doctrine.

(1)    Right to International Travel

As noted, in its June 2014 Opinion the Court concluded "Plaintiffs' inclusion on the No-Fly List constitutes a significant deprivation of their liberty interests in international travel." *Latif*, 28 F. Supp. 3d at 1150. The Court pointed out that "[o]ne need not look beyond the hardships suffered by Plaintiffs to understand the significance of the deprivation of the right to travel internationally," which may include long-term separation from spouses and children, the inability to participate in important religious rites, lost business and employment opportunities, and the inability to attend important personal and family events. *Id.* at 1149. There can be no doubt, therefore, that in these modern times the deprivation of the right to international travel can seriously impact an individual's life.

Nonetheless, "the freedom to travel abroad . . . is subordinate to national security and foreign policy considerations; as such, it is subject to reasonable governmental regulation." *Haig v. Agee*, 453 U.S. 280, 306 (1981). In *Agee* the Secretary of State revoked Agee's passport because he had conducted a "continuous campaign to disrupt the intelligence operations of the United States" by exposing Central Intelligence Agency operatives working clandestinely abroad. 453 U.S. at 283-87. Agee filed a lawsuit contending, among other things, that he was entitled to notice and a hearing before the Secretary revoked

23- OPINION AND ORDER

his passport.  In light of the "substantial likelihood of

'serious damage' to national security or foreign policy" as a

result of Agee's activities, the Court held "[t]he Constitution's

due process guarantees call for no more than what has been

accorded here:  a statement of reasons and an opportunity for a

prompt postrevocation hearing."  *Id.* at 309-10.

The revocation of an individual's passport is

a deprivation of the right to international travel at least as

significant as placement on the No-Fly List.  Accordingly, just

as in *Agee*, "the freedom to travel abroad . . . is subordinate to

national security and foreign policy considerations," and the DHS

TRIP procedures must be upheld as long as they constitute

"reasonable government regulation."  *Id.* at 306.

(2)  Stigma-Plus

"To prevail on a claim under the stigma-plus

doctrine, Plaintiffs must show (1) public disclosure of a

stigmatizing statement by the government, the accuracy of which

is contested; plus (2) the denial of some more tangible interest

such as employment, or the alteration of a right or status

recognized by state law."  *Green v. Transp. Sec. Admin.*, 351 F.

Supp. 2d 1119, 1129 (W.D. Wash. 2005)(citing *Ulrich v. City &*

*Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002), and

*Paul v. Davis*, 424 U.S. 693, 701, 711 (1976)).

As the Court noted in its June 2014 Opinion,

24- OPINION AND ORDER

"Plaintiffs' private interests at the heart of their stigma-plus claim are not as strong" as the interests involved in their international travel claim because "the limited nature of the public disclosure in this case mitigates Plaintiffs' claims of injury to their reputations." *Latif*, 28 F. Supp. 3d at 1150. Aside from the incidental public disclosure that may occur at the airport when an individual is denied boarding in that public space, the government does not generally disclose to the public an individual's placement on the No-Fly List. *See id.* at 1150-51.

Nonetheless, Plaintiffs contend their reputational interests are strong because even though Defendants do not disclose publicly Plaintiffs' status on the No-Fly List, their status on the List is disclosed to other governmental agencies such as state and local law-enforcement agencies.[5]  The Court, however, is not persuaded because "disclosures of stigmatizing information internally within or between government agencies is not a 'public' disclosure." *Cleavenger v. Univ. of Oregon*, No. 13-cv-01908-DOC, 2015 WL 4663304, at *17 (D. Or. Aug. 6, 2015)(citing *Wenger v. Monroe*, 282 F.3d 1068, 1075 (9th Cir. 2002)).

---

[5] The Court notes the record does not presently reflect the degree to which information concerning any Plaintiff's No-Fly List status has been publicly disclosed as a result of that Plaintiff's voluntary actions.

Accordingly, although Plaintiffs have constitutionally-protected reputational interests that may in some circumstances be implicated by placement on the No-Fly List, the Court concludes on this record that those interests do not weigh heavily in Plaintiffs' favor and are less significant than Plaintiffs' interests in their right to international travel.

b.  <u>Governmental and Public Interests</u>

As the Court noted in its June 2014 Opinion, "the Government's interest in combating terrorism is an urgent objective of the highest order." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010). *See also Latif*, 28 F. Supp. 3d at 1154.  "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." *Haig*, 453 U.S. at 307 (quoting *Aptheker v. Sec'y of State*, 378 U.S. 500, 509 (1964)).  As the *Al Haramain* court noted, courts "owe unique deference to the executive branch's determination that we face 'an unusual and extraordinary threat to the national security' of the United States."  686 F.3d at 980 (quoting Exec. Order No. 13,224, 66 Fed. Reg. 49079, 49079 (Sep. 23, 2001)). The No-Fly List indisputably serves this interest because commercial aviation remains a frequent target of terrorism and preventing known and suspected terrorists from boarding commercial airliners is a reasonable method of ensuring commercial aviation security.

The government also has a "'compelling interest' in withholding national security information from unauthorized persons." *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980)). "Certainly the United States enjoys a privilege in classified information affecting national security so strong that even a criminal defendant to whose defense such information is relevant cannot pierce that privilege absent a specific showing of materiality." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 207 (D.C. Cir. 2001). "[T]he Constitution certainly does not require that the government take actions that would endanger national security." *Al Haramain*, 686 F.3d at 980. As this Court stated in its June 2014 Opinion, "[o]bviously, the Court cannot and will not order Defendants to disclose classified information to Plaintiffs." *Latif*, 28 F. Supp. 3d at 1154.

As the Court previously found, therefore, the government interests in ensuring the safety of commercial aviation, combating terrorism, and protecting classified information are compelling. The question, nonetheless, remains whether the Due Process Clause requires the government to provide additional procedural safeguards to protect Plaintiffs' private interests while serving these compelling governmental and public interests or, on the other hand, whether the revised DHS TRIP procedures provided to Plaintiffs strike a constitutionally

27- OPINION AND ORDER

adequate balance.

> c. <u>Risk of Erroneous Deprivation and Probative Value of Additional Procedural Safeguards</u>

Plaintiffs contend the revised DHS TRIP procedures carry with them an unacceptable risk of erroneous deprivation of their liberty interests and that additional procedural safeguards are necessary.

> (1) <u>Risk of Erroneous Deprivation</u>

Plaintiffs contend the risk of erroneous deprivation of their liberty interests inherent in the revised DHS TRIP procedures is unacceptably high because the reasonable-suspicion standard of proof is insufficiently rigorous, the No-Fly List criteria are impermissibly vague, and the "predictive judgments" that inform placements on the No-Fly List are inherently unreliable.

> (a) <u>Reasonable Suspicion Standard</u>

Plaintiffs contend the revised DHS TRIP procedures carry with them an unacceptable risk of erroneous deprivation because the reasonable-suspicion standard of proof in combination with arguably insufficient procedural protections create an impermissibly high possibility that an individual may be placed on the No-Fly List when that individual, in fact, does not pose any risk of committing an act of terrorism or present any risk to commercial aviation. *See Latif*, 28 F. Supp. 3d at 1161 (noting the failure to provide sufficient notice under the

28- OPINION AND ORDER

previous DHS TRIP procedures was "especially important in light of the low evidentiary standard required to place an individual in the TSDB in the first place."). Rather than the reasonable-suspicion standard that Defendants use to place individuals in the TSDB and on the No-Fly List, Plaintiffs contend the government must apply a clear and convincing evidence standard of proof to No-Fly List determinations in order to satisfy due process. *See Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011).

In *Singh* the Ninth Circuit held in the context of bond determinations in deportation proceedings that the government must prove by clear and convincing evidence that an alien is a flight risk or will be a danger to the community. *Id.* at 1203-04. The *Singh* court noted due process also requires the government to apply the clear and convincing standard in other civil contexts including civil commitment, deportability of an alien, and setting aside a naturalization decree. *Id.* at 1204. Accordingly, the court concluded "[f]or detainees like Singh, who face years of detention before resolution of their removability, the individual interest at stake is without doubt 'particularly important and more substantial than mere loss of money,' and therefore a heightened standard of proof is warranted." *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)).

29- OPINION AND ORDER

Plaintiffs' analogy to *Singh*, however, is unconvincing.  Unlike *Singh*, which involved the possibility of "years of detention" as a result of the denial of bond in deportation proceedings, or the cases cited by *Singh* that involved greater infringements on an individual's liberty interests like revocation of citizenship, deportation, and civil commitment, the deprivation involved in No-Fly List cases is considerably less.  *See Singh*, 638 F.3d at 1203-04.  Although the inability to travel internationally by air can certainly have a profound impact on the lives of some, the Court concludes such an infringement on liberty is not on a comparable footing to confinement or the revocation of citizenship.

Similarly, the Court finds unpersuasive Plaintiffs' arguments that placement on the No-Fly List is sufficiently comparable to deportation to support a conclusion that the DHS TRIP procedures do not satisfy due process. Although Plaintiffs' placement on the No-Fly List in some circumstances can, like deportation, result in separation from family, lost business and educational opportunities, and other common practical consequences, noncitizens who are deported from the United States are functionally stripped of all rights guaranteed by the Constitution unlike those who are placed on the No-Fly List.  Because the deprivation of liberty interests that results from placement on the No-Fly List is not substantially

30- OPINION AND ORDER

equal or substantively comparable to the deprivation inherent in
deportation, the Court concludes the rigorous procedural
protections required in the deportation context are not directly
applicable to those required when an individual is placed on the
No-Fly List.

Nonetheless, as the Court found in its
June 2014 Opinion, "[w]hen only an *ex parte* showing of reasonable
suspicion supported by 'articulable facts . . . taken together
with rational inferences' is necessary to place an individual in
the TSDB, it is certainly possible, and probably likely, that
'simple factual errors' with 'potentially easy, ready, and
persuasive explanations' could go uncorrected." *Latif*, 28 F.
Supp. 3d at 1161 (quoting *Al Haramain*, 686 F.3d at 982).
Although the review of No-Fly List determinations by a neutral
judicial officer provides an important layer of procedural
protection, the low standard of proof applicable to placements on
the No-Fly List is a relevant factor for a court to consider when
determining whether Plaintiffs have been provided "meaningful
procedures to afford Plaintiffs the opportunity to contest their
placement on the No-Fly List." *Latif*, 28 F. Supp. 3d at 1161.

Accordingly, the Court concludes
procedural due process does not require Defendants to apply the
clear and convincing standard to the No-Fly List determinations
as to any Plaintiff.  Although the relative sufficiency of the

31- OPINION AND ORDER

reasonable-suspicion standard to make No-Fly List determinations is an important factor that the Court must take into account when it considers whether the procedural protections in the DHS TRIP process are constitutionally adequate, the Court, nevertheless, concludes on this record that the use of the reasonable-suspicion standard alone does not run afoul of due process.

(b)    <u>Vagueness of the No-Fly List Criteria</u>

Plaintiffs also contend the No-Fly List criteria violate procedural due process because they are unconstitutionally vague.  In particular, Plaintiffs contend (1) the criteria lack any nexus to aviation security, (2) the criteria do not set a standard that provides "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices" (*Jordan v. De George*, 341 U.S. 223, 231-32 (1951)), and (3) the notification letters provided to Plaintiffs do not sufficiently explain how the stated reasons for their placement on the No-Fly List satisfy the substantive criteria.

At the outset the Court notes it is unclear from Plaintiffs' briefing whether they intend to raise a distinct claim that the No-Fly List criteria are void for vagueness or whether Plaintiffs instead contend the vagueness of the No-Fly List criteria renders the Defendants' notice constitutionally defective.  *See Hotel & Motel Ass'n of Oakland*

32- OPINION AND ORDER

*v. City of Oakland*, 344 F.3d 959, 968-73 (9th Cir. 2003) (analyzing a procedural due-process claim separately from a void-for-vagueness claim).  Because Plaintiffs' first two vagueness arguments concern the No-Fly List criteria, the Court considers those contentions at this point as part of the "vagueness" analysis and concludes Plaintiffs' third argument is best assessed with the remainder of Plaintiffs' notice arguments.  *See infra* § I(B)(2)(c)(2)(a)-(c).

"A statute fails under the Due Process Clause of the Fourteenth Amendment 'if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . .'"  *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014)(quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402 (1966)).  "A statute is vague on its face when 'no standard of conduct is specified at all.  As a result, [people] of common intelligence must necessarily guess at its meaning.'"  *Id.* (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).  In addition, "[a] statute is impermissibly vague if it 'fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.'"  *Arce v. Douglas*, 793 F.3d 968, 988 (9th Cir. 2015)(quoting *United States v. Mincoff*, 574 F.3d 1186, 1201 (9th Cir. 2009)).  "Although most often invoked in the context of

criminal statutes, the prohibition on vagueness also applies to civil statutes." *Dimaya v. Lynch*, 803 F.3d 1110, 1113 (9th Cir. 2015).  The standard for whether a provision is void for vagueness, however, is less stringent when the challenged provision contains "civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982).  *See also Hess v. Bd. of Parole and Post-Prison Supervision*, 514 F.3d 909, 914 (9th Cir. 2008).

As noted, Plaintiffs first contend the No-Fly List criteria fail to provide "fair notice of conduct that is forbidden" because they lack any nexus to aviation security. *Fed. Commc'ns Comm'n v. Fox Television Stations*, 132 S. Ct. 2307, 2317 (2012).  The Court finds this argument lacks merit.

As noted, the additional substantive derogatory criteria that an individual must meet to be placed on the No-Fly List are:

> 1)  A threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of air piracy, or threat to an airline, passenger, or civil aviation security); or
>
> 2)  A threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; or
>
> 3)  A threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1))

against any U.S. Government facility abroad and
associated or supporting personnel, including
U.S. embassies, consulates and missions,
military installations (as defined by 10 U.S.C.
§ 2801(c)(4)), U.S. ships, U.S. aircraft, or other
auxiliary craft owned or leased by the U.S.
Government; or

4)    A threat of engaging in or conducting a violent
act of terrorism and who is operationally capable
of doing so.

Each of these criteria relate to violent terrorism.  Because
commercial aviation has been a common target of individuals who
have planned, attempted, and/or completed violent acts of
terrorism both in the United States and abroad, the Court
concludes the No-Fly List substantive derogatory criteria bear
the requisite nexus to commercial aviation and place individuals
on reasonable notice of the forbidden conduct.

The Court also concludes the criteria
themselves are not unconstitutionally vague.  Defendants
correctly point out that courts have held similar provisions are
not unconstitutionally vague.  *See, e.g.*, *Humanitarian Law
Project*, 561 U.S. at 20-21 (holding a statute that prohibited
providing "material support or resources" to certain foreign
organizations that engage in terrorist activity was not
unconstitutionally vague because applying those terms does not
require "untethered, subjective judgments"); *Humanitarian Law
Project v. United States Treasury Dep't*, 578 F.3d 1133, 1144-47
(9th Cir. 2009); *Khan v. Holder*, 584 F.3d 773, 785-86 (9th Cir.

2009).  To the contrary, the violent acts of terrorism that underpin the criteria are well-defined and readily understandable by individuals of "common intelligence."  *See Desertrain*, 754 F.3d at 1155.  Moreover, the threat-assessment nature of the No-Fly List criteria does not render those criteria unconstitutionally vague because any such threat must specifically relate to the well-defined violent acts of terrorism.

Accordingly, on this record the Court concludes the No-Fly List substantive derogatory criteria are not unconstitutionally vague.

(c)  <u>Use of Predictive Judgments</u>

Finally, Plaintiffs contend the No-Fly List criteria inherently present an unacceptable risk of error because those criteria implicate predictive judgments about uncertain future conduct.  In particular, Plaintiffs contend these predictive judgments are inherently unreliable, are not based on any scientific or reasoned methodology, and, therefore, are likely to sweep onto the No-Fly List many individuals who will never commit a violent act of terrorism.

The Court concludes Plaintiffs' arguments miss the mark.  Although No-Fly List determinations certainly involve threat assessment, that assessment must be made based on "articulable intelligence or information which, taken

36- OPINION AND ORDER

together with rational inferences from those facts, reasonably warrant the determination" that an individual meets at least one of the substantive derogatory criteria.  Accordingly, No-Fly List determinations are not merely "predictions of a future threat of dangerousness" as Plaintiffs contend, but are threat assessments that must be based on presently-known, articulable facts.  In other words, No-Fly List determinations are not and cannot be a mere exercise in profiling or guesswork, but must be based on concrete information that, together with rational inferences, create a reasonable suspicion that an individual meets at least one of the No-Fly List substantive derogatory criteria.

Accordingly, on this record the Court concludes the "predictive judgments" do not negatively affect the No-Fly List criteria beyond the uncertainty already inherent in the reasonable-suspicion standard.  As noted in its June 2014 Opinion, the Court, nevertheless, must consider that inherent uncertainty when it considers the sufficiency of the revised DHS TRIP procedures as a whole.

(2)  <u>Utility of Additional Procedural Safeguards</u>

Plaintiffs also contend the revised DHS TRIP procedures are constitutionally deficient because Plaintiffs were not provided with (1) a full statement of the reasons for their placement on the No-Fly List; (2) all of the evidence that supported the reasons for their placement on the No-Fly List;

37- OPINION AND ORDER

(3) all material and exculpatory evidence in Defendants'
possession; (4) a live hearing before a neutral decision-maker
together with an opportunity to confront and to cross-examine
live witnesses; and (5) additional procedures based on the CIPA,
including the use of protective orders, unclassified summaries of
classified information, and additional classified disclosures to
Plaintiffs' counsel with security clearances.

Defendants, in turn, contend Plaintiffs'
proposed additional procedural safeguards are not necessary to
pass due-process muster, and the revised DHS TRIP procedures
provide Plaintiffs with sufficient notice and an opportunity to
be heard and to challenge their placement on the No-Fly List.

(a)  Full Statement of Reasons

Plaintiffs first contend the revised DHS
TRIP procedures are inadequate because Defendants did not provide
Plaintiffs with a full statement of the reasons that justified
placement on the No-Fly List.  As noted, each Plaintiff received
letters that provided an unclassified summary of some of the
reasons he was placed on the No-Fly List and that also indicated
Defendants were "unable to provide additional disclosures"
regarding that Plaintiff's placement on the No-Fly List.
Plaintiffs, therefore, contend they cannot have a meaningful
opportunity to respond to the reasons for their placement on the
No-Fly List unless they are provided with notice of all of those

reasons.

Plaintiffs rely on *Al Haramain* for the premise that constitutionally-sufficient notice must be complete and precise and that a failure to provide a full list of reasons for placement on the No-Fly List is a due-process violation. *See* 686 F.3d at 986 ("because [plaintiff] AHIF-Oregon could only guess (partly incorrectly) as to the reasons for the investigation, the risk of erroneous deprivation was high."). *See also Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014)("the right to know the factual basis for the action and the opportunity to rebut the evidence supporting that action are essential components of due process.").

In its June 2014 Opinion the Court recognized this principle and noted the *Al Haramain* court's holding that "'[i]n the absence of national security concerns, due process requires [defendant] OFAC to present the entity with, at a minimum, a timely statement of reasons for the investigation.'" *Latif*, 28 F. Supp. 3d at 1160 (quoting *Al Haramain*, 686 F.3d at 987). The Court also pointed out, however, that the *Al Haramain* court qualified the defendants' duty to provide a full statement of reasons as follows:

> As to national security concerns about providing a
> statement of reasons for the deprivation or permitting
> counsel with security clearance to view the classified
> information, the [*Al Haramain*] court "recognize[d] that

disclosure may not always be possible" and that the
agency may in some cases withhold such mitigating
measures after considering "at a minimum, the nature
and extent of the classified information, the nature
and extent of the threat to national security, and the
possible avenues available to allow the designated
person to respond more effectively to the charges."

*Latif*, 28 F. Supp. 3d at 1160 (quoting *Al Haramain*, 686 F.3d at

983-84).  Accordingly, this Court held:

Because due process requires Defendants to provide
Plaintiffs . . . with notice regarding their status on
the No-Fly List and the reasons for placement on that
List, it follows that such notice must be reasonably
calculated to permit each Plaintiff to submit evidence
relevant to the reasons for their respective inclusions
on the No-Fly List.

*Latif*, 28 F. Supp. 3d at 1162.  Although this Court declined to

formulate the specific procedures by which Defendants could

provide sufficient notice to Plaintiffs when national security

concerns prevented full disclosure, the Court acknowledged such

procedures "could include, but are not limited to, the procedures

identified by the Ninth Circuit in *Al Haramain*; that is,

Defendants may choose to provide Plaintiffs with unclassified

summaries of the reasons for their respective placement on the

No-Fly List or disclose the classified reasons to properly

cleared counsel."  *Id.*  The Court also found it could not

"foreclose the possibility that in some cases such disclosures

may be limited or withheld altogether because any such disclosure

would create an undue risk to national security."  *Id.*  Under

such circumstances, however, Defendants were required to "make

40- OPINION AND ORDER

such a determination on a case-by-case basis including
consideration of, at a minimum, the factors outlined in *Al
Haramain*; *i.e.*, (1) the nature and extent of the classified
information, (2) the nature and extent of the threat to national
security, and (3) the possible avenues available to allow the
Plaintiff to respond more effectively to the charges." *Id.*
Finally, the Court emphasized any such "determination must be
reviewable by the relevant court." *Id.*

After reviewing the parties' arguments
in the context of this more fully-developed record, the Court
adheres to its June 2014 Opinion as to the standard that
Defendants must satisfy with respect to providing Plaintiffs with
notice of the reasons for their placement on the No-Fly List;
that is, Defendants must provide each Plaintiff with a statement
of reasons that is sufficient to permit such Plaintiff to respond
meaningfully.  Applying that standard, the Court concludes the
revised DHS TRIP procedures as to this issue appear facially
adequate because the notice letters sent to Plaintiffs "provided
an unclassified summary that included reasons for the placement
of each individual on the No-Fly List."  Joint Combined Statement
of Agreed Facts Relevant to All Plaintiffs (#173) at 6.
Significantly, however, the Court cannot conclude on this record
whether the statement of reasons that Defendants provided to each
Plaintiff was constitutionally sufficient because the current

record does not reflect what information Defendants withheld or the reasons for withholding such information.

Accordingly, the Court concludes the record is insufficient for the Court to make any ruling as to the constitutional sufficiency of the specific disclosures made to each of the six remaining Plaintiffs.

(b)    Evidence Supporting the Reasons for Placement on the No-Fly List

Plaintiffs also contend they are entitled to know what evidence underlies Defendants' reasons for placing Plaintiffs on the No-Fly List.  Plaintiffs contend even though the notice letters that Defendants sent to Plaintiffs made reference to evidence such as recordings of conversations with third parties, memorialized statements that were made by Plaintiffs, and transcripts or recordings of conversations with confidential informants, Defendants did not provide Plaintiffs with any of this evidence.  Again, to support their position Plaintiffs largely rely on deportation cases in which courts have "acknowledg[ed] the importance of the right to confront evidence and cross-examine witnesses in immigration cases." *Cinapian v. Holder*, 567 F.3d 1067, 1075 (9th Cir. 2009).  Plaintiffs assert under the revised DHS TRIP procedures they were not provided with any of the evidence (classified or unclassified) that Defendants relied on to place Plaintiffs on the No-Fly List, and, therefore, Plaintiffs contend those procedures do not satisfy due process.

42- OPINION AND ORDER

Defendants, on the other hand, contend the unclassified summaries provided to Plaintiffs are sufficient to permit Plaintiffs to respond meaningfully, and, therefore, the revised procedures satisfy the standard that the Court set out in its June 2014 Opinion and the requirements of due process.

In its June 2014 Opinion the Court held Defendants were required to provide notice of the reasons for Plaintiffs' placement on the No-Fly List and that the notice "must be reasonably calculated to permit each Plaintiff to submit evidence relevant to the reasons for their respective inclusions on the No-Fly List." *Latif*, 28 F. Supp. 3d at 1162. The Court, however, did not specifically address whether due process requires Defendants to provide to Plaintiffs the actual evidence as opposed to a summary of the reasons subject to withholding information for national security reasons. *Id.*

As the *Al Haramain* court held and this Court noted in its June 2014 Opinion, "subject to the limitations discussed below, the government may use classified information, without disclosure, when making designation determinations." *Al Haramain*, 686 F.3d at 982. *See also Latif*, 28 F. Supp. 3d at 1154 ("Obviously, the Court cannot and will not order Defendants to disclose classified information to Plaintiffs."). Accordingly, procedural due process does not require Defendants to provide to Plaintiffs classified information.

43- OPINION AND ORDER

Moreover, the Court concludes procedural due process does not require Defendants to provide to Plaintiffs the actual evidence supporting Defendants' reasons for placing Plaintiffs on the No-Fly List as long as Defendants provide Plaintiffs with sufficient information to permit them to respond meaningfully to the reasons that Defendants are able to disclose. Requiring Defendants to provide such evidence in its original form raises significant and likely insoluble practical difficulties because, unlike the context of ordinary civil litigation, separating unclassified information from protected national security information is exceedingly complicated in the national security context.[6]

Nonetheless, the principles that set the constitutional standard and that the Court applied in its June 2014 Opinion remain:  Subject to Defendants' duty not to disclose classified information, Plaintiffs must be provided with sufficient notice of the reasons for their placement on the No-Fly List to permit them to have a meaningful opportunity to respond to those reasons.  Defendants, therefore, need not present the information in any particular form (*i.e.*, original evidence).  Moreover, to the extent that Defendants rely on

---

[6] For example, a report may contain material, unclassified information regarding an individual placed on the No-Fly List interspersed with classified information that may or may not be material to the No-Fly List determination.

sensitive national security information to maintain any
Plaintiff's placement on the No-Fly List, Defendants must
consider and implement procedures (for example, unclassified
summaries or disclosures made to counsel with the appropriate
security clearances) that would permit Plaintiffs to respond
meaningfully without creating an undue risk to national security.
As noted, if Defendants determine information must be withheld
because its disclosure would create an undue risk to national
security, Defendants

> must make such a determination on a case-by-case basis
> including consideration of, at a minimum, the factors
> outlined in *Al Haramain*; *i.e.*, (1) the nature and
> extent of the classified information, (2) the nature
> and extent of the threat to national security, and (3)
> the possible avenues available to allow the Plaintiff
> to respond more effectively to the charges.

*Latif*, 28 F. Supp. 3d at 1162 (citing *Al Haramain*, 686 F.3d at
984).

Although the Court concludes Defendants'
revised DHS TRIP procedures in principle are not inconsistent
with this requirement, the Court again notes it cannot determine
from this record whether the unclassified summaries of
Defendants' reasons for placing Plaintiffs on the No-Fly List
conveyed sufficient material information to Plaintiffs to satisfy
procedural due-process standards because the record does not
reflect what information Defendants withheld or the reasons for
withholding such information.

45- OPINION AND ORDER

In summary, on this record the Court concludes Defendants must provide Plaintiffs with sufficient material information in Defendants' possession to permit Plaintiffs to respond meaningfully to the reasons that Defendants placed Plaintiffs on the No-Fly List.  That disclosure, however, need not take the form of original evidence, and Defendants may withhold information when disclosure would create an undue risk to national security subject to Defendants' obligation to implement appropriate procedures to minimize the amount of material information withheld.  Defendants' decision to withhold material information must itself be subject to judicial review. See Latif, 28 F. Supp. 3d at 1162.  Thus, if Defendants determine any Plaintiff should remain on the No-Fly List and if Defendants withhold information from that Plaintiff during the DHS TRIP process, upon judicial review Defendants must identify for the appropriate court the information that was withheld, provide justification for withholding that information, and explain why they could not make additional disclosures to that Plaintiff. Defendants must accomplish these disclosures by including in the administrative record submitted to the appropriate court an affidavit or declaration from a competent witness with personal knowledge of the No-Fly List determination.  Defendants' revised

DHS TRIP procedures appear to meet this standard in principle,[7] but the record is currently insufficient for the Court to rule on the adequacy of the specific disclosures made to each of the six remaining Plaintiffs.

         (c)   <u>Disclosure of Exculpatory Information</u>

        Plaintiffs contend the DHS TRIP procedures do not satisfy due process because Defendants must disclose to Plaintiffs all exculpatory information.  This contention, however, is resolved in the same manner as Plaintiffs' contentions that Defendants must disclose all material information because exculpatory information is, by definition, material. *See Skinner v. Switzer*, 562 U.S. 521, 537 (2011)("*Brady* evidence is, by definition, always favorable to the defendant and material to his guilt or punishment.").  In any event, if Defendants possess exculpatory information that cannot be disclosed, Defendants must bring that information to the attention of the court reviewing the administrative record that documents the No-Fly List designation.

        Accordingly, on this record the Court concludes Defendants' obligation to disclose exculpatory information is the same as Defendants' obligation to provide

---

[7] The Court notes the revised DHS TRIP procedures provided to the Court do not include the procedures to be used during judicial review.

47- OPINION AND ORDER

other material information; *i.e.*, as long as disclosure of the information would not create an undue risk to national security, Defendants must provide sufficient material information, whether exculpatory or inculpatory, to each Plaintiff in order to permit such Plaintiff to respond meaningfully to the reasons he has been placed on the No-Fly List.  As noted, however, this record is insufficient for the Court to determine whether the information provided to each Plaintiff satisfies this standard.

           (d)  <u>Live Hearing Before a Neutral Decision-Maker and Right to Confront Witnesses</u>

Plaintiffs also contend the revised DHS TRIP procedures are insufficient because they do not provide Plaintiffs with the opportunity to appear at a live hearing before a neutral decision-maker and to confront and to cross-examine live witnesses.  Plaintiffs again analogize to deportation cases to support their position that due process requires Defendants to provide Plaintiffs with a live hearing. *See Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013).  As noted, Plaintiffs contend "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). *See also Cinapian*, 567 F.3d at 1074-76.  Plaintiffs contend a live hearing with confrontation of witnesses is especially important

48- OPINION AND ORDER

in this context because, as some of the notice letters provided to Plaintiffs reveal, No-Fly List determinations often turn on the credibility of witnesses, contested facts, and hearsay evidence.

Defendants, on the other hand, assert due process does not require a live or adversarial hearing in this context. The Court agrees. As Defendants point out, courts have approved procedures that do not contain a live hearing in several circumstances, including the use of classified information in the designation of Specially Designated Global Terrorists (SDGT). *See Al Haramain*, 686 F.3d at 1001. *See also Holy Land Found. for Relief and Dev. v. Ashcroft*, 333 F.3d 156, 163 (D.C. Cir. 2003)). Defendants emphasize live, adversarial hearings are particularly inappropriate in this context because agencies that initially nominate individuals for the No-Fly List may rely on reporting from a wide variety of sources including foreign governments and confidential informants. Defendants contend subjecting such sources to cross-examination would risk exposing protected national security information in the unpredictable environment of a live hearing and hamper the government's ability to gather intelligence from a variety of counterterrorism sources.

Again, the Court does not find persuasive Plaintiffs' analogy of this case to deportation cases.

49- OPINION AND ORDER

The balance of interests with regard to placement on the No-Fly List is, however, similar to designation as an SDGT.  As the Ninth Circuit explained in *Al Haramain*, the private party's property interests were "significant" because designation as an SDGT "completely shutters all domestic operations of an entity," freezes all of the entity's assets, prohibits any person or organization from conducting "any business whatsoever with the entity," and imposes civil and criminal penalties on those who violate the prohibitions.  686 F.3d at 980.  "In sum, designation is not a mere inconvenience or burden on certain property interests; designation indefinitely renders a domestic organization financially defunct." *Id.*  Thus, although the nature of the private interests involved are different because an SDGT designation implicates the property interests of organizations whereas placement on the No-Fly List primarily implicates the liberty interests of individuals,[8] the weight of those interests in a procedural due-process context are both on balance similarly significant.  In light of the substantive similarity and the challenges inherent in the use of classified information, the Court finds *Al Haramain* and the other SDGT cases helpful.

---

[8] Although designation as an SDGT only directly impacts an organization's interest, it undoubtedly affects individuals indirectly through, for example, lost employment, investments, and/or donations.

Although the Ninth Circuit in *Al Haramain* did not directly address whether a live, adversarial hearing was constitutionally necessary, the Court notes the Ninth Circuit ultimately found only harmless notice errors in the SDGT-designation process, a procedure that did not include any live, adversarial hearing. *Id.* at 979-90. Accordingly, the Court concludes nothing in *Al Haramain* suggests a live, adversarial hearing is required in this context and, in fact, *Al Haramain* suggests a document-based hearing would be sufficient.

The Court, nevertheless, recognizes there are some differences between the nature of the evidence involved in *Al Haramain* and the evidence that may be needed to support No-Fly List designations for Plaintiffs. In particular, because the SDGT designation at issue in *Al Haramain* involved an organization, the evidence appears to have been document-oriented.[9] *See id.* at 976-79. Placement of individuals on the No-Fly List, on the other hand, arguably presents a stronger need for a live, adversarial hearing because the evidence is more likely to be testimonial and intelligence-based. Nonetheless, the Court agrees with Defendants that a live, adversarial hearing is not a viable procedure in this context in light of the

---

[9] The Court notes the Ninth Circuit, in any event, considered a classified record when it determined whether the government properly designated the plaintiff as an SDGT because of the plaintiff's support for "designated persons as a branch office of AHIF-Saudi Arabia." *Al Haramain*, 686 F.3d at 979.

sensitive nature of much of the evidence; the inherent
unpredictability of a live, adversarial hearing; and the
potential chilling effect that exposing sources of intelligence
to cross-examination may have on intelligence-gathering. *See
Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1904
(2011)(noting a deposition with counsel on both sides having
security clearances, nonetheless, resulted in inadvertent,
unauthorized disclosure of military secrets).

In summary, on this record the
Court concludes the revised DHS TRIP procedures are not
constitutionally deficient because of the fact that Defendants
did not provide Plaintiffs with the opportunity to participate in
a live, adversarial hearing with witnesses subject to cross-
examination.

(e)  <u>Use of CIPA-like Procedures</u>

Finally, Plaintiffs contend the revised
DHS TRIP procedures are deficient because the process does not
include procedures inspired by CIPA, including the use of
protective orders, unclassified summaries of classified
information,[10] and additional, classified disclosures to counsel

---

[10] The Court notes the DHS TRIP procedures provided to
Plaintiffs permit the use of unclassified summaries of classified
information and that Defendants provided unclassified summaries
to at least some of the Plaintiffs.

who have the appropriate security clearances.[11]  *See* 18 U.S.C.
App. 3, § 6.  Plaintiffs argue such additional procedures would
allow Plaintiffs to respond to Defendants' reasons for placing
them on the No-Fly List more meaningfully without creating any
additional risk to national security.  Although Plaintiffs
acknowledge CIPA does not directly apply in the civil context,
Plaintiffs point out that courts have looked to CIPA as a helpful
guide in civil cases, including in the Ninth Circuit's 2012
opinion regarding this case.  *See Latif v. Holder*, 686 F.3d 1122,
1130 (9th Cir. 2012).

          Defendants, on the other hand, maintain
CIPA applies only to criminal matters and is not applicable to
civil and administrative matters.  Moreover, Defendants contend
CIPA is particularly inapplicable here because the government's
ultimate remedy under CIPA is to dismiss the criminal charges if
it cannot employ an alternative means of disclosing classified
information.  In a civil case such as this one, however, the
government cannot unilaterally end the lawsuit.  18 U.S.C.
App. 3, § 6(e)(2)(A).

          Moreover, Defendants contend a federal
district court is not empowered to compel the Executive Branch to

---

[11] Plaintiffs do not contend Defendants must provide
Plaintiffs' counsel with security clearances or that due process
requires Defendants to provide Plaintiffs with lawyers that have
such security clearance.

disclose classified information to any other individual because
the decisions to grant security clearances and to disclose
classified information are within the sole discretion of the
Executive Branch.  *See, e.g.*, *Egan*, 484 U.S. at 527-28; *El-Masri
v. United States*, 479 F.3d 296, 311 (4th Cir. 2007).  In any
event, Defendants contend as a practical matter that disclosures
to counsel who have security clearances would also implicate a
threat to national security because such disclosures can still
result in inadvertent, unauthorized disclosures.  *See Gen.
Dynamics Corp.*, 131 S. Ct. at 1904.

          The Court notes the Ninth Circuit in *Al
Haramain* considered similar arguments and concluded:  "To the
extent that an unclassified summary could provide helpful
information, such as the subject matter of the agency's concerns,
and to the extent that it is feasible to permit a lawyer with
security clearance to view the classified information, the value
of those methods seems undeniable."  686 F.3d at 982-83.  The
Ninth Circuit, accordingly, found "a lawyer for the designated
entity who has the appropriate security clearance also does not
implicate national security when viewing the classified material
because, by definition, he or she has the appropriate security
clearance."  *Id.* at 983.  The Ninth Circuit, however, did not
foreclose the possibility that in some circumstances the
government "might have a legitimate interest in shielding the

54- OPINION AND ORDER

materials even from someone with the appropriate security clearance." *Id.* Nonetheless, the Ninth Circuit concluded "[i]n many cases . . . some information could be summarized or presented to a lawyer with a security clearance without implicating national security." *Id.*

As this Court found in its June 2014 Opinion, Defendants can use procedures in the context of this case similar to those approved by the Ninth Circuit in *Al Haramain*. *See Latif*, 28 F. Supp. 2d at 1162 (noting procedures for mitigation of withholding information for national security purposes "could include, but are not limited to, the procedures identified by the Ninth Circuit in *Al Haramain*; that is, Defendants may choose to provide Plaintiffs with unclassified summaries of the reasons for their respective placement on the No-Fly List or disclose the classified reasons to properly-cleared counsel."). Although the Court notes the utility of making additional disclosures to counsel with appropriate security clearances may be limited because counsel will often be prohibited from sharing that information with their clients, "limited utility is very different from no utility." *Al Haramain*, 686 F.3d at 983 n.10.

Accordingly, on this record the Court adheres to its June 2014 Opinion and, applying the principles expressed in *Al Haramain*, the Court concludes to the extent that

55- OPINION AND ORDER

Defendants withhold information from any Plaintiff because the
disclosure would create an undue risk to national security,
Defendants must implement procedures to minimize the amount of
material information withheld.  When possible, Defendants must
determine whether the information can be summarized in an
unclassified summary and/or whether additional disclosures can be
made to Plaintiffs' counsel who have the appropriate security
clearances.  The Court, however, cannot conclude on this record
whether the revised DHS TRIP procedures that Defendants provided
to these Plaintiffs satisfied this requirement because the record
does not reflect what information Defendants withheld or
Defendants' reasons for withholding that information.  Moreover,
the record does not reflect whether any Plaintiff is represented
by counsel with an appropriate security clearance.

      3.  <u>Summary Conclusion</u>

     For these reasons, the Court adheres to the conclusion
that Defendants must provide to each Plaintiff (1) a statement of
reasons for that Plaintiff's placement on the No-Fly List that is
sufficient to permit such Plaintiff to respond meaningfully to
those reasons and (2) any material exculpatory or inculpatory
information in Defendants' possession that is necessary for such
a meaningful response.  Defendants may limit or withhold
disclosures altogether in the event such disclosures would
create an undue risk to national security.  In such instances

56- OPINION AND ORDER

Defendants, nevertheless, must implement procedures to minimize the amount of material withheld.  When possible, Defendants must determine whether the information can be summarized in an unclassified summary and/or whether additional disclosures can be made to Plaintiffs' counsel who have the appropriate security clearances.  When possible, Defendants must do so.  When it is not possible, Defendants must so certify through a competent witness with personal knowledge.

When a Plaintiff seeks substantive judicial review of Defendants' determination that the Plaintiff must remain on the No-Fly List, Defendants must include with the administrative record submitted to the appropriate court an affidavit or declaration from a competent witness with personal knowledge of the No-Fly List determination that identifies for the court the information that was withheld, provides justification for withholding that information, and explains why Defendants could not make additional disclosures.

Accordingly, on this record the Court denies Plaintiffs' Renewed Combined Motion (#206) for Partial Summary Judgment and grants in part and denies in part Defendants' Combined Cross-Motion (#251) for Partial Summary Judgment.

### C.    Analysis of Parties' Individual Cross-Motions for Partial Summary Judgment

As noted, in addition to the Renewed Combined Motions for Partial Summary Judgment, each Plaintiff also moves for summary

57- OPINION AND ORDER

judgment on their procedural due-process claim as to the revised
DHS TRIP procedures applied to them.  Defendants, in turn,
separately move for summary judgment as to each individual
Plaintiff.

After reviewing the individual cross-motions, the Court
concludes the same analysis used to resolve the collective cross-
motions applies to the individual cross-motions.  To the extent
that Plaintiffs assert they have not been provided with
sufficient notice of the reasons for their placement on the No-
Fly List or provided with the evidence supporting those reasons
(and, conversely, to the extent that Defendants assert they
provided sufficient notice to Plaintiffs), the Court cannot enter
summary judgment for any party because the record does not
reflect what information Defendants withheld nor the reasons for
withholding that information.  Moreover, to the extent that
Plaintiffs contend Defendants did not adequately employ
procedures designed to minimize the amount of information
withheld (*i.e.*, unclassified summaries or additional disclosures
to counsel with security clearances), the record is currently
insufficient to permit the Court to enter summary judgment in any
party's favor for the same reason in addition to the fact that
the record does not reflect whether any Plaintiff is represented

by counsel who have the appropriate security clearance.  All
other issues raised in the parties' individual cross-motions are
resolved in the same manner that the Court resolved those issues
as to the collective cross-motions.

Accordingly, on this record the Court defers ruling as to
Plaintiffs' individual Renewed Motions (#210, #212, #214, #216,
#218, #220) for Partial Summary Judgment and Defendants' Cross-
Motions (#241, #242, #247, #248, #249, #250) for Partial Summary
Judgment regarding individual Plaintiffs.

## II.  <u>Administrative Procedure Act Claims</u>

As noted, the parties each move for summary judgment both
collectively and individually on Plaintiffs' APA claim under
5 U.S.C. § 706(2)(A) and § 706(2)(B), and, as noted in the
Court's June 2014 Opinion, Plaintiffs' APA claims mirror their
procedural due-process claims.  *See Latif*, 28 F. Supp. 3d at
1162-63.  Accordingly, the Court resolves the parties' cross-
motions concerning Plaintiffs' APA claims using the same analysis
that the Court applied to Plaintiffs' procedural due-process
claims.

<u>CONCLUSION</u>

For these reasons, the Court **GRANTS in part** and **DENIES in
part** Defendants' Combined Cross-Motion (#251) for Partial Summary

59- OPINION AND ORDER

Judgment; **DENIES** Plaintiffs' Renewed Combined Motion (#206) for
Partial Summary Judgment; and **DEFERS RULING** on Defendants' Cross-
Motions (#241, #242, #247, #248, #249, #250) for Partial Summary
Judgment regarding individual Plaintiffs and Plaintiffs'
individual Renewed Motions (#210, #212, #214, #216, #218, #220)
for Partial Summary Judgment until Defendants supplement the
record with sufficient information to rule on the individual
cross-motions.

## CASE-MANAGEMENT ORDER

Before the parties and the Court can move forward on other
issues in this action, including the substantive due-process
question whether any of the six remaining Plaintiffs are properly
placed on the No-Fly List, the Court must complete adjudication
of the pending Motions on which it has deferred ruling.
Accordingly, **no later than April 18, 2016**, the Court directs
Defendants to submit to the Court as to each Plaintiff the
following:  (1) a summary of any material information (including
material exculpatory or inculpatory information) that Defendants
withheld from the notice letters sent to each Plaintiff and (2)
an explanation of the justification for withholding that
information, including why Defendants could not make additional
disclosures.

60- OPINION AND ORDER

Defendants' supplemental submission may be in the form of declarations or other statements from an officer or officers with personal knowledge of the No-Fly List determinations as to each Plaintiff.  If necessary to protect sensitive national security information, Defendants may make such submissions *ex parte* and *in camera*.  If Defendants submit any materials *ex parte* and *in camera*, however, Defendants must also make a filing on the public record that memorializes the submission and provides as much public disclosure of the substance of Defendants' submission as national security considerations allow.

To the extent that Plaintiffs wish to respond to Defendants' next submissions as set out above, Plaintiffs must do so **no later than May 9, 2016**, when the Court will again take this issue under advisement without further briefing or oral argument.

After the Court completes its consideration of Plaintiffs' procedural due-process and APA claims on the supplemented record, the Court will set an expedited briefing schedule to consider Defendants' recent contention that revisions in their administrative procedures (under which the Acting Administrator of the TSA is now responsible for issuing a final determination regarding DHS TRIP inquiries) effectively abrogate the Ninth Circuit's holdings that this Court has jurisdiction to continue

to adjudicate Plaintiffs' remaining claims.  *See Latif*, 686 F.3d
1122.  *See also Arjmand v. United States Dep't of Homeland Sec.*,
745 F.3d 1300 (9th Cir. 2014).

        IT IS SO ORDERED.

        DATED this 28th day of March, 2016.


                        /s/ Anna J. Brown

                        _____
                        ANNA J. BROWN
                        United States District Judge


62- OPINION AND ORDER