IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


AYMAN LATIF; MOHAMED SHEIKH           3:10-cv-00750-BR
ABDIRAHMAN KARIYE; RAYMOND
EARL KNAEBLE IV; NAGIB ALI            OPINION AND ORDER
GHALEB; ABDULLATIF MUTHANNA;
FAISAL NABIN KASHEM; ELIAS
MUSTAFA MOHAMED; IBRAHEIM Y.
MASHAL; SALAH ALI AHMED;
AMIR MESHAL; STEPHEN DURGA
PERSAUD; and MASHAAL RANA,

        Plaintiffs,

v.

JEFFERSON B. SESSIONS III,[1] in
his official capacity as
Attorney General of the United
States; JAMES B. COMEY, in his
official capacity as Director of
the Federal Bureau of
Investigation; and CHRISTOPHER M.
PIEHOTA, in his official capacity
as Director of the FBI Terrorist
Screening Center,

        Defendants.


STEVEN M. WILKER
Tonkon Torp LLP
888 S.W. 5th Avenue, Suite 1600
Portland, OR 97204-2099
(503) 802-2040

─────────────────────

        [1] The Court substitutes Jefferson B. Sessions III as
Attorney General of the United States, who was sworn in on
February 29, 2017.

1 - OPINION AND ORDER

**HINA SHAMSI**
**HUGH HANDEYSIDE**
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

**AHILAN ARULANANTHAM**
**CATHERINE A. WAGNER**
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-9500

**ALAN L. SCHLOSSER**
**JULIA HARUMI MASS**
ACLU of Northern California
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

**MITCHELL P. HURLEY**
**JUSTIN H. BELL**
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1011

        Attorneys for Plaintiffs Mohamed Sheikh Abdirahman
        Kariye, Faisal Kashem, Raymond Earl Knaeble, Amir
        Mohamed Meshal, and Steven Washburn


**WILLIAM GENEGO**
2115 Main Street
Santa Monica, CA 90405
(310) 399-3259

**JOEL P. LEONARD**
Elliot, Ostrander & Preston, P.C.
Union Bank of California Tower
707 S.W. Washington Street, Suite 1500
Portland, OR 97205
(503) 224-7112

        Attorneys for Plaintiff Stephen Persaud

**JEFFERSON B. SESSIONS III**
United States Attorney General
**BENJAMIN C. MIZER**
Principal Deputy Assistant Attorney General
**ANTHONY J. COPPOLINO**
Deputy Branch Director
**AMY ELIZABETH POWELL**
**BRIGHAM J. BOWEN**
**SAMUEL M. SINGER**
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC 20001
(202) 514-9836

**BILLY J. WILLIAMS**
United States Attorney
**JAMES E. COX, JR.**
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97204
(503) 727-1026

      Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on Defendants' Motion (#348) to Dismiss for Lack of Jurisdiction and Plaintiffs' Motion (#352) for Leave to Conduct Limited Jurisdictional Discovery. The Court concludes the record on these Motions is sufficiently developed such that oral argument would not be helpful. For the reasons that follow, the Court **GRANTS** Defendants' Motion (#348) to Dismiss for Lack of Jurisdiction and **DENIES** Plaintiffs' Motion (#352) for Leave to Conduct Limited Jurisdictional Discovery.

## BACKGROUND

The Court set out the complete factual background of this
case in its Opinion and Order (#321) issued March 28, 2016, and
Opinion and Order (#136) issued June 24, 2014.  The Court sets
out herein only the factual background necessary to resolve the
parties' Motions.

## I.   No-Fly List and Original DHS TRIP Procedures

Plaintiffs instituted this action on June 30, 2010,
challenging their alleged placements on the No-Fly List and the
procedures that the government provided under the Department of
Homeland Security Traveler Redress Inquiry Program (DHS TRIP) to
challenge placements on the No-Fly List.  Plaintiffs seek only
prospective relief in this action.

Individuals who are placed on the No-Fly List are prohibited
from boarding any commercial flight that will pass through or
over United States airspace.  The No-Fly List is a subset of the
consolidated Terrorist Screening Database (TSDB), which is
maintained by the Terrorist Screening Center (TSC).  The TSC is
administered by the Federal Bureau of Investigation (FBI) and is
staffed by multiple agencies.  Although the TSC is responsible
for maintaining the TSDB (including the No-Fly List), nominations
to the TSDB are made by multiple law-enforcement and national-
security agencies.

At the time Plaintiffs instituted this action a traveler

who was denied boarding a commercial airline could submit an application for redress through DHS TRIP. DHS TRIP would determine whether the traveler is an exact or near match to an individual in the TSDB and, if so, would forward the request to the TSC. On receipt of the inquiry the TSC would double-check to ensure the traveler was an exact match to an identity in the TSDB and, if so, determine whether the traveler should continue to be in the TSDB.

After the TSC completed its review, it would notify DHS TRIP of its determination and DHS TRIP would send a determination letter advising the traveler that DHS TRIP had completed its review. Notably, the DHS TRIP determination letter did not confirm or deny whether the traveler was in the TSDB or on the No-Fly List and did not provide any further details about why the traveler may or may not have been in the TSDB or on the No-Fly List. Moreover, pursuant to these original procedures, the DHS TRIP determination letters did not provide assurances about the traveler's ability to undertake future travel nor any meaningful opportunity to contest or to correct the record on which any such determination was based. In some cases the DHS TRIP determination letter advised the traveler that he or she could pursue an administrative appeal of the determination with the Transportation Security Administration (TSA) or could seek judicial review in a United States court of appeals pursuant to

49 U.S.C. § 46110.

## II. **Jurisdiction Over Plaintiffs' Claims Challenging Placement on the No-Fly List and the DHS TRIP Process**

On May 3, 2011, this Court dismissed this action on the grounds that Plaintiffs failed to join the TSA, an indispensable party, and that jurisdiction over Plaintiffs' challenges to their placements on the No-Fly List and the DHS TRIP procedures rested in the Ninth Circuit Court of Appeals pursuant to 49 U.S.C. § 46110(a). *See Latif v. Holder*, No. 3:10-cv-00750-BR, 2011 WL 1667471 (D. Or. May 3, 2011).

On November 19, 2012, the Ninth Circuit Court of Appeals held Plaintiffs' claims did not challenge a TSA order, and, therefore, § 46110(a) did not vest jurisdiction over this action in the Court of Appeals. *See Latif v. Holder*, 686 F.3d 1122 (9th Cir. 2012). Accordingly, the Ninth Circuit reversed and remanded the case back to this Court.

## III. **This Court's Opinion and Order issued June 24, 2014**

On June 24, 2014, this Court denied Defendants' Cross-Motion (#85) for Partial Summary Judgment and granted Plaintiffs' Cross-Motion (#91) for Partial Summary Judgment as to Plaintiffs' related procedural due-process and Administrative Procedure Act (APA) claims in which Plaintiffs asserted the DHS TRIP procedures were constitutionally deficient. *See Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014). The Court held the DHS TRIP procedures fell "far short of satisfying the requirements of due

6 - OPINION AND ORDER

process" *Id.* at 1161. The Court found due process required Defendants to provide Plaintiffs "with notice regarding their status on the No-Fly List and the reasons for placement on that List" and that such notice "must be reasonably calculated to permit each Plaintiff to submit evidence relevant to the reasons for their respective inclusions on the No-Fly List." *Id.* at 1162. Nevertheless, the Court concluded it could not "foreclose the possibility that in some cases such disclosures may be limited or withheld altogether because any such disclosure would create an undue risk to national security." *Id.* The Court, however, held any such determination must be made on a case-by-case basis and must, at a minimum, consider "(1) the nature and extent of the classified information, (2) the nature and extent of the threat to national security, and (3) the possible avenues available to allow the Plaintiff to respond more effectively to the charges." *Id.*

## IV.  Revised DHS TRIP Procedures and Reconsideration of Plaintiffs' DHS TRIP Inquiries

Following this Court's Opinion and Order issued June 24, 2014, and pursuant to the Court's Case-Management Order (#152) issued October 3, 2014, Defendants disclosed on October 10, 2014, that seven of the Plaintiffs were not on the No-Fly List at that time. In addition, Defendants revised the DHS TRIP procedures to address the deficiencies that the Court identified in its June 24, 2014, Opinion and Order.

Under the new procedures DHS TRIP sent to each of the
remaining Plaintiffs a notification letter that confirmed they
were on the No-Fly List at that time, identified the applicable
substantive criteria, and provided an unclassified summary that
included at least some reasons for placement of each individual
on the No-Fly List.[2]  Although the unclassified summaries varied
in length and detail, the letters did not disclose all of the
reasons or information on which Defendants relied to maintain
each Plaintiff's placement on the No-Fly List because, according
to Defendants, they were unable to provide additional
disclosures.  The November 2014 DHS TRIP notification letters
invited each Plaintiff to submit a written response by
December 15, 2014, and each of the remaining Plaintiffs responded
to the notification letters.

Pursuant to the revised procedures, if an individual timely
responds to the second letter and requests additional review, DHS
TRIP forwards the response and any enclosed information to the

---

[2] In the ordinary course, this notification would be split
into two steps.  First, DHS TRIP (as noted, in consultation with
TSC) would send to the traveler a notification letter that only
indicates whether the traveler was on the No-Fly List.  If the
traveler is on the No-Fly List and requests additional
information, the revised procedures call for DHS TRIP (in
consultation with the TSC) to send the traveler a second
notification letter that identifies the applicable substantive
criteria and contains the unclassified summary of the reasons for
the traveler's placement on the List.  Because of the procedural
posture of this litigation, however, Defendants combined these
two steps for the remaining Plaintiffs.

TSC for consideration.  Upon completion of TSC's review of materials submitted to DHS TRIP, the TSC provides a written recommendation to the TSA Administrator as to whether the individual should be removed from or remain on the No-Fly List and the reasons for that recommendation.  The information that the TSC provides to the TSA Administrator may be a summary of the information that the TSC relied on to make its determination regarding whether the individual should remain on the No-Fly List and does not necessarily include all underlying documentation. The TSC's recommendation to the TSA Administrator may contain classified and/or law-enforcement sensitive information.  In addition, DHS TRIP also provides the traveler's complete DHS TRIP file to the TSA Administrator, including all information submitted by the traveler.

The revised DHS TRIP procedures also provide that after review of the record provided by TSC and DHS TRIP, the TSA Administrator may request additional information or consult with the TSC and/or other relevant agencies (including any nominating agency) regarding concerns that may arise from the recommendation or the record before the Administrator.  The TSA Administrator may either adopt or reject the TSC's recommendation.  If the TSA Administrator issues a final order maintaining an individual on the No-Fly List, the order will state the basis for the decision to the extent possible without compromising national security or

law-enforcement interests.  If the TSA Administrator determines the traveler should not remain on the No-Fly List, the Administrator would then issue an order removing the traveler from the No-Fly List.  The TSA Administrator is vested with the authority to determine whether the traveler will remain on or be removed from the No-Fly List and is not bound by the recommendation of the TSC.  Upon issuance of the final order by the TSA Administrator, DHS TRIP provides TSC and the traveler with a copy of the final order.

In late 2014, pursuant to these revised procedures, Defendants reconsidered the DHS TRIP inquiries of the remaining six Plaintiffs (Mohamed Sheikh Abdirahman Kariye, Faisal Kashem, Raymond Earl Knaeble, Amir Meshal, Steven Washburn, and Stephen Persaud),[3] but the TSA Administrator concurred with the TSC's recommendation to keep each Plaintiff on the No-Fly List.  The TSA Administrator then issued orders to that effect.

Plaintiffs, nevertheless, contended the revised DHS TRIP process still violated their rights to procedural due process, and, therefore, on March 17, 2015, Plaintiffs filed Motions for Partial Summary Judgment on their procedural due-process claims (both collectively and as to each individual Plaintiff).

---

[3] On April 12, 2016, Plaintiffs filed a Notice (#324) of the Death of a Party in which it notified the Court that Plaintiff Steven William Washburn had passed away.  Accordingly, five Plaintiffs remain actively involved in these proceedings.

Defendants filed Cross-Motions for Summary Judgment as to all Plaintiffs collectively and as to each Plaintiff individually in which Defendants contended the revised DHS TRIP process were constitutionally sufficient.

## V. **Plaintiffs' Procedural Due-Process Claims as to the Revised DHS TRIP Process**

On March 28, 2016, the Court granted in part and denied in part Defendants' Cross-Motion as to the Plaintiffs collectively, denied Plaintiffs' collective Motion, and deferred ruling on the parties' Cross-Motions as to the individual Plaintiffs. *See Latif v. Lynch*, No. 3:10-cv-00750-BR, 2016 WL 1239925 (D. Or. Mar. 28, 2016). The Court adhered to its ruling in the June 24, 2014, Opinion and Order and found the revised DHS TRIP process to be generally consistent with the standards the Court set out in that Order. The Court, however, also found the record was not sufficiently developed to permit the Court to determine whether Defendants provided each Plaintiff with the requisite notice and opportunity to be heard through the revised DHS TRIP procedures because the record did not identify the information that Defendants withheld from the notification letters sent to each Plaintiff. Accordingly, the Court directed Defendants to supplement the record (*ex parte* and *in camera* if necessary to protect sensitive national-security information) with a summary of the material information that Defendants withheld from the notice letters sent to each Plaintiff together with a

justification for withholding that information.

On May 5, 2016, Defendants filed their Supplemental
Memorandum together with a Notice indicating they had filed
additional materials *ex parte* and *in camera*. On July 7, 2016,
the Court directed Defendants to make an additional supplemental
filing that could, if necessary, be filed *ex parte* and under
seal. Defendants made their second supplemental submission on
August 29, 2016.

Based on its consideration of the entirety of the record,
the Court on October 6, 2016, granted Defendants' Cross-Motions
for Partial Summary Judgment as to the individual Plaintiffs and
denied Plaintiffs' individual Motions for Summary Judgment. In
particular, the Court found "Defendants have provided sufficient
justifications for withholding additional information in response
to each of the Plaintiffs' revised DHS TRIP inquiries." Order
(#337) at 5-6. Accordingly, the Court concluded the revised DHS
TRIP procedures satisfied Plaintiffs' rights to procedural due
process.


**<u>DISCUSSION</u>**

Defendants now move to dismiss this action on the basis that
the Court of Appeals has jurisdiction over Plaintiffs' remaining
claims pursuant to § 46110 because those claims directly
challenge the TSA Administrator's recent orders to keep

Plaintiffs on the No-Fly List under the revised DHS TRIP procedures. Plaintiffs, on the other hand, contend their claims still do not fall within the scope of § 46110 despite the revised DHS TRIP procedures, and, therefore, this Court continues to have jurisdiction pursuant to the Ninth Circuit's previous mandate in this case.

Because Defendants' Motion relies on factual developments that occurred after the filing of Plaintiffs' Third Amended Complaint and that are not contained within the Third Amended Complaint, the Court construes Defendants' Motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

## I.    **Standards**

Section 46110(a) "'grants exclusive jurisdiction to the federal courts of appeals to 'review' the 'order[s]' of a number of agencies, including the Transportation Security Administration.'" *Arjmand v. United States Dep't of Homeland Sec.*, 745 F.3d 1300, 1302 (9th Cir. 2014)(quoting *Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1254 (9th Cir. 2008)). "Section 46110 does not, however, grant circuit courts jurisdiction to review orders issued by TSC." *Arjmand*, 745 F.3d at 1302.

The Ninth Circuit has considered the relationship between challenges to placement on the No-Fly List and § 46110(a) on three occasions.

**A.    *Ibrahim v. Department of Homeland Security***

In *Ibrahim* the plaintiff was placed on the No-Fly List and brought an action in the district court under the APA "for an injunction directing the government to remove her name from the No-Fly List and to cease certain policies and procedures implementing the No-Fly List."  538 F.3d at 1254.  The district court in *Ibrahim* determined the TSC "actually compiles the list of names ultimately placed on the No-Fly List" and that the TSC is not part of the TSA or any other agency named in § 46110.  *Id.* at 1254-55.  The Ninth Circuit concluded "[b]ecause putting Ibrahim's name on the No-Fly List was an "order" of an agency *not* named in section 46110, the district court retains jurisdiction to review that agency's order under the APA."  *Id.* at 1255.

The government in *Ibrahim* also argued the court of appeals had jurisdiction over Ibrahim's claim because it was "inescapably intertwined" with a TSA order.  *Id.*  The Ninth Circuit, however, noted the "inescapably intertwined" doctrine only "refer[s] to *claims* that are inescapably intertwined with [the court's] *review* of an order."  *Id.* at 1255-56 (emphasis in original).  The Ninth Circuit, therefore, found Ibrahim's claim challenging the order placing her on the No-Fly List was not inextricably intertwined with an order under § 46110 because the challenged order was issued by an agency other than one named in § 46110.  *Id.* at 1256.

Finally, the Ninth Circuit also noted the lack of any administrative record further suggested review should be by the district court because "it would make sense that [review] be in a court with the ability to take evidence." *Id.*

**B.** ***Latif v. Holder***

As noted, this Court initially dismissed this action for lack of subject-matter jurisdiction because the Court initially held the court of appeals had jurisdiction over Plaintiffs' claims pursuant to § 46110. The Ninth Circuit, however, reversed and remanded on the ground that this Court has subject-matter jurisdiction over both Plaintiffs' substantive and procedural claims. The Ninth Circuit reasoned § 46110 does not apply to Plaintiffs' substantive claims "[b]ecause TSC 'actually compiles the list of names ultimately placed' on the [No-Fly] List." *Latif*, 686 F.3d at 1127 (quoting *Ibrahim*, 538 F.3d at 1255).

With respect to Plaintiffs' procedural due-process claims, however, the Ninth Circuit noted those claims "undoubtedly require[] at least some review of TSA's orders, namely, the policies and procedures implementing DHS TRIP." *Latif*, 686 F.3d at 1127. In addition to direct challenges to orders by agencies explicitly listed in § 46110, the Ninth Circuit noted "[t]he district court lacks jurisdiction to hear damages claims that are 'inextricably intertwined with a review of the procedures and merits surrounding the agency's order.'" *Id.* at 1228 (quoting

*Americopters, LLC v. Fed. Aviation Admin.*, 441 F.3d 726, 736 (9th Cir. 2006)).  The court explained the "'inextricably intertwined' doctrine 'prevents plaintiffs from crafting constitutional tort claims either as a means of relitigat[ing] the merits of the previous administrative proceedings, or as a way of evading entirely established administrative procedures.'"  *Latif*, 686 F.3d at 1128 (quoting *Americopters*, 441 F.3d at 736).

In particular, the Ninth Circuit found "Plaintiffs' procedural challenge requires judicial review of orders issued both by TSA, which is named in § 46110, and by TSC, which is not."  *Id.* at 1128.  The Ninth Circuit, however, described the relationship between TSA and TSC as follows:

> TSA's implementation of DHS TRIP is at issue, but TSA is merely a conduit for a traveler's challenge to inclusion on the List.  TSA simply passes grievances along to TSC and informs travelers when TSC has made a final determination.  TSC — not TSA — actually reviews the classified intelligence information about travelers and decides whether to remove them from the List.  And it is TSC — not TSA — that established the policies governing that stage of the redress process.

*Id.*  Thus, the Ninth Circuit found "[i]f Plaintiffs are entitled to judicial relief, any remedy must involve both TSA and TSC," and to the extent that Plaintiffs want to know why they were included on the No-Fly List and to have an opportunity to meaningfully respond, "[s]uch relief must come from TSC – the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List."

*Id.* at 1129.  The court, therefore, concluded:  "[B]ecause we would not be able to provide relief simply by amending, modifying, or setting aside TSA's orders or by directing TSA to conduct further proceedings, we lack jurisdiction under § 46110 to address Plaintiffs' procedural challenge."  *Id.*

   C.   ***Arjmand v. United States Department of Homeland Security***

   The Ninth Circuit again revisited the issue in *Arjmand*.  In *Arjmand* the plaintiff was twice subjected to additional screening procedures before boarding flights.  745 F.3d at 1301.  Arjmand submitted a DHS TRIP inquiry that was processed according to the original DHS TRIP procedures described above.  *Id.*  After DHS TRIP sent the plaintiff his notification letter, the plaintiff filed a petition for review in the Ninth Circuit "seeking disclosure of his watchlist status, a meaningful opportunity to contest inclusion on any watchlist, and removal from all government watchlists."  *Id.*

   The Ninth Circuit relied on *Latif* and summarized its ruling in *Latif as* follows:

>          The basis of our holding was straightforward.  Because
>          TSC administers the TSDB, a court needs jurisdiction
>          over TSC to grant meaningful relief to a plaintiff
>          seeking removal from the TSDB.  Thus, since § 46110
>          does not grant circuit courts jurisdiction to review
>          TSC orders, the statute cannot grant jurisdiction over
>          claims seeking removal from the TSDB.  Therefore, under
>          *Latif*, we lack original jurisdiction over Arjmand's
>          claims.

*Arjmand*, 745 F.3d at 1302 (internal citations omitted).  The

17- OPINION AND ORDER

*Arjmand* court rejected the government's attempt to distinguish *Latif* on the basis that, unlike the *Latif* Plaintiffs, Arjmand pursued his constitutional claims through the DHS TRIP process. The court reasoned:

> Even though Arjmand has pursued those claims through a petition challenging his DHS TRIP determination letter, the *relief* he seeks is confirmation of his watchlist status and, if present on the TSDB, removal from the list or a meaningful opportunity to contest his inclusion on the list. *Latif* holds that jurisdiction over claims seeking this relief does not exist under § 46110. Thus, the difference in procedural posture is not relevant, because our "lack of jurisdiction under § 46110 . . . arises from the unique relationship between TSA and TSC in processing traveler grievances," not from the formal mechanism a traveler uses to pursue claims challenging the administration of the TSDB.

*Id.* (quoting *Latif*, 686 F.3d at 1129)(emphasis and ellipses in original). Thus, the Ninth Circuit concluded "the fundamental problem remains that Arjmand cannot be granted relief without reviewing and modifying TSC orders, which cannot be done under § 46110." *Id.* at 1303.

## II. <u>Analysis</u>

Defendants contend the revised DHS TRIP procedures now place litigation of Plaintiffs' substantive claims squarely within the types of claims that must be brought in the court of appeals pursuant to § 46110. Defendants contend *Ibrahim*, *Latif*, and *Arjmand* are distinguishable because under the new DHS TRIP procedures the TSA Administrator is unquestionably the only authority responsible for issuing the final order maintaining a

traveler on the No-Fly List.  Defendants emphasize the TSA
Administrator has both the discretion to adopt or to reject the
recommendation of TSC and, if necessary, to consult with or to
request additional information from TSC or other relevant
agencies.  Thus, because the TSA Administrator is the ultimate
decision-maker as to whether a traveler remains on the No-Fly
List, Defendants contend Plaintiffs' substantive challenges to
their continued presence on the No-Fly List must be addressed by
the court of appeals.

Plaintiffs, on the other hand, contend jurisdiction remains
in this Court because TSA does not have complete control over
placement on the No-Fly List and the DHS TRIP process, and,
therefore, Plaintiffs' claims do not require review of a TSA
order under § 46110.  In particular, Plaintiffs point out that
TSC and the nominating agencies determine who is placed on the
No-Fly List in the first instance, and TSC retains a key role in
determining the information that is conveyed to the traveler in
the unclassified summary and in the final redress response; the
information that is conveyed to the TSA Administrator; and,
therefore, the information that forms the basis of the
Administrator's ultimate decision.  Finally, Plaintiffs contend
jurisdiction must rest in a court that is capable of receiving
evidence because Plaintiffs' substantive claims necessitate
considering more than the administrative record.

At the outset the Court notes this is an issue of first impression. Although the Ninth Circuit and other courts have considered whether claims arising from the No-Fly List and the original DHS TRIP procedures must be brought in the courts of appeals pursuant to § 46110, no court has considered where jurisdiction lies for a claim seeking review of an order denying removal from the No-Fly List following the completion of the revised DHS TRIP procedures and the issuance of a TSA order determining a traveler should be maintained on the No-Fly List for sufficient, disclosed reasons. Although the Court finds some force in each of the parties' opposing arguments, the Court concludes in the unique procedural posture of this case that jurisdiction over Plaintiffs' remaining substantive claims explicitly lies in the Ninth Circuit Court of Appeals pursuant to § 46110. In any event, if this Court retains the matter erroneously to adjudicate the remaining issues in this case, the parties will be delayed by several more months and will incur significant unnecessary expense. Thus, in light of the unique procedural posture of this case, the Court finds the most prudent course forward is to permit this jurisdictional question to be reviewed without delay by the Ninth Circuit Court of Appeals to ensure the last issues in this prolonged litigation are first resolved by the proper court.

The Court notes the "fundamental problem" identified in

*Arjmand* and *Latif* no longer exists in this case as a result of
the intervening revisions to the DHS TRIP procedures and, in
particular, because the TSA Administrator now is clearly the
authority to remove from or to maintain DHS TRIP applicants on
the No-Fly List.  In addition, when reviewing the issues under
§ 46110, the Ninth Circuit would now have the benefit of the
evidentiary and procedural record developed in this Court and on
which the TSA Administrator acted and can now "grant[] relief
without reviewing and modifying TSC orders."   This is so because
the TSA issued the final order maintaining Plaintiffs on the No-
Fly List pursuant to the revised procedures and the TSA has the
unfettered authority to remove Plaintiffs from the No-Fly List in
the event the Ninth Circuit determines Plaintiffs should be
removed.  *See Arjmand*, 745 F.3d at 1302.

**A.    TSC Responsibility for Initial Placement on the No-Fly
        List**

Plaintiffs, nevertheless, contend their substantive claims
still implicate TSC orders because TSC is the agency responsible
for the initial placement of individuals on the No-Fly List and
has the ongoing responsibility for reviewing and, if necessary,
removing individuals from the List outside of the DHS TRIP
process.  Plaintiffs, however, are not acting outside of the DHS
TRIP process, and, by seeking only prospective relief, Plaintiffs
are merely attempting to redress their ongoing placement on the
No-Fly List.  After employing the revised DHS TRIP process,

therefore, the TSA Administrator's order is the proximate reason why Plaintiffs remain on the No-Fly List and reversal of the TSA orders as to the remaining Plaintiffs would completely satisfy their requests for relief.  A district court, however, does not have jurisdiction to do so under § 46110.

## B.    TSC's Role in Disclosures to Plaintiffs and Compilation of Record for the TSA Administrator

Plaintiffs, as noted, also contend jurisdiction over their substantive claims remains in this Court because of TSC's role in determining the information that is conveyed to the traveler and the information that is ultimately conveyed to the TSA Administrator.  With respect to TSC's role in determining the information that may be released to the traveler, this Court has already determined that Defendants properly identified the information that could be released and the information that must be withheld when the Court granted summary judgment to Defendants on Plaintiffs' procedural claims.  *See* Order (#337) issued Oct. 6, 2016.  Plaintiffs' argument regarding TSC's control over the information that is released to the traveler, therefore, is an argument that goes to this Court's jurisdiction over the already-adjudicated procedural claims rather than the Court's jurisdiction over the purely substantive claims that remain.[4]

_____

[4] The Court notes this consideration may effectively limit this Court's rationale to the facts of this case.  In the

Moreover, Plaintiffs are incorrect that TSC exercises exclusive control over selecting the information that is provided to the TSA Administrator. As noted, it is undisputed that the TSA Administrator may request additional information from TSC and/or the nominating agency, and the Administrator could reject TSC's recommendation and order the traveler removed from the No-Fly List if the Administrator is not satisfied with the information provided by TSC. Ultimately, therefore, the fact that TSC plays a role in determining the information that can be disclosed to the traveler and in providing a record and recommendation to the TSA Administrator does not change the fact that the TSA Administrator is the ultimate decision-maker with respect to whether Plaintiffs are to remain on the No-Fly List. Accordingly, as noted, the reviewing court can now "grant[] relief without reviewing and modifying TSC orders." *See Arjmand*, 745 F.3d at 1302.

### C. Necessity of a Court Capable of Receiving Evidence

Finally, Plaintiffs contend their substantive claims require

---

ordinary course, judicial review of a DHS TRIP determination will involve both procedural and substantive aspects because the reviewing court must determine both whether the Defendants provided sufficient information to the traveler and whether the TSA Administrator's substantive decision is supported by the record. Because only Plaintiffs' substantive claims remain pending in this case, however, this Court cannot determine whether the hybrid nature of an ordinary judicial review of a DHS TRIP determination would lead to a different result.

a forum in a court that is capable of receiving evidence.
Plaintiffs, in particular, assert their substantive claims are
grounded in substantive due process, and, therefore, the Court
will be required to consider information outside of the
administrative record as to each individual Plaintiff. This
argument stems from the Ninth Circuit's discussion in *Ibrahim* in
which the court observed:

> Our interpretation of section 46110 is consistent not
> merely with the statutory language but with common
> sense as well. Just how would an appellate court
> review the agency's decision to put a particular name
> on the list? There was no hearing before an
> administrative law judge; there was no notice-and-
> comment procedure. For all we know, there is no
> administrative record of any sort for us to review. So
> if any court is going to review the government's
> decision to put Ibrahim's name on the No-Fly List, it
> makes sense that it be a court with the ability to take
> evidence.

*Ibrahim*, 538 F.3d at 1256.

The landscape as to this issue in this case, however, has
changed significantly since *Ibrahim*. The revised DHS TRIP
procedures generated an administrative record for the court of
appeals to review, and that record includes all information
material to the traveler remaining on the No-Fly List as well as
any information that the traveler chooses to submit after being
provided notice of the reasons for his or her inclusion on the
No-Fly List and an unclassified summary of the evidence
supporting those reasons. Moreover, to the extent that
Plaintiffs contend their constitutional claims (as opposed to

24- OPINION AND ORDER

their claims under the Administrative Procedure Act) challenging
the merits of their ongoing placement on the No-Fly List would
implicate information beyond the administrative record, the court
of appeals would, nonetheless, have jurisdiction over such claims
because they are "inextricably intertwined" with the TSA order.
*See Latif*, 686 F.3d at 1128 ("The 'inescapably intertwined'
doctrine 'prevents plaintiffs from crafting constitutional tort
claims either as a means of relitigat[ing] the merits of the
previous administrative proceedings, or as a way of evading
entirely established administrative procedures.'")(quoting
*Americopters*, 441 F.3d at 736).

In any event, as a practical matter a civil plaintiff's
constitutional claim is unlikely to be decided on a record
materially different from the administrative record because a
civil plaintiff could not likely obtain through discovery the
type of sensitive, national-security information that Defendants
are entitled to withhold during the administrative process under
the revised DHS TRIP procedures. *See Latif*, 28 F. Supp. 3d at
1162 (holding although Defendants must provide Plaintiffs with
notice of the reasons for their placement on the No-Fly List that
is "reasonably calculated to permit each Plaintiff to submit
evidence relevant to the reasons for their respective inclusions
on the No-Fly List," such disclosures by Defendants "may be
limited or withheld altogether because any such disclosure would

create an undue risk to national security."). In light of the
fact that Plaintiffs already have had an opportunity to submit
responsive information during the revised DHS TRIP process that
will be available to the reviewing court as part of the
administrative record (*see id.*), the record on which a court
would decide the substantive due-process claims would be
materially similar to the administrative record.

Ultimately Plaintiffs seek an up-or-down determination of
their substantive claims regarding whether Defendants have
sufficient justification to maintain Plaintiffs on the No-Fly
List. The Court concludes such a determination falls squarely
within the scope of the final orders issued by the TSA
Administrator at the conclusion of the revised DHS TRIP process.
Because § 46110 "'grants exclusive jurisdiction to the federal
courts of appeals to 'review' the 'order[s]' of a number of
agencies, including the Transportation Security Administration,'"
this Court concludes jurisdiction over Plaintiffs' remaining
substantive claims lies in the Ninth Circuit Court of Appeals.
*See Arjmand*, 745 F.3d at 1302 (quoting *Ibrahim*, 538 F.3d at
1254).

Accordingly, on this record the Court **GRANTS** Defendants'
Motion (#348) to Dismiss for Lack of Jurisdiction.

### PLAINTIFFS' MOTION (#352) FOR LEAVE TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY

26- OPINION AND ORDER

Plaintiffs move for leave to conduct jurisdictional discovery before resolution of Defendants' Motion (#348) to Dismiss for Lack of Jurisdiction. In particular, Plaintiffs seek discovery of information regarding (1) TSC's control over and access to information; (2) TSC decision-making and actions leading up to its recommendation to the TSA Administrator; and (3) conduct by TSC and TSA specific to Plaintiffs' DHS TRIP inquiries.

## I.    TSC's Control Over and Access to Information

In the first category of proposed jurisdictional discovery, Plaintiffs seek details about the procedures under which TSC provides information to the TSA Administrator, including whether TSC is required to provide to the Administrator all information that TSC considered, including information inconsistent with the decision.

In this regard the parties stipulated as follows:

> The information the TSC provides to the TSA administrator may be a summary of the information TSC relied on to make its determination regarding whether the individual should remain on the No Fly List, and does not necessarily include all underlying documentation. The TSC's recommendation to the TSA Administrator may contain classified and/or law enforcement sensitive information.

Joint Stipulations (#347) Regarding Jurisdiction at ¶ 18. To the extent that the record is unclear or insufficient, however, the TSA Administrator has the authority to request additional information from either TSC or a nominating agency. *Id.* at ¶ 19.

27-  OPINION AND ORDER

Moreover, to the extent that information is material (either inculpatory or exculpatory) to the Defendants' No-Fly List determination, that information must be in the administrative record provided to the reviewing court because Defendants are required either (a) to provide that information to each Plaintiff "in order to permit such Plaintiff to respond meaningfully to the reasons he has been placed on the No-Fly List" or (b) to explain to the reviewing court why that information could not be disclosed to the Plaintiff. *See Latif*, 2016 WL 1239925, at *15-*16.

Ultimately, however, the Court concludes Plaintiffs' requested discovery is not relevant to Defendants' Motion for a more fundamental reason: The TSA Administrator now has the authority to seek additional information and, in any event, makes the final decision regarding whether the traveler remains on the No-Fly List. The mere fact that TSC plays a role in providing information and a recommendation to the TSA Administrator does not mean the court of appeals could not "grant[] relief" on Plaintiffs' purely substantive claims "without reviewing and modifying TSC orders." *See Arjmand*, 745 F.3d at 1302.

Accordingly, the Court concludes discovery as to TSC's control over and access to information is not necessary to resolve the jurisdictional question at issue in Defendants' Motion.

## II. TSC Decision-Making and Actions Before Issuing its Recommendation to the TSA Administrator

In their second category of requested jurisdictional discovery, Plaintiffs seek information regarding (1) TSC's authority to remove individuals unilaterally from the No-Fly List before issuing a recommendation to the TSA Administrator and (2) TSC's role in determining or providing the relevant criteria relevant to the Plaintiffs' placement on the No-Fly List.

The Court finds Plaintiffs' arguments regarding TSC's authority to remove individuals unilaterally from the No-Fly List are speculative and unpersuasive. Moreover, this case is not about individuals who have been removed from the No-Fly List, but instead is about the remaining Plaintiffs who have been maintained on the No-Fly List. In other words, if TSC unilaterally removed an individual from the No-Fly List, there would not be any basis for judicial review in circumstances such as those raised here, and, therefore, the ability of the court of appeals to provide relief under § 46110 would not be implicated. Thus, TSC's authority does not affect a reviewing court's ability to grant relief to a traveler who remains on the No-Fly List without the court reviewing and modifying TSC orders.

Finally, the Court concludes how TSC determines the applicable criteria is not relevant to the reviewing court's substantive consideration of whether the TSA Administrator properly concluded those criteria were satisfied by the record.

Again, the ability of the court of appeals to "grant[] relief" on Plaintiffs' purely substantive claims "without reviewing and modifying TSC orders" is unaffected by the details of how TSC determines the criteria that are applicable. *See Arjmand*, 745 F.3d at 1302.

### III. **Plaintiff-Specific Information**

Finally, Plaintiffs seek information regarding the handling of each of Plaintiffs' DHS TRIP inquiries by TSC and TSA. In particular, Plaintiffs seek information as to whether TSC provided the TSA Administrator with all of the information on which it relied in making its recommendation; whether the TSA Administrator requested additional information; and, if so, whether TSC provided that information.

Again, the Court concludes this information is not relevant to the fundamental issue of whether a reviewing court can "grant[] relief without reviewing and modifying TSC orders." *See id.* With respect to Plaintiffs' substantive claims, the sole responsibility of the reviewing court would be to determine whether the TSA Administrator's determination is sufficiently supported by the already-developed record.

On this record, therefore, the Court concludes the jurisdictional discovery that Plaintiffs seek is not relevant to the jurisdictional question presented by Defendants' Motion (#348) to Dismiss for Lack of Jurisdiction, and, therefore, the

Court **DENIES** Plaintiffs' Motion (#352) for Leave to Conduct
Limited Jurisdictional Discovery.

**CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion
(#348) to Dismiss for Lack of Jurisdiction, which the Court
construes as a Motion for Summary Judgment, and **DENIES**
Plaintiffs' Motion (#352) for Leave to Conduct Limited
Jurisdictional Discovery.

The Court directs the parties to confer and to submit to the
Court **no later than May 12, 2017**, a proposed form of judgment
that summarizes the Court's disposition of all issues litigated
to date and that separately identifies those as to which the
Court concludes it lacks jurisdiction to proceed.  After the
Court enters its concluding judgment, the Court will then
consider any petition(s) for attorneys' fees.

IT IS SO ORDERED.

DATED this 21st day of April, 2017.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


31- OPINION AND ORDER